UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

---

DARLINGTON AMADASU                        Case No: **C - 1- 01 - 210**

      Plaintiff                                        Black/Dlott

-V-

JAMES R. DONOVAN, MD                     PLAINTIFF'S FIRST REQUESTS FOR ADMISSION
      Defendants                                   UPON UNIVERSITY OF CINCINNATI

---

Pursuant to FRCP 36 and S.D. OHIO Civ.R. 36.1, Plaintiff hereby serves on Defendant University of Cincinnati Plaintiff first set of Requests for Admission set forth below to be answered by defendant within 30 days from the date of service.

## DEFINITIONS

"Defendant" refers to The University of Cincinnati ("UC"), Cincinnati, Ohio.

## INSTRUCTIONS

1. Provide a response to each request separately.
2. If there is an objection to a request, state the complete specific basis for every such objection.

## REQUESTS FOR ADMISSION

1. Admit or deny: Plaintiff: (a) was a 'practicum phase' occupational medicine resident beginning from July 1999 and expected to end June 2000; (b) was a bona fide member of the medical staff of the University Hospital; (c) did not have to pay for any academic didactic courses and clinical practicum rotations during his occupational medicine residency; (c) was not a graduate student under the UC definition of a graduate student
    ANSWER:


2. Admit or deny: that Defendant was and is recipient of federal funds and assistances (a) in general; particularly for (b) Occupational Medicine Residency Program (OMRP); (c) Family Practice Residency Program (FPRP); and UC and the University Hospital (UH) are syndicated or joint sponsors of the OMRP and FPRP
    ANSWER:


3. Admit or deny that: (a) UC Department of Environmental Health (DEH) is one of the 14 or so Nation's federal Educational Resource Centers; and (b) Defendant regularly and annually receives Educational

Resource Center (ERC) Training Grants from funding federal agencies, e.g., Center for Diseases Control/National Institute of Occupational Safety and Health (CDC/NIOSH) for conducting education and training in four core Occupational Safety and Health disciplines, such as Occupational Physicians, and Industrial Hygienists.
ANSWER:



4. Admit or deny that plaintiff was one of the intended beneficiaries of the OMRP, FPRP, and ERC Training Grants from the federal funding agencies
ANSWER:



5. Admit or deny that plaintiff was qualified for appointment: (a) into second year resident position in your Family Practice Residency Training Program (FPRP) that was open in or about May 2000; and (b) into adjunct instructor position in Allied Health-Health Promotions opened at UC-Raymond Walters College in or about July 2000.
ANSWER:



6. Admit or deny that when the only plaintiff's classmate and a third year practicum occupational medicine resident, Loren C. Tapp, MD ("Tapp") graduated in December 1999, (a) plaintiff was the most senior and only third year practicum occupational medicine resident in the program; and (b) plaintiff was qualified for promotion to Chief Occupational Medicine Resident position; and (c) plaintiff was similarly situated with Tapp as 3rd year practicum resident.
ANSWER:



7. Admit or deny that the only rules and regulations, policies and procedures, guidelines and criteria ("Graduate Policy") that must be followed regarding audit courses, audit course grades and audit course grading practices are those published in University of Cincinnati Dept. of Environmental Health Graduate Student Guidelines Handbook for Master of Science and Doctor of Philosophy Degree Students for Fall 1999 & Fall 2000 ("UC-DEH Graduate Handbook")
ANSWER:



8. Admit or deny that under the said Graduate Policy on courses for audit, grades and grading practices in #7 above: (a) a non-for-graduate-credit course taken for audit is graded and reported in the form of letter "T" interpreted as audit course in which a grade is deemed unnecessary; and (b) a non-for-graduate-credit course taken for audit graded and reported in form of letter "F" grade, interpreted as unsatisfactory work in courses for graduate credit, is a violation of the graduate policy on audit courses or courses taken for audit, grades and grading practices.
ANSWER

9.  Admit or deny that (a) Defendant Middaugh rendering a grade of "F" instead of a grade of "T" for the Basics of Occupational Medicine II course that plaintiff took for audit in the 3rd quarter of 1999-2000 academic year constituted a violation of the UC Graduate Policy on courses taken for audit; (b) UC audit regulations in the UC-DEH Graduate Handbook, Fall 1999/2000 provides that the audit option is intended for cases in which course work is desired but in which a grade for credit purposes is deemed unnecessary; (c) UC policy on grades and grading practices in the UC-DEH Graduate Handbook provides that a grade in form of letter "T" must be rendered and reported for courses taken for audit; (d) a grade in form of letter "F" must be rendered and reported for courses taken for graduate credit; (e) plaintiff took the Basics of Occupational Medicine II for audit warranting letter "T", and (f) plaintiff never took Basics of Occupational Medicine II for graduate credit warranting letter "F"
ANSWER:

10. Admit or deny that: (a) Plaintiff satisfactorily and successfully completed all the requirements for graduation from the Occupational Medicine Residency program (OMRP) at the end of June 2000; (b) plaintiff was expected to graduate at the end of June 2000; (c) UC failed to graduate plaintiff from the program at the end of June 2000; and (d) plaintiff was partially graduated from the OMRP in or about April 2001, i.e., 10 months past the expected June 30, 2000 graduation.
ANSWER:

11. Admit or deny that: (a) defendant has no justification for failing to graduate plaintiff from the OMRP at the end of June 2000; (b) defendant is wholly responsible for plaintiff not graduating from OMRP in June 2000.
ANSWER:

12. Admit or deny that occupational medicine faculty of the Division of Occupational Medicine (DOM) of the Department of Environmental Health (DEH) have duty, obligation and responsibility to timely: (a) render grades for the didactic courses taken by plaintiff under them; (b) render grades for the clinical practicum rotations completed by plaintiff under them; (c) rendered written evaluation of the clinical practicum rotation completed by plaintiff under them; (d) report the rendered grades to UC Office of the Registrar or Office of Student Records; (e) give plaintiff copy of the written evaluation of the clinical practicum rotation immediately upon completion by plaintiff; and (f) submit the original copy of the written evaluation of the clinical practicum rotation completed by plaintiff to the administrative assistant of DOM for filing in personnel file of plaintiff kept

at the DOM and DEH.
ANSWER:




13. Admit or deny that the DOM faculty, particularly, defendants Donovan, Freeman and Lockey failed to perform their duties, obligations and responsibilities in the preceding Admission Request #12 owed to plaintiff in rendering (a) grades, (b) making written evaluations of clinical practicum rotations, (c) reporting grades from about July 1999 to until about January 2001, (d) conducting overall evaluation of plaintiff's entire record for the purpose of graduating plaintiff from the OMRP in June 2000.
ANSWER:




14. Generally, regarding the overall evaluation for the purpose of graduating a resident from OMRP, admit or deny that: (a) overall evaluation is based on the objective evaluation of entire record or totality of reported grades and written clinical practicum evaluations on file of the resident; (b) the overall evaluation of the entire record is objectively conducted by all members of the faculty of DOM; (c) the overall evaluation of the entire record is not subjectively conducted by a single member of the faculty; (d) recommendation to graduate or to not graduate a resident is made by the majority vote of the members of the faculty who had objectively evaluated the entire record of the resident; and (e) final decision to not graduate a resident is made by the Medical Executive Board (MEB) of the University Hospital (UH) subject to the approval of the Board of Trustees (BT) of UH
ANSWER:




15. Admit or deny that: (a) plaintiff did not sexually harass any female employee of UC; (b) UC has no record of written complaint from any female employees of UC of sexual harassment by plaintiff; (c) UC has no investigative written report of any sexual harassment that plaintiff had engaged in while at UC; and (d) UC has no proof that plaintiff sexually harassed any female employees of UC.
ANSWER:




16. Admit or deny that: (a) UC through and by defendant Donovan disciplined plaintiff in or about April 2000 by reducing plaintiff's clinical privileges, demoting and placing him on probation; (b) when disciplining plaintiff, UC and Donovan failed to follow the due process for disciplining members of the medical staff as provided by the medical staff's bylaws, fair hearing plan, rules and regulations, policies and procedures ("Bylaws") of the University Hospital and UC Hospital Graduate Medical Education Selected Information,

Policies and Procedures-1994-95; (c) UC had no founded justification (s) for disciplining plaintiff;
ANSWER:




17. Admit or deny that: (a) UC letter dated January 25, 1999 employing plaintiff for Occupational Medicine Resident (OMR) position, a copy of which plaintiff has provided to you and identified as [Pl.001] is genuine; (b) all the statements in the document- [Pl.001] are true and accurate; (c) the salary of $29,000 per year paid to plaintiff was below the salary paid to similarly situated practicum (3rd year) OMR in the 13 other Educational Resource Centers (ERCs) funded by federal government, and (d) below the salary paid to 3rd year residents in other specialties at UC.
ANSWER:




18. Admit or deny that (a) all academic classes and all clinical practicum rotations registered for and undertook by plaintiff from summer July 1999 to spring June 2000 were fully and completely remitted as per your 01/25/99 employment letter [Pl.001] and Student Account Statement (SAS) dated 12/28/2000 [Pl.002]; (b) plaintiff's last and final registration for academic classes and clinical practicum rotations took place in the Spring quarter 2000 academic year; (c) plaintiff did not register for or undertook any classes or clinical rotations after Spring quarter 2000 to the present; (d) all your SAS dated from 01/26/2001 in Winter Quarter 2000-01 through 10/04/2002 in Autumn Quarter 2002-03, which plaintiff produced to you and identified as [Pl.003-4; Pl.007-9, and Pl.022] are false; (e) the $4513 debt and your debt collections letters, *inter alia*, dated 07/16/02, 09/30/02 and 10/28/02 [Pl.005-6] are false and unwarranted
ANSWER:




19. Admit that: (a) plaintiff did not owe the whole or any portion of the debt of **$4513.00** stated in the documents identified in the preceding Admission Request #18; (b) Accounts & Collections Offices, employees, servants and agents of UC, on some occasions, have absolutely acknowledged that plaintiff did not owe the whole or any portion of the debt of $4513.00; (c) UC placed Service Blocks against issuance of plaintiff's Transcript of academic and clinical works and Validation of Attendance from 04/06/01 to the present on the basis of the debt of $4513.00; (d) defendant' Service Blocks against plaintiff's Transcript, Grades and Validation of Attendance that prevented and still preventing the printing, distribution and issuance of official Transcripts of Grades, Clinical Rotations and official Validation of Attendance to plaintiff and or to his prospective employers were and are unjustified; and (e) UC failed to provide to plaintiff upon requests the "verification of the debt of $4513.00.
ANSWER:

20. Admit or deny that: (a) defendant Pohl, on or about 02/21/00 phoned and solicited involuntary information from a then 20 year old black female patient who, on 2/16/00, visited UC-UH Center for Occupational Health (COH) for pre-employment examination; (b) on 02/21/00, Pohl improperly documented the solicited information on a progress note in the patient's medical chart; (c) on the 02/21/00 Pohl's documentation the said patient did not complain to Pohl that plaintiff had harassed and attempted at dating her; (d) both Pohl and Donovan set plaintiff up and made up the story that the patient complained specifically that plaintiff harassed and attempted dating activity with her; (e) on or about 3/22/00 Donovan noted in the patient's medical chart that Donovan phoned and directed the patient to file a complaint with the State Medical Board of Ohio that plaintiff harassed and attempted at dating her; (f) these Donovan and Pohl's conduct or acts, in course of their employment, were/are outside the scope of their employment;
ANSWER:

21. Sequel to the preceding Admission Request # 20, admit that (a) UC failed to follow the UH bylaws, rules and regulations, policies and procedures governing the handling of the alleged or purported patient's complaint; (b) UC failed to give plaintiff a notice, charge, and opportunity to respond to the alleged complaint comporting with due process before disciplining plaintiff; (c) UC failed to conduct investigation, hearing and afford plaintiff the opportunity to be heard before disciplining plaintiff;
ANSWER:

22. Admit that: (a) as condition precedent for receiving federal assistance or funds UC gave assurances to federal funding agencies that it would not discriminate, exclude from participation or prevent from deriving benefits from your programs and activities against qualified intended beneficiaries of such federal assistance or funds; (b) plaintiff was an intended beneficiary of the federal financial assistance to UC.
ANSWER:

23. Admit that as condition precedent for accreditation of University Hospital (UH) to provide health care

services to the public, UC-UH (a) agreed to be bound by the accreditation requirements of the Joint Commission on Accreditation of Healthcare Organization (JCAHO); (b) UC-UH adopted JCAHO requirements; (c) plaintiff was entitled to the protection, privileges, immunities and due process under the JCAHO requirements; (d) UC-UH failed to afford plaintiff the JCAHO mandated due process
ANSWER:


24. Admit that as condition precedent for accreditation of UC-University Hospital (UH) as a teaching hospital for postgraduate medical education and training of medical students, medical graduates, and residents, UC-UH (a) agreed to be bound by the accreditation requirements of Accreditation Council for Graduate Medical Education (ACGME); (b) plaintiff as an intended beneficiary was entitled to the protections, privileges, immunities and due process under the ACGME requirements; (c) UC-UH failed to afford plaintiff the ACGME mandated due process
ANSWER:


25. Admit that as condition precedent for accreditation of UC-University Hospital (UH) for sponsoring Occupational Medicine Residency Training Program, UC-UH (a) agreed to be bound by the accreditation requirements of American Board of Preventive Medicine (ABPM); (b) plaintiff as an intended beneficiary was entitled to the protections, privileges, immunities and due process under the ABPM requirements; (c) UC-UH failed to afford plaintiff the ABPM mandated due process
ANSWER:


26. Admit that UC-UH: (a) read and fully understood the federal Health Care Quality Improvement Act (HCQIA), Title IV, 42 U.S.C. 111101 et seq.; (b) have adopted and are bound by the HCQIA; (c) plaintiff as a bona fide member of the UC-UH medical staff was entitled to all the protections, immunities, privileges and due process under the HCQIA; (d) UC-UH failed to comply with the HCQIA provisions when disciplinary action against plaintiff was taken; (e) UC-UH failed to afford plaintiff the HCQIA mandated due process
ANSWER:


27. Admit that your publication through and by your employees and servants, particularly, defendant Donovan to defendant University of Texas Health Science at San Antonio (UTHSCSA)'s employees and servants, particularly, defendant Miller, that plaintiff sexually harassed UC-UH employees was false
ANSWER:


28. Admit that you (a) were/are aware of the federal, state and local governments' anti-discriminatory, anti

retaliatory and anti-exclusionary statutes as well as your policies and procedures against discrimination and retaliation; (b) failed to adhere to their provisions by demoting and placing plaintiff on probation, failing to promote plaintiff to Chief OMR position; failing to hire as adjunct instructor, treating plaintiff unfavorably different than similarly situated.
ANSWER:

29. Admit that UC-UH: (a) failed to allow plaintiff 4-weeks vacation with pay during his employment; (b) failed to give plaintiff 4-weeks pay in lieu of his 4-weeks vacation, which UC-UH disallowed him; (c) failed to pay for plaintiff's clinical conference, which he was entitled to; (d) failed to afford plaintiff other benefits that customarily attach to UC-UH employees and medical residents
ANSWER:

30. Admit that: Robert M. Gabel, MD (Gabel), Audry G. Rhodes, MD (Rhodes), John A. Dahlsten, MD (Dahlsten) and Loren C. Tapp, MD (Tapp): (a) were Caucasians; (b) did not belong to the protected class; (c) were similarly situated Occupational Medicine Residents (OMR) as the plaintiff; (d) their grades for taken courses and evaluations of their clinical practicum rotations were rendered and reported timely without delay; (e) took vacations with pay, (f) had UC-UH paid-for clinical conferences; (g) had all their full benefits; (h) graduated timely from the occupational medicine residency program; and (i) had no service block against releasing their grades and official transcripts because of the debt that they did not owe
ANSWER:

31. Continuing from the preceding Admission Request #30, admit that (a) Robert M. Gabel, MD (Gabel) was in the 2nd year academic phase, while plaintiff was in the 3rd year clinical practicum phase, of the Occupational Medicine Residency Program (OMRP); (b) Gabel was a junior OMR to plaintiff; (c) Gabel was promoted over plaintiff to Chief OMR position; (d) Gabel was not qualified to be the Chief OMR
ANSWER:

32. Admit that UC treated plaintiff differently than similarly situated Occupational Medicine Residents (OMR): (a) in rendering and reporting grades; (b) in evaluation and reporting of practicum evaluations; (c) in putting service block against grades and transcripts; (d) in timely graduation from OMRP; (e) in affording

benefits: (f) in promotion to Chief OMR position; (g) in provision of access codes to computers; (h) in provision of dictating micro-cassette recorder
ANSWER:

33. Regarding plaintiff's April 2000 4-week Environmental Medicine/Border Health Elective (EMBHE) offered in Laredo by the South Texas Environmental Educational and Research (STEER) Center and Department of Family Practice (DFP) of defendant University of Texas Health Science at San Antonio, Texas (UTHSCSA), admit: (a) UC recommended the EMBHE to plaintiff; (b) UTHSCSA prematurely terminated plaintiff's EMBHE; (c) UC did not receive from UTHSCSA written justification for the premature termination of the EMBHE; (d) UC failed to seek from UTHSCSA written justification for the premature termination of the EMBHE; (e) UC failed to investigate the circumstances surrounding the UTHSCSA treatment of plaintiff; (f) UC did receive plaintiff's 4/19/00 email partially complaining of UTHSCSA treatment of plaintiff and UC did nothing about it; (g) UC disciplining plaintiff lacks basis in facts and evidence of plaintiff causation of, contribution to or guilt in the premature termination of EMBHE; (h) UC failed to afford plaintiff due process before disciplining plaintiff.
ANSWER:

...................................................
Darlington Amadasu
Plaintiff, Pro Se

**CERTIFICATE OF SERVICE:**
I hereby certify that the foregoing was served on Justin D. Flamm by personal delivery to his receptionist and on Ramiro Canales, P.O. Box 12548, Capitol Station, Austin, TX 78711 by USPS mail to his address on 11/17/04.