UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

---

| | |
|---|---|
| DARLINGTON AMADASU | Case No: **C - 1- 01 - 210** |
| Plaintiff | Black/Dlott |
| -V- | |
| JAMES R. DONOVAN, MD | PLAINTIFF'S FIRST REQUESTS FOR ADMISSION |
| Defendants | UPON DEFENDANT JAMES R. DONOVAN |

---

Pursuant to FRCP 36 Plaintiff hereby serves on Defendant James R. Donovan Plaintiff first set of Requests for Admission set forth below to be answered by defendant within 30 days from the date of service.

### DEFINITIONS
"Defendant" herein refers to James R. Donovan ("Donovan").

### INSTRUCTIONS
1. Provide a response to each request separately.
2. If there is an objection to a request, state the complete specific basis for every such objection.

### REQUESTS FOR ADMISSION

1. Admit or deny: Plaintiff: (a) was a 'practicum phase' occupational medicine resident beginning from July 1999 and expected to end June 2000; (b) was a bona fide member of the medical staff of the University Hospital; (c) did not have to pay for any academic didactic courses and clinical practicum rotations during his occupational medicine residency; (c) was not a graduate student under the UC definition of a graduate student
ANSWER:



2. Admit or deny that: (a) UC Department of Environmental Health (DEH) is one of the 14 or so Nation's federal Educational Resource Centers; and (b) DEH regularly and annually receives Educational Resource Center (ERC) Training Grants from funding federal agencies, e.g., National Institute of Occupational Safety and Health (NIOSH) for conducting education and training in Occupational Safety and Health disciplines, such as Occupational Medicine Physicians, and Industrial Hygienists.
ANSWER:

3. Admit or deny that plaintiff was an intended beneficiaries of the ERC Training Grants from the federal funding agencies
ANSWER:

4. Admit or deny that when the only plaintiff's classmate and a third year practicum occupational medicine resident, Loren C. Tapp, MD ("Tapp") graduated in December 1999, (a) plaintiff was the most senior and only third year practicum occupational medicine resident in the program; and (b) plaintiff was qualified for promotion to Chief Occupational Medicine Resident position; and (c) plaintiff was similarly situated with Tapp as 3rd year practicum resident.
ANSWER:

5. Admit or deny that the only rules and regulations, policies and procedures, guidelines and criteria ("Graduate Policy") that must be followed regarding audit courses, audit course grades and audit course grading practices are those published in University of Cincinnati Dept. of Environmental Health Graduate Student Guidelines Handbook for Master of Science and Doctor of Philosophy Degree Students for Fall 1999 & Fall 2000 ("UC-DEH Graduate Handbook"), and you are bound by them
ANSWER:

6. Admit or deny that under the said Graduate Policy on courses for audit, grades and grading practices in #5 above: (a) a non-for-graduate-credit course taken for audit is graded and reported in the form of letter "T" interpreted as audit course in which a grade is deemed unnecessary; and (b) a non-for-graduate-credit course taken for audit graded and reported in form of letter "F" grade, interpreted as unsatisfactory work in courses for graduate credit, is a violation of the graduate policy on audit courses or courses taken for audit, grades and grading practices.
ANSWER

7. Admit or deny that (a) Defendant Middaugh rendering a grade of "F" instead of a grade of "T" for the Basics of Occupational Medicine II course that plaintiff took for audit in the 3rd quarter of 1999-2000 academic year constituted a violation of the UC Graduate Policy on courses taken for audit; (b) UC audit regulations in the UC-DEH Graduate Handbook, Fall 1999/2000 provides that the audit option is intended for cases in which course work is desired but in which a grade for credit purposes is deemed unnecessary; (c) UC policy on grades and grading practices in the UC-DEH Graduate Handbook provides that a grade in form of letter "T" must be rendered and reported for courses taken for audit; (d) a grade in form of letter "F" must be rendered and reported for courses taken for graduate credit; (e) plaintiff took the Basics of Occupational Medicine II for audit warranting letter "T", and (f) plaintiff never took Basics of Occupational Medicine II for graduate credit warranting letter "F"

ANSWER:

8. Admit or deny that: (a) Plaintiff satisfactorily and successfully completed all the requirements for graduation from the Occupational Medicine Residency program (OMRP) at the end of June 2000; (b) plaintiff was expected to graduate at the end of June 2000; (c) you failed to graduate plaintiff from the program at the end of June 2000; and (d) plaintiff was partially graduated from the OMRP in or about April 2001, i.e., 10 months past the expected June 30, 2000 graduation.
ANSWER:

9. Admit or deny that: (a) defendant has no justification for failing to graduate plaintiff from the OMRP at the end of June 2000; (b) defendant is substantially responsible for plaintiff not graduating from OMRP in June 2000.
ANSWER:

10. Admit or deny that as a member of occupational medicine faculty of the Division of Occupational Medicine (DOM) of the Department of Environmental Health (DEH) you have duty, obligation and responsibility to timely: (a) render grades for the clinical practicum rotations completed by plaintiff under them; (c) rendered written evaluation of the clinical practicum rotation completed by plaintiff under you; (d) report the rendered grades to UC Office of the Registrar or Office of Student Records; (e) give plaintiff copy of the written evaluation of the clinical practicum rotation immediately upon completion by plaintiff; and (f) submit the original copy of the written evaluation of the clinical practicum rotation completed by plaintiff to the administrative assistant of DOM for filing in personnel file of plaintiff kept at the DOM and DEH.
ANSWER:

11. Admit or deny that you failed to perform your duties, obligations and responsibilities in the preceding Admission Request #10 owed to plaintiff in failing: (a) to render grades, (b) to make written evaluations of clinical practicum rotations done under you at Veteran Administration Hospital (VHA), Vine St., Cincinnati, (c) to report grades from about July 1999 to until about January 2001, (d) to conduct, with all DOM faculty

members, the overall evaluation of plaintiff's entire record for the purpose of graduating plaintiff from the OMRP in June 2000.
ANSWER:

12. Generally, regarding the overall evaluation for the purpose of graduating a resident from OMRP, admit or deny that: (a) overall evaluation is based on the objective evaluation of entire record or totality of reported grades and written clinical practicum evaluations on file of the resident; (b) the overall evaluation of the entire record is objectively conducted by all members of the faculty of DOM; (c) the overall evaluation of the entire record is not subjectively conducted by a single member of the faculty; (d) recommendation to graduate or to not graduate a resident is made by the majority vote of the members of the faculty who had objectively evaluated the entire record of the resident; and (e) final decision to not graduate a resident is made by the Medical Executive Board (MEB) of the University Hospital (UH) subject to the approval of the Board of Trustees (BT) of UH
ANSWER:

13. Admit or deny that: (a) plaintiff did not sexually harass any female employee of UC; (b) you have no record of written complaint of sexual harassment from any female employees of UC against plaintiff; (c) you have no investigative written report of any sexual harassment that plaintiff had engaged in while at UC; and (d) you have no proof that plaintiff sexually harassed any female employees of UC.
ANSWER:

14. Admit or deny that: (a) you singularly disciplined plaintiff in or about April 2000 by reducing plaintiff's clinical privileges, demoting and placing him on probation; (b) when disciplining plaintiff, you failed to follow the due process for disciplining members of the medical staff as provided by the medical staff's bylaws, fair hearing plan, rules and regulations, policies and procedures ("Bylaws") of the University Hospital and UC Hospital Graduate Medical Education Selected Information, Policies and Procedures-1994-95; (c) you have no founded justification (s) for disciplining plaintiff;
ANSWER:

15. Admit or deny that: (a) your letter dated January 25, 1999 employing plaintiff for Occupational Medicine Resident (OMR) position, a copy of which plaintiff has provided to you and identified as [Pl.001] is

genuine; (b) all the statements in the document- [Pl.001] are true and accurate; (c) the salary of $29,000 per year paid to plaintiff was below the salary paid to similarly situated practicum (3rd year) OMR in the 13 other Educational Resource Centers (ERCs) funded by federal government, and (d) below the salary paid to 3rd year residents in other specialties at UC; (e) you arbitrarily set the salary.
ANSWER:

16. Admit or deny that (a) all academic classes and all clinical practicum rotations registered for and undertook by plaintiff from summer July 1999 to spring June 2000 were fully and completely remitted as per your 01/25/99 employment letter [Pl.001] and Student Account Statement (SAS) dated 12/28/2000 [Pl.002]; (b) plaintiff's last and final registration for academic classes and clinical practicum rotations took place in the Spring quarter 2000 academic year; (c) plaintiff did not register for or undertook any classes or clinical rotations after Spring quarter 2000 to the present; (d) all your SAS dated from 01/26/2001 in Winter Quarter 2000-01 through 10/04/2002 in Autumn Quarter 2002-03, which plaintiff produced to you and identified as [Pl.003-4; Pl.007-9, and Pl.022] are false; (e) the $4513 debt and your debt collections letters, *inter alia*, dated 07/16/02, 09/30/02 and 10/28/02 [Pl.005-6] are false and unwarranted
ANSWER:

17. Admit that: (a) plaintiff did not owe the whole or any portion of the debt of **$4513.00** stated in the documents identified in the preceding Admission Request #16; (b) UC placed Service Blocks against issuance of plaintiff's Transcript of academic and clinical works and Validation of Attendance from 04/06/01 to the present on the basis of the debt of $4513.00; (d) UC's Service Blocks against plaintiff's Transcript, Grades and Validation of Attendance that prevented and still preventing the printing, distribution and issuance of official Transcripts of Grades, Clinical Rotations and official Validation of Attendance to plaintiff and or to his prospective employers were and are unjustified; and (e) you cannot provide to plaintiff the "verification of the debt of $4513.00.
ANSWER:

18. Admit or deny that: (a) you directed defendant Pohl, on or about 02/21/00 to phone and solicit involuntary information from a then 20 year old black female patient who, on 2/16/00, visited UC-UH Center for Occupational Health (COH) for pre-employment examination; (b) on 02/21/00, you directed Pohl to improperly document the solicited information on a progress note in the patient's medical chart; (c) in the

02/21/00 Pohl's documentation the said patient did not complain to Pohl that plaintiff had harassed and attempted at dating her; (d) you put a spin set plaintiff up and made up the story that the patient complained specifically that plaintiff harassed and attempted dating activity with her; (e) on or about 3/22/00 you noted in the patient's medical chart that you phoned and directed the said patient to file a complaint with the State Medical Board of Ohio that plaintiff harassed and attempted at dating her; (f) these your conduct or acts, in course of your employment, were/are outside the scope of your employment and your job descriptions
ANSWER:

19. Sequel to the preceding Admission Request # 18, admit that (a) you failed to follow the UH bylaws, rules and regulations, policies and procedures governing the handling of the alleged or purported patient's complaint; (b) you failed to give plaintiff a notice, charge, and opportunity to respond to the alleged complaint, if any, comporting with due process before disciplining plaintiff; (c) you failed to request the appropriate UH or UC department to conduct investigation, hearing and afford plaintiff the opportunity to be heard before you disciplined plaintiff;
ANSWER:

20. Admit that: (a) as condition precedent for receiving Educational Resource Center (ERC) NIOSH grants and other federal assistance or funds, you gave assurances to federal funding agencies that you would not discriminate against, exclude from participation in, or prevent from deriving benefits from your programs and activities qualified intended beneficiaries of such federal assistance or funds; (b) plaintiff was an intended beneficiary of the federal financial assistance to UC-UH DEH.
ANSWER:

21. Admit: (a) you read and understood the standards or requirements of the Joint Commission on Accreditation of Healthcare Organization (JCAHO); (b) UC-UH adopted and agreed to be bound by the JCAHO Standards; (c) you are bound to comply with JCAHO requirements; (c) plaintiff was entitled to the protection, privileges, immunities and due process under the JCAHO requirements; (d) you failed to afford plaintiff the JCAHO mandated due process
ANSWER:

22. Admit: (a) you read and understood the requirements of Accreditation Council for Graduate Medical

Education (ACGME); (b) UC-UH adopted and agreed to be bound ACGME requirements; (b) you are bound to comply with ACGME requirements; (c) plaintiff as an intended beneficiary was entitled to the protections, privileges, immunities and due process under the ACGME requirements; (c) you failed to afford plaintiff the ACGME mandated due process
ANSWER:

23. Admit: (a) you read and understood the accreditation requirements of American Board of Preventive Medicine (ABPM); (b) UC-UH adopted and agreed to be bound by the accreditation requirements of ABPM that as condition precedent for permitting UC-UH for sponsoring Occupational Medicine Residency Program (OMRP); (c) you were/are bound to comply with the ABPM Requirements; (d) plaintiff as an intended beneficiary was entitled to the protections, privileges, immunities and due process under the ABPM requirements; (c) you failed to afford plaintiff the ABPM mandated requirements and due process
ANSWER:

24. Admit that you: (a) read and fully understood the federal Health Care Quality Improvement Act (HCQIA), Title IV, 42 U.S.C. 111101 et seq.; (b) UC-UH have adopted and are bound by the HCQIA; (c) plaintiff as a bona fide member of the UC-UH medical staff was entitled to all the protections, immunities, privileges and due process under the HCQIA; (d) you failed to comply with the HCQIA provisions when you took disciplinary action against plaintiff; (e) you failed to afford plaintiff the HCQIA mandated due process
ANSWER:

25. Admit that your publications to known and unknown third parties, particularly, Dr Marshall Anderson, defendant Filak, defendant UTHSCSA's employees and servants, particularly, defendant Miller, that plaintiff sexually harassed UC-UH female employees were false.
ANSWER:

26. Admit that (a) you were/are aware of the federal, state and local governments' anti-discriminatory, anti retaliatory and anti-exclusionary statutes as well as UC-UH policies against discrimination and retaliation; (b) you failed to adhere to their provisions by demoting and placing plaintiff on probation, failing to promote plaintiff to Chief OMR position; and treating plaintiff unfavorably different than similarly situated OMR
ANSWER:

27. Admit that UC-UH by you (a) promised plaintiff 4-weeks vacation with pay during his employment; (b) Promised plaintiff 4-weeks pay in lieu of his 4-weeks vacation; (c) promised to pay for plaintiff's clinical conference, which he was entitled to; (d) promised to afford plaintiff other benefits that customarily attach to UC-UH employees and medical residents; (e) these promises were not fulfilled by UC-UH or you
ANSWER:

28. Admit that: Robert M. Gabel, MD (Gabel), Audry G. Rhodes, MD (Rhodes), John A. Dahlsten, MD (Dahlsten) and Loren C. Tapp, MD (Tapp): (a) were Caucasians and did not belong to the protected class; (b) were similarly situated Occupational Medicine Residents (OMR) as the plaintiff; (c) their grades for taken courses and evaluations of their clinical practicum rotations were rendered and reported timely without delay; (e) took vacations with pay, (f) had UC-UH paid-for their clinical conferences attendance; (g) had all their full benefits; (h) graduated timely from the occupational medicine residency program; and (i) had no service block against releasing their grades and official transcripts because of the debt that they did not owe
ANSWER:

29. Continuing from the preceding Admission Request #28, admit that (a) Robert M. Gabel, MD (Gabel) was in the 2nd year academic phase, while plaintiff was in the 3rd year clinical practicum phase, of the Occupational Medicine Residency Program (OMRP); (b) Gabel was a junior OMR to plaintiff; (c) Gabel was promoted over plaintiff to Chief OMR position; (d) Gabel was not qualified to be the Chief OMR
ANSWER:

30. Admit that you treated plaintiff differently than similarly situated Occupational Medicine Residents (OMR): (a) in failing to render and report plaintiff's grades; (b) in failing to evaluate and report practicum evaluations of clinical rotation done under you by plaintiff; (c) in failing to timely graduate plaintiff from OMRP; (d) in failing to promote plaintiff to Chief OMR position; (e) in failing to provide plaintiff with access codes to computers; (h) in failing to provide plaintiff with dictating micro-cassette recorder to perform his job.
ANSWER:

31. Regarding plaintiff's April 2000 4-week Environmental Medicine/Border Health Elective (EMBHE) offered in Laredo by the South Texas Environmental Educational and Research (STEER) Center and Department of Family Practice (DFP) of UTHSCSA, admit: (a) you recommended the EMBHE to plaintiff; (b) UTHSCSA prematurely terminated plaintiff's EMBHE; (c) you did not receive from UTHSCSA written justification for the premature termination of the EMBHE; (d) you failed to seek from UTHSCSA written justification for the premature termination of the EMBHE; (e) you failed to investigate the circumstances surrounding the UTHSCSA treatment of plaintiff; (f) you did receive plaintiff's 4/19/00 email partially complaining of UTHSCSA treatment of plaintiff and you did nothing about it; (g) your disciplining plaintiff lacks basis in facts and evidence of plaintiff' causation of, contribution to or guilt in the premature termination of EMBHE; (h) you failed to afford plaintiff due process before disciplining plaintiff.
ANSWER:

32. Admit: (a) on 07/03/2000 Division of Occupational Medicine (DOM) and Department of Environmental Health (DEH) ordered a service block against releasing official transcript of plaintiff's academic and clinical work; (b) no basis whatsoever for such service block against plaintiff; (c) plaintiff was and is not deliquent in financial or other obligations to UC or UH warranting such service block
ANSWER:

33. Admit: (a) On 05/04/00 you faxed to defendant Filak a document dated April 19, 2000 in which you stated that you singularly decided to have plaintiff to be chaperoned; (b) your decision was based on unfounded second-hand information purportedly made by an employee that a job applicant stated that plaintiff's actions were harassing; (c) an employee who purportedly gave you the second information was defendant Pohl; (d) on or about 2/21/00 you directed Pohl to phone and solicit from the job applicant sexually suggestive information solely to implicate plaintiff; (e) on 2/21/00 Pohl documented her solicited information improperly in the job applicant's medical chart; (f) the 2/21/00 Pohl's written note did not contain any complaint by the job applicant of plaintiff "harassing, and unwanted attempts at dating activity" with her; (g) you put a spin in the Pohl's 2/21/00 note and made up the allegation of plaintiff "harassing, and unwanted attempts at dating activity" with the job applicant;
ANSWER:

34. Regarding the letter and matter in preceding admission request #33, admit: (a) you failed to give plaintiff notice, written charge and opportunity to present his side of the story; (b) Neither you, nor Filak, nor

UC-UH followed the UC-UH policies and procedures on harassment and mandated due process for disciplinary action against medical staff member. (c) you failed to give plaintiff copy of the said 4/19/00 letter.
ANSWER:

35. Regarding the job applicant in admission request #33, admit: (a) the applicant came to Center for Occupational Health (COH) for pre-placement employment medical assessment on 2/16/00 without her immunization record necessary to complete her assessment and determine what type of immunization she already had and needed; you assigned her to plaintiff to examine and report to you and plaintiff did report to you; you and plaintiff together saw her without any complaint and you asked her to bring her immunization record to COH; when she failed to bring the record, you directed plaintiff on 2/17/00 and 2/18/00 to call and remind her to bring her immunization record; (b) on 2/17/00 phone call from COH, she did not pick up so plaintiff left message on her answering device to bring the immunization record and on 2/18/00 she picked up but impersonated her sister "Bridgett" as the one answering the phone but plaintiff left her message to tell the applicant to bring her immunization record; (c) these facts are consistent with defendant Pohl's 2/21/00 documentation; (d) the job applicant made no first hand oral or written complaint of any harassment or unwanted attempts at dating her against plaintiff; (e) defendant Pohl failed in her duty and responsibility to chaperon plaintiff during 2/16/00 exam;
ANSWER:

36. Admit: (a) over more than 36 days after the job applicant exam on 2/16/00 without her oral or written complaint against plaintiff, on 3/22/00 you phoned and persuaded her to file false complaint against plaintiff with the State Medical Board of Ohio; (b) on 3/22/00 you documented this act in her medical chart; (c) persuading her to file false complaint, you intended to injure plaintiff and hinder his opportunity of obtaining Ohio and other States' license to practice; (d) your persuading her to file false complaint was/is outside the scope of your employment and your job description; (e) the job applicant told you she could not file false complaint against plaintiff
ANSWER:

37. (a) on 5/4/00 you faxed a document dated 4/28/00 to defendant Filak informing him that you had unilaterally and singularly placed plaintiff on probation; (b) your singular disciplinary action was based upon

reports of your [plaintiff] behavior during the AHEC (STEER) rotation in Texas in the month of April; (c) you received no written reports of plaintiff behavior from AHEC/STEER upon which you singularly and unilaterally acted; (d) if you received such report, you failed to follow the due process requirements of UC-UH, JCAHO, HCQIA, ABPM, ACGME and Ohio Revised Code 2305.24-2305.251 before imposing probation and restriction of privileges on plaintiff; (d) you failed to send plaintiff original or copy of the said 4/28/00 document
ANSWER:

38. Admit: (a) UC legal counsel, Ms. Linda Harpster advised you to not graduate plaintiff from the program; (b) your solicitation of and Harpster rendering the advice to not graduate plaintiff were contrary to UC-UH medical staff bylaws and standards or requirements of JCAHO, HCQIA, ABPM, ACGME and Ohio Revised Code 2305.24-2305.251; (c) decision to or to not graduate a medical resident is ultimately made by the UC-UH Board of Trustees on recommendation of the Medical Executive Board.
ANSWER:

39. Admit: (a) you encouraged and directed defendant Jefferson-Gaynor to put into plaintiff's file kept at DEH private emails between a private person and plaintiff; (b) upon the said private emails you made up false claim of sexual harassments of two women at UC; (c) you later acknowledged in a written document signed by you and plaintiff in year 2000 that your claim of sexual harassments were hoax and closed; (d) on 2/26/01 you reborn the claim of sexual harassments as reason for not fully completing the Evaluation of Terminating Resident/Fellow Form.
ANSWER:

..................................................
Darlington Amadasu
Plaintiff, Pro Se

**CERTIFICATE OF SERVICE:**
I hereby certify that the foregoing was served on Justin D. Flamm by personal delivery to his receptionist and on Ramiro Canales, P.O. Box 12548, Capitol Station, Austin, TX 78711 by USPS mail to his address on 11/24/04.

..................................................
11/24/04