UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

---

| | |
|---|---|
| DARLINGTON AMADASU | Case No: C - 1- 01 - 210 |
| Plaintiff | Black/Dlott |
| -V- | |
| JAMES R. DONOVAN, MD | PLAINTIFF'S FIRST REQUESTS FOR ADMISSION |
| Defendants | UPON DEFENDANT JAMES E. LOCKEY |

---

Pursuant to FRCP 36 Plaintiff hereby serves on Defendant James E. Lockey Plaintiff first set of Requests for Admission set forth below to be answered by defendant within 30 days from the date of service.

### DEFINITIONS
"Defendant" herein refers to James E. Lockey ("Lockey").

### INSTRUCTIONS
1. Provide a response to each request separately.
2. If there is an objection to a request, state the complete specific basis for every such objection.

### REQUESTS FOR ADMISSION

1.  Admit or deny: Plaintiff: (a) was a 'practicum phase' occupational medicine resident beginning from July 1999 and expected to end June 2000; (b) was a bona fide member of the medical staff of the University Hospital; (c) did not have to pay for any academic didactic courses and clinical practicum rotations during his occupational medicine residency; (c) was not a graduate student under the UC definition of a graduate student
ANSWER:

2.  Admit or deny that: (a) UC Department of Environmental Health (DEH) is one of the 14 or so Nation's federal Educational Resource Centers; and (b) DEH regularly and annually receives Educational Resource Center (ERC) Training Grants from funding federal agencies, e.g., National Institute of Occupational Safety and Health (NIOSH) for conducting education and training in Occupational Safety and Health disciplines, such as Occupational Medicine Physicians, and Industrial Hygienists.
ANSWER:

3. Admit or deny that plaintiff was an intended beneficiaries of the ERC Training Grants from the federal funding agencies
ANSWER:

4. Admit or deny that when the only plaintiff's classmate and a third year practicum occupational medicine resident, Loren C. Tapp, MD ("Tapp") graduated in December 1999, (a) plaintiff was the most senior and only third year practicum occupational medicine resident in the program; and (b) plaintiff was qualified for promotion to Chief Occupational Medicine Resident position; and (c) plaintiff was similarly situated with Tapp as 3rd year practicum resident.
ANSWER:

5. Admit or deny that the only rules and regulations, policies and procedures, guidelines and criteria ("Graduate Policy") that must be followed regarding audit courses, audit course grades and audit course grading practices are those published in University of Cincinnati Dept. of Environmental Health Graduate Student Guidelines Handbook for Master of Science and Doctor of Philosophy Degree Students for Fall 1999 & Fall 2000 ("UC-DEH Graduate Handbook"), and you are bound by them
ANSWER:

6. Admit or deny that under the said Graduate Policy on courses for audit, grades and grading practices in #5 above: (a) a non-for-graduate-credit course taken for audit is graded and reported in the form of letter "T" interpreted as audit course in which a grade is deemed unnecessary; and (b) a non-for-graduate-credit course taken for audit graded and reported in form of letter "F" grade, interpreted as unsatisfactory work in courses for graduate credit, is a violation of the graduate policy on audit courses or courses taken for audit, grades and grading practices.
ANSWER

7. Admit or deny that (a) Defendant Middaugh rendering a grade of "F" instead of a grade of "T" for the Basics of Occupational Medicine II course that plaintiff took for audit in the 3rd quarter of 1999-2000 academic year constituted a violation of the UC Graduate Policy on courses taken for audit; (b) UC audit regulations in the UC-DEH Graduate Handbook, Fall 1999/2000 provides that the audit option is intended for cases in which course work is desired but in which a grade for credit purposes is deemed unnecessary; (c) UC policy on grades and grading practices in the UC-DEH Graduate Handbook provides that a grade in form of letter "T" must be rendered and reported for courses taken for audit; (d) a grade in form of letter "F" must be rendered and reported for courses taken for graduate credit; (e) plaintiff took the Basics of Occupational Medicine II for audit warranting letter "T", and (f) plaintiff never took Basics of Occupational Medicine II for graduate credit warranting letter "F"

ANSWER:

8.  Admit or deny that: (a) Plaintiff satisfactorily and successfully completed all the requirements for graduation from the Occupational Medicine Residency program (OMRP) at the end of June 2000; (b) plaintiff was expected to graduate at the end of June 2000; (c) you failed to graduate plaintiff from the program at the end of June 2000; and (d) plaintiff was partially graduated from the OMRP in or about April 2001, i.e., 10 months past the expected June 30, 2000 graduation.
ANSWER:

9.  Admit or deny that: (a) defendant has no justification for failing to graduate plaintiff from the OMRP at the end of June 2000; (b) defendant is substantially responsible for plaintiff not graduating from OMRP in June 2000.
ANSWER:

10. Admit or deny that as a member of occupational medicine faculty of the Division of Occupational Medicine (DOM) of the Department of Environmental Health (DEH) you have duty, obligation and responsibility to timely: (a) render grades for the clinical practicum rotations completed by plaintiff under them; (c) rendered written evaluation of the clinical practicum rotation completed by plaintiff under you; (d) report the rendered grades to UC Office of the Registrar or Office of Student Records; (e) give plaintiff copy of the written evaluation of the clinical practicum rotation immediately upon completion by plaintiff; and (f) submit the original copy of the written evaluation of the clinical practicum rotation completed by plaintiff to the administrative assistant of DOM for filing in personnel file of plaintiff kept at the DOM and DEH.
ANSWER:

11. Admit or deny that you failed to perform your duties, obligations and responsibilities in the preceding Admission Request #10 owed to plaintiff in failing: (a) to timely render grades, (b) to timely make written evaluations of clinical practicum rotations done under you, (c) to timely report grades from about October 1999 to until about April 2001, (d) to timely conduct, with all DOM faculty members, the overall evaluation of

plaintiff's entire record for the purpose of graduating plaintiff from the OMRP in June 2000 consistent with ABPM requirements.
ANSWER:




12. Generally, regarding the overall evaluation for the purpose of graduating a resident from OMRP, admit or deny that: (a) overall evaluation is based on the objective evaluation of entire record or totality of reported grades and written clinical practicum evaluations on file of the resident; (b) the overall evaluation of the entire record is objectively conducted by all members of the faculty of DOM; (c) the overall evaluation of the entire record is not subjectively conducted by a single member of the faculty; (d) recommendation to graduate or to not graduate a resident is made by the majority vote of the members of the faculty who had objectively evaluated the entire record of the resident; and (e) final decision to not graduate a resident is made by the Medical Executive Board (MEB) of the University Hospital (UH) subject to the approval of the Board of Trustees (BT) of UH
ANSWER:




13. Admit or deny that: (a) plaintiff had clinical rotation in occupational pulmonary clinic under you during October –December 1999;(b) you failed to render evaluation of the said plaintiff rotation at the end of the rotation period; (c) you rendered evaluation of the said plaintiff's rotation on 4/4/01, that is, over 16 months past the time that you should have rendered the evaluation; (d) you have no justified reason for failing to timely render the evaluation.
ANSWER:




14. Admit or deny that: (a) you aware and condoned defendant Donovan singularly disciplined plaintiff in or about April 2000 by restricting plaintiff's clinical privileges, demoting and placing him on probation; (b) you failed to prevent Donovan from disciplining plaintiff when he failed to follow the due process for disciplining members of the medical staff as provided by the medical staff's bylaws, fair hearing plan, rules and regulations, policies and procedures ("Bylaws") of the University Hospital and UC Hospital Graduate Medical Education Selected Information, Policies and Procedures-1994-95; (c) you have no founded justification (s) for not stopping Donovan's violation of the due process right of plaintiff;
ANSWER:

15. Admit or deny that: (a) letter dated January 25, 1999 employing plaintiff for Occupational Medicine Resident (OMR) position, a copy of which plaintiff has provided to you and identified as [Pl.001] is genuine; (b) all the statements in the document- [Pl.001] are true and accurate; (c) the salary of $29,000 per year paid to plaintiff was below the salary paid to similarly situated practicum (3rd year) OMR in the 13 other Educational Resource Centers (ERCs) funded by federal government, and (d) below the salary paid to 3rd year residents in other specialties at UC; (e) you arbitrarily set the salary.
ANSWER:

16. Admit or deny that (a) all academic classes and all clinical practicum rotations registered for and undertook by plaintiff from summer July 1999 to spring June 2000 were fully and completely remitted as per the 01/25/99 employment letter [Pl.001] and Student Account Statement (SAS) dated 12/28/2000 [Pl.002]; (b) plaintiff's last and final registration for academic classes and clinical practicum rotations took place in the Spring quarter 2000 academic year; (c) plaintiff did not register for or undertook any classes or clinical rotations after Spring quarter 2000 to the present; (d) all the SAS dated from 01/26/2001 in Winter Quarter 2000-01 through 10/04/2002 in Autumn Quarter 2002-03, which plaintiff produced to you and identified as [Pl.003-4; Pl.007-9, and Pl.022] are false; (e) the $4513 debt and the debt collections letters, *inter alia*, dated 07/16/02, 09/30/02 and 10/28/02 [Pl.005-6] are false and unwarranted
ANSWER:

17. Admit that: (a) plaintiff did not owe the whole or any portion of the debt of $4513.00 stated in the documents identified in the preceding Admission Request #16; (b) UC placed Service Blocks against issuance of plaintiff's Transcript of academic and clinical works and Validation of Attendance from 04/06/01 to the present on the basis of the debt of $4513.00; (d) UC's Service Blocks against plaintiff's Transcript, Grades and Validation of Attendance that prevented and still preventing the printing, distribution and issuance of official Transcripts of Grades, Clinical Rotations and official Validation of Attendance to plaintiff and or to his prospective employers were and are unjustified; and (e) you cannot provide to plaintiff the "verification of the debt of $4513.00.
ANSWER:

18. Admit that (a) defendant Donovan's conduct or acts of persuading a patient to file false complaint against plaintiff with State Medical Board of Ohio on 3/22/00 was/is outside the scope of his employment and his job descriptions; (b) such Donovan's acts served interests of Donovan and not interest of his employer
ANSWER:

19. Admit that: (a) as condition precedent for receiving Educational Resource Center (ERC) NIOSH grants and other federal assistance or funds, you gave assurances to federal funding agencies that you would not discriminate against, exclude from participation in, or prevent from deriving benefits from your programs and activities qualified intended beneficiaries of such federal assistance or funds; (b) plaintiff was an intended beneficiary of the federal financial assistance to UC-UH DEH.
ANSWER:

20. Admit: (a) you read and understood the standards or requirements of the Joint Commission on Accreditation of Healthcare Organization (JCAHO); (b) UC-UH adopted and agreed to be bound by the JCAHO Standards; (c) you are bound to comply with JCAHO requirements; (c) plaintiff was entitled to the protection, privileges, immunities and due process under the JCAHO requirements; (d) you failed to afford plaintiff the JCAHO mandated due process
ANSWER:

21. Admit: (a) you read and understood the requirements of Accreditation Council for Graduate Medical Education (ACGME); (b) UC-UH adopted and agreed to be bound ACGME requirements; (b) you are bound to comply with ACGME requirements; (c) plaintiff as an intended beneficiary was entitled to the protections, privileges, immunities and due process under the ACGME requirements; (c) you failed to afford plaintiff the ACGME mandated due process
ANSWER:

22. Admit: (a) you read and understood the accreditation requirements of American Board of Preventive Medicine (ABPM); (b) UC-UH adopted and agreed to be bound by the accreditation requirements of ABPM that as condition precedent for permitting UC-UH for sponsoring Occupational Medicine Residency Program (OMRP); (c) you were/are bound to comply with the ABPM Requirements; (d) plaintiff as an intended beneficiary was entitled to the protections, privileges, immunities and due process under the ABPM requirements; (c) you failed to afford plaintiff the ABPM mandated requirements and due process
ANSWER:

23. Admit that you: (a) read and fully understood the federal Health Care Quality Improvement Act (HCQIA), Title IV, 42 U.S.C. 111101 et. seq.; (b) UC-UH have adopted and are bound by the HCQIA; (c) plaintiff as a bona fide member of the UC-UH medical staff was entitled to all the protections, immunities, privileges and due process under the HCQIA; (d) you failed to comply with the HCQIA provisions when you took disciplinary action against plaintiff; (e) you failed to afford plaintiff the HCQIA mandated due process
ANSWER:

24. Admit that (a) you were/are aware of the federal, state and local governments' anti-discriminatory, anti retaliatory and anti-exclusionary statutes as well as UC-UH policies against discrimination and retaliation; (b) you failed to adhere to their provisions by demoting and placing plaintiff on probation, failing to promote plaintiff to Chief OMR position; and treating plaintiff unfavorably different than similarly situated OMR
ANSWER:

25. Admit that UC-UH by you (a) promised plaintiff 4-weeks vacation with pay during his employment; (b) Promised plaintiff 4-weeks pay in lieu of his 4-weeks vacation; (c) promised to pay for plaintiff's clinical conference, which he was entitled to; (d) promised to afford plaintiff other benefits that customarily attach to UC-UH employees and medical residents; (e) these promises were not fulfilled by UC-UH or you
ANSWER:

26. Admit that: Robert M. Gabel, MD (Gabel), Audry G. Rhodes, MD (Rhodes), John A. Dahlsten, MD (Dahlsten) and Loren C. Tapp, MD (Tapp): (a) were Caucasians and did not belong to the protected class; (b) were similarly situated Occupational Medicine Residents (OMR) as the plaintiff; (c) their grades for taken courses and evaluations of their clinical practicum rotations were rendered and reported timely without delay; (e) took vacations with pay, (f) had UC-UH paid-for their clinical conferences attendance; (g) had all their full benefits; (h) graduated timely from the occupational medicine residency program; and (i) had no service block against releasing their grades and official transcripts because of the debt that they did not owe
ANSWER:

27. Continuing from the preceding Admission Request #26, admit that (a) Robert M. Gabel, MD (Gabel) was in the 2nd year academic phase, while plaintiff was in the 3rd year clinical practicum phase, of the Occupational Medicine Residency Program (OMRP); (b) Gabel was a junior OMR to plaintiff; (c) Gabel was promoted over plaintiff to Chief OMR position; (d) Gabel was not qualified to be the Chief OMR
ANSWER:

28. Admit that you treated plaintiff differently than similarly situated Occupational Medicine Residents (OMR): (a) in failing to render and report plaintiff's grades; (b) in failing to evaluate and report practicum evaluations of clinical rotation done under you by plaintiff; (c) in failing to timely graduate plaintiff from OMRP; (d) in failing to promote plaintiff to Chief OMR position; (e) in failing to provide plaintiff with access codes to computers; (h) in failing to provide plaintiff with dictating micro-cassette recorder to perform his job.
ANSWER:

29. Regarding plaintiff's April 2000 4-week Environmental Medicine/Border Health Elective (EMBHE) offered in Laredo by the South Texas Environmental Educational and Research (STEER) Center and Department of Family Practice (DFP) of UTHSCSA, admit: you were aware (a) that Donovan recommended the EMBHE to plaintiff; (b) UTHSCSA prematurely terminated plaintiff's EMBHE; (c) UC or Donovan did not receive from UTHSCSA written justification for the premature termination of the EMBHE; (d) UC or Donovan failed to seek from UTHSCSA written justification for the premature termination of the EMBHE; (e) UC or Donovan failed to investigate the circumstances surrounding the UTHSCSA treatment of plaintiff; (f) Donovan did receive plaintiff's 4/19/00 email partially complaining of UTHSCSA treatment of plaintiff and you did nothing about it; (g) Donovan disciplining plaintiff lacks basis in facts and evidence of plaintiff causation of, contribution to or guilt in the premature termination of EMBHE; (h) Donovan failed to afford plaintiff due process before disciplining plaintiff.
ANSWER:

30. Admit: (a) on 07/03/2000 Division of Occupational Medicine (DOM) and Department of Environmental Health (DEH) ordered a service block against releasing official transcript of plaintiff's academic and clinical work; (b) no basis whatsoever for such service block against plaintiff; (c) plaintiff was and is not deliquent in financial or other obligations to UC or UH warranting such service block
ANSWER:

31. Admit: you were aware that (a) On 05/04/00 Donovan faxed to defendant Filak a document dated April 19, 2000 in which he stated that he singularly decided to have plaintiff to be chaperoned; (b) his decision was based on unfounded second-hand information purportedly made by an employee that a job applicant stated that plaintiff's actions were harassing; (c) an employee who purportedly gave Donovan the second information was defendant Pohl; (d) on or about 2/21/00 Donovan directed Pohl to phone and solicit from the job applicant sexually suggestive information solely to implicate plaintiff; (e) on 2/21/00 Pohl documented her solicited information improperly in the job applicant's medical chart; (f) the 2/21/00 Pohl's written note did not contain any complaint by the job applicant of plaintiff "harassing, and unwanted attempts at dating activity" with her; (g) Donovan put a spin in the Pohl's 2/21/00 note and made up the allegation of plaintiff "harassing, and unwanted attempts at dating activity" with the job applicant;
ANSWER:

32. Regarding the letter and matter in preceding admission request #31, admit: you were aware that (a) Donovan failed to give plaintiff notice, written charge and opportunity to present his side of the story; (b) Neither Donovan, nor Filak, nor UC-UH followed the UC-UH policies and procedures on harassment and mandated due process for disciplinary action against medical staff member. (c) Donovan failed to give plaintiff copy of the said 4/19/00 letter.
ANSWER:

33. Admit: (a) it is the practice, Custom and usage at the Center for Occupational Health (COH) to phone and request information, record, documents and things from patient that at are necessary to complete their clinical evaluation; to determine what need to be done for him/her; to complete report of examination of him/her; to schedule or cancel appointment; (b) such phone call to the patient does not constitute harassment or unwanted attempts at dating such patient.
ANSWER:

34. Admit: (a) documentation in patient's medical chart of alleged patient's complaint against a medical staff member is improper. (b) Donovan and Pohl's documentation of the purported and alleged job applicant's complaint in her medical chart was improper.
ANSWER:

35. Admit (a) you were aware that on 5/4/00 Donovan faxed a document dated 4/28/00 to defendant Filak informing him that he had unilaterally and singularly placed plaintiff on probation; (b) his singular disciplinary action was based upon reports of [plaintiff] behavior during the AHEC (STEER) rotation in Texas in the month of April; (c) you received no written reports of plaintiff behavior from AHEC/STEER upon which Donovan singularly and unilaterally acted; (d) if you received such report, you failed to follow the due process requirements of UC-UH, JCAHO, HCQIA, ABPM, ACGME and Ohio Revised Code 2305.24-2305.251 before imposing probation and restriction of privileges on plaintiff; (d) you were aware that Donovan failed to send plaintiff original or copy of the said 4/28/00 document
ANSWER:

36. Admit: (a) you were/are the director of the Division of Occupational Medicine (DOM) of the DEH; (b) you have duty, obligation and responsibility to oversee and supervise the faculty and staff at DOM; (c) you have duty to ensure that plaintiff graduated upon successfully completing his requirements for graduation; (c) you failed to supervise defendants Donovan and Middaugh' (d) you failed to ensure that plaintiff graduated upon successful completion of his requirements in June 2000.
ANSWER:

_____
Darlington Amadasu
Plaintiff, Pro Se


**CERTIFICATE OF SERVICE:**
I hereby certify that the foregoing was served on Justin D. Flamm by personal delivery to his receptionist and on Ramiro Canales, P.O. Box 12548, Capitol Station, Austin, TX 78711 by USPS mail to his address on 11/24/04.