UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

---

DARLINGTON AMADASU

    Plaintiff

-v-

JAMES R. DONOVAN, MD
    Defendants

Case No: C - 1- 01 - 210

Black/Dlott

PLAINTIFF'S FIRST REQUESTS FOR ADMISSION
DEFENDANT ANDREW G. FREEMAN

---

    Pursuant to FRCP 36 Plaintiff hereby serves on Defendant Andrew G. Freeman Plaintiff first set of Requests for Admission set forth below to be answered by defendant within 30 days from the date of service.

### DEFINITIONS
"Defendant" refers to Andrew G. Freeman ("Freeman").

### INSTRUCTIONS
1. Provide a response to each request separately.
2. If there is an objection to a request, state the complete specific basis for every such objection.

### REQUESTS FOR ADMISSION

1. Admit: Plaintiff was a 'practicum phase' Occupational Medicine Resident (OMR) beginning from July 1999 and expected to end June 2000
ANSWER:

2. Admit: plaintiff was not required to pay for any academic didactic courses and clinical practicum rotations during his occupational medicine residency; and was not a graduate student under the UC definition of a graduate student
ANSWER:

3. Admit: that when the only plaintiff's classmate and a third year practicum occupational medicine resident, Loren C. Tapp, MD ("Tapp") graduated in December 1999, plaintiff was the most senior and only third year practicum occupational medicine resident in the program; qualified for promotion to Chief Occupational Medicine Resident position and was similarly situated with Tapp as 3rd year practicum resident.
ANSWER:

4. Admit: that since Plaintiff satisfactorily and successfully completed all the requirements for graduation

1

from the Occupational Medicine Residency program (OMRP) at the end of June 2000, UC-UH should have graduated him at the end of June 2000 like other similarly situated residents.
ANSWER:

5. Admit: plaintiff was partially graduated from the OMRP in or about April 2001, i.e., 10 months past the expected June 30, 2000 graduation.
ANSWER:

6. Admit: UC-UH has no justification for failing to graduate plaintiff from the OMRP at the end of June 2000 and is wholly responsible for plaintiff not graduating from OMRP in June 2000.
ANSWER:

7. Admit: you were/are a member of the occupational medicine faculty of the Division of Occupational and Environmental Medicine (DOEM) of the Department of Environmental Health (DEH) and have duty, obligation and responsibility to timely render and report correct grades for the didactic courses, clinical practicum rotations and written evaluation of the clinical practicum rotation completed by plaintiff under you
ANSWER:

8. Admit: you failed to perform your duties, obligations and responsibilities in the preceding Admission Request #7 owed to plaintiff in failing to make written evaluations of General Occupational Medicine clinical practicum rotations that plaintiff had under you.
ANSWER:

9. Admit: for the purpose of graduating a resident from OMRP, objective overall evaluation of entire record of reported grades and written clinical practicum evaluations on file of the resident is conducted by all faculty members of the DOEM and not subjectively conducted by a single member of the faculty
ANSWER:

10. Admit: recommendation to graduate or to not graduate a resident is made by the majority vote of the members of the faculty who had objectively evaluated the entire record of the resident; and final decision to not graduate a resident is made by the Medical Executive Board (MEB) of the University Hospital (UH) subject to the approval of the Board of Trustees (BT) of UH
ANSWER:

11. Admit: When UC-UH and or faculty member plan to impose corrective action, e.g., reducing 's clinical privileges, demotion and probation on medical staff appointee they are obligated to follow the due process for corrective action on members of the medical staff as provided by the medical staff's bylaws, fair hearing plan, rules and regulations, policies and procedures ("Bylaws") of the University Hospital and UC Hospital Graduate Medical Education Selected Information, Policies and Procedures-1994-95; requirements of the accreditation bodies,

2

ANSWER:

12. Admit: you, the faculty and students are bound by University of Cincinnati Dept. of Environmental Health Graduate Student Guidelines Handbook for Master of Science and Doctor of Philosophy Degree Students for Fall 1999 & Fall 2000 ("UC-DEH Graduate Handbook").
ANSWER:

13. Admit the only rules and regulations, policies and procedures, guidelines and criteria ("Graduate Policy") that you must follow regarding audit courses, audit course grades and audit course grading practices are those published in University of Cincinnati Dept. of Environmental Health Graduate Student Guidelines Handbook for Master of Science and Doctor of Philosophy Degree Students for Fall 1999 & Fall 2000 ("UC-DEH Graduate Handbook").
ANSWER:

14. Admit: you absolutely failed to render written evaluations of the Occupational Medicine clinical practicum rotations that plaintiff took under you from July 1999 to June 2000
ANSWER:

15. Admit: you ignored many months of all relentless efforts of plaintiff to make you make written evaluations of plaintiff's clinical practicum rotations under you.
ANSWER:

16. Admit: you rendered written evaluations of clinical practicum rotations and rendered correct grades for similarly situated residents from non-protected class that worked under you.
ANSWER:

17. Admit: UC-UH rules and regulations and policies and procedures, and American Board of Preventive Medicine (ABPM) mandated you to immediately at the end of rotation render written evaluations for clinical practicum rotations that plaintiff and other residents did under you
ANSWER:

18. Admit: you were/are aware that UC-UH adopted and agreed to be bound by the accreditation standards or requirements of the Joint Commission on Accreditation of Healthcare Organization (JCAHO); Accreditation Council for Graduate Medical Education (ACGME); American Board of Preventive Medicine (ABPM); federal Health Care Quality Improvement Act, Title IV, 42 U.S.C. 111101 et seq. (HCQIA); plaintiff was entitled to the protection, privileges, immunities and due process under the requirements; and you are bound by them.
ANSWER:

19. Admit: UC Department of Environmental Health (DEH) is one of the 14 or so Nation's federal Educational Resource Centers and DEH regularly and annually receives Educational Resource Center (ERC)

3

Training Grants from funding federal agencies, e.g., National Institute of Occupational Safety and Health (NIOSH) for conducting education and training in Occupational Safety and Health disciplines, such as Occupational Medicine Physicians, and Industrial Hygienists.
ANSWER:


20. Admit: that plaintiff was an intended beneficiaries of the ERC Training Grants from the federal funding agencies.
ANSWER:


21. Admit: UC-UH letter dated January 25, 1999 employing plaintiff for Occupational Medicine Resident (OMR) position, a copy of which plaintiff has provided to you and identified as [Pl.001] is genuine and the salary of $29,000 per year paid to plaintiff was below the salary paid to similarly situated practicum (3rd year) OMR in the 13 other Educational Resource Centers (ERCs) funded by federal government, and below the salary paid to 3rd year residents in other specialties at UC.
ANSWER:


22. Admit: all academic classes and all clinical practicum rotations registered for and undertook by plaintiff from summer July 1999 to spring June 2000 were fully and completely remitted as per your 01/25/99 employment letter [Pl.001] and Student Account Statement (SAS) dated 12/28/2000 [Pl.002];
ANSWER:


23. Admit: plaintiff's last and final registration for academic classes and clinical practicum rotations took place in the spring quarter 2000 academic year and plaintiff did not register for or undertook any classes or clinical rotations after spring quarter 2000 to the present.
ANSWER:


24. Admit: the SAS dated from 01/26/2001 in Winter Quarter 2000-01 through 10/04/2002 in Autumn Quarter 2002-03, which plaintiff produced to you and identified as [Pl.003-4; Pl.007-9, and Pl.022] are false and the $4513 debt and your debt collections letters, *inter alia*, dated 07/16/02, 09/30/02 and 10/28/02 [Pl.005-6] are false and unwarranted
ANSWER:


25. Admit: plaintiff did not owe the whole or any portion of the debt of **$4513.00** the basis of which UC placed Service Blocks against issuance of plaintiff's Transcript of academic and clinical works and Validation of Attendance from 04/06/01 to the present, and the Service Blocks against plaintiff's Transcript, Grades and Validation of Attendance that prevented and still preventing the printing, distribution and issuance of official Transcripts of Grades, Clinical Rotations and official Validation of Attendance to plaintiff and or to his prospective employers were and are unjustified; and you cannot provide to plaintiff the "verification of the debt of $4513.00.
ANSWER:

4

26. Admit plaintiff was entitled to 4-weeks vacation with pay during his employment; 4-weeks pay in lieu of his 4-weeks vacation; clinical conference funding; and other benefits that customarily attach to UC-UH employees and medical residents; but these promises were not fulfilled by UC-UH.
ANSWER:

27. Admit that: Robert M. Gabel, MD (Gabel), Audry G. Rhodes, MD (Rhodes), John A. Dahlsten, MD (Dahlsten) and Loren C. Tapp, MD (Tapp) were Caucasians, similarly situated Occupational Medicine Residents (OMR) as the plaintiff; their grades for taken courses and evaluations of their clinical practicum rotations were rendered and reported timely without delay; took vacations with pay; had clinical conferences attendance funded; had all their full benefits; graduated timely from the occupational medicine residency program; had no service block against releasing their grades and official transcripts because of the debt that they did not owe
ANSWER:

28. Admit: that Robert M. Gabel, MD (Gabel) was in the $2^{rd}$ year academic phase, while plaintiff was in the 3rd year clinical practicum phase of the Occupational Medicine Residency Program (OMRP); Gabel was a junior OMR to plaintiff; Gabel was promoted over plaintiff to Chief OMR position; Gabel was not qualified to be the Chief OMR
ANSWER:

29. Admit that you treated plaintiff differently than similarly situated Occupational Medicine Residents (OMR): in failing to render and report plaintiff's grades; in failing to evaluate and report practicum evaluations of clinical rotation done under you by plaintiff; in failing to timely graduate plaintiff from OMRP; in failing to promote plaintiff to Chief OMR position; in failing to provide plaintiff with access codes to computers; and in failing to provide plaintiff with dictating micro-cassette recorder to perform his job.
ANSWER:

30. Regarding plaintiff's April 2000 4-week Environmental Medicine/Border Health Elective (EMBHE) offered in Laredo by the South Texas Environmental Educational and Research (STEER) Center and Department of Family Practice (DFP) of UTHSCSA, admit: (a) UTHSCSA prematurely terminated plaintiff's EMBHE; (b) you did not receive from UTHSCSA written justification for the premature termination of the EMBHE; (c) you failed to seek from UTHSCSA written justification for the premature termination of the EMBHE; (d) you failed to investigate the circumstances surrounding the UTHSCSA treatment of plaintiff; (f) you did receive plaintiff's 4/19/00 email partially complaining of UTHSCSA treatment of plaintiff and you did

5

nothing about it; (g) placing plaintiff on probation by Donovan lacked basis in facts and evidence of plaintiff' causation of, contribution to or guilt in the premature termination of EMBHE.
ANSWER:

31. Admit: on 07/03/2000 Division of Occupational Medicine (DOM) and Department of Environmental Health (DEH) ordered a service block against releasing official transcript of plaintiff's academic and clinical work; and no basis whatsoever for such service block against plaintiff; because plaintiff was and is not delinquent in financial or other obligations to UC or UH warranting such service block
ANSWER:

32. Admit: it was outside the scope of employment and job descriptions of Donovan to have phoned, solicited, encouraged and persuaded a Center for Occupational Health patient to file false complaint against plaintiff on 3/22/00 with the State Medical Board of Ohio.
ANSWER:

..................................................
Darlington Amadasu
Plaintiff, Pro se

**CERTIFICATE OF SERVICE:**
I hereby certify that the foregoing was served on Justin D. Flamm by personal delivery to his receptionist and on Ramiro Canales, P.O. Box 12548, Capitol Station, Austin, TX 78711 by USPS mail to his address on 11/29/04.

6