UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

---

DARLINGTON AMADASU                    Case No: C - 1- 01 - 210

    Plaintiff                            Black/Dlott

-V-

JAMES R. DONOVAN, MD                  PLAINTIFF'S FIRST REQUESTS FOR ADMISSION
    Defendants                         DEFENDANT ANDREW T. FILAK

---

    Pursuant to FRCP 36 Plaintiff hereby serves on Defendant Andrew T. Filak Plaintiff first set of Requests for Admission set forth below to be answered by defendant within 30 days from the date of service.

## DEFINITIONS

"Defendant" refers to Andrew T. Filak ("Filak").

## INSTRUCTIONS

1. Provide a response to each request separately.
2. If there is an objection to a request, state the complete specific basis for every such objection.

## REQUESTS FOR ADMISSION

1.    Admit: Plaintiff was a 'practicum phase' Occupational Medicine Resident (OMR) beginning from July 1999 and expected to end June 2000; a bona fide member of the medical staff of the University Hospital; did not have to pay for any academic didactic courses and clinical practicum rotations during his occupational medicine residency; and was not a graduate student under the UC definition of a graduate student
    ANSWER:

2.    Admit: University Hospital (UH) Department of Environmental Health (DEH) is one of the 14 or so Nation's federal Educational Resource Centers and receives Educational Resource Center (ERC) Training Grants from funding federal agencies, e.g., Center for Diseases Control/National Institute of Occupational Safety and Health (CDC/NIOSH) for employment, education and training of OMR to be Occupational Medicine Physicians (OMP).
    ANSWER:

3.    Admit: plaintiff was one of the intended beneficiaries of the Occupational Medicine Residency Program (OMRP), Family Practice Residency Program (FPRP), and ERC Training Grants from the federal funding agencies

ANSWER:

4. Admit: plaintiff was qualified for appointment into second year resident position in your UC-UH Family Practice Residency Training Program (FPRP) that was open in or about May 2000;
ANSWER:

5. Admit: that when the only plaintiff's classmate and a third year practicum occupational medicine resident, Loren C. Tapp, MD ("Tapp") graduated in December 1999, plaintiff was the most senior and only third year practicum occupational medicine resident in the program; qualified for promotion to Chief Occupational Medicine Resident position and was similarly situated with Tapp as 3rd year practicum resident.
ANSWER:

6. Admit: that since Plaintiff satisfactorily and successfully completed all the requirements for graduation from the Occupational Medicine Residency program (OMRP) at the end of June 2000, was expected to graduate at the end of June 2000, but UH failed to graduate him from the program at the end of June 2000; and however, plaintiff was partially graduated from the OMRP in or about April 2001, i.e., 10 months past the expected June 30, 2000 graduation.
ANSWER:

7. Admit: UH has no justification for failing to graduate plaintiff from the OMRP at the end of June 2000 and is wholly responsible for plaintiff not graduating from OMRP in June 2000.
ANSWER:

8. Admit: occupational medicine faculty of the Division of Occupational and Environmental Medicine (DOEM) of the Department of Environmental Health (DEH) have duty, obligation and responsibility to timely render and report grades for the didactic courses, clinical practicum rotations and written evaluation of the clinical practicum rotation completed by plaintiff under them
ANSWER:

9. Admit: the DOEM faculty, particularly, defendants Donovan, Middaugh, Freeman and Lockey failed to perform their duties, obligations and responsibilities in the preceding Admission Request #8 owed to plaintiff in failing to wholly or partially render grades, make written evaluations of clinical practicum rotations, report grades from about July 1999 to until about January 2001, and objectively conduct overall evaluation of plaintiff's entire record for the purpose of graduating plaintiff from the OMRP in June 2000.
ANSWER:

10. Admit: for the purpose of graduating a resident from OMRP, objective overall evaluation of entire record of reported grades and written clinical practicum evaluations on file of the resident is conducted by all faculty members of the DOEM and not subjectively conducted by a single member of the faculty
ANSWER:


11. Admit: recommendation to graduate or to not graduate a resident is made by the majority vote of the members of the faculty who had objectively evaluated the entire record of the resident; and final decision to not graduate a resident is made by the Medical Executive Board (MEB) of the University Hospital (UH) subject to the approval of the Board of Trustees (BT) of UH
ANSWER:


12. Admit: plaintiff did not sexually harass any female at UC-UH, and UC-UH have no record of written complaint from any female at UC of sexual harassment by plaintiff; no investigative written report of any sexual harassment that plaintiff had engaged in while at UC and no evidence or proof that plaintiff sexually harassed any female at UC-UH.
ANSWER:


13. Admit: When UC-UH through and by defendant Donovan were disciplining plaintiff in or about March or April 2000 by reducing plaintiff's clinical privileges, demoting and placing him on probation they were obligated to follow the due process for disciplining members of the medical staff as provided by the medical staff's bylaws, fair hearing plan, rules and regulations, policies and procedures ("Bylaws") of the University Hospital and UC Hospital Graduate Medical Education Selected Information, Policies and Procedures-1994-95; requirements of the accreditation bodies.
ANSWER:


14. Admit: UC-UH letter dated January 25, 1999 employing plaintiff for Occupational Medicine Resident (OMR) position, a copy of which plaintiff has provided to you and identified as [Pl.001] is genuine, the therein salary of $29,000 per year paid to plaintiff was below the salary paid to similarly situated practicum (3rd year) OMR in the 13 other Educational Resource Centers (ERCs) funded by federal government, and below the salary promised him and paid to 3rd year residents in other specialties at UC.
ANSWER:

15. Admit: all didactic classes and all clinical practicum rotations registered for and undertook by plaintiff during his residency were fully and completely remitted as per UC-UH 01/25/99 employment letter [Pl.001] and Student Account Statement (SAS) dated 12/28/2000 [Pl.002].
ANSWER:

16. Admit: plaintiff's last and final registration for didactic classes and clinical practicum rotations took place in the Spring quarter 2000 academic year and plaintiff did not register for or undertook any classes or clinical rotations after Spring quarter 2000 to the present.
ANSWER:

17. Admit: all the SAS dated from 01/26/2001 in Winter Quarter 2000-01 through 10/04/2002 in Autumn Quarter 2002-03, which plaintiff produced to you and identified as [Pl.003-4; Pl.007-9, and Pl.022] are false and the debt collections letters, *inter alia*, dated 07/16/02, 09/30/02 and 10/28/02 [Pl.005-6] are false and unwarranted
ANSWER:

18. Admit plaintiff did not owe the whole or any portion of the debt of $4513.0 and UC-UH placed Service Blocks against issuance of plaintiff's official transcript of academic and clinical works and Validation of Attendance from 04/06/01 to the present on the basis of the debt of $4513.00;
ANSWER:

19. Admit: UC-UH Service Blocks against plaintiff's official Transcript, Grades and Validation of Attendance prevented and still preventing the printing, distribution and issuance of official Transcripts of Grades, Clinical Practicum Rotations and official Validation of Attendance to plaintiff and to his prospective employers were and are unjustified; and UC-UH have no "verification of the debt of $4513.00.
ANSWER:

20. Admit: in or about December 1999 plaintiff personally and in a letter dated December 20, 1999 complained about discrimination and sexual harassment by faculty and staff of DOEM and DEH to you.
ANSWER:

21. Admit: UC-UH failed to conduct investigation, and take action on plaintiff's discrimination and sexual harassment complaint in preceding admission request #20 as mandated their bylaws, rules and regulations, policies and procedures governing
ANSWER:

22. Admit: as condition precedent for receiving federal assistance or funds UC-UH gave assurances to federal funding agencies that it would not discriminate against, exclude from participation in or prevent qualified intended beneficiaries of such federal assistance or funds from deriving the benefits, immunities and privileges of your programs and activities and plaintiff was one of such intended beneficiaries.
ANSWER:

23. Admit: as condition precedent for accreditation of University Hospital (UH) to provide health care services to the public, UC-UH adopted and agreed to be bound by the accreditation standards of the Joint Commission on Accreditation of Healthcare Organization (JCAHO); plaintiff was entitled to the protection, privileges, immunities and due process under the JCAHO requirements; and UC-UH failed to afford plaintiff the JCAHO mandated due process
ANSWER:

24. Admit that as condition precedent for accreditation of UC-University Hospital (UH) as a teaching hospital for postgraduate medical education and training of medical students, medical graduates, and residents, UC-UH adopted and agreed to be bound by the accreditation requirements of Accreditation Council for Graduate Medical Education (ACGME), plaintiff as an intended beneficiary was entitled to the protections, privileges, immunities and due process under the ACGME requirements; (c) UC-UH failed to afford plaintiff the ACGME mandated due process
ANSWER:

25. Admit that as condition precedent for accreditation of UC-University Hospital (UH) for sponsoring Occupational Medicine Residency Training Program, UC-UH adopted and agreed to be bound by the accreditation requirements of American Board of Preventive Medicine (ABPM); plaintiff as an intended beneficiary was entitled to the protections, privileges, immunities and due process under the ABPM requirements; but UC-UH failed to afford plaintiff the ABPM mandated due process
ANSWER:

26. Admit: UC-UH read, understood, adopted and are bound by the federal Health Care Quality Improvement Act, Title IV, 42 U.S.C. 111101 et seq. (HCQIA) and plaintiff as a bona fide member of the UC-UH medical staff was entitled to all the protections, immunities, privileges and due process under the HCQIA; and UC-UH failed to comply with the HCQIA provisions when disciplinary action against plaintiff was taken

thereby failed to afford plaintiff the HCQIA mandated due process
ANSWER:

27. Admit that Donovan's publication to you that plaintiff harassed and attempted to date a female job applicant who visited the Center for Occupational Health was false
ANSWER:

28. Admit: UC-UH: failed to afford plaintiff most of the benefits, inter alia, 4-weeks vacation with pay or 4-weeks pay in lieu of his 4-weeks vacation; clinical conference funding, and other benefits that customarily attach to UC-UH employees-medical residents.
ANSWER:

29. Admit that UC-UH treated plaintiff differently than similarly situated Occupational Medicine Residents (OMR) in rendering and reporting grades, evaluation of clinical practicum rotation, putting service block against grades and transcripts; in timely graduation from OMRP; in affording benefits; in promotion to Chief OMR position; in provision of access codes to computers; in provision of dictating micro-cassette recorder, inter alia.
ANSWER:

30. Admit: on 05/04/00 defendant Donovan faxed to you a document dated April 19, 2000 in which he informed you that he singularly and unilaterally decided to have plaintiff to be chaperoned and he failed to provide you with credible facts and evidence to support his action.
ANSWER:

31. Admit: on 5/4/00 defendant Donovan faxed to you a document dated 4/28/00 informing you that he had unilaterally and singularly placed plaintiff on probation and he failed to provide you with credible facts and evidence to support his action
ANSWER:

32. Regarding the letters and matters in preceding admission requests #30 & 31, admit: Neither Donovan, nor you, nor UC-UH either gave plaintiff copies of the letters, notice, written charges and opportunity to present his side of the story; or followed the HCQIA provisos, UC-UH medical staff bylaws, hearing plan, rules & regulations, policies and procedures on harassment and mandated due process for disciplinary action against medical staff member.
ANSWER:

33. Admit: you received no written factual documentation, or investigative reports, or hearing report of plaintiff's impropriety that afforded plaintiff due process from Donovan upon which Donovan singularly and unilaterally acted against plaintiff
ANSWER:

34. Admit: Donovan's singular and unilateral actions were inconsistent with due process requirements of JCAHO, HCQIA, ABPM, ACGME, Ohio Revised Code 2305.24-2305.251, and of UC-UH medical staff bylaws, fair hearing plan, rules and regulations, policies and procedures before imposing probation and restriction of privileges on plaintiff;
ANSWER:

35. Admit: you have duty, obligation and responsibility to investigate the letters dated 4/19/00, 4/28/00 to you, and the circumstances surrounding Donovan's singularly and unilaterally imposing punishments on plaintiff without following the UC-UH medical staff bylaws, rules, regulations, policies, procedures & HCQIA.
ANSWER:

36. Admit you were/are UC-UH associate chief of staff for graduate medical education and training, have duty, obligation and responsibility for overseeing, supervision and correcting of DOEM faculty and ensuring the timely graduation of residents or fellows, e.g., plaintiff, who had successfully and satisfactorily completed the requirements for graduation from the residency program in June 2000 but was partially graduated in April 2001
ANSWER:

37. Admit: you failed to perform your duty, obligation and responsibility in the preceding admission request #35 relative to plaintiff's case
ANSWER:

Darlington Amadasu
Plaintiff, Pro se

**CERTIFICATE OF SERVICE:**
I hereby certify that the foregoing was served on Justin D. Flamm by personal delivery to his receptionist and on Ramiro Canales, P.O. Box 12548, Capitol Station, Austin, TX 78711 by USPS mail to his address on 11/29/04.