UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

DARLINGTON AMADASU
    Plaintiff

Case No: C - 1- 01 - 210

Black/Dlott

-V-

**PLAINTIFF'S FIRST SET OF INTERROGATORIES
TO UNIVERSITY OF CINCINNATI**

JAMES R. DONOVAN, MD, et al
    Defendants

Plaintiff hereby requests that Defendant University of Cincinnati answer separately and under oath, within thirty (30) days after service, strictly in accordance with Rules 33 of the Federal Rules of Civil Procedure each of the following interrogatories.

## INSTRUCTIONS FOR ANSWERING INTERROGATORIES

1. All information in your possession or control is to be divulged
2. Where an interrogatory calls for an answer in more than one part it should be separated so that the answer is clearly understandable.
3. You are reminded that all answers must be made separately and fully, and that an incomplete or evasive answer is a failure to answer pursuant to Rule 37. The university, the hospital and or their departments must strictly comply with FRCP 33, specifically Rule 33 (A)
4. You are under a continuing duty to seasonably supplement your responses with respect to any questions directly addressed to the identity and location of persons having knowledge of discoverable matter, the identity of any person expected to be called as an expert witness at trial, and subject matter on which the expert is expected to testify and, pursuant to FRCP 26 (E), you must correct any responses which you know, or later learn, in incorrect.
5. Space for your answers has been provided beneath each interrogatory if there is not sufficient space to complete your answer, you may complete it in sequence on a separate appendix to the answers and identified appropriately.
6. A question that seeks information contained in, or information about, or identification of any documents, including medical records, may be answered by a copy of such document for inspection and copying or by furnishing a copy of such document without a request for production.
7. In answering these interrogatories it is your duty to conduct a reasonable investigation and to furnish all information, however obtained, including hearsay, that is available to you and information known by or in possession of yourself, your agents and your attorneys, or appearing in your records.
8. If you cannot answer the following interrogatories in full after exercising due diligence to secure the full information to do so, state an answer to the extent possible, specifying your inability to answer the remainder, stating whatever information or knowledge you have concerning the unanswered portion and detailing what you did in attempting to secure the unknown information.
9. **Interrogatory** must be signed under oath by the University appointed representative, servant and or employee acting for and on its behalf and who will eventually testify to them at trial, and must be notarized

**[NB: Relevant period refers to 1999-2000, unless otherwise specified in the interrogatory]**
INTERROGATORY NO. 1: Identify the individual by name, age, social security number, address, job title, position hold in, and relationship to Defendant, who participated in or prepared the answers to these interrogatories, other than in a clerical capacity. If more than one person was involved in preparing the answers

1

to these Interrogatories, describe for each such individual the information, which that person provided in preparing the answers.
ANSWER:

INTERROGATORY NO. 2: Prior to answering these Interrogatories, have you made due and diligent search of your books, records, database, archives, and papers and due and diligent inquiry of your servants and employees
ANSWER:

INTERROGATORY NO. 3: Did Plaintiff possess the qualifications for acceptance into second year Family Practice Resident position during the relevant period (1999-2000)? If your answer is "no", state in detail and with particularity and specificity the qualifications that plaintiff did not possess
ANSWER:

INTERROGATORY NO 4: Did you have written rules, regulations, policies, procedures, guidelines, and criteria, to be followed in advertisement, recruiting, selecting, interviewing, and rejecting or hiring second year Family Practice Resident position during the relevant period? If your answer is "yes" identify and attached a copy to your response: or if your answer is "no" provide in detail a statement specifically why you did not have them written.
ANSWER:

INTERROGATORY NO 5: Please state all methods and means used by you to ensure compliance with your bylaws, rules, regulations, policies and procedures in Interrogatory # 4, if you had them.
ANSWER:

INTERROGATORY NO 6: Please state the total number of persons who applied for the second year Family Practice Resident position at Dept. of Family Medicine (DFM) in 1999-2000 and specify the proportion of that total who were:
ANSWER:                                      proportions:
Male
Female
Caucasian

2

Caucasian male
Caucasian female
Black
Black male
Black female
Nigeria origin
Under 40
Over 40
Hispanic-surnamed Americans
Hispanic-surnamed males
Hispanic-surnamed females
Other minority (Asian, Native American, etc.
Disabled or handicapped

INTERROGATORY NO 7: Did Plaintiff possess the qualifications for appointment as Adjunct Faculty in Health Promotions position at Allied Health Department of Raymond Walters College during the relevant period (1999-2000)? If your answer is "no", state in detail and with particularity and specificity the qualifications that plaintiff did not possess.
ANSWER:

INTERROGATORY NO 8: Please state the total number of persons who applied for the position in the preceding Interrogatory # 7 in 1999-2000 and specify the proportion of that total who were:
ANSWER:                                                      proportions:
Male
Female
Caucasian
Caucasian male
Caucasian female
Black
Black male
Black female
Nigeria origin
Under 40
Over 40
Hispanic-surnamed Americans
Hispanic-surnamed males
Hispanic-surnamed females
Other minority (Asian, Native American, etc.
Disabled or handicapped

INTERROGATORY NO 9: Please describe the criteria, process and methods used for selection and hiring for faculty positions in general at UC and specifically for adjunct faculty in Health Promotions positions, and state whether or not such criteria, policies and criteria were followed while denying plaintiff the position. Identify documents for production
ANSWER:

3

INTERROGATORY NO 10: Please state the total number of persons who had been appointed Residents in your Occupational Medicine Residency Program each year from 1998 to date; and for each year, please specify the number of persons of the total who were/are:

ANSWER:                                                        NUMBER:
Male
Female
Caucasian
Caucasian males
Caucasian females
Black
Black males
Black females
Under 40
Over 40
Nigeria Origin
Spanish-surnamed Americans
Spanish-surnamed American males
Spanish-surnamed American females
Other minorities (Oriental, Native American, etc)
Other male minorities
Other female minorities


INTERROGATORY NO 11: Identify each individual by name, address, job title, age, race, gender, national origin, ethnicity, and telephone number who you believe has knowledge of the facts and circumstances surrounding, and who plays any role whatsoever in the decision to deny plaintiff Chief Occupational Medicine Resident, second year Family Practice Resident and Adjunct faculty in Health Promotions positions; and identify the compliance or the oversight official or member of the compliance and/or oversight committee, and the reason for the denial of the positions.
ANSWER:




INTERROGATORY NO 12: Did Plaintiff possess the qualifications for appointment or promotion as Chief Occupational Medicine Resident (COMR) at the Division of Occupational & Environmental Medicine (DOEM) during the relevant period (1999-2000)? If your answer is "no", state in detail and with particularity and specificity the qualifications that plaintiff did not possess.
ANSWER:




INTERROGATORY NO 13: Did you have written documents of criteria, process and methods used for selection and hiring or promotion of resident for the Chief Resident position in general at UC-UH and

4

specifically Chief Occupational Medicine Resident at DOEM? If "yes" describe and state whether or not such criteria, policies and criteria were followed while denying plaintiff the position; and identify such documents for production
ANSWER:

INTERROGATORY NO 14: Did plaintiff complete all the requirements for graduation from Occupational Medicine Residency Program (OMRP) in June 2000? If "no" state with specificity and particularity the bases in facts, documentary evidence and the rules, regulations, policies and procedures of what, when, how and why he did not complete the requirements and identify your corroborating policies documents for production.
ANSWER:

INTERROGATORY NO 15: Did you deny that Donovan, Freeman, Lockey and Middaugh who were/are faculty of the Division of Occupational and Environmental Medicine (DOEM) of the Department of Environmental Health (DEH) have duty, obligation and responsibility to timely: render grades for the didactic courses taken by plaintiff under them; render grades for the clinical practicum rotations completed by plaintiff under them; rendered written evaluation of the clinical practicum rotation completed by plaintiff under them; report the rendered grades to UC Office of the Registrar or Office of Student Records; give plaintiff copy of the written evaluation of the clinical practicum rotation immediately upon completion by plaintiff; and submit the original copy of the written evaluation of the clinical practicum rotation completed by plaintiff to the administrative assistant of DOEM for filing in personnel file of plaintiff kept at the DOEM and DEH? If "Yes" state with specificity and particularity the bases in facts, documentary evidence and the rules, regulations, policies and procedures for your denial
ANSWER:

INTERROGATORY NO 16: Did plaintiff sexually harass women at UC? If "yes" state with specificity and particularity the bases in facts, and documentary evidence; whether you have in your record alleged victim's written and signed complaint of sexual harassment against plaintiff; findings and conclusions of culpability of plaintiff based on your investigations and hearing in accordance with your policies and procedures on sexual harassment complaints. Identify evidentiary documents for production
ANSWER:

5

INTERROGATORY NO 17: Did/do you have written medical staff bylaws, fair hearing plan, rules and regulations, policies and procedures (collectively "Med-Staff bylaws") that you must follow when you contemplate corrective action against medical staff member? If "yes" Please describe all the due processes, methods, means and criteria for corrective action and state whether they were followed when Donovan imposed corrective action upon the plaintiff. Identify your Med-Staff bylaws documents for production
ANSWER:

INTERROGATORY NO 18: Please identify by name, address, sex, age, race, ethnicity, national origin, telephone number, employment history with the defendant, including job titles, position and dates, and qualifications; as to each individual who has been responsible for or who played any role whatsoever in fixing plaintiff's salary of $29,000.00 per year and state the specific computational methods, means, rules, regulations, guidelines, procedures and criteria that were followed in fixing the salary.
ANSWER:

INTERROGATORY NO 19: Did plaintiff owe you a debt of $4513.00 and did you because of this debt place Service Block against plaintiff's official transcript and engaged in debt collection activities against him? If "yes" describe when, how and for what the debt was incurred. Identify documentary validation of the debt for production
ANSWER:

INTERROGATORY NO 20: Did you read, understand, adopt, and agree to adhere to the accreditation requirements and standards of Joint Commission on Accreditation of Healthcare Organization (JCAHO), Accreditation Council for Graduate Medical Education (ACGME), and American Board of Preventive Medicine (ABPM), which collectively secured to plaintiff protection, rights, immunities, privileges and due process? If "yes" state with specificity and particularity the factual bases of whether you afforded plaintiff the due process secured to him under the standards when you imposed corrective action upon him.
ANSWER:

6

INTERROGATORY NO 21: Did you deny that Robert M. Gabel, MD (Gabel), Audry G. Rhodes, MD (Rhodes), John A. Dahlsten, MD (Dahlsten) and Loren C. Tapp, MD (Tapp) were non-members of the protected group; were similarly situated Occupational Medicine Residents (OMR) as the plaintiff; their grades for taken courses and clinical practicum rotations were rendered and reported timely without delay; timely written evaluations of their clinical practicum rotations completed; had all their full benefits such as vacations with pay, paid-for clinical conferences; graduated timely from the occupational medicine residency program upon completion of requirements; had no service block against releasing their grades and official transcripts; had no fabricated debts and debts collections activities against them for the debt that they did not owe? If "yes" state with specificity and particularity your bases in facts and evidentiary documents.
ANSWER:

INTERROGATORY NO 22: Do you disagree that you treated Plaintiff disparately than similarly situated Occupational Medicine Residents (OMR), namely, Robert M. Gabel, MD (Gabel), Audry G. Rhodes, MD (Rhodes), John A. Dahlsten, MD (Dahlsten) and Loren C. Tapp, MD (Tapp), in not rendering and reporting his grades for didactic and clinical courses; in not writing evaluation of clinical practicum rotations; in placing service block against his grades and transcripts; in not graduating him from the program in June 2000 but partially graduating in April 2001; in denying him vacation or pay in lieu of vacation, clinical conference funds; in denying promotion to chief OMR position; in provision of access codes to computers; in provision of dictating micro-cassette recorder; in fabricating debts and engaging in debt collection activities against him? If "yes" state with specificity and particularity your bases in facts and evidentiary documents.
ANSWER:

INTERROGATORY NO 23: Was it consistent with your bylaws, rules, regulations, policies and procedures and within the scope of the duties and job specifications of Donovan to have phoned, solicited and instigate on 3/22/00 a female patient who visited Center for Occupational Health to file complaint with the State Medical Board of Ohio against plaintiff without written and signed complaint filed with the appropriate UC offices? If "yes" state with specificity and particularity the bases in facts and your enabling written policies and procedures.
ANSWER:

INTERROGATORY NO 24: From 1994 to date, has the University ever been named as a defendant in any court action for violations of Title VII of the Civil Rights Act of 1964,as amended, the ADA, ADEA, Equal Pay Act or any state Anti-discrimination Law/Fair employment/training practices law? If your answer is "yes", please state for each such action: the date and place the action was filed; the name and address of the plaintiff parties to the action; the filing Title, Case Number; nature of the action and final disposition of the action:
ANSWER:




INTERROGATORY NO 25: Did you admit that you failed to comply with the requirements of federal Health Care Quality Improvement Act (HCQIA), Title IV, 42 U.S.C. 111101 et seq. and Ohio Quality Assessment, Utilization Review, and Professional Review statutes, RC 2305.24-2305.251 that entitled plaintiff to all the protections, immunities, privileges and due process under the HCQIA when you took disciplinary action against plaintiff? If "no" state with specificity and particularity the bases in facts and provisos of the HCQIA as to the factual bases of whether you afforded plaintiff the due process secured to him under the standards when you imposed corrective action upon him.
ANSWER:



..................................
Darlington Amadasu, Plaintiff


**CERTIFICATE OF SERVICE**
I certify that copy of the foregoing was served on Justin D Flamm by delivery to receptionist and on Ramiro Canales by fax on 12/01/04