UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| DARLINGTON AMADASU, | : | Case No. C-1-01-210 |
| | : | |
| Plaintiff, | : | Judge Dlott |
| | : | |
| v. | : | Magistrate Judge Black |
| | : | |
| JAMES R. DONOVAN, M.D., et al. | : | **OHIO DEFENDANTS' MOTION** |
| | : | **FOR SUMMARY JUDGMENT** |
| Defendants. | : | |
| | : | |

Pursuant to Fed. R. Civ. P. 56, Defendants the University of Cincinnati, James R.

Donovan, James Lockey, Andrew Freeman, Deborah Ann Middaugh, Dora Jefferson Gaynor,

Ralph Charles Buncher, Judy Jarrell, Tracy Herrmann, and Andrew Filak (collectively the "Ohio

Defendants") move for summary judgment on Plaintiff's Title VI, 42 U.S.C. § 2000d *et seq.* and

Title VII, 42 U.S.C. § 2000e *et seq.* claims.  Defendants UC and Donovan also move for summary

judgment on Plaintiff's remaining claims against them.  There are no genuine issues of material

fact, and the Ohio Defendants are entitled to judgment as a matter of law.  A memorandum in

support of the motion, and the declarations of James Donovan, Mitchell D. McCrate, and Tracy

Herrmann are attached.

Respectfully submitted,

By:  /s/ Justin D. Flamm
      Gregory Parker Rogers (0042323)
      Justin D. Flamm (0071575)
      Taft, Stettinius & Hollister, LLP
      425 Walnut Street, Suite 1800
      Cincinnati, Ohio 45202-3957
      (513) 381-2838
      (513) 381-0205 (fax)

OF COUNSEL:

Mitchell D. McCrate (0047403)          Special Counsel for the Attorney
Associate General Counsel              General of Ohio
University of Cincinnati
Office of the General Counsel
300 Administrative Building            Trial Attorneys for the Ohio Defendants
Cincinnati, Ohio 45221-0623
(513) 556-3483

{W0403809.8}

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| DARLINGTON AMADASU, | : | Case No. C-1-01-210 |
| | : | |
| Plaintiff, | : | Judge Dlott |
| | : | |
| v. | : | Magistrate Judge Black |
| | : | |
| JAMES R. DONOVAN, M.D., et al. | : | **OHIO DEFENDANTS'** |
| | : | **MEMORANDUM IN SUPPORT OF** |
| Defendants. | : | **THEIR MOTION FOR SUMMARY** |
| | : | **JUDGMENT**_____ |

## I.  INTRODUCTION

Plaintiff Darlington Amadasu ("Amadasu") filed a Complaint on April 11, 2001 ("Original Complaint") against the University of Cincinnati ("UC"), UC employee James R. Donovan ("Donovan"), the University of Texas ("UT"), and UT employees, Claudia S. Miller and Roger B. Perales, alleging fifteen state and federal claims.  (Doc. 2)  In November 2001 Amadasu moved to join twenty-seven additional claims and the following eight individuals: James Lockey, Andrew Freeman, Deborah Ann Middaugh, Muriel Pohl, Dora Jefferson-Gaynor, Ralph Charles Buncher, Judy Jarrell, Tracy Herrmann, and Andrew T. Filak (collectively "Additional Defendants"); seven were employed by UC at the relevant time.[1]  (Doc. 26)

The original 15 claims from Amadasu's original Complaint remain.  (Doc. 51, Counts 1-15)  The Additional Defendants were joined only in their official capacities and only as to Amadasu's Title VI, 42 U.S.C. § 2000d *et seq.* and Title VII, 42 U.S.C. § 2000e *et seq.* claims. (Doc. 50).  Counts 19-25 and 27-35 of the proposed Amended Complaint were not allowed.  (*Id.*) This Court limited discovery to only Amadasu's Title VI and Title VII claims.  (*Id.*)

---

[1] Muriel Pohl has not been employed by UC since 1997.  (McCrate Dec. ¶ 2)  Because Pohl is named in her official capacity only, she should be dismissed.

Dispositive material facts set forth in the attached Declarations of Donovan, McCrate, and Herrmann not being in genuine dispute, UC, Donovan, and the Additional Defendants move for summary judgment on Amadasu's Title VI and Title VII claims.  UC and Donovan also move for summary judgment on all of Amadasu's remaining claims against them.

## II.  DISPOSITIVE FACTS NOT IN GENUINE DISPUTE

### A.    UC's Occupational Medicine Residency Program.

UC's Occupational Medicine Residency Program ("OMRP") accepts residents from various racial, cultural, economic, and social backgrounds each year.  (Donovan Dec. ¶ 2) Residents, when accepted, are placed on one of four different academic tracks; three require at least a two-year commitment to the program.  (*Id.*)  The fourth track, known as the "Accelerated Track," can be completed in less than two years.  (*Id.*)  Individuals already possessing a Masters of Public Health ("MPH") or equivalent degree are placed on the Accelerated Track.  (*Id.*) Accelerated Track residents do not "graduate" from UC; rather, they receive a certificate of completion from the program.  (*Id.*)

### B.    OMRP Accepts Amadasu And Places Him On The Accelerated Track.

UC accepted Amadasu into the OMRP in 1999.  (Donovan Dec. ¶ 3)  Amadasu was not an employee and did not have a contract with UC.  (*Id.*)  Donovan, the Director of the Residency Program in Occupation and Environmental Medicine, was in favor of Amadasu joining the program at that time.  (Donovan Dec. ¶¶ 1, 3)  UC's records showed that Amadasu was expected to receive his MPH from the University of Utah that spring, before he would be starting at UC, so he was placed on the Accelerated Track.  (Donovan Dec. ¶ 3)  Amadasu completed the UC program in June 2000.  (*Id.*)

**C.    Amadasu Expressed An Interest In The OMRP Chief Resident Position, But He Did Not Qualify For It Because He Was On The Accelerated Track.**

The OMRP selected a Chief Resident in the fall of 1999.  (Donovan Dec. ¶ 4)  Residents on the Accelerated Track are ineligible for the position due to their short term participation in the program.  (*Id.*)  Amadasu expressed an interest in the position; however, because Amadasu was on the Accelerated Track, he was ineligible.  (*Id.*)  The position went to an individual who -- unlike Amadasu -- had more than a year left in the program and was not on the Accelerated Track.  (*Id.*)

**D.    Donovan Receives Complaints Of Inappropriate Sexual Behavior By Amadasu.**

Shortly after Amadasu began the OMRP, Donovan began to receive numerous complaints of improper sexual behavior by Amadasu.[2]  (Donovan Dec. ¶ 5)  Around October 1999 Donovan received a complaint from two female UC employees who said that Amadasu sexually harassed them.  (*Id.*)  Around December 1999 a UC employee complained that she believed Amadasu was sending her sexually harassing e-mails.  (*Id.*)  Donovan and some other OMRP faculty members also learned that Amadasu was dismissed from one of his required off-site clinical rotations after he was found to have committed improper sexual behavior.  (*Id.*)  Around February 2000 Donovan received a complaint from a female patient who said that Amadasu made her feel uncomfortable when he examined her and contacted her at home, without her permission, in an attempt to date her.  (*Id.* and Exh. A)

Donovan discussed these sexual harassment allegations with Amadasu.  (Donovan Dec. ¶ 5)  In April 2000, due to the numerous complaints of sexual harassment complaints against

---

[2] Such complaints seem to be a pattern for Amadasu.  In another of Amadasu's many lawsuits around the country, a New York court found that the termination of Amadasu's medical residency contract by the Bronx Lebanon Hospital was "based on his inappropriate and unprofessional treatment of a 13-year-old female patient during an unauthorized pelvic examination."  *Amadasu v. Bronx Lebanon Hosp. Ctr., Inc.*, 782 N.Y.S.2d 82 (N.Y. App. 2004).

Amadasu, Donovan required Amadasu to be chaperoned while examining female patients.  (*Id.*)

**E.    In April 2000 Amadasu Was Dismissed From A Four-Week Clinical Rotation In Texas.**

Amadasu went to Laredo, Texas on approximately April 1, 2000 to attend a clinical rotation at UT expected to end around April 30 of that year.  (Donovan Dec. ¶ 6)  UC paid Amadasu's travel expenses.  (*Id.*)  Amadasu subsequently informed Donovan that he had been dismissed from UT's clinical rotation on approximately April 19, 2000.  (Donovan Dec. ¶ 6)  No UC OMRP resident had ever been terminated from a clinical rotation.  (*Id.*)  In less than a year, Amadasu was dismissed from two.  (*Id.*)

**F.    UC Allowed Amadasu To Complete The OMRP Program, Despite The Numerous Allegations Of Sexual Harassment.**

UC allowed Amadasu to continue in the OMRP program despite the numerous sexual harassment allegations and his dismissal from two clinical rotations.  (Donovan Dec. ¶ 7)  After learning of Amadasu's dismissal from the clinical rotation in Texas, Donovan placed Amadasu on probation.  (*Id.*)  Amadasu's stipend was not reduced, he was never suspended, and he was allowed to continue in the program.  (*Id.*)  OMRP faculty members are not required to submit course evaluations or clinical practicum evaluations to the department -- that responsibility falls on the resident; however, Amadasu did receive course grades, his semi-annual program evaluation, his terminating resident evaluation, and several practicum evaluations.  (*Id.*)

Inexplicably, Amadasu waited until April 11, 2001 -- the same day he filed this lawsuit -- to submit a signed residency termination clearance form, which every resident must sign before the department can order a certificate for his completion of the program.  (Donovan Dec. ¶ 10; Exh. B)  Just five days later, Donovan authorized Amadasu's certificate order.  (*Id.*; Exh. C)

G.    **UC Held Amadasu's Transcript Because He Owed Money To The School.**

Amadasu received a graduate student scholarship that required him to become an Ohio resident.  (Donovan Dec. ¶ 11)  According to UC's records, Amadasu failed to become an Ohio resident; thus, UC charged Amadasu a non-resident fee.  (*Id.*; Exh. D)  UC held Amadasu's transcript because he owed money to UC.  (Donovan Dec. ¶ 11)  UC's policy is to hold the transcripts of students who have unpaid fees on their accounts.  (*Id.*).

H.    **Amadasu Applied For An Adjunct Teaching Position In Health Promotions At UC's Raymond Walters College, A Position For Which He Lacked Certain Qualifications.**

UC's Raymond Walters College ("RWC") posted an advertisement for an adjunct faculty in health promotions position around June 2000.  (Herrmann Dec. ¶ 2; Exh. A)  The position required, at minimum, successful teaching experience and a master's degree in a health related field, with a degree in health education preferred.  (*Id.*)

Amadasu applied; however, because he did not have the preferred qualifications and he lacked significant teaching experience, he was not hired.  (Herrmann Dec. ¶ 4)  The individual who was hired had a degree in health education and promotion, was teaching a health promotions course at UC's College of Education, and was a health promotions coordinator for an area business.  (*Id.* )

### III.    AMADASU'S CLAIMS FAIL AS A MATTER OF LAW

A.    **The Case Should Be Dismissed In Its Entirety Under 28 U.S.C. § 1915.**

Parties who proceed *in forma pauperis*, like Amadasu (Doc. 3), are subject to strict limitations on their pleadings.  Under 28 U.S.C. § 1915(E)(2), the court "***shall*** dismiss [an *in forma pauperis* party's] case at any time if the Court determines that the plaintiff's action fails to state a claim on which relief may be granted . . . or seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(E)(2) (emphasis added).  The statute leaves no

discretion in permitting a plaintiff to amend his or her complaint to avoid dismissal. *McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997).

Amadasu has run afoul of these requirements and has abused the privilege of proceeding *in forma pauperis*. His Amended Complaint demands compensatory and punitive damages "on each of all counts" and seeks compensatory and punitive damages against defendants who are immune from such relief under the Eleventh Amendment, as discussed below. (Doc. 51, p. 26; *see infra* and n.4) Amadasu's Amended Complaint does not seek any equitable relief. (*Id.*) By the plain terms of the statute, the Court should dismiss the case in its entirety. 28 U.S.C. § 1915(E)(2)(B)(iii).

**B.    Amadasu Has Not Shown That Title VI Applies To His Employment Discrimination Claims.  (Counts 1 and 18)**

Amadasu's Title VI claims should be dismissed because he has not properly alleged discrimination in employment actions under Title VI. A plaintiff must either allege that the primary objective of the federal aid is to provide employment or that discrimination in employment necessarily causes discrimination against primary beneficiaries of aid. *Stewart v. Simpson Co. Bd. of Educ.*, 871 F.2d 1089 (6th Cir. 1989) (table); *Allen v. College of William & Mary*, 245 F. Supp. 2d 777, 784 (E.D. Va. 2003); *Miller v. Phelan*, 845 F. Supp. 1201, 1207-08 (N.D. Ill. 1993) (plaintiff who unsuccessfully sought appointment to a board failed to state a claim under Title VI where he was not an intended beneficiary of the federal funds); *Commodari v. Long Island Univ.*, 89 F. Supp. 2d 353 (E.D.N.Y. 2000) (professor failed to establish that federal grant was aimed at employment). Amadasu has not made the requisite allegation necessary to stake a Title VI claim, and as a result his Title VI "employment" claims fail in their entirety.

### C.    Amadasu Has No Direct Evidence To Support His Title VI and Title VII Claims.  (Counts 1, 16-18)

Amadasu has no direct evidence of race, color, national origin, or sex[3] discrimination to support his Title VI and Title VII claims.[4]  Causes of action for discrimination under Title VI and Title VII are analyzed under the Title VII paradigm.  *See D.J. Miller & Assoc., Inc. v. Ohio Dept. of Admin. Svc.,* 115 F. Supp. 2d 872 (S.D. Ohio 2000) (concerns regarding direct discrimination in employment context also present in a Title VI claim).  Throughout his deposition, Amadasu makes circular and conclusory allegations that various actions occurred because of his race, but he cannot show that his race had anything to do with the alleged actions.  (*See, e.g.*, Amadasu Depo. at 121-22)

Amadasu alleges that Connie Brockman made racial slurs towards him and that Freeman mentioned his "heavy African accent"; even if true, neither allegation shows the existence of discrimination.[5]  (Amadasu Depo. at 111, 146-49)  Discriminatory statements do not constitute direct evidence unless the statements are both made by the "decisionmaker" and "related to the employment decision at issue."  *Wohler v. Toledo Stamping & Mfg. Co.*, 125 F.3d 856 (6th Cir. 1997) (Table); *Syvongxay v. Henderson*, 147 F. Supp. 2d 854, 857 (N.D. Ohio 2001); *Thomas v. Dade Co. Pub. Health Trust*, 177 F. Supp. 2d 1283 (S.D. Fla 2001) (employee failed to show discrimination where doctor's inappropriate statements were unrelated to the decision making

---

[3] Amadasu did not claim sex discrimination in his EEOC charge, which he failed to produce to this Court.  (McCrate Dec. ¶ 3; Exh. A)  Amadasu was required, but failed, to exhaust his administrative remedies on this claim.  *See, e.g.*, *Ang v. Procter and Gamble Co.*, 932 F.2d 540 (6th Cir. 1991) (plaintiff precluded from alleging race discrimination where administrative complaint only included national origin discrimination).  Thus, his sex discrimination claim fails.

[4] Amadasu also seeks an award of punitive damages under Titles VI and VII. (Doc. 51); however, UC nor the Ohio defendants in their official capacities can be liable for punitive damages under either statute.  *Robinson v. Runyon*, 149 F.3d 507, 516 (6th Cir. 1998) (government exempt from punitive damages under Title VII); *Barnes v. Gorman*, 536 U.S. 181, 189 (2002) (punitive damages may not be awarded in private suits against the state under Title VI).

[5] Amadasu also makes the baseless assertion in his Amended Complaint that Donovan and Freeman told him the Chief Resident was "typically a white position." (Amended Complaint, ¶ 106)  But when asked at deposition about his nonselection for the chief resident position, he mentioned only his vague, subjective perceptions -- notably omitting any mention of the supposed statement by Donovan and Freeman.  (Amadasu Dep. at 71-78)  Thus, that

process).  Brockman was a receptionist and had no authority over Amadasu.  (Donovan Dec. ¶ 9)

Amadasu cannot show that Freeman's alleged statement related to any employment decision;

moreover, the alleged statement is nothing more than a "stray remark."  *See, e.g.*, *Ercegpvoch v.*

*Gooduear Tire & Rubber Co.*, 154 F.3d 344, 354 (6th Cir. 1998) ("An isolated discriminatory

remark made by one with no managerial authority over the challenged personnel decisions is not

considered indicative of age discrimination."); *Epstein v. Loyola Univ. Med. Ctr.*, 234 F.3d 1272

(7th Cir. 2000) (unpublished table decision) (statement that foreign residents should be terminated

because they were "not as good as the American residents" was not evidence of discriminatory

intent).

### D.    Amadasu Cannot Show A Prima Facie Case Of Discrimination Using The Indirect Method of Proof Under Title VI or Title VII.  (Counts 1, 16-18)

Amadasu cannot establish a prima facie case of race, color, national origin, or sex

discrimination under the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) burden-shifting

scheme, because -- as discussed below -- he neither suffered an adverse employment/education

action nor was he treated less favorably than a similarly situated individual outside the protected

class.  *See Clayton v. Meijer, Inc.*, 281 F.3d 605, 610 (6th Cir. 2002) (citing elements of a prima

facie case).  The *McDonnell Douglas* burden-shifting analysis has been adopted for the

educational context in Title VI cases.  *D.J. Miller*, 115 F. Supp. 2d at 879; *see also Hankins v.*

*Temple Univ.*, 829 F.2d 437 (3d Cir. 1987) (applying Title VII analysis to Title VI claims).

### 1.    Amadasu Did Not Suffer An Adverse Employment And/Or Educational Action.

As the Sixth Circuit has stated, "not every action that makes an employee unhappy

constitutes an adverse employment action."  *Trepka v. Board of Educ.*, 28 Fed. Appx. 455, 462

---

supposed statement lacks any evidentiary basis, is contrary to Amadasu's deposition testimony, and should be disregarded.

(6th Cir. 2002). Amadasu makes numerous scattershot allegations, such as he was not given a computer password, he received an "old" microcassette recorder, he wanted a computer password, and he was denied funds to attend a clinical conference. (Amadasu Depo. at 35-39) Even if true, none of the these constitute adverse educational/employment actions. *See, e.g.*, *Mitchell v. Vanderbilt Univ.*, 389 F.3d 177, 182 (6th Cir. 2004) (deprivation of graduate assistant, revocation of mentor status, removal from medical director position, and drastic reduction in lab space did not constituted adverse actions); *Douglas v. Caldera*, 29 Fed. Appx. 257 (6th Cir. 2002) (denial of request to attend training workshop not adverse action); *Cartwright v. Tacala, Inc.,* 2000 WL 33287445 (M.D. Ala. Nov. 1, 2000) (denial of computer password does not constitute adverse employment action); *Gonzalez v. Fla. Dep't of Highway and Safety*, 237 F. Supp. 2d 1338 (S.D. Fla. 2002) (issuance of old equipment not adverse action).

None of the Ohio Defendants' alleged actions "materially altered" the terms and conditions of Amadasu's residency or his educational experience, as is required to establish the existence of an adverse action. *See, e.g.*, *Hollins v. Atlantic Co.*, 188 F.3d 652, 662 (6th Cir. 2002) ("adverse employment action" requires events such as termination, a demotion evidenced by a decrease in wage or salary or a material loss of benefits). Amadasu received grades for all of his courses, his stipend was never reduced, he was allowed to complete the OMRP, UC paid his expenses to the clinical rotation in Texas (from which he was expelled), and Donovan signed Amadasu's certificate order form. (Donovan Dec. ¶¶ 3, 6, 8, 10) Amadasu received what he describes as a "diploma" (i.e., his certificate of completion). (Amadasu Depo. at 81) The absence of a cognizable adverse action dooms his Title VI and VII claims.

### 2.  Amadasu Was Not Treated Differently Than Similarly Situated Non-Protected Residents.

Even if Amadasu could establish that he suffered an adverse residency education action,

which he cannot, he cannot show that he was treated less favorably than a similarly situated OMRP resident outside the protected class. Amadasu's conclusory allegations that he was treated differently than others -- most of whom are unnamed -- in various unspecified ways, are insufficient to survive the Ohio Defendants' summary judgment motion. *See Williams v. Ford Motor Co.*, 187 F.3d 533, 544 (6th Cir. 1999) (plaintiffs cannot withstand motion for summary judgment with conclusory allegations in complaint or affidavit).

### 3. The Ohio Defendants Had Legitimate Business Reasons For All Actions Taken With Respect To Amadasu.

Amadasu's Title VI and VII claims fail on the additional basis that the Ohio Defendants had legitimate business reasons for all of their actions. Amadasu received grades and a semi-annual evaluation. (Donovan Dec. ¶ 8) OMRP residents do not receive paid vacations. (Donovan Dec. ¶ 12) Amadasu was in Texas at the time he was supposed to be attending Middaugh's Basics of Occupational Medicine II course; however, Donovan permitted him to withdraw and receive a "W" as opposed to an "F." (Donovan Dec. ¶ 8) OMRP faculty were not required to submit course evaluations or clinical practicum evaluations to the department. (Donovan Dec. ¶ 8) Gaynor, Buncher, Filak, and Jarrell were not Amadasu's professors and would not have been required to give Amadasu a grade or an evaluation. (Donovan Dec. ¶ 9) UC paid Amadasu's travel expenses to Texas in 2000 so that he could attend the clinical rotation from which he was terminated. (Donovan Dec. ¶ 6) *See Shaner v. Synthes*, 204 F.3d 494, 504 n.12 (3rd Cir. 2000) (fact that employee received some training from the company undermines his claim that the company deprived him of other forms of training on account of his disability).

Donovan signed Amadasu's certificate order form just days after Amadasu signed the mandatory residency clearance form that all residents must sign. (Donovan Dec. ¶ 10, Exhs. B, C) UC held Amadasu's transcript because of his debt, not his race or other unlawful factors. *See Ellis*

*v. Morehouse Sch. of Med.*, 925 F. Supp. 1529, 1550 (N.D. Ga. 1996) (not releasing transcripts to any student who was financially indebted to the school is a legitimate business reason).

Donovan's directive that Amadasu be chaperoned when examining female patients was based on the numerous sexual harassment allegations against Amadasu, and thus constitutes a legitimate business reason for that action.  (Donovan Dec. ¶ 5)  Donovan discussed the allegations with Amadasu.  (*Id.*)  Under *Smith v. Chrysler Corp.*, 155 F.3d 799, 807 (6th Cir. 1998), when assessing an employer's adverse employment action, "the key inquiry is whether the employer made a reasonably informed action before taking [it]."

The Ohio Defendants had legitimate business reasons for all of their actions as to Amadasu, and for this additional reason his Title VI and VII claims fail.[6]

### E.    Amadasu Was Not Qualified For The OMRP Chief Resident Position.

Amadasu was on the Accelerated Track and was ineligible for the position -- all residents on the Accelerated Track were disqualified from the position.  (Donovan Dec. ¶ 4)  Amadasu thus cannot show that he was qualified for the OMRP Chief Resident position.  Further, "[u]nlike other conditions and privileges of employment, a promotion is not something to which every employee is not something to which every employee is entitled as a matter of course."  *Davis v. Bowes*, 1997

---

[6] The burden-shifting scheme used for Title VII applies equally to Amadasu's O.R.C. § 4112 (Count 15) claim, as well as his Section 1981 (Count 2)  and Section 1983 equal protection claims (Count 3).  Thus, because his Title VII claims fail, these claims should also be dismissed.  *See Plumbers & Steamfitters Apprenticeship*, 66 Ohio St. 3d 192, 196, 421 N.E.2d 128, 131 (1981) (Title VII caselaw generally applicable to R.C. 4112.02 claims); *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 573 n.5 (6th Cir. 2000) (Section 1981 elements and allocations of burden of proof follow claims stemming from Title VII and § 1981); *Perry McGinnis*, 209 F.3d 597, 601 (6th Cir. 2000) (plaintiff asserting a Fourteenth Amendment Equal Protection claim under Section 1983 must prove the same elements required to establish a disparate treatment claim under Title VII).

Because Donovan did not discriminate against Amadasu, there has been no violation of his right to equal protection and no conspiracy to deprive him of his right to equal protection; thus, his  Section 1985 (Count 6) and 1986 (Count 7) claims fail as well.  *See Thompson v. City of Memphis*, 86 Fed. Appx. 96, 103 (6th Cir. 2004) (finding that plaintiff's claim under Section 1985 depended upon plaintiff successfully establishing sex discrimination); *Bartell v. Lohiser*, 215 F.3d 550, 559 (6th Cir. 2000) (noting claimant must establish "some racial or perhaps otherwise class based individuously discriminatory animus."); *Braley v. City of Pontiac*, 906 F.2d 220, 227 (6th Cir. 1990) (failure to state a claim under Section 1985 is fatal to Section 1986 claim).  To the extent Amadasu alleges that Donovan conspired with a UC employee, his claim is also barred by the "intracorporate doctrine."  *Hull v. Cuyahoga Valley Joint Voc. Sch. Dist. Bd. of Educ.*, 926 F.2d 505, 509 510 (6th Cir. 1991) (explaining the "intracorporate doctrine").

WL655935, at *19 (S.D.N.Y. Oct. 20, 1997), *aff'd*, 159 F.3d 1346 (2d Cir. 1998)  Regardless of

race, national origin, color, or sex, his Accelerated Track status meant that he could not be Chief

Resident.

    **F.**    **Amadasu's Non-Hire For The Adjunct Faculty In Health Promotions Position Does Not Prove Discrimination.**

Amadasu was not hired for the Adjunct Faculty position because he did not possess degree

in public health education or have substantial teaching experience.  (Herrmann Dec. ¶ 4)

Amadasu admits that his experience consisted only of tutoring some individuals.  (Amadasu Depo.

at 26-27)  The individual who was hired had a degree in public health, had substantial teaching

experience, and was a health promotions coordinator.  (*Id.*)  UC thus had a legitimate business

reasons for not hiring Amadasu into this position.  *See Wrenn v. Gould*, 808 F.2d 493, 502 (6th

Cir. 1987) (hiring an employee who did not need to be trained was a legitimate, nondiscriminatory

reason); *Williams v. Columbus Metro. Housing*, 90 Fed. Appx. 870 (6th Cir. 2004) (choosing most

qualified candidate was a legitimate business reason).

    **G.**    **Amadasu's Claim Concerning The Second Year Family Practice Residency Position Is Pending In An Earlier Filed Action, And Also Fails On Its Merits.**

In an action filed several weeks before this one, Amadasu also alleged a claim based on his

non-hire in the second-year family practice residency.  *See Amadasu v. Mercy Franciscan Hosp.,*

*et al.*, C-1-01-182 (S.D. Ohio filed May 26, 2001).  Where an *in forma pauperis* plaintiff files a

lawsuit that "duplicates allegations of another pending federal lawsuit by the same plaintiff," the

duplicative suit should be dismissed under 28 U.S.C. § 1915.  *Wilson v. Lynaugh*, 878 F.2d 846,

849 (5th Cir. 1989) (duplicative lawsuit is frivolous); *Pittman v. Moore*, 980 F.2d 994, 995 (5th

Cir. 1993) (duplicative lawsuit is malicious); 28 U.S.C. § 1915(e)(2)(B)(i) (frivolous or malicious

actions by *in forma pauperis* parties are subject to dismissal).

Nor has Amadasu established that he applied for the family practice residency.  Moreover, he claims that Donovan and Lockey wrote him letters of recommendation for the position, which vitiates his claim that they discriminated against him with respect to the position.  (Amadasu Depo. at 30)

### H.    Amadasu's Hostile Work Environment Claim Fails As A Matter Of Law (Count 17).

Amadasu has not shown that he suffered "severe" or "pervasive" harassment because of his race, color, national origin, or sex.  *See Farmer v. Cleveland Pub. Pwr.*, 295 F.3d 593, 605 (6th Cir. 2002) (only incidents that occurred because of protected status are considered in the context of a hostile work environment claim).  Amadasu alleges that Brockman made racial slurs towards him; however, he never mentioned Brockman's alleged statements in his EEOC charge and he has not shown that he complained to anyone about the alleged statements.  *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998); *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998) (no hostile environment claim where individuals unreasonably fail to take advantage of preventive or corrective opportunities).  Further, Amadasu lacks evidence of "harassing behavior 'sufficiently severe or pervasive to alter the conditions of [his] employment.'"  *Pennsylvania State Police v. Suders*, 542 U.S. 129 (2004) quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)).

### I.    Amadasu's Retaliation Claim Fails As A Matter Of Law (Count 26).

Amadasu's retaliation claim fails because he did not suffer an adverse action, nor can he establish a causal connection between his alleged protected activity and the alleged adverse actions. *See, e.g., Hafford v. Seidner*, 183 F.3d 506, 515 (6th Cir. 1999) (plaintiff must show that he suffered an adverse employment action to prove retaliation*); see also EEOC v. Avery Denison Corp.*, 104 F.3d 858, 861 (6th Cir. 1997) ("to establish a causal link a plaintiff is required to proffer evidence sufficient to raise the inference that her protected activity was the likely reason for the adverse action.").

As purported evidence of retaliation, Amadasu claims that the Ohio Defendants refused and failed to award grades, conduct evaluations, or graduate him. (Doc 51) But Amadasu did receive grades and evaluations. (Donovan Dec. ¶ 8) Accelerated Track residents do not "graduate" from UC. (Donovan Dec. ¶ 2) Amadasu received the benefits of the OMRP to which he was entitled. *Reid v. Runyon*, 2000 WL 271732 (E.D. Ky. Feb. 29, 2000) (retaliation claim failed where plaintiff received all the continuation of pay benefits to which he was entitled and therefore did not suffer an adverse action).

**J.     Amadasu's Title VI And VII Claims Against Donovan In His Individual Capacity Fail As A Matter Of Law.**

Title VI prohibits discrimination by any program or activity receiving federal assistance. 42 U.S.C. § 2000d. Only entities, not persons, are subject to liability under Title VI. *See Davis v. Flexmann*, 109 F. Supp. 2d 776, 793 (S.D. Ohio 1999). Amadasu's Title VI claims against Donovan in his individual capacity thus fail as a matter of law.

An individual employee who does not independently qualify under the statutory definition of "employer" cannot be held personally liable under Title VII. *See Wathen v. General Electric*, 115 F.3d 400, 405 (6th Cir. 1997). Thus, Donovan cannot be held individually liable under Title VII, either.

**K.     UC and Donovan (In His Official Capacity) Are Entitled To Eleventh Amendment Immunity For Amadasu's Various Other Claims.**

The State of Ohio is immune from suit unless it has waived sovereign immunity. *See Mixon v. Ohio*, 193 F.3d 389, 396-97 (6th Cir. 1999) UC is an arm of the State of Ohio and, as such, enjoys full Eleventh Amendment immunity from suit in federal court. *See, e.g.*, *Dillion v. Univ. Hosp.*, 714 F. Supp. 1384 (S.D. Ohio 1989). Lawsuits against state agents and employees acting in their official capacities are treated as actions against the state itself and are also barred

where the action seeks money damages, as Amadasu's does. *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985); *Pennhurst State Sch. and Hosp. v. Haldersman*, 465 U.S. 89, 100-03 (1984).

### 1.     Amadasu's Section 1981, 1983, 1985, and 1986 Claims Are Barred Against UC And Donovan In His Official Capacity. (Counts 2-7)

The Eleventh Amendment bars Amadasu's 42 U.S.C. §§ 1981, 1983, 1985, and 1986 claims against UC and Donovan in his official capacity. *See Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 571 (6th Cir. 2000) ("[i]t is well settled that a plaintiff is precluded from directly suing a State in federal court" on claims under § 1981) (citations omitted); *Whittington v. Milby*, 928 F.2d 188, 193-94 (6th Cir. 1991) ("Congress did not intend by the general language of Section 1983 to override the traditional sovereign immunity of the states"); *Moss v. Columbus Bd. of Educ.*, 2001 WL 1681117, *9 (S.D. Ohio 2001) (Eleventh Amendment immunity on claims under Section 1985); *Moss v. Columbus Bd. of Educ.*, 98 Fed. Appx. 393 (6th Cir. 2004) (Eleventh Amendment immunity on claims under Section 1986).

### 2.     Amadasu's Fair Housing Act Claim Against Fails In Its Entirety Against UC And Donovan. (Count 8)

In Count 8, Amadasu alleges a violation of the Federal Fair Housing Act. Yet the only housing-related allegations in the Amended Complaint relate to Texas and the Texas Defendants. (*See* Amended Complaint at ¶¶ 21, 26-29, 36). Thus, to whatever extent this claim even lies against UC or Donovan, the Amended Complaint fails to state a claim against them on Count 8.

Further, several courts have held that the Fair Housing Act does not abrogate Eleventh Amendment immunity. *See, e.g.*, *Gregory v. South Carolina Dep't of Transp.*, 289 F. Supp. 2d 721, 724 -25 (D.S.C. 2003) (Eleventh Amendment barred former landowner's FHA claim against state transportation department and its agents); *Project Life, Inc. v. Glendening*, 139 F. Supp. 2d 703, 711 (D. Md. 2001) (precluding a recovery of money damages against the Maryland

Department of Transportation under the FHA).  For this additional reason, Count 8 fails against UC and Donovan.

      3.      **Amadasu's State Law Claims Against UC And Donovan In His Official Capacity Are Barred.  (Counts 9-15)**

Amadasu alleges various state law claims, all of which are barred by the Eleventh Amendment.  (*See* Counts 9-15)  A federal suit against state officials on the basis of state law "contravenes the Eleventh Amendment when, as here, the relief sought and ordered has an impact directly on the State itself."  *Pennhurst*, 465 U.S. at 100-103 (1984); *Anderson v. Ohio State University*, 2001 WL 99858, at *10 (S.D. Ohio January 22, 2001) (finding Eleventh Amendment barred state law claim against Ohio State employees in their official capacities).  Amadasu's claims seek monetary damages against UC and Donovan, and thus have an impact directly upon the State and are thus barred.

    **L.**    **Pohl Was Not Employed By UC At The Relevant Time; Amadasu's Official-Capacity Claims Against Her Fail As A Matter Of Law (Counts 16-18)**

Pohl, subject to suit in her official capacity only, has not been employed by UC since 1997.  (McCrate Dec. ¶ 2)  Amadasu's claims arise out of alleged actions that occurred from 1999 forward.  (Doc. 51)  Amadasu's Title VI and VII claims against Pohl are therefore subject to dismissal.

    **M.**    **This Court Lacks Jurisdiction Over Amadasu's State Law Claims Against Donovan.**

Ohio law provides civil immunity for state employees.  *See* O.R.C. § 9.86 and § 2743.02(F).  Because Donovan is a state employee, Amadasu must first file an action in the Ohio Court of Claims to determine if Donovan's actions were manifestly outside the scope of his employment or official responsibilities or that he acted with a malicious purpose, in bad faith, or in a wanton or reckless manner.  As the Ohio Supreme Court held in *Johns v. University of*

*Cincinnati Medical Associates, Inc.*, 101 Ohio St. 3d 234, 804 N.E.2d 19: "[U]nder R.C. 2743.02(F), the Court of Claims is the only court with authority to determine whether a state employee is immune from personal liability under R.C. 9.86." *Id.* at 239; *see also Liggins v. State of Ohio*, 210 F.3d 372 (6th Cir. 2000) ("The district court could not exercise jurisdiction over Liggins's state law claims [against state employees] until the Ohio Court of Claims had found that the named defendants were amenable to suit."). The Ohio Court of Claims has not rendered any such a decision, nor has Amadasu requested one. Therefore, this Court lacks jurisdiction over all of Amadasu's state law claims against Donovan. Counts 9-15 of the Amended Complaint are subject to dismissal on this basis.

**N.    Amadasu's State Law Claims Also Fail On Their Merits.**

**1.    Counts 8, 9, 10, And 11 Are Not Directed At Donovan.**

Count 8 ("Violation of Federal Fair Housing"), Count 9 ("Negligence, Nuisance, Premises Liability"), 10 ("Negligent Hiring/Negligent Supervising/Negligent Retention"), and Count 11 ("Misrepresentation and Education Malpractice")[7] are directed at Texas Defendants Claudia Miller and the University of Texas Health Science Center, not Donovan. (Amended Complaint, ¶¶ 76, 79, 82) Thus, these counts do not state a claim against Donovan.

**2.    Amadasu's Defamation Claims Against Donovan Should Be Dismissed. (Count 12)**

The basis for Amadasu's defamation claims against Donovan relate to the numerous complaints of sexual harassment made against Amadasu. Although Amadasu contests the underlying truth of those complaints, there is no genuine issue of fact concerning whether the complaints were actually made. Truth is a defense to defamation. *Garrett v. Fisher Titus Hosp.*, 318 F. Supp. 2d 562, 577-78 (N.D. Ohio 2004); *see also Daubenmire v. Sommers*, 156 Ohio App.

---

[7] Ohio law does not recognize educational malpractice claims. *See Malone v. Academy of Court Reporting*, 64 Ohio App. 3d 588, 582 N.E.2d 54, 58 (1990).

3d 322, 805 N.E.2d 571, 585 (Ohio Ct. App. 2004) (generally the essential elements of a defamation action, libel and slander are the same).

Regardless, Donovan -- the Director of the Residence Program -- had a qualified privilege to discuss the sex harassment allegations against Amadasu with others. A communication made in good faith on a matter of common interest between an employer and an employee, or between two employees concerning a third employee is protected by qualified privilege. *Knox v. Neaton Auto Prod. Mfg., Inc.*, 375 F.3d 451, 460-61 (6th Cir. 2004). Although Pohl was not employed by UC at the relevant time, she worked with Donovan and Amadasu at University Hospital and informed Donovan about a female patient's complaint of sexual harassment against Amadasu; thus, Donovan had a qualified privilege to respond to Pohl's comments concerning Amadasu. Amadasu also worked closely at a clinical rotation at UT; thus, it was necessary to put Miller on notice of the allegations. *Hahn v. Kotten*, 43 Ohio St. 2d 237, 243, 331 N.E.2d 713, 719 (1979) (qualified privilege attaches where the publication is made in a reasonable manner and for a proper purpose).

Donovan's qualified privilege can only be defeated by a "clear and convincing" showing that the alleged communication was made with knowledge that the statements were false or with reckless disregard as to their truth or falsity. *Jacobs v. Franks*, 60 Ohio St.3d 111, 116, 573 N.E.2d 609, 614 (1991) (stating the actual malice standard). Amadasu cannot show that Donovan acted with actual malice.

### 3.    Amadasu's Invasion of Privacy Claim Donovan Fails. (Count 13)

Amadasu's invasion of privacy claim, Count 13, is a corollary to Amadasu's defamation claim and relates to the sexual harassment allegations made against Amadasu. Yet Amadasu cannot make the required showing of a public disclosure. *See Roe v. Heap*, 2004 WL 1109849 at *11-13 (Ohio App. May 11, 2004) (holding that disclosure of facts to a small group of individuals

involved in the matter did not constitute the required element of public disclosure). Amadasu must also show "That the matter publicized is not of legitimate concern to the public." *Id.* at *12. Given the nature of the sexual harassment claims made against Amadasu, he cannot satisfy this additional element.

### 4.    Amadasu's Intentional Infliction of Emotional Distress Claim Fails As A Matter of Law. (Count 14)

The Ohio Supreme Court has stated that "liability [for intentional infliction of emotional distress] has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency and to be regarded as atrocious, and utterly intolerable in a civilized community." *Yeager v. Local Union 20, Teamsters, Chauffeur, Warehousemen & Helpers of Am.*, 6 Ohio St. 3d 369, 453 N.E.2d 666, 671 (1983) (citations omitted). Amadasu's discrimination claims against Donovan are insufficient to support an intentional infliction of emotional distress claim. *Godfredson v. Hess & Clark, Inc.*, 173 F.3d 365, 373 (6th Cir. 1999) (employee's termination, even if barred upon discrimination, does not rise to the level of "extreme and outrageous conduct."); *Shepard v. Griffin Servs.Inc.*, 2002 WL 940110 (Ohio Ct. App. 2d Dist. May 10, 2002) (discriminating because of sex, accusing of fraud, and terminating employment based upon false accusations did not satisfy the definition of extreme and outrageous conduct).

### 5.    Amadasu's Section 1983 Substantive And Procedural Due Process Claims Fail (Count 4 and 5).

Substantive due process reaches only those employment decisions affecting constitutionally protected "fundamental rights" of an employee. *Washington v. Glucksberg*, 521 U.S. 702, 720-21 (1997). Procedural due process principles protect persons from "deficient procedures that lead to the deprivation of cognizable liberty interests." *Bartell v. Lohiser*, 215 F.3d 550, 557 (6th Cir. 2000). Amadasu has not shown a deprivation of a fundamental liberty or

property interest.  Public employment is not a fundamental property interest entitled to substantive due process protection.  *Nicholas v. Penn. State Univ.*, 227 F.3d 133, 140 (3d Cir. 2000).  Nor does substantive due process protect "occupational liberty."  *Singleton v. Cecil*, 176 F.3d 419, 424 (8th Cir. 1999)

While on probation, Amadasu received all of the due process required.  Donovan met with Amadasu and discussed all of the sexual allegations against him.  *See, e.g.*, *Bystrom v. Fridley High*, 686 F. Supp. 1387 (D. Minn. 1987) (a three day suspension from school does not rise to the level of penal sanction calling for the full panopoly of procedural due process protections).  Amadasu's due process claims fail.

## IV.  CONCLUSION

For each and all of the foregoing reasons, the Ohio Defendants respectfully submit that summary judgment should be granted on all of Amadasu's claims against them.

Respectfully submitted,

By:   /s/ Justin D. Flamm
     Gregory Parker Rogers (0042323)
     Justin D. Flamm (0071575)
     Taft, Stettinius & Hollister, LLP
     425 Walnut Street, Suite 1800
     Cincinnati, Ohio 45202-3957

OF COUNSEL:
     (513) 381-2838
Mitchell D. McCrate (0047403)     (513) 381-0205 (fax)
Associate General Counsel
University of Cincinnati
Office of the General Counsel     Special Counsel for the Attorney
300 Administrative Building     General of Ohio
Cincinnati, Ohio 45221-0623
(513) 556-3483     Trial Attorneys for the Ohio Defendants

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, and served copies of the foregoing upon Darlington Amadasu, Plaintiff Pro Se, at P.O. Box 6263, Cincinnati, Ohio 45206, and upon John Grey, counsel for Claudia Miller, John Grey and the University of Texas Health Science Center at San Antonio, at Assistant Attorney General for the State of Texas, General Litigation Division, P.O. Box 12548, Capitol Station, Austin, Texas 78711-2548, via regular United States mail, postage prepaid, this 31st day of March, 2005.

By:  /s/ Justin D. Flamm
      Gregory Parker Rogers (0042323)
      Justin D. Flamm (0071575)
      Taft, Stettinius & Hollister, LLP
      425 Walnut Street, Suite 1800
      Cincinnati, Ohio 45202-3957
      (513) 381-2838
      (513) 381-0205 (fax)

      Special Counsel for the
      Attorney General of Ohio

      Trial Attorneys for the Ohio Defendants