FILED
JAMES BONINI
CLERK

05 MAR 30 AM 9:38

U.S. DISTRICT COURT
SOUTHERN DIST OHIO
WEST DIV CINCINNATI

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

DARLINGTON AMADASU,
    *Plaintiff,*

v.

JAMES R. DONOVAN, M.D. *et al.,*
    *Defendants.*

Case No. 1:01-cv-210

Judge Dlott
Magistrate Judge Black

**TEXAS DEFENDANTS' NO EVIDENCE MOTION FOR SUMMARY JUDGMENT**

NOW COME Defendants, University of Texas Health Science Center at San Antonio ("UTHSC"), Claudia S. Miller, and Roger Perales (collectively "Texas Defendants"), pursuant to Rule 56 of the Federal Rules of Civil Procedure, and present their No Evidence Motion for Summary Judgment as follows:

**NO EVIDENCE MOTION FOR SUMMARY JUDGMENT**

Plaintiff's First Amended Complaint was filed in this Court on September 23, 2003, against, among other Defendants, Claudia S. Miller, M.D., Roger B. Perales, and UTHSC. Plaintiff claims that his suit arises out of his alleged treatment during a four week residency rotation in Laredo, Texas, that was facilitated by UTHSC. Plaintiff's First Amended Complaint alleges claims against the Texas Defendants under Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, *et seq.* (Counts 1 & 18), 42 U.S.C. §§ 1981, 1983, 1985, and 1986 (Counts 2-7), the Federal Fair Housing Act, 42 U.S.C. § 3601, *et seq.* (Count 8), the Texas Bill of Rights (Count 15), Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* (Counts 16, 17, & 26), and common law claims for negligence, nuisance, and premises liability (Count 9), negligent hiring, negligent supervision, and

negligent retention (Count 10), misrepresentation and educational malpractice (Count 11), defamation (Count 12), invasion of privacy and trespass (Count 13), and intentional infliction of emotional distress (Count 14). Because Plaintiff has no evidence to prevail on any of his claims, the Texas Defendants are entitled to summary judgment. The Texas Defendants' legal arguments and authorities are fully briefed in their Memorandum in Support of their No Evidence Motion for Summary Judgment.

Respectfully submitted,

GREG ABBOTT
Attorney General of Texas

BARRY R. McBEE
First Assistant Attorney General

EDWARD D. BURBACH
Deputy Attorney General of Litigation

JEFF L. ROSE
Chief, General Litigation Division

JOHN M. GREY
Assistant Attorney General
Texas Bar No. 24012735
General Litigation Division
300 W. 15th Street, 11th Floor
Austin, Texas 78701
(512) 463-2120
(512) 320-0667 FAX

ATTORNEYS FOR DEFENDANTS

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument has been sent via certified mail, return receipt requested on this, the 29th day of March, 2005, to:

Mr. Darlington Amadasu
*Pro Se* Plaintiff
P O Box 6263
Cincinnati, Ohio 45206

*Regular Mail*
Mr. Justin Flamm
Taft, Stettinius & Hollister
425 Walnut
Cincinnati, Ohio 45202

JOHN M. GREY
Assistant Attorney General

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

DARLINGTON AMADASU,  
    *Plaintiff,*

v.

JAMES R. DONOVAN, M.D. *et al.,*  
    *Defendants.*

Case No. 1:01-cv-210

Judge Dlott  
Magistrate Judge Black

**TEXAS DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR NO EVIDENCE MOTION FOR SUMMARY JUDGMENT**

NOW COME Defendants, University of Texas Health Science Center at San Antonio ("UTHSC"), Claudia S. Miller, and Roger Perales (collectively "Texas Defendants"), pursuant to Rule 56 of the Federal Rules of Civil Procedure, and present their Memorandum in Support of Their No Evidence Motion for Summary Judgment as follows:

**I.**
**INTRODUCTION**

Plaintiff's First Amended Complaint was filed in this Court on September 23, 2003, against, among other Defendants, Claudia S. Miller, M.D., Roger B. Perales, and UTHSC. Plaintiff claims that his suit arises out of his alleged treatment during a four week residency rotation in Laredo, Texas, that was facilitated by UTHSC. Plaintiff's First Amended Complaint alleges claims against the Texas Defendants under Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, *et seq.* (Counts 1 & 18), 42 U.S.C. §§ 1981, 1983, 1985, and 1986 (Counts 2-7), the Federal Fair Housing Act, 42 U.S.C. § 3601, *et seq.* (Count 8), the Texas Bill of Rights (Count 15), Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* (Counts 16, 17, & 26), and common law claims for negligence, nuisance, and premises liability (Count 9), negligent hiring, negligent supervision, and

negligent retention (Count 10), misrepresentation and educational malpractice (Count 11), defamation (Count 12), invasion of privacy and trespass (Count 13), and intentional infliction of emotional distress (Count 14).

## II.
## FACTUAL BACKGROUND

Amadasu alleges that he was a participant in the Occupational and Environmental Medicine Residency Training program at the University of Cincinnati. *Plaintiff's First Amended Complaint* at 3. Amadasu applied and was accepted to a four-week residency rotation in Laredo, Texas, with the South Texas Environmental Education and Research (STEER) program available through UTHSC. *Id.* at 3-4. Defendant Claudia S. Miller, M.D., who is based in San Antonio, Texas, was director of the program, and Defendant Roger Perales was allegedly a student at Defendant UTHSC and an employee of the program. *Id.* at 2. Amadasu began his rotation with UTHSC on or about April 3, 2000 and was scheduled to remain through April 28, 2000. *Id.* at 4.

Amadasu claims that the housing provided by UTHSC was "archaic substandard" housing (*Plaintiff's First Amended Complaint* at 4), and that he was not provided transportation in around town as promised by UTHSC. *Id.* at 5. He also claims he experienced a lack of cooperation from and personality conflicts with Defendant Perales, who worked with Amadasu in Laredo. *Id.* at 4-5. He further asserts that Perales conducted unauthorized searches of his UTHSC-provided housing and accused Amadasu of sexual harassment. *Id.* at 5-6. Amadasu also claims that the UTHSC program in Laredo was poorly organized, and that Miller, the program's director, also accused Amadasu of sexual harassment. *Id.* at 5-7. Finally, Amadasu claims that he was wrongfully dismissed from the UTHSC program in Laredo, evicted from his housing in Laredo, and placed on probation by Donovan at UC because of the accusations made by Perales and Miller in Laredo. *Id.*

2

### III.
### ARGUMENT & AUTHORITIES

No-evidence summary judgment motions have been a feature on the federal procedural landscape since *Celotex v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548 (1986). "Where the burden of production at trial ultimately rests on the non-movant, 'the movant must merely demonstrate an absence of evidentiary support in the record for the non-movant's case.'" *Shields v. Twiss*, 389 F.3d 142, 149 (5th Cir. 2004) (*citing Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000)). "By contrast, the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* (*citing* FED.R.CIV.P. 56(e)). "According to the Supreme Court, 'there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" *Id.* at 149-50 (*citing Anderson v. Liberty Lobby*, 477 U.S. 242, 249, 106 S.Ct. 2505 (1986)).

**A.   Plaintiff's Title VI Claims (Counts 1 & 18)**

Plaintiff brings claims against the Texas Defendants under Title VI (42 U.S.C. § 2000d *et seq*). For Plaintiff to recover against the Texas Defendants under Title VI, he must prove that the Texas Defendants engaged in intentional discrimination in violation of Title VI. *Alexander v. Sandoval*, 532 U.S. 275, 280-81 (2001). "'Title VI itself directly reach[es] only instances of intentional discrimination.'" *Id.* at 281 (*citing Alexander v. Choate*, 469 U.S. 287, 293 (1995)). Plaintiff cannot produce any evidence that the Texas Defendants engaged in intentional discrimination in violation of Title VI. Accordingly, Plaintiff's Title VI claim against the Texas Defendants must be dismissed.

3

B.     **Plaintiff's Title VII Claims (Counts 16, 17, & 26)**

Plaintiff brings claims against the Texas Defendants under Title VII (42 U.S.C. § 2000e et seq). Title VII prohibits employers from engaging in unlawful employment practices against employees. 42 U.S.C. §§ 2000e-2 & 2000e-3. Plaintiff was never an employee of any of the Texas Defendants. *Exhibit 1, Plaintiff's Answers to Defendants' First Set of Requests for Admission to the Plaintiff*, Responses to Questions 8, 9, & 10. Because Plaintiff was not an employee of the Texas Defendants, he cannot produce any evidence that he was an employee of the Texas Defendants. Accordingly, Plaintiff's Title VII claims against the Texas Defendants must be dismissed.

C.     **Plaintiff's 42 U.S.C. §§ 1981 (Count 2) & 1983 Claims (Counts 3, 4, & 5)**

Plaintiff brings a claim against the Texas Defendants under 42 U.S.C. § 1981. Plaintiff, however, fails completely to allege that any of the Texas Defendants engaged in any of the activities enumerated in § 1981. In order to prove his claim, Plaintiff must establish: (1) membership in a racial minority; (2) that the Defendants intended to discriminate on the basis of race; and (3) discrimination concerning one of the activities enumerated in § 1981. *Brown v. City of Oneonta*, 221 F.3d 329, 339 (2nd Cir. 2000). Plaintiff cannot produce any evidence that any of the Texas Defendants intended to discriminate against him on the basis of race. Accordingly, Plaintiff's 42 U.S.C. § 1981 claim against the Texas Defendants must be dismissed.

It is well settled that, unless expressly waived, sovereign immunity, as protected by the Eleventh Amendment, deprives a federal court of jurisdiction to hear a suit against the State of Texas, one of its agencies, or an employee in their official capacity. *Pennhurst State School and Hosp. v. Halderman*, 465 U.S. 88, 101 (1984); *Kentucky v. Graham*, 473 U.S. 159, 167 (1985). A suit against a state official in his official capacity is in all respects a suit against the state. *Pickell v. Brooks*, 846 S.W.2d 421, 425 (Tex. App.--Austin 1992, writ denied). Further, while Congress has

4

the power to abrogate Eleventh Amendment immunity, any such abrogation must be very specific. *Atascadero State Hosp. v. Scanlon,* 473 U.S. 234, 254 (1985). "Absent waiver, neither a State nor agencies acting under its control may be subject to suit in a federal court." *Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy, Inc.,* 506 U.S. 139, 144-145 (1993).

Section 1983 does not abrogate the state's Eleventh Amendment immunity. *Quern v. Jordan,* 440 U.S. 332, 341 (1979). Likewise, Section 1981 does not abrogate the state's Eleventh Amendment immunity. *See Jett v. Dallas Indep. Sch. Dist.,* 491 U.S. 701, 731, 109 S.Ct. 2702, 2721 (1989); *Sessions v. Rusk State Hospital,* 648 F.2d 1066, 1069 (5th Cir. 1981)("Section 1981 contains no congressional waiver of the state's eleventh amendment immunity."). Further, the State of Texas has not expressly waived its immunity to suit in federal court as to suits brought under §§ 1981 or 1983, and it is well established that "a suit in federal court by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment." *Quern,* 440 U.S. at 337. Accordingly, Plaintiff's § 1981 and § 1983 claims against UTHSC and the individual Texas Defendants in their official capacities are barred by the Eleventh Amendment. Plaintiff cannot present any evidence to overcome the Texas Defendants' Eleventh Amendment Immunity.

Additionally, to maintain a claim under § 1983, a plaintiff must first allege that some person deprived him of a federal right, and secondly, that the person acted under color of state law. *Gomez v. Toledo,* 446 U.S. 635, 640 (1980); *Manax v. McNamara,* 842 F.2d 808, 812 (5th Cir. 1988). Neither a state, its agencies, nor its officials acting in their official capacities are "persons" under § 1983. *Hafer v. Melo,* 502 U.S. 21, 22-23, 112 S.Ct. 358, 360 (1991). Accordingly, Plaintiff cannot maintain his § 1983 claims against UTHSC and the individual Texas Defendants in their official capacities.

Further, the individual Texas Defendants are entitled to Qualified Immunity from Plaintiff's § 1981 and § 1983 claims against them in their individual capacities. Qualified immunity protects state officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727 (1982); *Anderson v. Creighton*, 483 U.S. 635, 638-39 (1987). To determine if qualified immunity applies, a district court follows a two-step process. First, the court must determine whether the plaintiff has asserted a violation of a constitutional right. *Gutierrez v. City of San Antonio*, 139 F.3d 441, 445 (5th Cir. 1998)(*citing Siegert v. Gilley*, 500 U.S. 226, 231 (1991)); *Colston v. Barnhart*, 130 F.3d 96, 99 (5th Cir. 1997); *Morin v. Caire*, 77 F.3d 116, 120 (5th Cir. 1996). The second analytical step is to determine whether the official's actions were objectively reasonable. *Gutierrez*, 139 F.3d at 445; *Morin*, 77 F.3d at 120; *see also Anderson*, 483 U.S. at 639. The objective reasonableness of the official's conduct is measured with reference to the law as it existed at the time of the conduct in question. *Id.* "The subjective intent of the public official is irrelevant, and the official's knowledge of the relevant law need not rise to the level of a 'constitutional scholar.'" *Sanchez v. Swyden*, 139 F.3d 464, 466 (5th Cir.1998)(*quoting Harlow*, 457 U.S. at 815-17). The contours of the right must be sufficiently clear so that a reasonable official would understand that what he is doing violates that right. *See Johnston v. City of Houston*, 14 F.3d 1056, 1059 (5th Cir. 1994)(*citing Anderson*, 483 U.S. at 639). "The qualified immunity defense 'gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law.'" *Gibson v. Rich*, 44 F.3d 274, 277 (5th Cir. 1995)(*quoting Hunter v. Bryant*, 502 U.S. 224, 228 (1991)). If, upon viewing the evidence in the light most favorable to the nonmovant, reasonable public officials could differ on the lawfulness of a defendant's actions, the defendant is entitled to qualified immunity. *Id.*

Further, the second analytical step in the qualified immunity analysis is to determine whether the official's conduct was objectively reasonable. "[T]he caselaw must draw a bright line in order for the law to be classified as 'clearly established.'" *Sorenson v. Ferrie*, 134 F.3d 325, 328 (5th Cir. 1998). "For qualified immunity to be surrendered, pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law in the circumstances." *Id.* at 330 (*quoting Pierce v. Smith*, 117 F.3d 866, 882 (5th Cir. 1997)). "The qualified immunity defense 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Gibson v. Rich*, 44 F.3d 274, 277 (5th Cir. 1995) (*quoting Hunter v. Bryant*, 502 U.S. 224, 228, 112 S.Ct. 534, 537 (1991), *quoting Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 1096 (1986)).

Plaintiff cannot present any evidence that the Texas Defendants violated any clearly established statutory or constitutional rights of which a reasonable person would have known. Further, Plaintiff cannot present any evidence that all reasonable officials could have believed that the complained-of decisions of Miller and Perales violated Plaintiff's constitutional rights. Accordingly, the individual Texas Defendants, in their individual capacities, are entitled to Qualified Immunity on Plaintiff's § 1981 and § 1983 claims.

### D.  Plaintiff's 42 U.S.C. § 1985 Claim (Count 6)

Plaintiff contends that "Defendants . . . conspired to deprive plaintiff of equal protection rights of the laws . . .." *Plaintiff's First Amended Complaint* at 8. Plaintiff never states which Defendants were part of this alleged conspiracy. Because a university and its officials cannot conspire with itself in violation of 42 U.S.C. § 1985 (*Zentgraf v. Texas A&M University*, 492 F.Supp. 265, 272 (S.D. Tex 1980); *Chambliss v. Foote*, 421 F. Supp. 12, 14 (E.D. La. 1976), *aff'd*

7

562 F.2d 1015 (5th Cir. 1997)), any claim by Plaintiff that Perales and Miller conspired with UTHSC in violation of § 1985 fails as a matter of law.

Further, Eleventh Amendment immunity bars any claims against UTHSC and Perales and Miller in their official capacities brought under § 1985. *Baldwin v. University of Texas Medical Branch at Galveston*, 945 F.Supp. 1022, 1030 (S.D. Tex 1996); *see Section III.C., supra,* for a discussion of Eleventh Amendment immunity. In addition, Perales and Miller are entitled to Qualified Immunity in their individual capacities against any claims brought under § 1985. *See Section III.C., supra,* for a discussion of Qualified Immunity. Additionally, Plaintiff has no evidence of any conspiracy by the Texas Defendants - only conjecture, which is not proper summary judgment evidence. Plaintiff's 42 U.S.C. § 1985 claim against the Texas Defendants should be dismissed.

### E.   Plaintiff's 42 U.S.C. § 1986 Claim (Count 7)

Plaintiff alleges the Defendants refused and failed to prevent violations of his civil rights, and to prevent any conspiracy to so violate his rights. *Plaintiff's First Amended Complaint* at 9. For Plaintiff to prove a claim under § 1986, Plaintiff must first prove the existence of an actionable conspiracy under § 1985. *Lowden v. William M. Mercer, Inc.*, 903 F.Supp 212, 218 (D.Mass. 1995); *see* 42 U.S.C. § 1986. As stated above, Plaintiff cannot prove such a claim. Additionally, Plaintiff has no evidence that the Texas Defendants refused and failed to prevent violations of his civil rights, or refused or failed to prevent any conspiracy to violate his civil rights. Plaintiff's 42 U.S.C. § 1986 claim against the Texas Defendants should be dismissed.

### F.   Plaintiff's Claim Under the Federal Fair Housing Act, 42 U.S.C. § 3601 et seq. (Count 8)

Plaintiff claims that the Defendants treated him differently than similarly situated whites in the assignment of housing. *Plaintiff's First Amended Complaint* at 9. Plaintiff has not stated which

Case 1:01-cv-00210-SJD-TSB    Document 98    Filed 03/30/2005    Page 12 of 17

section of the Act that the Texas Defendants allegedly violated. Further, Plaintiff has failed to even attempt to allege facts that would tend to show that any whites were similarly situated and treated differently than Plaintiff with regard to housing. To prove a violation of the Act, Plaintiff must prove either discriminatory intent on the part of the Texas Defendants or disparate impact. *Gamble v. City of Escondido*, 104 F.3d 300, 304-05 (9th Cir. 1997). Plaintiff has no evidence of either discriminatory intent or disparate impact. In addition, the Act was enacted to bar all racial discrimination in the sale and rental of real property. *U.S. v. Henshaw Brothers, Inc.*, 401 F.Supp 399, 402 (D.C. Va. 1974); *see U.S. v. Hunter*, 459 F.2d 205 (4th Cir. 1972). Plaintiff was given free housing by the Mid Rio Grande Border Office of the Area Health Education Center. *Exhibit 2, Affidavit of Roger Perales* at 2; *Exhibit 3, Affidavit of Claudia Miller* at 2. Plaintiff engaged in neither the sale or rental of real property with any of the Texas Defendants. *Exhibit 3, Affidavit of Claudia Miller* at 2. Therefore, Plaintiff's Federal Fair Housing Act claim against the Texas Defendants should be dismissed.

    **G.    Plaintiff's Claims Under the Texas Bill of Rights (Count 15)**

Plaintiff brings numerous claims under the Texas Constitution, specifically, the Texas Bill of Rights. Unlike the relief provided under § 1983, no direct cause of action for damages exists under the Texas Constitution. *City of Beaumont v. Boullion*, 896 S.W.2d 143, 147 (Tex. 1995). The only available remedy for such actions is injunctive relief (*Id.*), and Plaintiff has not requested any injunctive relief from this Court on these claims. Accordingly, Plaintiff has no evidence that he can prevail on his claims against the Texas Defendants brought under the Texas Bill of Rights. Therefore, such claims should be dismissed against the Texas Defendants.

9

**H.    Plaintiff's Negligent Hiring, Supervision, and Retention Claims (Count 10)**

Unless the State has consented to be sued, it is immune from suit even for tortious acts. *Missouri Pac. R.R. v. Browns Navigation Dist.*, 453 S.W.2d 812, 813 (Tex. 1970). The doctrine of sovereign immunity shields the Texas Defendants from suit unless that sovereignty has been waived by the Texas Tort Claims Act. *City of Hempstead v. Kmiec*, 902 S.W.2d 118, 122 (Tex.App.–Houston [1st Dist.] 1995, no writ). The Texas Tort Claims Act only waives sovereign immunity in three general areas, including: use of publicly owned vehicles; premises defects; and injuries arising from conditions or use of property. *Id.* at 122 (citing TEX. CIV. PRAC. & REM. CODE § 101.021; *Salcedo v. El Paso Hosp. Dist.*, 659 S.W.2d 30, 32 (Tex. 1983)); *see also Univ. of Texas Medical Branch at Galveston v. York*, 871 S.W.2d 175, 177 (Tex. 1994). Plaintiff's negligent hiring, supervision, and retention claims do not invlove the use of publicly owned vehicles, premises defects, or injuries arising from conditions or use of property. Accordingly, the Texas Defendants are immune from suit against such claims.

Further, a claim for negligent hiring, retention, and supervision requires proof that the employer hired an incompetent or unfit employee whom it knew, or by the exercise of reasonable care should have known, was incompetent or unfit, thereby creating an unreasonable risk of harm to others. *E.R. Dupuis Concrete Co. v. Penn Mutual Life Insurance Co.*, 137 S.W.3d 311, 324 (Tex.App.–Beaumont 2004, no pet.). Plaintiff has no evidence on the aforementioned elements of these claims. Therefore, Plaintiff's claims of negligent hiring, retention, and supervision against the Texas Defendants should be dismissed.

I.  **Plaintiff's Misrepresentation and Educational Malpractice Claims (Count 11)**

Plaintiff's misrepresentation claim is a tort claim (*Memorial Hospital System v. Fisher Ins. Agency. Inc.*, 835 S.W.2d 645, 650-51 (Tex.App.–Houston [14th Dist] 1992, no writ)), and therefore, is barred by sovereign immunity. *See Section III, H, infra* for a discussion of sovereign immunity and tort claims. Further, educational malpractice is not a legally cognizable claim. Simply stated, a cause of action for educational malpractice does not exist in Texas, and therefore, such a claim may not be asserted against the Texas Defendants. Accordingly, because Plaintiff cannot supply any evidence that would substantiate these claims, such claims must be dismissed against the Texas Defendants.

J.  **Plaintiff's Defamation, Invasion of Privacy, Trespass, & Intentional Infliction of Emotional Distress Claims (Counts 12, 13, & 14)**

The Texas Tort Claims Act specifically does not waive immunity for intentional torts. TEX. CIV. PRAC. & REM. CODE § 101.057(2). The Texas Tort Claims Act "does not apply to a claim: (2) arising out of assault, battery, false imprisonment, or any other intentional tort . . ." *Id; see also Hawsey III v. Louisiana Dep't of Social Servs.*, 934 S.W.2d 723, 726 (Tex. App.–Houston [1st Dist.] 1996, writ denied)("In Texas, governmental immunity is not waived for intentional torts . . . ."). Defamation, invasion of privacy, trespass, and intentional infliction of emotional distress are all intentional torts under Texas caselaw. *University of Texas Medical Branch at Galveston v. Hohman*, 6 S.W.3d 767, 777-78 (Tex.App.--Houston [1 Dist.]1999, pet. dism'd w.o.j.)(*citing Billings v. Atkinson*, 489 S.W.2d 858, 860-61 (Tex.1973)) (invasion of privacy); *City of Hempstead v. Kmiec*, 902 S.W.2d 118, 122 (Tex.App.--Houston [1st Dist.] 1995, no writ) (defamation); *Harris County v. Cypress Forest Public Utility Dist.*, 50 S.W.3d 551, 553 (Tex.App–Houston [14th Dist] 2001, no pet.) (trespass); *Univ. of Texas Medical Branch at Galveston v. Hohman*, 6 S.W.3d 767, 777

11



(Tex.App.–Houston [1st Dist.] 1999, pet. dism'd w.o.j.) (intentional infliction of emotional distress). Accordingly, the Texas Defendants are immune from suit against such claims. Plaintiff can produce no evidence to overcome the Texas Defendants' immunity from such claims, and therefore, such claims should be dismissed.

**K.     Plaintiff's Claims of Negligence, Nuisance, & Premises Liability (Count 9)**

For these claims, Plaintiff alleges that the Texas Defendants' "actions naturally, directly and proximately caused plaintiff's injuries." *Plaintiff's First Amended Complaint* at 9. Plaintiff is alleging that the Texas Defendants, by their actions, caused his injuries. Plaintiff has failed to plead a valid cause of action under the Texas Tort Claims Act for his negligence and nuisance claims. Negligence and nuisance actions are tort claims (*Meyer v. Shelley*, 34 S.W.3d 619, 624 (Tex.App.–Amarillo 2000, no pet.) (negligence is a tort); *OXY USA, Inc. v. Cook*, 127 S.W.3d 16, 20 (Tex.App.–Tyler 2003, pet. denied) (nuisance is a tort)), and the Texas Defendants have sovereign immunity from such claims (*see Section III, H, infra*, for sovereign immunity and tort claims discussion). Plaintiff can present no evidence to overcome the Texas Defendants' immunity from Plaintiff's negligence and nuisance claims. Accordingly, those claims must be dismissed against the Texas Defendants.

Plaintiff also alleges a premises liability claim, but here again, he pleads that somehow the actions of the Texas Defendants caused his injuries. Because Plaintiff did not pay for use of the complained-of premises, the Texas Defendants owed Plaintiff the same duty a private person owes to a licensee on private property. TEXAS CIVIL PRACTICE & REMEDIES CODE § 101.022(a) (Vernon 1997); *Thompson v. City of Corsicana Housing Auth.*, 57 S.W.3d 547, 552 (Tex.App.–Waco 2001, no pet.). For Plaintiff to prevail on his claim as a licensee, he must prove: (1) a condition of the

premises posed an unreasonable risk of harm to him; (2) the owner had *actual* knowledge of the condition; (3) Plaintiff had no knowledge of the defective condition; (4) the Texas Defendants failed to exercise ordinary care to protect Plaintiff from danger; and (5) such failure was a proximate cause of injury to Plaintiff. *Thompson*, 57 S.W.3d at 552-53. Plaintiff has no evidence on any of the above-mentioned elements. Accordingly, Plaintiff's premises liability claim against the Texas Defendants must be dismissed.

## IV.
## CONCLUSION

For the foregoing reasons, the Texas Defendants respectfully request that this Court grant their No Evidence Motion for Summary Judgment.

Respectfully submitted,

GREG ABBOTT
Attorney General of Texas

BARRY R. McBEE
First Assistant Attorney General

EDWARD D. BURBACH
Deputy Attorney General of Litigation

JEFF L. ROSE
Chief, General Litigation Division

JOHN M. GREY
Assistant Attorney General
Texas Bar No. 24012735
General Litigation Division
300 W. 15th Street, 11th Floor

13

Austin, Texas 78701
(512) 463-2120
(512) 320-0667 FAX

ATTORNEYS FOR DEFENDANTS

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument has been sent via certified mail, return receipt requested on this, the 25th day of March, 2005, to:

Mr. Darlington Amadasu
*Pro Se* Plaintiff
P O Box 6263
Cincinnati, Ohio 45206

*Regular Mail*
Mr. Justin Flamm
Taft, Stettinius & Hollister
425 Walnut
Cincinnati, Ohio 45202

_____
JOHN M. GREY
Assistant Attorney General

14