UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

05 JUN 10 PM 2: 48

DARLINGTON AMADASU
      Plaintiff

Case No:  C - 1- 01 - 210
Black/Dlott

-v-

JAMES R. DONOVAN, MD, et al
      Defendants

**SUPPLEMENTAL MEMORANDUM IN SUPPORT OF PLAINTIFF'S COMBINED CROSS-MOTION FOR SUMMARY JUDGMENT & OPPOSITIONS TO ALL DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT; & SUPPLEMENTAL DECLARATION MOTION TO STRIKE DECLARATION OF DONOVAN**

THIS SUPPLEMENTAL MEMORANDUM IS INCORPORATED WITH PLAINTIFF'S INITIAL COMBINED CROSS-MOTION FOR SUMMARY JUDGMENT & OPPOSITION TO ALL DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT AS WELL AS SUPPORTED BY:

1. The Pleadings
2. 1st deposition of Amadasu by Ohio defendants
3. 2nd deposition of Amadasu by Texas defendants
4. Defendants' evasive/ambiguous/incomplete/none answers to plaintiff's interrogatories
5. Defendants' evasive/ambiguous/incomplete/none answers to plaintiff's Admissions
6. Declaration of Amadasu in support of plaintiff's combined cross-motion for summary judg.
7. Exhibits
8. Initial Memorandum

MOTION TO STRIKE DECLARATION OF JAMES R. DONOVAN...........Page 36

Respectfully submitted,

Darlington Amadasu
Plaintiff Lay Pro Se
P.O. Box 6263
Cincinnati, OH 45206
(513) 207-9010

## TABLE OF CONTENTS

Page

SUPPLEMENTAL MEMORANDUM IN SUPPORT OF COMBINED
CROSS-MOTION FOR SUMMARY JUDGMENT and COMBINED
OPPOSITION TO DEFENDANTS' SUMMARY JUDGMENT MOTIONS.........................................1

**COUNT 9**

    (A) Negligence Against Ohio and Texas Defendants.........................................................1

    (B) Nuisance, Premises Liability Against Texas Defendants.........................................3

**COUNT 16**

No Genuine Issues of Material Fact Exist As To Plaintiffs Title VII Race
and National Origin Disparate Treatment Discrimination Claim Making
Summary Judgment For Plaintiff Proper; Alternatively, Genuine Issues of
Material Facts Exist Making Summary Judgment Improper For Defendants.......................4

**Standard for analysis and determination of prima facie case**.............................................4

**COUNT 17 (Title VII)**

No Genuine Issues of Material Fact Exist As To Plaintiff's Hostile Environment;
Racial & Sexual Harassment Claim Making Summary Judgment For
Plaintiff Proper; Alternatively, Genuine Issues of Material Facts Exist
Making Summary Judgment Improper For Defendants...............................................13

**COUNT 26 (Title VII)**

No Genuine Issues of Material Fact Exist As To Plaintiff's Retaliation Claim
Making Summary Judgment Proper For Plaintiff, Alternatively, Disputed Issues
of Material Facts Exist For Jury, Making Judgment Improper For Defendants.................20

PLAINTIFF'S SPECIFIC RESPONSES TO DEFENDANTS' SUMMARY JUDGMENT MOTIONS..........23

Defendants' Summary Judgment Motions Are Full of Lies, Misstatement,
Misrepresentation of, Contradicting & Inconsistent Facts Thus, Must be discredited...........23

Inconsistencies, Contradictions, Lies, Fraud, Misrepresentation in
    Donovan's Declaration.........................................................................................29
Defendants have credibility problem precluding summary judgment in their favor..............35

MOTION TO STRIKE DECLARATION OF JAMES R. DONOVAN....................................36
Defendants supported their summary judgment motion with perjured memorandum
and declarations made in bad faith precluding summary judgment; and
invoked striking declarations and contempt against defendants....................................36

Defendants' summary judgment motions unsupported by pleadings,
legal theories & Evidence.......................................................................................37

Defendants' motions entirely based on issue by speculation, rumors, subjective beliefs........37

Defendants' declaration and affidavits are inadmissible because they are based on hearsay, rumors, innuendo, conclusory allegations and subjective speculative beliefs....................37

Donovan set up Amadasu to fail and or to frame him up as pretext for discrimination..........38

CONCLUSIONS...................................................................................................38

CERTIFICATE OF SERVICE..............................................................................38

## CASE LAWS & AUTHORITIES

Abrams v. Johnson, 534 F.2d 1226, 1230-31 (6th Cir.1976)...........................................7

Aka v. Washington Hosp. Ctr., 156 F.3d 1284,1298 (D.C. Cir. 1998)...........................5,9

Allen v. Mich. Dep't of Corrections, 165 F.3d 405, 412 (6th Cir. 1999)...........................20

Anders v. National R.R. Passenger Corp., 898 F.2d 1127, 1134(6th Cir. 1990)..................20

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)...........................................12

Bausman v. Interstate Brands Corp., 50 F.Spp.2d 1028 (D.Kan.1999)...............................37

Biskupich v. Westbay Manor Nurs. Home, 33 Ohio App.3d 220, 515 NE.2d 632 (19986)..............34

Brown v. Ass Computing Center, 519 F. Supp. 1096, 1116-17 (S.D. Ohio 1981).......................21

Burlington Indus., Inc. v. Ellerth, 524 US 742, 761(1998)...............................................7,14

Burrus v. United Telephone Co., 683 F.2d 339, 342 (10th Cir. 1982)...................................21

Cincinnati Bd of Educ. V. Armstrong World Indus., 1992 Ohio App. LEXIS 5465......................37

Cline v. Catholic Diocese of Toledo, 206 F.3d 651, 660-61 (6th Cir. 2000)..............................4

Cobell v. Norton, 214 FRD 13, 20 (DDC.2003)..........................................................36

Cooper v. City of North Olmsted, 795 F.2d 1265, 1272 (6th Cir. 1986)...........................21,23

Craiy v. Liberty National Bank & Trust Co. of Indiana, 993 F.2d 132, 136 (7th Cir. 1993)..............22

Cumber v. Cumber, 326 NW2d 194(ND)..................................................................37

Davis v. Monsanto Chem. Co., 858 F.2d 345 (6th Cir. 1988)...............................................17

Dister v. Cont'l Group, Inc., 859 F.2d 1108, 1116 (2d Cir. 1988)........................................9

Dresher v. Burt, 75 Ohio St.3d 280, 292 (1996)...........................................................13,14

EEOC v. California Micro Devices Corp., 869 F.Supp.767 (D.Ariz.1994)...............................34

E.E.O.C. v. Yenkin-Majestic Paint Corp., 112 F.3d 831, 835 (6th Cir.1997)..............................8

Efting v. Tokai Corp., 75 F.Supp.2d 1006...................................................................2

Ennes v. Cottrell, Inc., 68 F.Supp.2d 747 (1999).............................................................2

Ercegovich, 154 F.3d at 352 (6th Cir.1998)...........................................................7,12

Faragher v. City of Boca Raton, 524 U.S. 775 (1998)...................................................14,18

Gordon v. New York City Bd. of Educ., 232 F.3d 111, 113 (2d Cir. 2000)...........................22

Grant v. Bethlehem Steel Corp., 622 F.2d 43, 46 (2nd Cir. 1980)....................................22

Guerra v. Manchester Term. Corp., 498 F.2d 641 (5th Cir.1974)....................................11

Hafford v. Seidner, 183 F.3d 506, 512 (6th Cir.1999).................................................13

Harris v. Forklift Sys., Inc., 510 U.S. 17, 21, 114 S.Ct. 367 (1993)..................................14

Harrison v. Associates Corp. of North America, 917 F.2d 195 (5th Cir.1990).....................35

Harrison v. Metropolitan Government of Nashville and Davidson County, Tennessee,
        80 F.3d 1107, 1118 (6th Cir. 1996)...........................................................23

Hinson v. U.S., 55 F.Supp.2d 1376.........................................................................3

Hogan v. Field Container Corp., 145 Ohio App.3d 446 (3rd Dist. 2001)...........................17

Hollins v. Atlantic Co., Inc., 188 F.3d 652, 661 (6th Cir. 1999)......................................20

Howard v. Howard, 234 Neb 661, 452 NW2d 283.....................................................37

Ingram v. West, 70 F.Supp.2d 1033 (W.D.Mo.1999).................................................20

In re Lewis, 845 F.2d 624, 633 (6th Cir. 1988)...........................................................8

Jaisan, Inc. v. Sullivan, 178 FRD 412, 415-16 (SDNY.1998).........................................36

Jones v. Butler Metro. Hous. Authority, 2002 WL 1455329 (6th Cir.2002)........................29

Juarez v. Wavecrest Mgt. Team, 88 NY2d 628, 646 (1996).........................................3

Kahan v. U.S., 73 F.Supp.2d 1172 (1999)...............................................................3

Kearns v. Minnesota Mut. Life Ins. Co., 75 F.Supp.2d 413 (1999)..................................2

Klein v. Stahl GMBH & Co. Maschinefabrik, 185 F.2d 98, 110 (3d Cir.1999).....................36

Kline v. Tennessee Valley Authority, 128 F.3d 337, 348 (6th Cir.1997)............................7

Kocsis v. Multi-Care Management, Inc., 97 F.3d 876, 886 (6th Cir. 1996).........................22

Kusmirek v. MGM Grand Hotel, Inc., 73 F.Supp.2d 1222 (D.Nev.1999)..........................3

Leaman v. Ohio Dept. of Mental Retardation & Dev. Disabilities, 825 F2d 946
        (6th Cir.1987), cert denied, 487 US 1204 (1988)...........................................28

Loeb v. Textron, Inc., 600 F.2d 1003, 1012 n.6 (1st Cir. 1979).......................................9

Love v. RexMax ofAmerica, Inc., 738 F.2d 383, 386 (10th Cir. 1984)..............................22

Luttjohann v. Goodyear Tire and Rubber Co., 938 F.Supp.694 (D.Kan.1996)....................33

MacDonald v. E. Wyo. Mental Health Ctr., 941 F.2d 1115, 1121 (10th Cir. 1991)................5

Maker v. Foley, 274 F.3d 677 (2d Cir.2001)............................................................35

Malone v. K-Mart Corp., 51 F.Supp.2d 1287 (1999)............................................................15

Manzer v. Diamond Shamrock Chemicals Co., 29 F.3d 1078, 1084 (6th Cir. 1994)......................8

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)............................12

Mauzy v. Kelly Servs., Inc., 75 Ohio St.3d at 582.............................................................11

McDonnell Douglas Corp. v Green, 411 U.S. 792, 802 (1973)..........................................4,12

McGahee v. Kennedy, 48 NY2d 832 (1979)...................................................................34

Miller v. Fairchild Industries, Inc., 797 F.2d 727, 731-32 (9th Cir. 1986)................................22

Mitchell v. Toledo Hosp., 964 F.2d 577, 584-85 (6th Cir.1992)...........................................38

Monteiro v. Temple Union High Sch. Dist, (9th Cir.1998) 158 F.3d 1022................................16

Moon v. Transport Drivers, Inc., 836 F.2d 226 (6th Cir. 1987)............................................21

Moon v. Winger Boss Co., 205 Neb 292, 287 NW2d 430.....................................................37

Moore v. Holbrook, 2 F.3d 697, 699 (6th Cir.1993)..........................................................37

Munoz v. Orr, 200 F.3d 291(5th Cir.2000).......................................................................4

Orr v. Bank of America, NT & SA, 285 F.3d 764, 773-74 (9th Cir.2002)..................................34

Pace v. IBM, Corp., 670 NYS2d 543)..............................................................................35

Perez v. Volvo Car Corp., 247 F.3d 303, 315-16 (1st Cir.2001)............................................37

Penn v. Schlesinger, 490 F.2d 700 (5th Cir.1973)..............................................................11

Peskin v. NYC Transit Auth. 757 NYS2d 594 (2003), citing

    (Smith v. AT&T Resource Mgt. Corp., 686 NYS2d 95)...............................................35

Peters v. Lincoln Elec. Co., 285 F.3d 456 (6th Cir.2002).....................................................11

Pitman v. Aran., 935 F.Supp.637 (D.Md.1996)...................................................................33

Provident Bank v. Hartman, 2001 WL605404 (OhioApp.8 Dist.)...........................................34

Rechardson v. N.Y.S. Dept. of Correctional Service, 180 F.3d 426.......................................15

Reeves v. Sanderson Plumbing, 120 S. Ct. 2097, 2108-09 (2000)..........................................13

Robinson v. Jacksonville Shipyards, Inc., 760 F. Supp. 1486, 1524 (1991)................................16

Rogers v. AC Humko Corp., 56 F.Supp.2d 972 (WD.Tenn.1999)...........................................36

Romano v. Stanley, 90 NY2D 444 (1997).......................................................................34

Rutherford v. Harris County, Tex., 197 F.3d 173 (5th Cir.1999)............................................4

Ryther v. KARE 11, 108 F.3d 832, 840 (8th Cir. 1997).......................................................9

Serrano-Cruz v. DFI Puerto Rico, Inc., 109 F.3d 23, 26 (1st Cir.1997)...................................38

Shager v. Upjohn Co., 913 F.2d 398, 405 (7th Cir.1990).....................................................38

Shurr v. A.R. Siegler, Inc., 70 F.Supp.2d 900...................................................................2

Simon v. City of Youngstown, 73 F.3d 68, 70 (6th Cir. 1996)................................................4

iv

Smith v. Chrysler Corp., 155 F.3d 799, 807 (6th Cir. 1998)...................................................8

Smith v. City of Dayton, 830 F.Supp. 1066, 1076 (S. D. Ohio 1993)...................................20

St. Mary's Honor Center v. Hicks, 509 U.S. 502 (1993)......................................................12

Stacks v. Southwestern Bell Yellow Pages, Inc., 27 F.3d 1316, 1325-25 (8th Cir.1994)................38

Stalter v. Wal-Mart Stores, Inc., 195 F.3d 285 (7th Cir.1999)...............................................28

State ex rel. Freeman v. Morris, 62 Ohio St.3d 107, 579 NE.2d 702 (1991).............................34

Summers v. Allis Chalmers, 568 F.Supp. 33, 37 (N.D. Ill. 1983)...........................................23

Swanson v. Leggett & Platt, Inc., 154 F.3d 730, 733 (7th Cir.1998)......................................35

Talley v. Bravo Pitino Restaurant, Ltd, 61 F.3d 1241, 1246 (6th Cir.1995)..............................4

Texas Dep 't of Community Affairs v. Burdine, 450 U.S. 248, 252-53 (1981)............................4

Taygeta Corp. v. Varian Associates, Inc., 763 N.E.2d 1053 (2002).......................................3

Thomas v. Washington County Sch. Bd. 915 F.2d 922...................................................15

Turner v. Turner, 67 Ohio St.3d 337, 617 NE.2d 1123 (1993)............................................35

Vaugh v. Pool Offshore Co., 678 F. 2d 922, 925 (5th Circ. 1982)........................................19

Waite v. American Airlines, Inc., 73 F.Supp.2d 349 (SDNY 1999)......................................1,3

Wexler v. White's Fine Furniture, 317 F.3d 564 (6th Cir.2003)..........................................4,8

Williams v. General Motors Corp. 187 F.3d 553 (C.A. 6 Ohio 1999).........................13,15,16,19

Womack v. Munson, 619 F.2d 1291, 1296 (8th Cir. 1980)................................................24

Wrenn v. Gould, 808 F.2d 493 (6th Cir.1987)..............................................................20

Zaklama v. Mt. Sinai Medical Center, 842 F.2d 291(11th Cir.1988)..................................10,11

Ziolkowski v. Caterpillar, Inc., (E.D. Wis.1992) 800 F.Supp. 767, affirmed 996 F.2d 1220............33

Zorn v. Helen Curtis, Inc., 903 F.Supp.1226 (ND Ill.1995)................................................35

## STATUTES/RULES

FRCP 56(e)...............................................................................................10,33,37

FRCP 56(g)...................................................................................................36

Title VII....................................................................................................4,9,10,28

18 USCA 1623.................................................................................................37

42 USC 1981..................................................................................................11

42 USC 1983..................................................................................................28

42 USC 2000e et seq.............................................................................................9

42 USC 2000e-(2)(d)...........................................................................................10

Ohio Revised Code 2743.02(A)(1)...........................................................................28

ACCREDITATION BOARD & MISC.

ABPM.................................................................................1,2,10,21,24,25,29,31

ACGME.............................................................................1,2,7,10,21,24,25,29,31,33

JCAHO.....................................................................................................1,2,21,29

Restatement of Agency, Second, Chap.14.....................................................................3

Restatement of Law, Second, Torts, Section 314 B..........................................................3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

DARLINGTON AMADASU
    Plaintiff

-V-

JAMES R. DONOVAN, MD, et al
    Defendants

Case No: **C - 1- 01 - 210**
Black/Dlott

SUPPLEMENTAL MEMORANDUM IN SUPPORT OF
PLAINTIFF'S COMBINED CROSS-MOTION
FOR SUMMARY JUDGMENT & COMBINED
OPPOSITIONS TO ALL DEFENDANTS' MOTIONS
FOR SUMMARY JUDGMENT; and SUPPLEMENTAL
DECLARATION OF AMADASU IN SUPPORT

### SUPPLEMENTAL MEMORANDUM IN SUPPORT OF COMBINED
### CROSS-MOTION FOR SUMMARY JUDGMENT and COMBINED
### OPPOSITION TO DEFENDANTS' SUMMARY JUDGMENT MOTIONS

  This supplemental memorandum and supplemental declaration of Amadasu are incorporated by reference with plaintiff's initial memorandum, initial declaration, the exhibits, depositions of Amadasu, defendants' answers to plaintiff's interrogatories and admissions requests as well as the pleadings, all of which have been filed.

### COUNT 9
**(A) Negligence Against Ohio and Texas Defendants**
**(B) Nuisance, Premises Liability Against Texas Defendants**

#### A) Negligence Against Ohio and Texas Defendants

  Plaintiff can establish a prima facie case of the elements of negligence that: (1) defendants owed plaintiff duty of care; (2) defendant breached duty of care owed to plaintiff; (3) the breach of that duty was the proximate cause of plaintiff's injuries; and (4) plaintiff suffered damages. Waite v. American Airlines, Inc., 73 F.Supp.2d 349 (SDNY 1999). Defendants have duty or obligation recognized and established by JCAHO, ACGME, ABPM and their own bylaws, rules, regulations, policies and procedures to conform to certain standards of conduct, they failed to conform to the

1

standard required thereby causing plaintiff injuries, and as a result of which plaintiff suffered damages. See Kearns v. Minnesota Mut. Life Ins. Co., 75 F.Supp.2d 413 (1999)

By contracts, UC, UCMC and UTHSCSA adopted the standards of JCAHO, ACGME, and ABPM into their rules, policies and procedures (Byelaws) as condition precedent for accreditation and reimbursement for its services thereby assume duty, obligation and responsibilities, which they owed to plaintiff as the beneficiary. The duties include among others, compliance with the standards, providing accepted residents and Amadasu with the GME-Contract, stipend, benefits package, non-hostile work environment, grievance procedures and due process, which they breached by failing to provide Amadasu with those benefits thereby injured Amadasu by not having full stipend payment, full benefits package (Ex.97 p.13-18). Miller owed plaintiff duty of care to provide him with free transportation, STEER rotation calendar and safe healthful housing, and to supervise him during his clinical rotation at UTHSCSA but she breached those duties thereby injured plaintiff.

Donovan, Lockey, Freeman and Middaugh, program directors or faculty members of OMRP under the accreditation bodies' standards owed plaintiff duty of care to render grades and written evaluations for plaintiff's courses and clinical rotations taken under them and graduate plaintiff from the program in a timely and correct manner (Ex.97 p.18-20; 98-100) but they breached those duties thereby proximately caused plaintiff mental, physical, emotional and economic injuries, thus, plaintiff suffered damages. Donovan and Miller owe plaintiff duty of care to investigate, analyze complaint or information passed onto them before rushing to subjective judgment and action that caused harm to plaintiff. They breached that duty of reasonable care owed to plaintiff that proximately caused plaintiff injuries resulting in his damages.  Defendants had statutory, constitutional and common law duty of care to plaintiff to obey federal and state anti-discrimination laws and the bylaws of their employers but they breached those legal and common law duties and proximately caused plaintiff injuries.

All persons have a general duty to act in a reasonable fashion so as to avoid harming others. Ennes v. Cottrell, Inc., 68 F.Supp.2d 747 (1999). So long as some loss to person or property is foreseeable from an act or omission, negligence is established. Shurr v. A.R. Siegler, Inc., 70 F.Supp.2d 900. When party does assume duty, it is held to standard of using reasonable care. Efting v. Tokai Corp., 75 F.Supp.2d 1006.

2

Plaintiff has presented a prima facie case of negligence, specific facts and evidence in the record that prove the elements, thus, plaintiff is entitled to judgment as matter of law.

**(B)    Nuisance, Premises Liability Against Texas Defendants**

Plaintiff can establish a prima facie case of nuisance and premises liability claim that defendants (1) have a duty to use reasonable care for the safety of all persons reasonably anticipated to be on the premises; (2) breach that duty when they have actual, constructive, or should reasonably have knowledge of the unsafe conditions in the premises that prevent the use and enjoyment of the premises and failed to correct them; (3) the breach was the proximate cause of plaintiff's injuries; and (4) plaintiff suffered damages. Kahan v. U.S., 73 F.Supp.2d 1172 (1999); Juarez v. Wavecrest Mgt. Team, 88 NY2d 628, 646 (1996).

It is undisputed that defendants have a duty of care to maintain safe premises for plaintiff during the relevant period. The unsafe and unhealthful conditions in the premises constituting nuisance are set forth in the complaint (Doc.51 at #26-29, 72-74). Defendants have actual, constructive or should reasonably have knowledge of their existence but neglected to fix them thereby proximately caused plaintiff injuries and damages. (Ex. 112-113)

A private nuisance is actionable when a property owner creates, permits, or maintains a condition or activity on its property that causes unreasonable interference with use and enjoyment of the property. Taygeta Corp. v. Varian Associates, Inc., 763 N.E.2d 1053 (2002). The purpose of a private nuisance action is to obtain a remedy for interference with the use of the property—Id.

There is a common law duty to use reasonable care to maintain a premises in a reasonably safe condition for all foreseeable persons who may come on to a premises and for foreseeable uses—Id, Waite 73 F.Supp.2d 349 (SDNY 1999). Proprietor owes invitee duty to use reasonable care to keep premises in reasonably safe condition for use. Kusmirek v. MGM Grand Hotel, Inc., 73 F.Supp.2d 1222 (D.Nev.1999). A landowner owes an invitee the legal duty to maintain the premises in a reasonable safe condition. Hinson v. U.S., 55 F.Supp.2d 1376. Here, plaintiff was defendants' invitee

An employer has an affirmative duty to protect its employee against the conduct of third person, see, *Restatement of Agency, Second, Chap.14*; as for a duty of an employer to his employee, see *Restatement of Law, Second, Torts, Section 314 B.*

3

## COUNT 16
**No Genuine Issues of Material Fact Exist As To Plaintiffs Title VII Race and National Origin Disparate Treatment Discrimination Claim Making Summary Judgment For Plaintiff Proper; Alternatively, Genuine Issues of Material Facts Exist Making Summary Judgment Improper For Defendants.**

Title VII, plaintiff bears the initial burden of establishing a prima facie case of discrimination by a preponderance of the evidence. See McDonnell Douglas Corp. v Green, 411 U.S. 792, 802 (1973); Simon v. City of Youngstown, 73 F.3d 68, 70 (6th Cir. 1996). Plaintiff can show prima facie case elements of disparate treatment discrimination that plaintiff: (1) is a member of the protected class under Title VII; (2) was qualified for the job and training that he held during the time in question; (3) suffered an adverse employment and training actions; and (4) that he was treated differently than similarly-situated individuals who were not members of her protected class, or others similarly situated were more favorably treated. Texas Dep 't of Community Affairs v. Burdine, 450 U.S. 248, 252-53 (1981); Rutherford v. Harris County, Tex., 197 F.3d 173 (5th Cir.1999); McDonnell Douglas Corp., 411 U.S. at 802-03; Talley v. Bravo Pitino Restaurant, Ltd, 61 F.3d 1241, 1246 (6th Cir.1995) Establishing these elements creates a presumption that the employer unlawfully discriminated against the employee or trainee. Texas Dept of Comm. Affairs v. Burdine, 450 US 248, 252-53, 101 S.Ct. 1089 (1981). "Disparate treatment" in violation of Title VII is deliberate discrimination in terms or conditions of employment (and training) on account of race, national origin, or gender." Munoz v. Orr, 200 F.3d 291(5th Cir.2000).

### Standard for Analysis and Determination of *Prima Facie* Case

The Sixth Circuit in Wexler v. White's Fine Furniture, 317 F.3d 564 (6th Cir.2003) held, "A court may not consider the employer's alleged nondiscriminatory reason for taking an adverse employment action when analyzing the prima facie case. To do so would bypass the burden-shifting analysis and deprive the plaintiff of the opportunity to show that the nondiscriminatory reason was in actuality a pretext designed to mask discrimination. (quoting Cline v. Catholic Diocese of Toledo, 206 F.3d 651, 660-61 (6th Cir. 2000) ("[W] hen assessing whether a plaintiff has met her employer's legitimate expectations at the prima facie stage of a termination case, a court must examine plaintiffs evidence independent of the nondiscriminatory reason 'produced' by the defense as its reason for terminating plaintiff.")."

**First prong:** Here, it is undisputed that plaintiff is a member of a protected class and suffered adverse employment and training actions. He clearly has come forward with sufficient facts and preponderance of evidence to prove that he was qualified for the job and that he suffered disparate

4

treatments in the conditions, terms and benefits of the employment and training at the time in question. Accordingly, defendants are not entitled to judgment as a matter of law with respect to plaintiff's race, and national origin disparate treatment discrimination claims. But plaintiff is entitled to judgment as a matter of law because he presented heavily one-sided credible preponderance of evidence

### Standard for Second Prong-Qualification of The Prima Facie Test

The Sixth Circuit in Wexler, Id, supra, has set forth a standard for evidence relevant to question of whether an employee is qualified for the relevant job when it held: "Given the district court's confusion regarding what evidence was relevant to the question of whether *Wexler* was qualified, we take this opportunity to explicitly set forth what is required for a plaintiff to satisfy the qualification prong of the *prima facie* test. At the prima facie stage, a court should focus on a plaintiff's *objective* qualifications to determine whether he or she is qualified for the relevant job. See Aka v. Washington Hosp. Ctr., 156 F.3d 1284,1298 (D.C. Cir. 1998) (en banc) (noting that "courts traditionally treat explanations that rely heavily on subjective considerations with caution," and that "an employer's asserted strong reliance on subjective feelings about the candidates may mask discrimination"); MacDonald v. E. Wyo. Mental Health Ctr., 941 F.2d 1115, 1121 (10th Cir. 1991) (holding that a plaintiff can show that she is qualified by presenting "credible evidence that she continued to possess the objective qualifications she held when she was hired") (emphasis added).

The *prima facie* burden of showing that a plaintiff is qualified can therefore be met by presenting credible evidence that his or her qualifications are at least equivalent to the minimum objective criteria required for employment in the relevant field. Although the specific qualifications will vary depending on the job in question, the inquiry should focus on criteria such as the plaintiff's education, experience in the relevant industry, and demonstrated possession of the required general skills."

### Plaintiff can prove second prong that he is qualified:

With respect to the second element plaintiff is qualified for the various positions that he applied for. (Amadasu Decln. #13; Ex.55-61). Defendants did not dispute that Amadasu met the minimum objective qualification under Wexler court, Id, supra.

Based on the Sixth Circuit Ruling on qualification prong of the prima facie test, in Wexler, *Id. supra*, plaintiff satisfies the objective qualification prong because his qualifications are at least equivalent to the minimum objective criteria required for employment in the relevant field of (1) Health Promotion adjunct faculty position; (2) second year (PGY-2) position in Family Practice Residency Training Program (FPRP); (3) Chief Resident (CR) position in Occupational and Environmental Medicine Residency Program (OEMRP) Plaintiff has education, training and

5

experience in the relevant industry, and demonstrated possession of the required general skills. Defendants did not dispute that plaintiff was not qualified for the positions, particularly the FPRP. Ohio defendants rated plaintiff's qualifications "good to superior" (Ex.55-61). Plaintiff has education, knowledge, teaching skills and experience in health promotion, which is an essential part of the disciplines of medicine and public health and Amadasu has M.D. and M.P.H. degrees in them respectively.

**Third Prong: Adverse Employment and Training Action:**

Plaintiff excluded with stigmatization plaintiff from UTHSCSA training program without just cause and due process; Ohio defendants denied plaintiff contract, stipend, benefits, grades, written evaluations, graduation, transcript, verification of attendance, promotion, hire, subjected him to barrage of serial sexual and racial harassment, hostile work environment, undue debt collection activities, etc.

**Fourth Prong-Disparate Treatment:**

**Plaintiff Can Prove That He Was Treated Less Favorably In The Terms and Conditions of Employment and Training Than Similarly Situated Non-protected (1) Medical Residents in General; (2) OEMR in Particular AT UCMC; (3) Trainee-Participants at UTHSCSA-STEER**

**(1) Plaintiff was treated unfavorably different than similarly situated other medical residents from non protected class who were favorably treated At UCMC & UTHSCSA**

All medical residents in all Accreditation Council for Graduate Medical Education (ACGME) accredited residency programs regardless of the specialties are mandatorily entitled to and must be given Graduate Medical Education Contract (GME-Contract), stipend and full benefits package by the sponsoring institution---here, UCMC. (Ex.6-7, 97-100; & Amadasu Decln. #). UCMC gave all the medical residents the mandatory GME-contract, full stipend and the full benefits thereof except the plaintiff who was denied because of his race and national origins. (Amadasu Decln. # 11-12). Ohio defendants admitted and acknowledged that they denied plaintiff his rightful GME-contract, full and benefits package (Donovan Decln. #3, 12), thus constituting **direct evidence** of disparate treatment. Plaintiff respectfully refers the court to Amadasu memorandum and declaration for more disparate treatments facts and evidence.

**(2) Plaintiff was treated unfavorably different than similarly situated OEMRs from non protected class who were favorably treated**

Plaintiff and other OEMRs who were similarly situated had the same faculty members and the same supervisors and were subject to the same terms, conditions and standards but plaintiff the only

6

black in the program was unfavorably treated differently in the terms and conditions of the residency. See Ercegovich, 154 F.3d at 352 (6th Cir.1998). Those similarly situated OEMRs were treated favorably than plaintiff because, *inter alia*, they timely received grades and written evaluations; got full stipend, all the benefits package; were timely graduated from the program; their transcripts were not blocked; were not required to pay tuition; were not stigmatized; were promoted; were not harassed, threatened, intimidated and vexed by debt collectors, etc. See (Amadasu Declaration, e.g., #10-12, 15-17, 21, 62, 77-79) and memorandum for more disparate treatment facts.

The Supreme Court has explained that a "tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." Burlington Indus., Inc. v. Ellerth, 524 US 742, 761(1998). Accordingly, plaintiff suffered tangible employment and training actions, *inter alia*, failing to promote, significant change in salary and benefits, demotion; firing from training program, failing to graduate from program, etc. See (Amadasu Declaration & Exhibits)

Amadasu has presented a prima facie case of disparate treatment for failure to promote by showing that (1) he is a member of the protected class; (2) he applied for and was qualified for the position he thought; (3) he was considered for and subsequently denied the position; and (4) another junior employee who was not in the protected class received the promotion. Abrams v. Johnson, 534 F.2d 1226, 1230-31 (6th Cir.1976) (adapting McDonnell Douglas to a failure to promote situation) Amadasu has supported his prima facie case with **direct evidence** of disparate treatment in the record.

A plaintiff "may establish discrimination either by introducing direct evidence of discrimination or by proving inferential and circumstantial evidence that would support an inference of discrimination." Kline v. Tennessee Valley Authority, 128 F.3d 337, 348 (6th Cir.1997)

However, the Sixth Circuit never meant to foreclose *a prima facie* case to employees in unique positions, because that would allow employers to discriminate with impunity against such employees. Ercegovich v. Goodyear Tire & Rubber Co., 154 F.3d 344, 353 (6th Cir.1998). Rather, an employee who held a unique position must show that he was similarly situated to non-protected employees in all *relevant* respects. Id. In this case, all medical residents in all ACGME-Accredited residency programs in general and all Occupational and Environmental Medicine Residents (OEMR) in particular at UCMC were similarly situated and all participants in UTHSCSA-STEER program were similarly situated as the plaintiff but they were all favorably treated than plaintiff in the terms and conditions

**Defendants Lacked Legitimate Nondiscriminatory Reason(s) For Their Action**

### G. There Is Evidence That Defendant's Articulated Reason For The Action Against Plaintiff Was A Pretext For Race and National Origin Disparate Treatment Discriminations.

To establish that Defendant's explanation for the termination, adverse employment and training actions is unworthy of belief, Plaintiff may show that either "(1) the proffered reasons had no basis in fact, (2) the proffered reasons did not actually motivate his adverse employment/training actions, or (3) they were insufficient to motivate the actions. See, e.g.," Manzer v. Diamond Shamrock Chemicals Co., 29 F.3d 1078, 1084 (6th Cir. 1994). The first type of proof requires that Plaintiff show that the bases for the termination never happened or are factually false. Id. The second type of proof consists of a demonstration that "an illegal motivation was more likely than [the reasons] offered by the defendant." Id. The third type of proof consists of evidence that other employees otherwise similarly situated to Plaintiff were not terminated or subjected to adverse action. Id.

#### (i). Standard For Analysis of Employer's Legitimate Nondiscriminatory Reason

The Sixth Circuit in Wexler, 317 F.3d 564 (6th Cir.2003), held, " An employer's business judgment, however, is not an absolute defense to unlawful discrimination." (quoting E.E.O.C. v. Yenkin-Majestic Paint Corp., 112 F.3d 831, 835 (6th Cir.1997) ("Although it is true that a factfinder should refrain from probing an employer's business judgment, a decision to terminate an employee based upon unlawful considerations does not become legitimate because it can be characterized as a business decision.").

This court has held that the reasonableness of an employer's decision may be considered to the extent that such an inquiry sheds light on whether the employer's proffered reason for the employment action was its actual motivation. Smith v. Chrysler Corp., 155 F.3d 799, 807 (6th Cir. 1998) (holding that, in evaluating a proffered nondiscriminatory basis for an employment action, courts should inquire into "whether the employer made a *reasonably informed and considered decision* before taking an adverse employment action') (emphasis added); In re Lewis, 845 F.2d 624, 633 (6th Cir. 1988) ("Sears does not have to establish that the basis on which it acted in firing Lewis was *sound*; rather, Lewis has the burden of demonstrating that Sears' stated reasons are pretextual. One way for Lewis to do this is to show that Sears' asserted business judgment was so ridden with error that defendant could not honestly have relied upon it.") (emphasis in original) (internal quotation marks omitted). The Lewis court based its decision in part on Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 259 (1981), in which the Supreme Court explained that "[t]he fact that a court may think that the employer misjudged the qualifications of the applicants does not in itself expose him to Title VII

8

liability, *although this may be probative of whether the employer's reasons are pretexts for discrimination.*" (Emphasis added.), Id. <u>Wexler</u>, supra.

Several Circuits have similarly concluded that the reasonableness of a business decision is critical in determining whether the proffered judgment was the employer's actual motivation. <u>Aka v. Washington Hosp. Ctr.</u>, 156 F.3d 1284, 1294 (D.C. Cir. 1998) (en banc) ("If a factfinder can conclude that a reasonable employer would have found the plaintiff to be significantly better qualified for the job, but this employer did not, the fact finder can legitimately infer that the employer consciously selected a less-qualified candidate—something that employers do not usually do, unless some other strong consideration, such as discrimination enters into the picture.") (footnote omitted); <u>Ryther v. KARE</u> 11, 108 F.3d 832, 840 (8th Cir. 1997) (holding that the factfinder was allowed to consider whether the survey that the employer relied upon as the basis for its decision to fire the plaintiff "was actually a sound—as opposed to pretextual—basis upon which to make employment decisions"); <u>Dister v. Cont'l Group, Inc.</u>, 859 F.2d 1108, 1116 (2d Cir. 1988) ("Thus, facts may exist from which a reasonable jury could conclude that the employer's 'business decision' was so lacking in merit as to call into question its genuineness"); <u>Loeb v. Textron, Inc.</u>, 600 F.2d 1003, 1012 n.6 (1st Cir. 1979) ("The reasonableness of the employer's reasons may of course be probative of whether they are pretexts. The more idiosyncratic or questionable the employer's reason, the easier it will be to expose it as a pretext . . ."). <u>Id</u>. <u>Wexler</u>, supra. Here. UC and UTHSCSA's reasons for their actions are idiosyncratic and unquestionably false and pretextual.

In reversing summary judgment against Wexler, the Court ruled, "The district court therefore erred by invoking the business judgment rule to exclude consideration of evidence relevant to the question of pretext. As a result, the district court ignored inferences in favor of Wexler that can be drawn from the evidence about whether it was reasonable to blame him for the Morse Road store's declining sales." Id. <u>Wexler</u>, supra. Thus, this Wexler court's holding is applicable in this instant action.

### (ii) The Hospital's Proffered Reason Lacks Basis in Fact [No Record Evidence]

#### Direct Evidence Exist:

(a) Texas defendants claim that "because plaintiff was not an employee of any of the Texas defendants, he cannot produce any evidence that he was an employee of the Texas defendants." Accordingly, plaintiff's Title VII claims against the Texas defendants must be dismissed(sic)" (Texas Deft. Memo.p.4 at "B") lack merits. Plaintiff never claimed that he was an employee of any Texas defendants but Texas defendants do not dispute plaintiff's claim that he was a trainee of UTHSCSA. Texas defendants cannot overlook the provisions of Title VII, 42 USC 2000e-(2)(d) regarding Training

9

Programs, which in pertinent part provides that "it shall be an unlawful employment practice for any employer... controlling...training programs to discriminate against any individual because of his race, color, ...or national origin in admission to, or employment in, any program established to provide ...training." It has been held that "Congress intended rights and obligations under Title VII, 42 USC 2000e et seq. to extend beyond immediate employer-employee relations." Zaklama v. Mt. Sinai Medical Center, 842 F.2d 291(11th Cir.1988). Here, Texas defendants proffered reason, in effect, show that they discriminated against plaintiff because he was not their employee thereby constitutes direct evidence of disparate treatment of plaintiff. Alternatively, it constitutes pretext for discrimination because Title VII, 42 USC 2000e-(2)(d) covered plaintiff in training program of Texas defendants. Texas defendants denied that plaintiff was entitled to all equal protections, privileges, benefits, rights and due process afforded to their employees (Texas Defts. Responses Admission Requests #1)

(b) Texas defendants proffered reason that they excluded plaintiff from their program because of an unexplained "inappropriate behavior" of plaintiff was false. FRCP 56(e) mandates setting forth-specific facts with evidentiary support but not conclusory statement unsupported by any evidence. They failed in their burden of establishing a prima facie case and proof of the elements of their defensive claims, adducing evidence or specific facts to explain their conclusions. Amadasu was treated unfavorably different than similarly situated participant in the UTHSCSA-STEER training program.

(c) Ohio defendants' contention that Amadasu has no direct evidence of race, color, national origin, or sex discrimination to support his Title VI and Title VII claims (Ohio Deft. Memo.p.7) must fail because Amadasu has presented **direct evidence** of race, color and national origin disparate treatment discrimination, which consisted of Ohio defendants' admissions and acknowledgment that they denied Amadasu the mandatory GME-contract of employment, stipend, benefits package for residents with UCMC that they had offered to similarly situated residents (Donovan Decln. #3, 12) Also see ( Amadasu Decln. & Ex.3, 5-7; Ex.97). (d) Ohio defendants' proffered reason that they denied plaintiff promotion to Chief Resident position because they placed plaintiff on "Accelerated Track" was false because plaintiff was never on "Accelerated Track" unaccredited by ACGME and ABPM; (e) Ohio defendants proffered no reason whatsoever for failing to hire plaintiff into second year position in Family Practice Residency Program, therefore, they discriminated against plaintiff.

Since Congress intended rights and obligations under Title VII, 42 USC 2000e et seq. to extend beyond immediate employer-employee relations, hospital, which was in position to affect resident's employment in residency program and did affect resident's employment in residency program and did affect employment with adverse evaluations resulting in resident's dismissal from the program which

was actually operated by another hospital, could be held liable in action brought by discharged resident under Title VII and 42 USC 1981, Zaklama v. Mt. Sinai Medical Center, 842 F.2d 291(11th Cir.1988). The Zaklama holding is applicable in this action because UC negatively affected plaintiff's employment, contract, benefits and stipend with TUH, the sponsor, operator, authority and controller of the OMRP. UC a non-operator of OMRP prevented plaintiff from graduating, obtaining transcript, verification of attendance from TUH thereby liable to plaintiff.

Party not named in charge filed with EEOC can nevertheless be sued under 42 USC 1981, Guerra v. Manchester Term. Corp., 498 F.2d 641 (5th Cir.1974). Violation by federal official is an ultra vires action on official's part, and since this statute (42 USC 1981) specifically prohibits racial discrimination in making and enforcement of employment contracts, federal officials responsible for making employment contract decisions are not acting within scope of duties on behalf of sovereign when they acted in racially discriminatory manner, Penn v. Schlesinger, 490 F.2d 700 (5th Cir.1973). This Penn holding is applicable to this instant action because (1) when Donovan denied plaintiff the right 'to make and enforce contract' with, obtain benefits and full stipend from TUH, Donovan was acting outside the scope of his duties (Ex. 5-7); (2) when Donovan phoned, solicited, suborned, and persuaded a female patient to lie against plaintiff to Ohio State Medical Board he was no acting within scope of his duties; (3) when Donovan, Lockey, Freeman and Middaugh neglected, failed and refused to render grade, and written evaluations for plaintiff they were not acting within the scope of their duties.

"The employer may overcome the presumption inherent in the prima facie case *by producing evidence* of a legitimate nondiscriminatory reason for the adverse employment action," Peters v. Lincoln Elec. Co., 285 F.3d 456 (6th Cir.2002), Also see Mauzy v. Kelly Servs., Inc., 75 Ohio St.3d at 582. The court then proceeded to examine the record and concluded that Lincoln's purported business reason for the action it took with respect to plaintiff "is supported by the evidence," Id. Peters.

Here, the defendants offered absolutely no evidence to support their actions and there is no evidence in the record unlike Lincoln in Peters court—Id.

The Sixth Circuit held that, "instead of drawing inferences favorable to Wexler from the above statements as required by Rule 56 of the Federal Rules of Civil Procedure, the district court elected to believe the explanation of the company's officers and impose its own credibility assessment on both parties." Id. Wexler, supra. The widely differing perspectives on whether these statements reveal a discriminatory motivation provide a classic example of a genuine issue of material fact; that is, did White's (Donovan) hold stereotypical beliefs about the capabilities of older managers (Black Resident to be Chief Resident) that influenced its (his) decision to demote Wexler (to not promote Plaintiff

11

Amadasu to Chief Resident position)?  A factfinder could reasonably conclude that the above listed statements evinced a discriminatory intent. Id. Wexler, supra.

The Sixth Circuit rejected the idea of District Court erroneously imposing its own credibility Assessment upon parties at summary judgment stage. "Such an approach strikes us as being contrary to the Supreme Court's opinion in Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) ("Credibility determinations, the weighing of the evidence, and drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict. The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.") Id. Wexler, supra. This latter approach is more consistent with the requirement that, in considering a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the non-moving party. Id. Wexler, supra, (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)." Id. Wexler, supra. "…it is insufficient to warrant summary judgment for defendant if the employee has otherwise raised a genuine issue of material fact." Id. Wexler, supra.

Here in this instant action, plaintiff has raised a genuine issue of material fact and following the Sixth Circuit's Ruling in Wexler, this court must draw all inferences in favor of the plaintiff and must not avoid imposing its credibility assessment upon the defendants. Thus, plaintiff is entitled to summary judgment as to his race, national origin disparate treatment discrimination claims.

**Alternatively, Circumstantial Evidence Exist:**

There is also sufficient evidence to support the conclusion that Plaintiff can satisfy the burden-shifting analysis for circumstantial evidence outlined in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). A three-step framework guides the analysis of age-discrimination claims based upon circumstantial evidence. Ercegovich v. Goodyear Tire & Rubber Co., 154 F.3d 344, 350 (6th Cir. 1998) (explaining the burden-shifting analysis for ADEA claims). This framework first requires an employee to establish a prima facie case of age discrimination. Id. If the employee meets this burden, the employer may respond by offering a legitimate, nondiscriminatory reason for the adverse employment action at issue. Id. Assuming that such a response is made, the employee then bears the burden of rebutting this proffered reason by proving that it was a pretext designed to mask age discrimination. Id. If Plaintiff succeeds in establishing *a prima facie* case, Defendant must present some legitimate, nondiscriminatory reason for the termination. St. Mary's Honor Center v. Hicks, 509 U.S. 502 (1993). Once Defendant meets this ***burden of production***, Plaintiff must then show that Defendant's articulated reason for the termination is a pretext for age discrimination Id. at 507. In Hicks, the Court stated:

12

> The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination. Thus, rejection of the defendant's proffered reasons will permit the trial of fact to infer the ultimate fact of intentional discrimination, and the Court of Appeals was correct when it noted that, upon such rejection, [n]o additional proof of discrimination is required.

Id. at 511 (emphasis in original; footnote and citation omitted). Thus, the employee need not produce *additional* evidence of discrimination. As the Supreme Court recently clarified in Reeves v. Sanderson Plumbing, 120 S. Ct. 2097, 2108-09 (2000), a plaintiffs prima facie case combined with sufficient evidence to find that the employer's asserted justification lacks credibility will permit the trier of fact to infer that the employer was motivated by unlawful discrimination. In order for defendants to be successful, they must cite evidence, which affirmatively shows that plaintiff has no evidence to support his claims. Dresher v. Burt, 75 Ohio St.3d 280, 292 (1996) but defendants have failed to produce evidence to support their claim or which affirmatively show that plaintiff has no evidence to support his claim. Contrarily, Amadasu has presented a prima facie case of race, color, sex and national origin disparate treatment discrimination combined with sufficient evidence warranting judgment in his favor as matter of law.

## COUNT 17 (Title VII)
### No Genuine Issues of Material Fact Exist As To Plaintiff's Hostile Environment; Racial & Sexual Harassment Claim Making Summary Judgment For Plaintiff Proper; Alternatively, Genuine Issues of Material Facts Exist Making Summary Judgment Improper For Defendants.

### Standard for Hostile Environment and Racial Harassment is "Totality of Circumstances"

In determining whether alleged harassment is sufficiently severe or pervasive to constitute a hostile work environment, a court must consider the totality of circumstances. Williams v. General Motors Corp. 187 F.3d 553 (C.A. 6 Ohio 1999).

Title VII prohibits racial and sexual harassment that creates a hostile or abusive work environment. *See* Hafford v. Seidner, 183 F.3d 506, 512 (6th Cir.1999). In order to establish a prima facie case of hostile work environment based on race under Title VII, a plaintiff must show: 1) that he is a member of a protected class; 2) that he was subjected to unwelcome racial and sexual harassment; 3) that the harassment was based on race and sex; 4) that the harassment had the effect of unreasonably interfering with his work performance by creating an intimidating, hostile, or offensive work environment; and 5) the existence of employer liability. *See Id.*

A hostile work environment occurs "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21, 114 S.Ct. 367 (1993) (internal quotations and citations omitted).

Plaintiff can produce evidence that he was subjected to unwelcome sexual and racial harassments as a result of his race, national origin and sex.

In order for defendants to be successful, they must cite evidence, which affirmatively shows that plaintiff has no evidence to support his claims. Dresher v. Burt, 75 Ohio St.3d 280, 292 (1996). Defendants have absolutely failed to present evidence to affirmatively demonstrate that plaintiff is without evidence to support his claims.

1.  **Plaintiff Has Presented a Prima Facie Case of Hostile Workplace Racial, Sexual and National Origin Harassment**

Defendants do not dispute that plaintiff can establish the first and third elements of his prima facie case of hostile workplace and racial and sexual harassment.

**(a). Protected class:** plaintiff is a member of the protected class, black, Nigerian-American and of Nigeria origin.

**(b). Unwelcome hostile workplace and racial, sexual and national origin harassment**

Defendants are not entitled to summary judgment because plaintiff suffered tangible employment and training detriments of denial of promotion, mandatory contract, full stipend, benefits package, tools of the training, grades, written evaluations, transcripts, verification of attendance, graduation from program, grievance procedures and due process; plaintiff was subjected to papering of personnel file, set-up-to-fail, frequent serial false accusations of sexual harassments fabricated and perpetrated against plaintiff by his supervisors---Donovan and Miller, and other employees. Donovan solicited, suborned and persuaded a female patient to lie to Ohio State Medical Board against plaintiff and without authority and bases in facts, evidence and policy subjected plaintiff to undue disciplinary actions by imposing probation and threats of terminating plaintiff's residency. Without plaintiff's consent Donovan put plaintiff in purported accelerated track that plaintiff did not belong.

No affirmative defense is available to an employer to avoid vicarious liability when a supervisor's hostility and harassment culminates in a tangible employment action such as termination. See Faragher v. City of Boca Raton, 524 U.S. 775 (1998); see also, Burlington Industries, Inc. v. Ellerth, 524 U.S. 742 (1998).

As supervisors, Donovan, Lockey, Freeman, Middaugh, and Miller had an obligation to enforce and to comply with employers' byelaws, rules, regulations, policies and procedures but they failed to

14

do so; however, he did not enforce or comply with those rules to respect the rights of every employee. As soon as they found out that plaintiff has filed complaint of discrimination and sexual harassment with their employers, motivated by malice, and racial animus, they concertedly intensified their campaign of hostilities and harassments.

### (c). Hostility and Harassment Were Based on Race, Sex and National Origin

Plaintiff was the only Black male and the only resident of Nigeria national origin ever to participate in UTHSCSA-STEER training program and in the OEMRP at UCMC during the relevant time period. Plaintiff has superior education, training, experience, and multi-skills than any of the supervisors who were all Caucasians. "When the work force is predominantly white, nepotism and similar practices which operate to exclude outsiders may discriminate against minorities as effectively as any intentionally discriminatory policy." Thomas v. Washington County Sch. Bd. 915 F.2d 922. Generally, the same standards apply to both race-based and sex-based hostile environment Title VII claims. Rechardson v. N.Y.S. Dept. of Correctional Service, 180 F.3d 426. Although harassing conduct need not be sexually (racially) explicit, it must reflect anti-female (anti-male and anti-black) animus that is sufficient to satisfy the "based on sex" ("based on race") requirement. William v. General Motors Corporation, 187 F.3d 353 (6th Circ. 1999). The comments, false accusations, slurs, epithets, heavy African accent, stereotypes and acts were not only offensive, abusive, humiliating, deprecatory daily and pervasive but reflected anti-black animus. Plaintiff was targeted and singled out for hostility and harassment and disparate treatment because he is black and of Nigeria origin.

### (d). The harassment had the effect of unreasonably interfering with his work performance by creating an intimidating, hostile, or offensive work environment

Seven events of alleged racial harassment that occurred after African-American employee's former supervisor was fired constituted a "hostile work environment," for purposes of employee's claim; events concerning employee's negative performance evaluations, if proven, would have had a demonstrable adverse impact on future employment opportunities; management's unwillingness to evaluate employee could have been indicative of its unwillingness to promote her and could have impacted her future job performance, many of the events, such as use of word "nigger" and making of racially derogatory remarks about black...were humiliating, and conditions of employment were affected when employee was reprimanded for exercising employer's open-door policy." Malone v. K-Mart Corp., 51 F.Supp.2d 1287 (1999).

Applying this reasoning to this instant case, Donovan, Miller, Perales, Gaynor and Pohl fabricated sexual harassments accusation against, and Donovan made subjective fraudulent negative

performance evaluations of plaintiff's work, have adverse impact on plaintiff's future employment opportunities; Donovan's failure and refusal to afford plaintiff the mandatory written contract and benefits package is indicative of his motive and intent to unreasonable interfere with the terms and conditions of plaintiff's employment and training. Willfully and deliberately withholding grades and written evaluations is indicative of Donovan and faculty to prevent plaintiff's graduation from the program; denying plaintiff the tools of the trade and training unreasonably interfered with plaintiff's academic and training freedom, thus, negatively impact plaintiff's work performance; the daily exposure of plaintiff to unwelcome racial comments, epithets, slurs, N-word and jokes created hostile, intimidating, offensive or abusive work place. "Complaint alleging pattern of egregious public racial harassment of African-American students, including use of epithet "nigger", and alleging that parents complained about harassment but were rebuffed and ignored, stated claim for violation of Title VI based upon hostile racial environment." Monteiro v. Temple Union High Sch. Dist, (9th Cir.1998) 158 F.3d 1022

**(e)    Defendants Are Not Entitled To Summary Judgment On Plaintiff's Hostility and Harassment Claim Because The Hostile/Harassing Conduct Was Unwelcome, pervasive and or Severe**

There are genuine issues of material fact as to whether Defendants' conduct was unwelcome pervasive and/or severe. There is no question that Defendant Donovan's harassing conduct was based on race and was committed by a supervisor of Defendant Hospital. The appropriate factors for the Court to consider when determining whether conduct is severe or pervasive enough to constitute hostile work environment include frequency of discriminatory conduct, its severity, whether it is physically threatening or humiliating, or merely an offensive utterance, and whether it unreasonably interferes with employee's work performance. Williams v. General Motors Corp. 187 F.3d 553 (C.A. 6 Ohio 1999).

In determining whether alleged harassment is sufficiently severe or pervasive to constitute a hostile work environment, a court must consider the *totality of circumstances*. *Id.* 'The totality-of-the-circumstances standard precludes the kind of analysis that carves the work environment into distinct harassing incidents to be judged each on its own merits. Instead, it is essential that the work environment be viewed as a whole, keeping in mind that each successive episode has its predecessors, that the impact of the separate incidents may accumulate, and that the work environment created thereby may exceed the sum of the individual episodes." Robinson v. Jacksonville Shipyards, Inc., 760 F. Supp. 1486, 1524 (1991), see also, Williams, *supra.* (issues of material fact existed as to whether

conduct alleged by employee, including foul language and mean treatment by co-workers, was sufficiently severe or pervasive to constitute hostile work environment, precluding summary judgment); Hogan v. Field Container Corp., 145 Ohio App.3d 446 (3rd Dist. 2001) (summary judgment inappropriate where plaintiff stated in her deposition that she did not want to be subject to the abuse, specific incidents of inappropriate sexual behavior were alleged, the alleged behavior was occurring so frequently plaintiff could not remember dates, and she was upset by the behavior. The court further concluded that reasonable minds could conclude that the harassment was severe and pervasive). Defendant Donovan's position as a supervisor over plaintiff gave him power over plaintiff. This power caused plaintiff to fear for his job, training and ultimately for his own safety. Looking at each incident of harassment individually, as Defendants would attempt to do, is not only contrary to law, but also diminishes the seriousness of the harassment plaintiff endured.

In order to show job interference, Plaintiff needs not prove that his tangible productivity declined as a result of the harassment, but rather need only show that the harassment made it more difficult to do the job. Davis v. Monsanto Chem. Co., 858 F.2d 345 (6th Cir. 1988). Plaintiff unsuccessfully attempted to change Dovovan as his advisor and supervisor, suffered from depression, anxiety, had trouble sleeping, concentrating, lost weight, and reported generally being extremely upset and humiliated over the harassment he endured. Plaintiff was afraid of attending to female patient for fear of being accused of sexual harassment by Donovan.

Plaintiff asserts that throughout the time period he endured harassing comments and actions by Donovan and other employees, he was fearful for his job and did not want to make Donovan angry so as not to give him the pretext for terminating plaintiff's residency training. Furthermore, for an employer to take corrective action is not enough to avoid liability for hostile environment sexual (racial) harassment; an employer has an affirmative duty to prevent sexual (racial) harassment by supervisors. Williams, supra.

Defendants are not entitled to summary judgment on Plaintiff's allegations of racial harassment and hostile environment. There is a significant amount of evidence and genuine issues of fact regarding the inappropriate and offensive actions of Donovan and other defendants. Moreover, Defendants and their employers have been unable to prove the affirmative defense for vicarious liability by a preponderance of the evidence. Not only can Plaintiff establish a prima facie case of harassment, but also he exercised his options under the employers' anti-harassment policy to the best of his ability and state of mind during the course of the harassment he faced. He tried to handle the situation to protect his employment and training, but once he realized that this situation could not be dealt with on his own, he notified, orally and by 12/20/99 letter [Ex.69, 117]. UCMC and UTHSCSA failed to take

action to stop the harassment. For these reasons, Defendants are not entitled to summary judgment as a matter of law.

**(f).    Defendants Are Not Entitled To Summary Judgment Because Plaintiff Suffered A Tangible Job Detriment and/or Defendants Are Unable To Prove An Affirmative Defense To Liability By A Preponderance Of The Evidence.**

Assuming, *arguendo,* that Plaintiff did not suffer a tangible job detriment (which is not), Defendants are not entitled to summary judgment because they are unable to prove an affirmative defense to liability by a preponderance of the evidence. An employer may establish an affirmative defense to vicarious liability to an employee if the employer can prove, by a preponderance of evidence, that: (1) employer exercised reasonable care to prevent and correct promptly any sexually (racially) harassing behavior, and (2) employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by employer or to avoid harm otherwise. Ellerth, *supra* and Faragher, 524 US 775, 807 (1998).

Although UC, UCMC and UTHSCSA might have an anti-harassment policy and complaint procedure in effect, defendants are unable to prove that it did anything to promptly correct the harassing, dehumanizing, intimidating, threatening and hostile behavior. Although Hospital may purport to have a "zero tolerance" policy, Defendant Donovan and Miller were not disciplined for violating their employers' policies and procedures, denying plaintiff mandatory GME-Contract and benefits, serially falsely accusing him of nonexistent professional impropriety but allowed them to continue working in their purportedly supervisory positions with their employers.

Defendants are also unable to prove the second element of the test to establish the affirmative defense. There is an issue of fact as to whether plaintiff's unreasonably failed to take advantage of corrective opportunities or to avoid harm otherwise. There is no question that plaintiff voluntarily requested internal investigation and change of Donovan as his advisor-nemesis to avoid future harm by Donovan. Moreover, Hospital's policy clearly states that one avenue employee's have for making a complaint of sexual/racial harassment is through their supervisor. The employers' policy further states that supervisors have a duty to report any allegation of sexual or racial harassment, no matter how small the complaint may seem but Donovan could not report sexual and racial harassments that he had masterminded and fabricated based on rumors, innuendo, subjective beliefs and conclusory allegations

Defendants cannot argue that plaintiff did not take advantage of any of their procedures. The simple fact is that plaintiff feared for his job and training and felt that filing a complaint would only make things worse. Plaintiff did relay his problems Donovan, Lockey, Freeman, Filak, Jarrell, Buncher

and Miller and no action was taken but, instead terminated plaintiff from UTHSCSA-STEER program and prevented plaintiff's graduation from UCMC-OEMRP. Clearly there are issues of fact regarding UTHSCSA and UC liability that cannot be disposed of in a motion of summary judgment.

In its decision to expand employer liability for harassment by a supervisor in cases involving or *not* involving tangible employment action, the Supreme Court placed significant importance in careful fact-finding with regard to the raising of the affirmative defense. See Ellerth, *supra*., see also, Williams v. General Motors Corp., 187 F.3d 553 C.A.6 (Ohio), 1999. Whether Hospital engaged in careful fact-finding is a matter open to debate because no pre-deprivation notice of charges, investigation and hearing were conducted as mandated by employers' policies. This issue should be left for a jury to decide.

### (g). Objective and Subjective Tests for a hostile work environment

The test for a hostile work environment in violation of Title VII has both objective and subjective components. Williams, supra. The subjective component of the test for a hostile work environment in violation of Title VII does not require that an employee feel physically threatened; instead, the employee must subjectively perceive the environment to be abusive,...The intent of the alleged harasser is irrelevant in the court's analysis of subjective component of the test for a hostile work environment. Id. Thus, pursuant to "reasonable person" standard objective reasonable person would find the work place to be hostile, abusive and so heavily polluted as to destroy plaintiff's emotional and psychological stability. Plaintiff perceived the workplace to be hostile and abusive. Under a "reasonable minority person" test, the court should imagine being in the body of a Blackman or woman in a hostile work environment. *See* Vaugh v. Pool Offshore Co., 678 F. 2d 922, 925 (5th Circ. 1982). Plaintiff was denied the very tools of his trade and training to perform his job; denied grades and written evaluations, denied full stipend and benefits; and exposed daily to unwelcome racial slurs, epithets, comments, humiliating false stigmatizing accusations, and stereotypes, all these were severe and pervasive and made working conditions and performance so unpleasant and difficult that a reasonable person in plaintiff shoes would find it hostile, abusive, harassing to compel resignation or make resignation foreseeable.

As a result of the hostile work environment, racial, sexual and national origin harassments, plaintiff continuously suffered unstable blood pressure, sleeplessness, chagrin, embarrassment, humiliation, heightened nervousness, stress, stress related heart ailments, suicidal ideations and attempts warranting multiple hospitalizations and continuing multiple outpatient visits to the present. "Evidence of all these "surrounding her (his) day-to-day working conditions established subjective

component of alteration in employment conditions, as required for prima facie hostile environment claim under Title VII." Ingram v. West, 70 F.Supp.2d 1033 (W.D.Mo.1999).

Accordingly, plaintiff is entitled to judgment as matter of law.

## COUNT 26 (Title VII)
### No Genuine Issues of Material Fact Exist As To Plaintiff's Retaliation Claim Making Summary Judgment Proper For Plaintiff, Alternatively, Disputed Issues of Material Facts Exist For Jury, Making Judgment Improper For Defendants

In addition to his claim of discrimination, plaintiff alleges that defendants retaliated against him for opposing the impermissible discrimination. In order to establish a prima facie case of retaliation a plaintiff must show that: (1) plaintiff engaged in activity protected by R.C. 4112 et seq., and Title VII; (2) the exercise of his civil rights was known by the defendants; (3) thereafter, the defendants took an employment and training action adverse to the plaintiff; and (4) there was a causal connection between the protected activity and the adverse employment and training action." Hollins v. Atlantic Co., Inc., 188 F.3d 652, 661 (6th Cir. 1999); Allen v. Mich. Dep't of Corrections, 165 F.3d 405, 412 (6th Cir. 1999). A retaliation claim is subject to the same sequence and burden of proof used in other cases involving discrimination. Anders v. National R.R. Passenger Corp., 898 F.2d 1127, 1134(6th Cir. 1990); Smith v. City of Dayton, 830 F.Supp. 1066, 1076 (S. D. Ohio 1993). Also see Wrenn v. Gould, 808 F.2d 493 (6th Cir.1987).

### Plaintiff Can Establish a Prima Facie Case of Retaliation

### Plaintiff Engaged in Protected Activities That Were Known By Defendants

### Retaliation Based Upon Plaintiff Making Complaints of Racial and National Origin Discrimination, Hostile Environment, & Harassment.

At UTHSCSA-STEER program participation, plaintiff complained to Perales and Miller about discrimination, hostile work environment, harassment and disparate treatment, etc that he was subjected to. Plaintiff memorialized this complaint in a 4/12/00 letter [Ex.117] to Miller on 4/13/00. In retaliation on 4/18/00 Perales demanded that plaintiff gave up his apartment for other similarly situated Caucasians participating residents and when plaintiff refused he initially terminated plaintiff's participation then finally, on 4/18/00 Perales and Miller terminated and stigmatized plaintiff complaining of discrimination.

**Retaliation Based Upon Plaintiff's Speaking As a Citizen About Matters of Public Concerns such as Impermissible Employment and Training Discrimination**

At UC or UCMC, plaintiff complained orally and by 12/20/99 letter (Amadasu Declarationn, Ex.69) of discriminations and noncompliance with their own policies and procedures, federal and state anti-discrimination laws and the requirements of the accreditation bodies, *to wit*, JCAHO, ACGME and ABPM. In retaliation, defendants denied plaintiff benefits, promotion, grades, evaluations, transcript and verification of attendance to obtain board certification, licensure, get job; denied graduation, fabricated undocumented sexual harassment complaint, solicited harassing debt collection activities for nonexistent debt, fabricated tuition debt for unspecified courses and clinical rotations, denied full stipend, etc. Employment and training discrimination on bases of race, color, sex, religion and national origin is matter of public concern

**Retaliatory Discharge of Plaintiff**

Perales and Miller made good of their retaliatory discharge threat on 4/19/00 when they terminated and defamed plaintiff for engaging his protected activities and exercising his free speech rights without notice and opportunity to be heard.

**Plaintiff can establish nexus between his protected activities and discharge.**

A causal link can be shown by either of two methods: 1) through direct evidence; or 2) through knowledge coupled with a closeness in time that creates an inference of causation. Wrenn, 808 F.2d at 501, citing <u>Burrus v. United Telephone Co.</u>, 683 F.2d 339, 342 (10th Cir. 1982); *see also* <u>Moon v. Transport Drivers, Inc.</u>, 836 F.2d 226 (6th Cir. 1987). *See* <u>Cooper v. City of North Olmsted,</u> 795 F.2d 1265, 1272 (6th Cir. 1986), citing <u>Brown v. Ass Computing Center</u>, 519 F. Supp. 1096, 1116-17 (S.D. Ohio 1981).

In this case, plaintiff has produced in the record direct evidence of retaliatory disparate treatment coupled with closeness in time of adverse action. Therefore, he should prevail on his retaliation claims and he has established that (1) he engaged in protected activity; (2) defendants knew of the protected activity; (3) defendants took adverse employment and training action; and (4) the adverse employment action, made with knowledge, followed closely enough in time to support an inference of causation. *See* <u>Wrenn</u> supra.

**Retaliation Based Upon Plaintiff Making Complaints of Discrimination and Harassment.**

Plaintiff asserts that he complained of discrimination from 4/1/00 through 4/19/00. The "retaliatory" discharge and defamation were administered to him on 4/19/00 by Miller and Perales.

21

Also plaintiff asserts that he complained of discrimination from 7/1/99 to 12/20/99 and thereafter. Ohio defendant perpetrated their serial retaliatory employment and training actions from 7/1/99, which was intensified after plaintiff's 12/20/99 written complaint was served upon them.

As a threshold matter, the conduct of defendants actually constitutes adverse employment action. In Kocsis v. Multi-Care Management, Inc., 97 F.3d 876, 886 (6th Cir. 1996), the Sixth Circuit adopted the Seventh Circuit's requirements for establishing a materially adverse employment action from Craiy v. Liberty National Bank & Trust Co. of Indiana, 993 F.2d 132, 136 (7th Cir. 1993). In Craiy, the Seventh Circuit stated:

> [A] materially adverse change in the terms and conditions of the employment might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.

Id. Craiy. Accordingly, Amadasu's catalog of disparate treatments in the record is material enough to constitute adverse employment actions for purposes of retaliation analysis, and thus, satisfied the elements in Craiy court, and Kocsis Court, Id.

Defendants' actions constituted adverse employment and training action under Kocsis, 97 F.3d at 882-83 (1996). There is evidence to support a causal connection between that action and plaintiffs complaints. These complaints were made and there is reason to believe that they were passed up the chain of command, so to speak. Both UTHSCSA and UC or UCMC's supervisors, chiefs, managers and directors received plaintiff's complaint, thus, they knew plaintiff had engaged in protected activity. The Second Circuit held in Gordon v. New York City Bd. of Educ., 232 F.3d 111, 113 (2d Cir. 2000) ("Neither this nor any other circuit has ever held that, to satisfy the knowledge requirement, anything more is necessary than general corporate knowledge that the plaintiff has engaged in a protected activity.")

Simply put, plaintiff has demonstrated knowledge by the defendants coupled with closeness in time that creates an inference of causation. Id, Wrenn supra. Likewise, plaintiff presented other compelling evidence that supports an inference of retaliation. Plaintiff has done more that offer a time line which shows that the discipline came at some point after he engaged in protected activity. This alone is sufficient to support a retaliation claim as a matter of law.

Where courts have permitted a prima facie case to be made relying on temporal proximity the time lag has involved short periods of time. See, e.g., Miller v. Fairchild Industries, Inc., 797 F.2d 727, 731-32 (9th Cir. 1986) (two months); Love v. RexMax ofAmerica, Inc., 738 F.2d 383, 386 (10th Cir. 1984) (two hours); Grant v. Bethlehem Steel Corp., 622 F.2d 43, 46 (2nd Cir. 1980) (two months);

Womack v. Munson, 619 F.2d 1291, 1296 (8th Cir. 1980) (twenty days); Summers v. Allis Chalmers, 568 F.Supp. 33, 37 (N.D. Ill. 1983) (twelve days). The Sixth Circuit has held that a period of more than three months is too long to support an inference of retaliation. Cooper, 795 F.2d at 1276. Specifically, the court held that "[t]he mere fact that [plaintiff] was discharged four months after filing a discrimination claim is insufficient to support an inference [sic] of retaliation." Id.

In this case, plaintiff's termination at UTHSCSA occurred nearly five (5) days after he served his complaint letter to defendants but the retaliatory actions of the Ohio defendants were continuous and became heightened within about one week. Pursuant to the aforementioned decisions, adverse employment action in this case did occur closely enough in time to the protected activity to support an inference of retaliation. Since the complaint and Plaintiff's termination were closely related in time, plaintiff meets his burden because, again, temporal proximity with compelling evidence supports an inference of retaliation. Wrenn, supra. Plaintiff has proven the required causal connection

There are exceptions. In Harrison v. Metropolitan Government of Nashville and Davidson County, Tennessee, 80 F.3d 1107, 1118 (6th Cir. 1996), the Sixth Circuit held that a time lapse of one year and three months was not too long when used in conjunction with other evidence of retaliatory animus; here, however, plaintiff has "other evidence of retaliatory animus connection through temporal proximity and other compelling evidence that supports an inference of retaliation. Plaintiff's termination occurred about five days (7) days after he served his complaint letter and denial of promotion to Chief Resident position, second year position in Family Practice Residency and Health Promotion faculty occurred in or about a month after 12/20/99 written complaint, thus, he has offered compelling evidence that supports an inference of retaliation. Plaintiff has proven the required element of causation so his claim of retaliation succeeds. Thus, plaintiff is entitled to summary judgment as a matter of law.

## PLAINTIFF'S SPECIFIC RESPONSES TO DEFENDANTS' SUMMARY JUDGMENT MOTIONS

**Defendants' Summary Judgment Motions Are Full of Lies, Misstatement, Misrepresentation of, Contradicting & Inconsistent Facts Thus, Must be discredited**

1. ## Ohio Defendants' Motion For Summary Judgment Lacks Merits & Must Be Dismissed

Upon review of defendants' summary judgment motion with irrelevant exhibits, plaintiff and other reasonable minds would come to one conclusion that the motion is packed with colossal inconsistencies, deliberate lies, misrepresentations, contradictions of facts, and fraud, *inter alia*,