## Ohio's Claimed Dispositive Facts Not In Genuine Dispute Are Inconsistent, Contradictory, Fraudulent, Lies, Misrepresented ; and Are Actually In Genuine Dispute

### A. UC per se has no Occupational Medicine Residency Program

UC per se has no Occupational Medicine Residency Program (OMRP). All Accreditation Council for Graduate Medical Education (ACGME) accredited Residency Programs in all branches of medicine based at the University of Cincinnati Medical Center (UCMC) are sponsored and are under the sole authority and control of The University Hospital, Inc. (TUH), which is designated as the Sponsoring Institution. All residents regardless of their medical specialties of residency are employees and medical staff members of TUH. TUH and University of Cincinnati College of Medicine (UCCM) formed the UCMC. By Inter-institutional Agreement, TUH appointed UCCM as a Participating and Supervising Institution under the ACGME Requirements. The organization, structure, course of progression, curriculum, caliber of the faculty, the terms and conditions, contract and accreditation of any residency program are all under the dictate and control of ACGME and the applicable specialty board.

The Occupational Medicine or Occupational and Environmental Medicine Residency Program (OEMRP) is sponsored by TUH, on behalf of which UCCM select and accept residents. Board Certification Requirements in OEMRP are established by American Board of Preventive Medicine (ABPM). ACGME and ABPM accredited only three (3) phases in OEMRP, which are (1) Clinical Phase; (2) Academic Phase; and (3) Practicum Phase. The purported four different academic tracks and the purported accelerated track are not accredited by ACGME and ABPM and Amadasu did not apply for any of the four different academic tracks. Thus, Donovan Decln #2 is inconsistent with the ACGME and ABPM Standards, which are applicable nationally throughout USA and Canada.

By 09/01/98 letter, on UCMC letterhead, UCMC and Donovan affirmatively stated that OEMRP consists of combined academic and practicum phases over two year period, which is the standards of the ACGME and ABPM (Ex.2). Accordingly, Donovan aided by his counsel, Mr Flamm deliberately lied about and misrepresented the accredited phases of the OEMRP in order to mislead and work fraud upon the court. UC designed the scheme of four different academic tracks in order to defraud residents. (Donovan Dec. #2 & 3) are contradicted by and inconsistent with (Pl.Ex.2.)

Individuals who had completed both the clinical phase and the academic phase with a MPH or equivalent degree, as plaintiff had done, are place on the recognized and accredited 1-year practicum phase and do not have to be on academic phase or enroll for any degree course. When individuals complete the practicum phase they are graduated from the program and awarded diploma. Neither UC nor Donovan decides on which phase to place an individual because an individual who already

24

completed only the clinical phase is placed on a 2-year combined academic and practicum phases and such individual enrolled for master degree courses at UC graduate school and concurrently does practicum phase and such individual remained employee of TUH. All residents are employees and are placed on the payroll of TUH but not UC payroll. Resident never pays any fee to UC, UCMC & TUH.

Amadasu had completed the Clinical and the Academic Phases when he applied to TUH - UCMC (not UC) for the Practicum Phase. See (Amadasu Declaration, Exhibits 1-2, 4, 97-100)

**B.   OMRP Accepts Amadasu & UC Fraudulently Places Him On Unaccredited Accelerated Track**

If UC accepted Amadasu into OMRP in 1999 and Amadasu was not employee of and had no contract with UC (Donovan Dec.#3) then disputed material factual issues exist as to: (1) the nature of relationship between UC and Amadasu; (2) as to why UC placed Amadasu on its employees' payroll and contributed to his retirement plan; (3) as to the legal authority and capacity of UC to discipline Amadasu for non-existent infractions; (4) as to whether UC interfered with and deprived Amadasu's right "to make and enforce" GME-contract with TUH as guaranteed to him by the constitution, and statutes of the United States, Standards of JCAHO, ACGME, and TUH-UCMC's bylaws, policy and procedure. The UC's purported "Accelerated Track" is not accredited track within ACGME/ABPM's standards and placing Amadasu on it without Amadasu's knowledge and consent constituted fraudulent scheme to and did defraud Amadasu of his GME-contract, full stipend, benefits package, equal protection, due process, transcripts, good health, enormous economic opportunities, etc.

Donovan affirmatively stated that Amadasu had completed his program in June 2000 (Donovan Dec.#3) and contradicted himself that Amadasu did not complete his program in June 2000 (Donovan Response Admission #8).

**C.   Amadasu Expressed An Interest In The OMRP Chief Resident Position, Was Qualified For & Entitled To It But For The UC Fraudulently Placing Him Without His Knowledge and Consent On Unaccredited Accelerated Track Was A Scheme To Defraud Amadasu Of The Position; And Was A Pretext For Discrimination.**

UC and Donovan's reason for not promoting Amadasu to OMRP Chief Resident (CR) Position because Amadasu was on the Accelerated Track (Donovan Dec.#4) is absolutely false, unbelievable and pretextual and constituted pretext for discrimination because: (1) Accelerated Track is not an ACGME/ABPM-accredited track within OEMRP; (2) Amadasu never applied for, consented to, or told that he was on Accelerated Track by Donovan or UC; and (3) failure to promote CR was retaliatory to Amadasu written complaint of discrimination and sexual harassments (Ex.69). Amadasu was on Practicum Phase and not Accelerated Track. Donovan and UC promoted unqualified Caucasian person who was junior in rank and from unprotected class to CR directed Amadasu to take orders from him.

25

### D. Donovan In Collusion, Conspiracy and Fraud With Gaynor, Pohl, Perales And Miller Masterminded and Concocted Inappropriate Sexual Behavior Against Innocent Amadasu

Amadasu is the real and absolute victim of serial concerted sexual harassments by the defendants Donovan, Gaynor, Pohl, Miller and Perales.

Donovan never received complaints of inappropriate sexual behavior by Amadasu from any person and Donovan has no authority to and is outside his job descriptions to receive and sua sponte handle sexual harassment complaint. Donovan has made conclusory accusatory allegation barren with the where, when, what, nature, form, and substance of the fabricated inappropriate sexual behavior complaints. Donovan failed to produce any evidence of written, signed, investigated, charges, hearing, determination and record of any inappropriate sexual harassment complaint against Amadasu. UC's sexual harassment policy and procedure mandate confidential immediate investigation, hearing, resolution of written, signed and record of any sexual harassment complaint. (Pl. Ex. 20-24).

Donovan, Gaynor, Pohl, Miller and Perales concertedly and conspiratorially fabricated sexual harassment for the purposes of defaming, destroying the occupation and files of Amadasu. For the Amadasu's side of the story, please see (Amadasu Declaration #29, 33, 36-52). Incredible Donovan's statement (Donovan Dec. #5) is contradicted by and inconsistent with his own letters dated 12/20/99 and 5/31/00 respectively (Pl.Ex.26-27). In February 2000 Donovan had directed Pohl not to Chaperon Amadasu in order to fabricate non-existent female patient complaint. Donovan's fabricated female patient complaint is contradicted by and inconsistent with the female medical record (Pl.Ex.15). Donovan failed to produce admissible evidence of the purported female patient complaint. Donovan's Declaration Ex. A constitutes inadmissible hearsay statement that Pohl solicited from the female patient and the substance of the Exhibit A does not rise to sexual harassment and "attempt at dating" the female patient. See (Pohl's evasive, ambiguous or none responses to Admission Requests).

UC acknowledged that Pohl was not its employee during the relevant period (McCrate Decln. #2) then disputed material factual issue as the legal authority of Pohl to phone and solicited sexually suggestive information from the female patient. Pohl admitted that she fabricated, speculated, surmised and guessed that Amadasu sexually harassed the female patient by Pohl's response to (Admission requests #25-27) that: "Pohl states that the actions and statements by plaintiff, as reported by the applicant, could have reasonably been deemed to constitute sexual harassment sic" This statement constitutes inadmissible classic "hearsay."

26

E. **In April 2000 Amadasu Was Terminated From A Four-Week Clinical Rotation In Texas In Retaliation For Opposing Discrimination And Exercising His First Amendment Right**

Amadasu refers the court to (Amadasu's Decln. #26-35). UC has not OMRP resident because OMRP residents were/are for TUH. UC never paid Amadasu's travel expenses and UC failed to present evidence of payment of the expenses. UC had claimed that Amadasu was not its employee (Donovan Decln. #3) then fact question exist as to why UC purportedly paid travel expenses of Amadasu who was not its employee. This is another inconsistency of Donovan and UC positions.

Donovan published on or about 4/18/00 non-existent or fabricated sexual harassment complaint by any person against Amadasu to Miller in bad faith, in a wanton and reckless manner, for malicious, improper purpose of excluding Amadasu from UTHSCSA programs and activities receiving federal assistance (Ohio Deft. Memo.p.18), Such publication is false, contradicted and refuted by Donovan's own 12/20/99 and 5/31/00 letter in which he acknowledged the sexual harassment complaints were hoax (Pl.Ex.26-27).

F. **UC Asserted That Amadasu was not Its Employee And Had No Contract With Him Why Would UC Allow Him To Complete The OMRP? And UC Has No Evidence of Numerous Allegations of Sexual Harassment**

Fact question exist as to the legal right and authority of Donovan to have placed Amadasu on probation when Donovan averred that Amadasu was not UC employee (Donovan Decln. #3). Donovan and UC failed to present evidence of their fabricated and speculated numerous allegations of sexual harassment. Donovan had acknowledged that he had no bases for putting plaintiff on probation (Ex.27)

G. **UC Held Amadasu's Transcript Without Cause But For The Fabricated Money He Did Not Owe To UC**

Amadasu was not employee of and had no contract with UC (Donovan Decln. #3) and Amadasu was not a graduate student of UC because UC had not presented evidence or the ghost UC's records to prove Amadasu was a graduate student and was granted graduate scholarship, thus, UC could not possibly have granted graduate scholarship to him. Donovan acknowledged that Amadasu was House Officer and Resident in OMRP in contradiction to his classifying Amadasu as a graduate student (Donovan Decln. #11, Ex. C; & cf Ex.1-6).

H. **Amadasu Was Qualified For A Faculty Position In Health Promotion At UC's Raymond Walters College, But Was Not Hired Because of His Race, Sex and National Origin And In Retaliation For Opposing Discrimination**

27

Amadasu has presented prima facie case of failure to hire in violation of Title VII and direct and circumstantial evidence in support thereof. Plaintiff refers the court to Amadasu's Memorandum and Declaration in support of his Initial Cross-motion for Summary Judgment. In addition, Health Promotions is a fractional part of medicine and Public Health in which Amadasu had obtained MD and MPH degrees respectively. Amadasu had/has teaching experience. UC hired less qualified female from non protected class

Amadasu has presented direct and circumstantial evidence in the record that show pretext in all defendants' race, sex, national origin disparate treatment actions and tending to prove that the defendants' proffered reasons are factually baseless, were not the actual motivation for the adverse employment and training actions, or were insufficient to motivate the actions. See Stalter v. Wal-Mart Stores, Inc., 195 F.3d 285 (7th Cir.1999). In considering pretext issue in employment discrimination case, court looks not at the wisdom of the employer's decision, but rather at the genuineness of the employer's motives—Id.

Defendants, particularly Donovan and UC have changed their story by their contradictory and inconsistent assertions, and averments, e.g., changing Amadasu status from being OMR to graduate student. It has been held that: "fact that employer changed its story regarding circumstances of African-American employee's discharge...could be construed as evidence of pretext in the federal action.—Id.

### Ohio Defendants' Contention That This Court Lacks Jurisdiction Over Amadasu's State Law Claims Against Donovan Lacks Merits

Defendants acted in bad faith, arbitrary, capricious, wanton, reckless manner, manifestly outside the scope of their employment or office. In Leaman v. Ohio Dept. of Mental Retardation & Dev. Disabilities, 825 F2d 946 (6th Cir.1987), cert denied, 487 US 1204 (1988) the Sixth Circuit Court held that Ohio Revised Code 2743.02(A)(1) gives plaintiffs an option not otherwise available to them—the right to sue the state and state officials in their official capacities for damages. This statute put all claimants who wish to take the advantage of the state's voluntary waiver of sovereign immunity on notice that by preceding in the court of claims the claimants themselves "waive any cognate claims they might have against the states employees, Id, at 951. A plaintiff who chooses not to exercise this option may sue under 42 USC 1983 either in federal district or in the state court of common pleas—Id. Thus, plaintiff chooses to sue in federal court rather than in state court.

28

## Inconsistencies, Contradictions, Lies, Fraud, Misrepresentation in Donovan's Declaration

Plaintiff hereby responds seriatim to Declaration of Donovan as follows:

**Donovan Decln. #1:** Donovan misrepresented the facts that Amadasu participated in UC's Occupational Medicine Residency Program ("OMRP"). The truth is that Amadasu participated in OMRP of The University Hospital ("TUH") and University of Cincinnati College of Medicine ("UCCM") hereinafter collectively known as ("UCMC") See (Pl. Ex. 101). Donovan was not the Medical Director but was and dismissed as Program Director because of his incompetence and misconduct against the plaintiff. UC per se legally has no OMRP but TUH legally has the OMRP

**Donovan Decln. #2:** Donovan lied about and misrepresented the classification and placement of the accepted Residents in the OMRP. The truth is that: (a) ACGME and ABPM structured and accredited only a three-year three Program Phases of advancement in OMRP, to wit, 1-yr of Clinical Phase, 1-yr of Academic Phase, and 1-yr of Practicum Phase. (Ex.97, 98 & 100). Accepted Residents who have completed the Clinical Phase are placed on combined 2-yr Academic and Practicum Phases. Accepted Residents who have completed the Clinical and Academic Phases are placed on the final 1-yr Practicum Phase. The UC's four different academic tracks and "Accelerated Track" are not accredited by ACGME and ABPM and did not formed part of ACGME-accredited OMRP.

**Donovan Decln. #3:** The Residency Selection Committee of UCMC accepted Amadasu into the Practicum Phase of TUH/UCMC's OMRP but not into UC's "Accelerated Track". (Ex. 1-5). UC has no right and legal authority to place Amadasu into its "Accelerated Track" without Amadasu's consent and knowledge and in reckless disregard of Amadasu's liberty interests in choice of occupation. Donovan and UC deprived Amadasu his constitutional, statutory and civil rights to be employed by and "to make and enforce" the ACGME-mandated GME-Contract with TUH. Donovan declared that Amadasu was not employed and did not have a contract with UC but inconsistently, Donovan and UC put Amadasu on UC-Employees Payroll and defrauded him almost half of stipend and benefits package that Amadasu's were entitled to under GME-contract with TUH (Ex.5-7, 9). Donovan lied about and misrepresented Amadasu as UC's Accelerated Track Student in order to defraud him, but Amadasu was never UC's Accelerated Track student.

**Donovan Decln. #4:** Donovan lied and misrepresented that Amadasu was on UC's Accelerated Track when Amadasu was actually on the Practicum Phase of TUH/UCMC's OMRP. This constituted pretext for discrimination in denying Amadasu promotion to Chief Resident position.

**Donovan Decln. #5:** Donovan lied and misrepresented that he received numerous complaint alleging improper sexual behavior by Amadasu. The truth is that Donovan never received numerous complaints; he and Pohl have no authority to receive such complaints, if they ever existed; he failed to

29

present admissible evidence of officially documented written, signed, charged, investigated, heard, decided and recorded complaints against Amadasu. Donovan has no proof that the emails [Ex.10(1-6)] were actually authored and sent by Amadasu and that those emails raised to the level of improper sexual behavior. Donovan's declaration is contradicted by and inconsistent with his confession and acknowledgment in his own 12/20/99 and 2/31/00 letters that the complaints he had masterminded were hoax (Ex.26-27). Donovan confessed that he had no bases for placing Amadasu on chaperon (Ex.27).

Because Donovan, Gaynor, and Pohl fabricated and could not prove sexual harassment against Amadasu, Donovan sidestepped the UC and TUH Sexual Harassment Policies and Procedures (Ex.20-25). Pohl confessed and acknowledged that she speculated, fabricated and communicated false sexual harassment complaint against Amadasu to Donovan (Pohl Responses Admission Requests #24-27). Ohio Defendants' (Ex. A) constituted inadmissible hearsay evidence because it consisted of hearsay, rumors, conclusory allegations and subjective speculative beliefs. Donovan admitted that he speculated and fabricated sexual harassment of Gaynor and female patient by plaintiff and that he had no evidence to support his speculations and conclusions (Donovan Responses Interrogatory #7-8, 10).

In Jones v. Butler Metro. Hous. Authority, 2002 WL 1455329 (6th Cir.2002), the Sixth Circuit held that: "Affidavit testimony by coworkers regarding former employee was based on hearsay, rumors, conclusory allegations and subjective beliefs, and thus, was not admissible in summary judgment proceeding in Title VII race discrimination and retaliation action, where testimony was based only on what coworkers were told regarding situation with former employee, citing FRCP 56(e).

Analogizing the Jones court holding in this action at bar, Gaynor fabricated sexual harassment based on rumor or what her coworker purportedly told her; also, Pohl fabricated sexual harassment based on her subjective speculative belief of what a female patient purportedly told her. Then, Gaynor and Pohl told their subjective, speculative, and conclusory allegations of sexual harassment to Donovan who finally subjectively, speculatively and recklessly fabricated conclusory allegation of sexual harassment against plaintiff.

Gaynor was terminated by UC for placing someone else emails into Amadasu's personnel file For the sole purpose of fabricating sexual harassment accusation against him to Donovan who acquiesced and participated in it.

**Donovan Decln. #6:** Donovan and Miller colluded to and did set-up Amadasu to fail by sending him to participate in UTHSCSA clinical rotation program at Laredo, Texas. Donovan lied that UC paid Amadasu's travel expenses. Inconsistently and contradictorily, why could UC pay travel expenses of Amadasu whom it claimed was not employed and did not have contract with it? Amadasu requested

30

but was denied reimbursement (Ex.102-103). After recommending Amadasu to be in good standing to Miller (Ex.108), Donovan on or about 4/18/00 communicated to Perales and Miller nonexistent allegation of sexual harassment by Amadasu and they conspired to and did exclude Amadasu from the federally assisted UTHSCSA's program without cause but for Donovan false slanderous communication and in retaliation for Amadasu's complaint of discrimination. (Ohio Deft. Memo. p.18; Pl. Ex.69, 117). Amadasu demanded to know the reason for terminating him but Donovan and Miller had failed to produce just cause for their actions. (Ex.120). Donovan and UC failed to present evidence of their paying Amadasu's travel expenses.

**Donovan Decln. #7:** UC and Donovan had no authority and bases to stop Amadasu from the TUH/UCMC's OMRP and to have placed him on probation because it was inconsistent with UC's claim that Amadasu was not its employee---Id at 3, supra. Donovan confessed and acknowledged that he had no bases for placing Amadasu on probation (Ex.27).

**Donovan Decln. #8:** Donovan lied absolutely that OMRP faculty members are not required to submit course evaluations or clinical practicum evaluations to the department--that is the resident's responsibility. The truth is that the rendition, submission and coordination of grades and written evaluations for courses and clinical rotations are fundamental, primary, legal and contractual duties, obligations and responsibilities of OMRP faculty members as mandated by ACGME (Ex.97 p.19) and by ABPM (Ex.98-100), and by UC's Policies and Procedures (Ex. 28 p.3). Donovan's deliberate falsehood and misrepresentation of faculty duties is evidence of his incompetence and ignorance of the standards and requirements of ACGME, ABPM, and the bylaws of TUH and UC. Donovan fraudulently directed and improperly advised Amadasu to go to Laredo, TX and to enroll in unnecessary didactic Middaugh's BOM II course for mere audit thereby set-up Amadasu to fail.

Donovan lied that he permitted Amadasu to withdraw and receive a grade of "W" as opposed to a grade of "F" because only the course instructor has the power to permit withdrawal (Ex.39-40). OMRP faculty has no authority and power to award a grade of "F" as opposed to "T" for non-graduate-credit course taken for audit. Middaugh in bad faith, maliciously, arbitrarily, capriciously, wantonly and recklessly awarded "F" for course taken for audit in violation of UC's Grades and Grading Guidelines, Rules and Regulation and Policies (Ex.29 p.9). For more than 22-months OMRP faculty---Donovan, Middaugh, Lockey and Freeman, neglected, failed and refused to award grades and written evaluations for Amadasu's work under them despite Amadasu's diligent reminders (Ex.30-35; 51-54)

**Donovan Decln. #9:** Jarrell, UC's Director of Graduate Studies with supervisory power over

31

Donovan and Middaugh, acknowledged that Middaugh was obligated to award "T" as opposed to "F" for audit course (Ex.36) but Jarrell failed and refused to query and punish Middaugh for violating UC's Rules.

**Donovan Decln. #10:** Donovan admits that Amadasu completed the program in June 2000, Id at #3 Donovan refused Amadasu signing the residency terminating/graduating form in June 2000 citing incomplete transcript, which OMRP faculty wholly caused. In spite of Amadasu's diligent efforts, it took about 9-months to rectify the transcript and thereafter, Donovan unilaterally, maliciously and arbitrarily completed partially the Terminating Form (Ex.43) citing baseless reasons for his action (Ex.44, 49), which he never cited in June 2000 and, but are contradicted by the record and Donovan's own notations that Amadasu was continuously in good standing throughout the program period (Ex.63, 66-8). Amadasu protested to the non-medical Chairman of the department and eventually, the Termination form was fully completed on 4/4/01. On 4/6/01, UC blockage without due process Amadasu's transcript needed to obtain gainful employment and other economic advantages.

**Donovan Decln. #11:** Donovan lied that Amadasu received a graduate student scholarship when Amadasu was not a graduate student who is subject to Ohio resident-student or non-Ohio resident-student academic tuition fee charges rules. The truth is that Amadasu was OMR who was/is required to pay naught and owed naught to UC. Donovan lied that because Amadasu owed money to UC, UC withheld Amadasu's transcript. Amadasu was/is not UC's student. Relationship between students and UC is contractual. Donovan acknowledged that Amadasu had no contract with UC; accordingly, there was no UC-student contractual relationship between UC and Amadasu. Donovan is contradicted by and is inconsistent with his 9/01/98 and 01/25/99 UCMC's letters that Amadasu was supported by federal financial assistance and had tuition remission (Ex.2 & 4). Additionally, Donovan is contradicted by UC's 02/05/00 and 10/10/02 letters that acknowledged that Amadasu owed no money to UC. (Ex.86-87, 89-90).

Donovan Decln. Ex. D constitutes fraudulent bill because the UC's fabricated non-resident surcharges had been billed and fully remitted as evidenced by student account statements (Ex.72). Further, Exhibit D (or Ex.74-75) shows: (1) that the student account statement was for winter quarter 2001, that is 7-months after Amadasu completed his Program in June 2000; (2) no courses titles and total credit hours stated for which the purported owed amount represented; (3) instructional fee and instructional (non-resident surcharge) were for 01/16/01 registration that Amadasu never made. Amadasu's last and final registration for clinical rotations and courses took place 03/15/00 and the bill was fully remitted (Ex.72-73). Donovan acknowledged that Amadasu actually completed his program in June 2000, accordingly, Amadasu owed no money to UC.

32

**Donovan Decln.#12:** Donovan lied that OMRP residents do not receive time off for vacation. OMRP residents do receive paid time of for vacation. Donovan assertion is contradicted by and inconsistent with standards and requirements of ACGME (Ex.97 p.14), Donovan's signed 10/15/98 UCMC letter (Ex.3), and TUH/UCMC's Compensations & Benefits package [Ex.6, 7(3)]

**Donovan Decln. #14:** Donovan admitted that he neglected, failed and refused to supervise Lockey, Gaynor and Freeman in dereliction of his duty mandated by the standards and requirement of ACGME (Ex.97-100).

It has been held, "Even if moving party comes forward with abundance of evidence supporting its theory of case, nonmoving party may nevertheless defeat motion for summary judgment by countering with evidence of his own, which if credited by fact finder, would entitle nonmoving party to verdict in his favor, or nonmoving party may demonstrate that evidence tendered by movant is itself laced with contradictions of fact." Ziolkowski v. Caterpillar, Inc., (E.D. Wis.1992) 800 F.Supp. 767, affirmed 996 F.2d 1220. Thus, plaintiff has highlighted Donovan's lies, misrepresentations, and inconsistencies.

## Defendants failure to overcome their burden of proof and evidence production and their incredibility preclude summary judgment in their favor

**Rule 56(e)** in pertinent part provides that:

> The judgment sought shall be rendered forthwith...when a motion for summary judgment is made and **supported** as provided in this rule.

**Defendants failed to support or prove their bald conclusory statements & false facts** that they made in their declarations regarding their theories of case or defenses as the reason for terminating Amadasu. Defendants merely supported their defenses by conclusory statements and bald assertions but failed to cite any evidence in support of their bald assertion and conclusory allegations.

Employer's conclusory allegation, that employee's proof was lacking, was insufficient to sustain employer's burden on its motion for summary judgment. Luttjohann v. Goodyear Tire and Rubber Co., 938 F.Supp.694 (D.Kan.1996). Bald assertions and conclusory statements did not satisfy requirements for motion for summary judgment. Pitman v. Aran., 935 F.Supp.637 (D.Md.1996).

Defendants failed to properly support their summary judgment motion as mandated by Rule 56(c) and 56(e), both of which give power and authority to the district court or judges to grant summary judgment <u>only</u> and <u>when</u> the summary judgment motion <u>is properly supported</u> thus, the district court lacks authority and power to grant summary judgment for defendants. Further, defendants failed to establish a prima facie case and proof of the elements with evidence their affirmative defenses

33

in their Answers. Thus, judgment should not be based on the unpleaded, unsupported and unproven defensive claim that were not raised or raised but unsupported and unproven against Amadasu, thus, the district court lacks subject matter jurisdiction to grant summary judgment in favor of the defendants.

In Provident Bank v. Hartman, 2001 WL605404 (OhioApp.8 Dist.), the court held, "we agree with appellant that the trial court erroneously granted summary judgment in favor of appellees on claims, which appellant did not raise against them."

Defendants supported their motions by their counsels-prepared memoranda or affirmations laced with conclusions and speculations but memoranda and affirmations are not among the documents the court must consider for summary judgment under FRCP 56(c). It has been held that "these affirmations are not sufficient to raise a triable issue since they contain only conclusions and speculations of the attorneys without proof or foundations." McGahee v. Kennedy, 48 NY2d 832 (1979). This conclusion is devoid of any reference to a foundational scientific [evidentiary] basis and as such is insufficient to establish the existence of a material issue of fact, which requires a trial. See, Romano v. Stanley, 90 NY2D 444 (1997).

The UC, TUH and UCMC policies and procedures mandate confidential documentation of any complaint against any employees for immediate investigation and hearing but defendants failed to produce record of any complaint against plaintiff. (Ex.20-25). Ohio defendants admitted that they have no evidence to produce in support of their defenses, speculations and conclusions. See, Ohio defendants' Responses to Plaintiff's Interrogatories.

On motion for summary judgment, moving party who has burden of proof on issue at trial, must establish all of the essential elements of claim or defenses for court to find that moving party is entitled to judgment as a matter of law. EEOC v. California Micro Devices Corp., 869 F.Supp.767 (D.Ariz.1994). Parties may submit documents and other exhibits to support or oppose motions for summary judgment. Most courts require that those documents be attached to Rule 56(e) affidavit. See Orr v. Bank of America, NT & SA, 285 F.3d 764, 773-74 (9th Cir.2002). It has been held that if supporting documents are not submitted or, if submitted, by a party but failed to reference it in an affidavit, summary judgment will be improper. See State ex rel. Freeman v. Morris, 62 Ohio St.3d 107, 579 NE.2d 702 (1991). The proper procedure for introducing evidentiary matter not specifically authorized by Rule 56(c) is to incorporate it by reference in a properly framed affidavit pursuant to Rule 56(e). Id, Orr, supra. Also, see Biskupich v. Westbay Manor Nurs. Home, 33 Ohio App.3d 220, 515 NE2d 632 (19986). Even when a nonmoving party chooses the perilous path of failing to submit a response to a summary judgment motion, the district court may not grant the motion without first

34

examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial; if it has not, summary judgment is inappropriate, for no defense to an insufficient showing is required. Maker v. Foley, 274 F.3d 677 (2d Cir.2001).

It has been held that: "Mere denial of particular fact without specific reference to supporting material that allegedly establish factual dispute is insufficient for summary judgment purposes and where factual assertion is met with such a naked denial, the fact may be deemed admitted. Zorn v. Helen Curtis, Inc., 903 F.Supp.1226 (ND Ill.1995).

### Defendants have credibility problem precluding summary judgment in their favor:

Amadasu has demonstrated contradictions, hypocrisy, inconsistencies, misstatements, misrepresentations, falsities, fraud, admissions and fabrications in defendants' motion papers (Ohio Deft. Memorandum, Declaration of Donovan and their Exhibits). The difference of Amadasu's classification and Donovan changing story created genuine issues of material fact for trial. Any ambiguity should be resolved in favor of Amadasu.

In Turner v. Turner, 67 Ohio St.3d 337, 617 NE.2d 1123 (1993), it has been held that if a litigant's affidavit in support of his or her motion for summary judgment is inconsistent with his or her prior deposition testimony (records), summary judgment in that party's favor is improper because there exists a question of credibility which can be resolved only by trier of fact. In Harrison v. Associates Corp. of North America, 917 F.2d 195 (5th Cir.1990). Amadasu has demonstrated with credible record evidence defendants' inconsistencies, perjuries, contradictions and fraud laced in their papers. In Swanson v. Leggett & Platt, Inc., 154 F.3d 730, 733 (7th Cir.1998), it has been held that a party does not meet his or her burden simply by theorizing a "plausible scenario" in support of the party's (defense), when that proffered scenario conflicts with direct, contrary evidence.

Ohio and Texas defendants merely pointed to gaps or lack of evidence in support of plaintiff's claims without pointing to any evidence in the record. Party seeking summary judgment, has burden of demonstrating its entitlement thereto as a matter of law. Peskin v. NYC Transit Auth. 757 NYS2d 594 (2003), citing (Smith v. AT&T Resource Mgt. Corp., 686 NYS2d 95). Anything less requires the denial of its motion—Id. Moreover, "'as a general rule, a party does not carry its burden in moving for summary judgment by pointing to gaps (lack of evidence) in its opponent's proof, but must affirmatively demonstrate the merit of its claim or defense'" Id, citing (Pace v. IBM, Corp., 670 NYS2d 543)

Defendants failed to present evidence or credible reason to explain their disparate treatment of plaintiff. It has been held that "City employer was not entitled to summary judgment in age (disparate

35

treatment) discrimination claim, absent evidence or reason to explain alleged disparate treatment between the plaintiff employee and other younger employees who received salary increases that were denied plaintiff employee—Id, Peskin v. IBM.

Because defendants failed to overcome their burden of proof of and production of admissible evidence to support their bald conclusory allegations and conclusions; and their papers or documents having proved their incredibility, they are not entitled to summary judgment as a matter of law.

### MOTION TO STRIKE DECLARATION OF JAMES R. DONOVAN
**Defendants supported their summary judgment motion with perjured memorandum and declarations made in bad faith precluding summary judgment; and invoked striking declarations and contempt against defendants**

Defendants and their attorney willfully, deliberately, contumaciously, egregiously and knowingly presented perjured memorandum and perjurious declarations made in bad faith pursuant to Rule 56(g) for the sole purposes of getting fraudulent litigation advantage, perpetrating fraud upon the court and to obtain judgment by fraud or collusion.

Rule 56(g) has been granted in classic "particularly egregious" circumstances, as defendants presented herein, where the district court finds that the affidavit was in fact, submitted in bad faith or with the purpose of delay. In Rogers v. AC Humko Corp., 56 F.Supp.2d 972 (WD.Tenn.1999), the court granted sanctions where affiant made a representation upon personal knowledge, relating to a crucial issue, in a manner favorable to his employer, which later proved to be false, and where representation was not a simple mistake but either a highly reckless representation of an important fact or a deliberate and calculated misrepresentation abetted by counsel and designed to thwart justice. Here, this is exactly what defendants did in this case.

Paucity of case law exists to guide the court's assessment of "bad faith" under the Rule 59(g), and the courts possess wide discretion in making this analysis. See Cobell v. Norton, 214 FRD 13, 20 (DDC.2003). Courts have found "bad faith" affidavit to be egregious conduct (e.g., averring perjurious or blatantly false allegations or facts) related and necessary to issues central to the disposition of the case. See Jaisan, Inc. v. Sullivan, 178 FRD 412, 415-16 (SDNY.1998). Rule 56(g) prescribed remedies for bad faith affidavits or declarations and Amadasu is entitled to such remedies. See Klein v. Stahl GMBH & Co. Maschinefabrik, 185 F.2d 98, 110 (3d Cir.1999). Once a party presents such bad faith affidavit, the compensation to the responding party—here, Amadasu, is not discretionary and must be awarded—Id, Cobell, supra.

This court should not consider and rely on the false memoranda and perjurious declarations made by defendants and their attorney averring perjurious and blatantly false allegations of facts that

36

related and necessary to the issues at bar and central to resolution of the summary judgment motion and the disposition of this case. The proper and necessary remedies are (a) in addition to sanctioning the submitting party, the court also has discretion to strike sham summary judgment affidavit or declaration, Bausman v. Interstate Brands Corp., 50 F.Spp.2d 1028 (D.Kan.1999), (b) in addition to the sanctions permitted under Rule 56(g), the court may also hold the attorney and the offending party in contempt of court—Id, Klein, supra; (c) strike the affidavit or declaration of the offending party Perez v. Volvo Car Corp., 247 F.3d 303, 315-16 (1st Cir.2001), (d) criminal penalties for false swearing to the court, 18 USCA 1623; and (e) reverse all orders, decisions or judgments based on the sham or bad faith affidavit or declaration. An affidavit filed in bad faith harms the judicial process and that is sufficient harm to warrant a penalty. See Cincinnati Bd of Educ. V. Armstrong World Indus., 1992 Ohio App. LEXIS 5465. Thus, defendants should be sanctioned and their declarations stricken.

Thus, Amadasu never waived his right to have defendants' declarations stricken.

**Defendants' summary judgment motions unsupported by pleadings, legal theories & Evidence:** A judgment must be supported by pleadings. Howard v. Howard, 234 Neb 661, 452 NW2d 283; that allege applicable legal theories and by competent evidence, Cumber v. Cumber, 326 NW2d 194(ND). Here, defendants failed to support their motion with credible and competent evidence as shown by their bad faith declarations and failure to support with evidentiary documentation their bald conclusory accusations, allegations, conclusions and actions

**Defendants' motions entirely based on issue by speculation, rumors, subjective beliefs:** An issue depending entirely upon speculation, surmise, or conjecture is never sufficient to sustain a judgment. Moon v. Winger Boss Co., 205 Neb 292, 287 NW2d 430. Here, the defendants failed to point to any record evidence adduced by defendants in support of their fabricated conclusory allegations, conclusions and actions thus, the judgment should not be based on conjecture.

**Defendants' declaration and affidavits are inadmissible because they are based on hearsay, rumors, innuendo, conclusory allegations and subjective speculative beliefs**

The district court struck the affidavits of plaintiff's coworkers, as well as portions of plaintiff's affidavit filed in support of plaintiff's opposition to defendants's summary judgment motion, because they consisted mainly of "hearsay, rumors, conclusory allegations and subjective beliefs…No evidence to support these beliefs is cited." Id, Jones, supra. Under FRCP 56(e), all affidavits filed in support or opposition of a summary judgment motion must set forth facts that would be admissible at trial. Moore v. Holbrook, 2 F.3d 697, 699 (6th Cir.1993). A court therefore cannot rely on inadmissible hearsay

37

when deciding a motion for summary judgment. <u>Mitchell v. Toledo Hosp.</u>, 964 F.2d 577, 584-85 (6th Cir.1992)

### Donovan set up Amadasu to fail and or to frame him up as pretext for discrimination

Donovan advised plaintiff to register for Middaugh's BOM-II as audit non-graduate credit course and to travel to Laredo, TX for clinical rotation; Donovan directed plaintiff to phone the female patient to remind her to send to the clinic her immunization card. Donovan designed these schemes solely to set-up plaintiff to fail and/or to frame him for professional impropriety, thus, there is a material dispute of fact as to whether Donovan advised and directed plaintiff to those things in order to set him up to fail and to frame for impropriety. Circuit courts have recognized that pretext can be proven by showing that a supervisor set an employee up to fail. See, e.g., <u>Serrano-Cruz v. DFI Puerto Rico, Inc.</u>, 109 F.3d 23, 26 (1st Cir.1997); <u>Stacks v. Southwestern Bell Yellow Pages, Inc.</u>, 27 F.3d 1316, 1325-25 (8th Cir.1994; <u>Shager v. Upjohn Co.</u>, 913 F.2d 398, 405 (7th Cir.1990)

### CONCLUSIONS

For the additional foregoing reasons, defendants' motions should be dismissed and plaintiff should be granted summary judgment against all defendants as a matter of law; Declaration of Donovan should be stricken and sanctions imposed upon him; and for other just and proper relief.

Respectfully submitted,

Darlington Amadasu
Plaintiff Lay Pro Se

### CERTIFICATE OF SERVICE

I hereby certify that true copy of the foregoing were served on Justin D. Flamm by delivery to receptionist and on John M. Grey, POB 12548, Austin Texas, 78711 by USPS mail on 06/10/05

38