UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

DARLINGTON AMADASU
Plaintiff

-V-

JAMES R. DONOVAN, MD, et al
Defendants

Case No: C - 1- 01 - 210
Black/Dlott

**SUPPLEMENTAL DECLARATION OF AMADASU IN SUPPORT OF PLAINTIFF'S COMBINED CROSS-MOTION FOR SUMMARY JUDGMENT & OPPOSITIONS TO ALL DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT; and MOTION TO STRIKE DEFENDANTS' DECLARATIONS**

I, Darlington Amadasu, lay pro se plaintiff in this action, solemnly declare that I have personal knowledge of the facts and circumstances stated below and competence to testify to them, which are true, accurate to the best of my knowledge and belief and under the penalty of perjury pursuant to 28 U.S.C.A. 1746

1. Pursuant to FRCP 56(e), I submit this supplemental declaration in support of my cross motion for summary judgment and in opposition to defendants' motion for summary judgment pending defendants' production of responses and documents responsive to plaintiff's discovery requests.

2. I incorporate by reference my initial memorandum, declaration and all the exhibits already filed in support of my cross-motion for summary judgment and in opposition to defendants' motion for summary judgment

**Inconsistencies, Contradictions, Lies, Fraud, Misrepresentation in Donovan's Declaration**

3. I hereby declare the contradictions, hypocrisy, inconsistencies, misstatements, misrepresentations, lies, fraud, admissions and fabrications in defendants' motion papers and respond seriatim to Declaration of Donovan as follows:

4. **Donovan Decln. #1:** Donovan misrepresented the facts that Amadasu participated in UC's Occupational Medicine Residency Program ("OMRP"). The truth is that Amadasu participated in OMRP of The University Hospital ("TUH") and University of Cincinnati College of Medicine ("UCCM") hereinafter collectively known as ("UCMC") See (Pl. Ex. 101). Donovan was not the

1

Medical Director but was and dismissed as Program Director because of his incompetence and misconduct against the plaintiff. UC per se legally has no OMRP but TUH legally has the OMRP

5. **Donovan Decln. #2:** Donovan lied about and misrepresented the classification and placement of the accepted Residents in the OMRP. The truth is that: (a) ACGME and ABPM structured and accredited only a three-year three Program Phases of advancement in OMRP, to wit, 1-yr of Clinical Phase, 1-yr of Academic Phase, and 1-yr of Practicum Phase. (Ex.97, 98 & 100). Accepted Residents who have completed the Clinical Phase are placed on combined 2-yr Academic and Practicum Phases. Accepted Residents who have completed the Clinical and Academic Phases are placed on the final 1-yr Practicum Phase. The UC's four different academic tracks and "Accelerated Track" are not accredited by ACGME and ABPM and did not formed part of ACGME-accredited OMRP.

6. **Donovan Decln. #3:** The Residency Selection Committee of UCMC accepted Amadasu into the Practicum Phase of TUH/UCMC's OMRP but not into UC's "Accelerated Track". (Ex. 1-5). UC has no right and legal authority to place Amadasu into its "Accelerated Track" without Amadasu's consent and knowledge and in reckless disregard of Amadasu's liberty interests in choice of occupation. Donovan and UC deprived Amadasu his constitutional, statutory and civil rights to be employed by and "to make and enforce" the ACGME-mandated GME-Contract with TUH. Donovan declared that Amadasu was not employed and did not have a contract with UC but inconsistently, Donovan and UC put Amadasu on UC-Employees Payroll and defrauded him almost half of stipend and benefits package that Amadasu's were entitled to under GME-contract with TUH (Ex.5-7, 9). Donovan lied about and misrepresented Amadasu as UC's Accelerated Track Student in order to defraud him, but Amadasu was never UC's Accelerated Track student.

7. **Donovan Decln. #4:** Donovan lied and misrepresented that Amadasu was on UC's Accelerated Track when Amadasu was actually on the Practicum Phase of TUH/UCMC's OMRP. This constituted pretext for discrimination in denying Amadasu promotion to Chief Resident position.

8. **Donovan Decln. #5:** Donovan lied and misrepresented that he received numerous complaint alleging improper sexual behavior by Amadasu. The truth is that Donovan never received numerous complaints; he and Pohl have no authority to receive such complaints, if they ever existed; he failed to present admissible evidence of officially documented written, signed, charged,

2

investigated, heard, decided and recorded complaints against Amadasu. Donovan has no proof that the emails [Ex.10(1-6)] were actually authored and sent by Amadasu and that those emails raised to the level of improper sexual behavior. Donovan's declaration is contradicted by and inconsistent with his confession and acknowledgment in his own 12/20/99 and 2/31/00 letters that the complaints that he had masterminded were hoax (Ex.26-27). Donovan confessed that he had no bases for placing Amadasu on chaperon (Ex.27). Because Donovan, Gaynor, and Pohl fabricated and could not prove sexual harassment against Amadasu, Donovan sidestepped the UC and TUH Sexual Harassment Policies and Procedures (Ex.20-25). Pohl confessed and acknowledged that she speculated, fabricated and communicated false sexual harassment complaint against Amadasu to Donovan (Pohl Responses Admission Requests #24-27). Ohio Defendants' (Ex. A) constituted inadmissible hearsay evidence. Donovan admitted that he speculated and fabricated sexual harassment of Gaynor and female patient by plaintiff and that he had no evidence to support his speculations and conclusions (Donovan Responses Interrogatory #7-8, 10). Gaynor was terminated by UC for placing someone else emails into Amadasu's personnel file for the sole purpose of fabricating sexual harassment accusation against him to Donovan who acquiesced and participated in it.

The unfounded febricated sexual harassment accusations against plaintiff were based on hearsay, rumors, conclusory allegations and subjective beliefs by and among Gaynor, Pohl, Donovan, Perales and Miller. Gaynor fabricated sexual harassment based on rumor or what her coworker purportedly told her; also, Pohl fabricated sexual harassment based on her subjective speculative belief of what a female patient purportedly told her. Then, Gaynor and Pohl told their subjective, speculative, and conclusory allegations of sexual harassment to Donovan who finally subjectively, speculatively and recklessly fabricated conclusory allegation of sexual harassment against plaintiff thereby constitute inadmissible under FRCP 56(e).

9.  **Donovan Decln. #6:**   Donovan and Miller colluded to and did set-up Amadasu to fail by sending him to participate in UTHSCSA clinical rotation program at Laredo, Texas. Donovan lied that UC paid Amadasu's travel expenses. Inconsistently and contradictorily, why could UC pay travel expenses of Amadasu whom it claimed was not employed and did not have contract with it? Amadasu requested but was denied reimbursement (Ex.102-103). After recommending Amadasu to be in good standing to Miller (Ex.108), Donovan on or about 4/18/00 communicated to Perales and Miller nonexistent allegation of sexual harassment by Amadasu and they conspired to and did exclude Amadasu from the federally assisted UTHSCSA's program without cause but for Donovan false slanderous communication and in retaliation for Amadasu's complaint of discrimination. (Ohio Deft. Memo. p.18; Pl. Ex.69, 117). Amadasu demanded to know the reason for terminating him but

3

Donovan and Miller had failed to produce just cause for their actions. (Ex.120). Donovan and UC failed to present evidence of their paying Amadasu's travel expenses.

10.     **Donovan Decln. #7:** UC and Donovan had no authority and bases to stop Amadasu from the TUH/UCMC's OMRP and to have placed him on probation because it was inconsistent with UC's claim that Amadasu was not its employee---Id at 3, supra. Donovan confessed and acknowledged that he had no bases for placing Amadasu on probation (Ex.27).

11.     **Donovan Decln. #8:** Donovan lied absolutely that OMRP faculty members are not required to submit course evaluations or clinical practicum evaluations to the department--that is the resident's responsibility. The truth is that the rendition, submission and coordination of grades and written evaluations for courses and clinical rotations are fundamental, primary, legal and contractual duties, obligations and responsibilities of OMRP faculty members as mandated by ACGME (Ex.97 p.19) and by ABPM (Ex.98-100), and by UC's Policies and Procedures (Ex. 28 p.3). Donovan's deliberate falsehood and misrepresentation of faculty duties is evidence of his incompetence and ignorance of the standards and requirements of ACGME, ABPM, and the bylaws of TUH and UC. Donovan fraudulently directed and improperly advised Amadasu to go to Laredo, TX and to enroll in unnecessary didactic Middaugh's BOM II course for mere audit thereby set-up Amadasu to fail.

12.     Donovan lied that he permitted Amadasu to withdraw and receive a grade of "W" as opposed to a grade of "F" because only the course instructor has the power to permit withdrawal (Ex.39-40). OMRP faculty has no authority and power to award a grade of "F" as opposed to "T" for non-graduate-credit course taken for audit. Middaugh in bad faith, maliciously, arbitrarily, capriciously, wantonly and recklessly awarded "F" for course taken for audit in violation of UC's Grades and Grading Guidelines, Rules and Regulation and Policies (Ex.29 p.9). For more than 22-months OMRP faculty---Donovan, Middaugh, Lockey and Freeman, neglected, failed and refused to award grades and written evaluations for Amadasu's work under them despite Amadasu's diligent reminders (Ex.30-35; 51-54)

13.     **Donovan Decln. #9:** Jarrell, UC's Director of Graduate Studies with supervisory power over Donovan and Middaugh, acknowledged that Middaugh was obligated to award "T" as opposed to "F" for audit course (Ex.36) but Jarrell failed and refused to query and punish Middaugh for violating UC's Rules.

4

14.     **Donovan Decln. #10:** Donovan denied Amadasu completed the program in June 2000 (Donovan Response Admission #8) and contradicted himself when he declares that Amadasu completed the program in June 2000, (Donovan Decln. #3). Donovan refused Amadasu signing the residency terminating/graduating form in June 2000 citing incomplete transcript, which OMRP faculty wholly caused. In spite of Amadasu's diligent efforts, it took about 9-months to rectify the transcript and thereafter, Donovan unilaterally, maliciously and arbitrarily completed partially the Terminating Form (Ex.43) citing baseless reasons for his action (Ex.44, 49), which he never cited in June 2000 and, but are contradicted by the record and Donovan's own notations that Amadasu was continuously in good standing throughout the program period (Ex.63, 66-8). Amadasu protested to the non-medical Chairman of the department and eventually, the Termination form was fully completed on 4/4/01. On 4/6/01, UC blockage without due process Amadasu's transcript needed to obtain gainful employment and other economic advantages.

15.     **Donovan Decln. #11:** Donovan lied that Amadasu received a graduate student scholarship when Amadasu was not a graduate student who is subject to Ohio resident-student or non-Ohio resident-student academic tuition fee charges rules. The truth is that Amadasu was OMR who was/is required to pay naught and owed naught to UC. Donovan lied that because Amadasu owed money to UC, UC withheld Amadasu's transcript. Amadasu was/is not UC's student. Relationship between students and UC is contractual. Donovan acknowledged that Amadasu had no contract with UC, accordingly, there was no UC-student contractual relationship between UC and Amadasu. Donovan is contradicted by and is inconsistent with his 9/01/98 and 01/25/99 UCMC's letters that Amadasu was supported by federal financial assistance and had tuition remission (Ex.2 & 4). Additionally, UC's 02/05/00 and 10/10/02 letters that acknowledged that Amadasu owed no money to UC contradicts Donovan. (Ex.86-87, 89-90).

16.     Donovan Decln. Ex. D constitutes fraudulent bill because the UC's fabricated non-resident surcharges had been billed and fully remitted as evidenced by student account statements (Ex.72). Further, Exhibit D (or Ex.74-75) shows: (1) that the student account statement was for winter quarter 2001, that is 7-months after Amadasu completed his Program in June 2000; (2) no courses titles and total credit hours stated for which the purported owed amount represented; (3) instructional fee and instructional (non-resident surcharge) were for 01/16/01 registration that Amadasu never made. Amadasu's last and final registration for clinical rotations and courses took place 03/15/00 and the bill

5

was fully remitted (Ex.72-73). Donovan acknowledged that Amadasu actually completed his program in June 2000; accordingly, Amadasu owed no money to UC.

17. **Donovan Decln. #12:** Donovan lied that OMRP residents do not receive time off for vacation. OMRP residents do receive paid time of for vacation. Donovan assertion is contradicted by and inconsistent with standards and requirements of ACGME (Ex.97 p.14), Donovan's signed 10/15/98 UCMC letter (Ex.3), and TUH/UCMC's Compensations & Benefits package [Ex.6, 7(3)]

18. **Donovan Decln. #14:** Donovan admitted that he neglected, failed and refused to supervise Lockey, Gaynor and Freeman in dereliction of his duty mandated by the standards and requirement of ACGME (Ex.97-100).

19. Defendants' evasive, false, ambiguous, contradictory, inconsistent, incomplete, or none responses to plaintiff's Admissions Requests and plaintiff's Interrogatories, all of which have been filed, constitute evidence of their discovery abuses, lack of defenses to plaintiff's claims

20. **Affidavits of Miller and Perales:** Perales admits that he had no authority to terminate plaintiff from UTHSCSA program evidencing that he acted outside the scope of his job (Perales Response Admission Request #5). Miller and Perales failed to articulate facts, adduce evidence and prove their conclusory allegation of "inappropriate behavior" as reason for excluding plaintiff from the program evidencing that they have no legitimate nondiscriminatory reason for their action. Their affidavits are based on conclusions and speculations (Affidavits of Miller and Perales)

21. Declaration of Donovan and the affidavits of Miller and Perales are inadmissible because they failed to satisfy the mandates of FRCP 56(e) and are based on rumors, hearsay, subjective belief and conclusory allegations

Dated: June 9, 2005

                                                                               DECLARANT
                                                                               Darlington Amadasu
                                                                               Plaintiff Lay pro se.

**CERTIFICATE OF SERVICE**

I hereby certify that true copy of the foregoing were served on Justin D. Flamm by delivery to receptionist and on John M. Grey, POB 12548, Austin Texas, 78711 by USPS mail on 06/10/05

*[signature]*