UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| DARLINGTON AMADASU, | : | Case No. C-1-01-210 |
| Plaintiff, | : | Judge Dlott |
| v. | : | Magistrate Judge Black |
| JAMES R. DONOVAN, M.D., et al. | : | **OHIO DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF SUMMARY JUDGMENT ON ALL OF PLAINTIFF'S CLAIMS[1]** |
| Defendants. | : | |

## I. INTRODUCTION

The Ohio Defendants submit their reply memorandum in support of summary judgment on all of Plaintiff Darlington Amadasu's ("Amadasu") claims. For the reasons set forth below, as well as those set forth in the Ohio Defendants' March 31, 2005 memorandum in support of their motion for summary judgment, there are no genuine issues of material fact and it is respectfully submitted that the Ohio Defendants are entitled to judgment.

## II. ARGUMENT

### A. As A Threshold Matter, Amadasu's 73-Page Opposition Brief Was Untimely And Grossly Exceeds The Court-Ordered Page Limit

As a threshold matter, Amadasu's opposition brief should not be considered because it is untimely and because it exceeds the Court-ordered page limit by 53 pages.

On April 18, 2005, Amadasu moved the Court for a lengthy extension of time to file his opposition brief. (Doc. 100) The Court granted Amadasu's motion and ordered that he file his opposition brief "no later than May 30, 2005." (Doc. 102) May 30 fell on the Memorial Day holiday, but Amadasu did not file his brief on the next business day; instead, he waited until June 1 to file. (Doc. 106) Amadasu did not meet the generous extension that he was granted by the

[1] The Ohio Defendants will separately respond to Plaintiff's untimely "Cross-Motion" for Summary Judgment that was filed on June 1, 2005.

Court -- though in the meantime Amadasu did take the time to prepare and file a 19-count, 298-paragraph complaint in the Eastern District of New York. (*Amadasu v. Ngati*, No. 05-2585, E.D.N.Y., filed May 20, 2005)

Amadasu is no stranger to the judicial system. As Judge Beckwith recently noted while dismissing one of Amadasu's many cases, he "has also filed nine other actions over the past four years in the Southern District of Ohio." (Jan. 24, 2005 Order in *Amadasu v. University Hospital, Inc. et al.*, No. 1:05cv45, at p.3 n.1) Further, Amadasu himself has sought to hold the Ohio Defendants to strict standards of timeliness in this litigation, such as when he moved to strike a reply memorandum because he (erroneously) claimed it was filed slightly out of time. (Doc. 90) Amadasu should be held to the same standards as other litigants -- and the same standards that he would impose on others.

Further, Amadasu's opposition brief is 73 pages long. He never sought nor obtained leave of court to exceed the 20-page limit at all. The scheduling Order entered back in June 2004 set forth the following requirement: "Any brief and/or memoranda in support of or in opposition to any motion in this Court shall not exceed twenty pages without first obtaining leave of Court." (Doc. 61 at p.3) The Ohio Defendants submit that neither they nor the Court should be required to wade through Amadasu's rambling and overlong brief to address his various arguments.

**B. Amadasu Does Not Contest The Dismissal Of His Case Under 28 U.S.C. § 1915**

As noted in the Ohio Defendants' motion, 28 U.S.C. § 1915 requires dismissal of an *in forma pauperis* plaintiff's case if the action "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(E)(2). Amadasu, an *in forma pauperis* plaintiff (Doc. 3), has done just that by seeking compensatory and punitive damages -- and no injunctive relief whatsoever -- from defendants who are immune from damages under the Eleventh Amendment.

Amadasu ignores Defendants' argument under § 1915 in his opposition brief. By failing even to address how his action runs afoul of § 1915, Amadasu effectively concedes the dismissal of his entire action due to his abuses of the *in forma pauperis* privileges. For this independent reason, dismissal of Amadasu's entire complaint is appropriate under the mandatory terms of the statute.

## C. Amadasu's Title VI And Title VII Claims Should Be Dismissed [2]

### 1. Amadasu Has No Direct Evidence of Discrimination.[3]

In the Sixth Circuit, direct evidence is proof that establishes discrimination ***on its own***. *Terbovitz v. Fiscal Court of Adair Cty,*. 825 F.2d 111, 115 (6th Cir. 1987). Evidence that requires a jury to infer a fact is not direct evidence. *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1081 (6th Cir. 1994); *see also Smith v. Chrysler Corp.*, 155 F.3d 799, 805 (6th Cir. 1998) ("such [direct] evidence would take the form, for example, of an employer telling an employee, "I fired you because you are disabled."). None of Amadasu's proffered "evidence" constitutes direct evidence of discrimination.

### 2. Amadasu Lacks Circumstantial Evidence of Discrimination.

Amadasu had the burden to prove that he was discriminated against on the basis of his race, age, or national origin, and he has not met that burden. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981) ("the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff."). Amadasu cannot discharge his burden by making mere conclusory allegations. *Wixson v. Dowagiac Nursing Home*, 87 F.3d 164, 171 (6th Cir. 1996) (affirming summary judgment for

---

[2] Because Amadasu's Title VI and Title VII claims fail, his Section 1981, 1983 equal protection claims, and his O.R.C.§ 4112 claims fail as well. *See* Doc. 97, p.11, n.6.

[3] In some portions of Amadasu's response brief (Doc. 106), Amadasu appears to suggest that a mixed motive analysis should apply. However, at the summary judgment stage the crucial question is "whether the plaintiff has presented evidence, *direct or circumstantial*, from which a reasonable jury could logically infer that [a protected characteristic] was a motivating factor in [the defendant's adverse employment action against the plaintiff]." *Harris v. Giant Eagle Inc.*, 2005 WL 1313147 (6th Cir. May 27, 2005) (discussing *Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003)). Amadasu has not done so.

defendants where plaintiff's allegations of discrimination were "made in general, conclusory terms, [with] names, times and occasions are missing").

Moreover, Amadasu failed to establish that he suffered a materially adverse employment or education action or that he was treated differently than similarly situated non-protected residents, as discussed below.

**a. <u>No Adverse Action</u>**

Amadasu's Title VI allegation is based upon his alleged denial of a Graduate Medical Education contract (Doc. 106 pgs. 38-40); however, Amadasu has offered no evidence to demonstrate that the alleged denial of a GME agreement materially affected his education. *Hollins v. Atlantic Co.*, 188 F.3d 652, 662 (6th Cir. 1999) (an adverse employment action is defined as a "materially adverse change in terms and conditions of [plaintiff's] employment."); *see also D.J. Miller & Assoc., Inc. v. Ohio Dept. of Admin. Svc.*, 115 F. Supp. 2d 872 (S.D. Ohio 2000) (applying Title VII analysis to Title VI case). Further, *none* of the OMRP residents had GME agreements during the relevant term. (Third Donovan Declaration ¶ 3)

It is undisputed that Amadasu received all of his grades. (Doc. 104, ¶ 22) Additionally, it is undisputed that Amadasu received a certificate of completion from the OMRP. (Doc. 106, p. 35 ¶ 8) Amadasu acknowledges that he completed the OMRP in June 2000. (*Id.*) And while Amadasu makes a fuss over his designation as an "Accelerated Track" resident, it is undisputed that he was on that track; this designation hardly qualifies as an adverse action. (Amadasu Declaration, Doc. 104, at ¶ 9)

**b. <u>No Evidence That Amadasu Was Treated Differently Than Similarly Situated Residents.</u>**

Even had Amadasu established that he suffered an adverse action, he did not demonstrate that he was treated differently than any UC resident who was similarly situated in all relevant respects. Amadasu offers the Court only two names of would-be comparables, but he makes no

effort to provide facts showing either of those individuals were similarly situated in all relevant respects. Unlike Amadasu, neither Loren Tapp nor Robert Gabel were Practicum Year residents on the Accelerated Track like Amadasu was. (Third Donovan Declaration ¶ 2) Amadasu did not attend UC for graduate credit, while both Tapp and Gabel worked towards completing their Masters Degrees in Environmental Health from UC, while simultaneously participating in the OMRP. (Doc. 104 ¶ 18; Third Donovan Dec. ¶ 2 ) Both Tapp and Gabel were in the OMRP for significantly more than a year, while Amadasu graduated from the program in approximately one year. (Third Donovan Dec. ¶ 2, Doc. 106, p. 35 ¶ 8) Amadasu's assertions that he was similarly situated to Tapp and Gabel are insufficient to overcome summary judgment. *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992) ("it is fundamental that to make a comparison of a discrimination plaintiff's treatment to that of non-minority employees, the plaintiff must show that the 'comparables' are similarly situated in all respects.").

Amadasu's references to unnamed individuals who he claims are similarly situated are also insufficient. *Bell v. Ohio State University*, 351 F.3d 240 (6th Cir. 2003) (Plaintiff must allege specific facts, including the names of the non-protected residents). Rule 56 requires evidence for a party to avoid summary judgment, and Amadasu lacks any such evidence.

**3. The Ohio Defendants Had Legitimate Business Reasons for Their Actions and Amadasu Did Not Present Any Evidence That Those Reasons Were Pretextual.**

Amadasu did not present any evidence that the mere delay of a few of his grades was pretext for discrimination. As to his transcript, Amadasu does not dispute that he did not become an Ohio resident during his participation in UC's OMRP. (Doc. 97, Donovan Dec. ¶ 11) The fact that Amadasu received a zero-balance invoice at one point in time does not change the fact that UC's Student Accounts Office determined he did owe the University money when his grades were held. (Doc. 105, Exhs. 76, 78, 80, and 82)

Donovan also had legitimate reasons to place Amadasu on probation and to have him chaperoned. Amadasu does not dispute that Dora Jefferson Gaynor complained to Donovan that Amadasu was engaging in inappropriate sexual behavior. (Doc. 105, ¶ 36) Amadasu also does not dispute that the Texas Defendants complained to Donovan about what they found to be Amadasu's inappropriate sexual behavior. (Doc. 104 ¶¶ 33-34) Even had Donovan later found the allegations to be untrue, this does not negate the fact that the allegations were made. The fact that Donovan did not have any written documentation of the complaints from the accusers is not relevant for purposes of determining whether Donovan's actions were reasonable. *Evans v. Bally's Health and Tennis, Inc.*, 1994 WL 121479 (D. Md. Jan. 25, 1994) (employer's lack of documentation as to the sexual harassment charges against Plaintiff was not relevant to the issue of whether the plaintiff was discharged because of the allegations of sexual harassment).

**D. Amadasu Does Not Dispute That Summary Judgment Is Appropriate For the Ohio Defendants On His Sex Discrimination Claim.**

It is undisputed that Amadasu did not allege sex discrimination in his EEOC charge; thus, his sex discrimination claim should be dismissed. (Doc. 97, Exh. A to McCrate Dec.) *See also Ang v. Procter and Gamble Co.*, 932 F.2d 540 (6th Cir. 1991) (plaintiff precluded from alleging race discrimination where administrative complaint only included national origin discrimination).

**E. Amadasu Does Not Dispute That Summary Judgment For The Ohio Defendants Is Appropriate On His Title VII Claims Against Donovan In His Individual Capacity.**

Amadasu does not dispute that Donovan was not his employer or that Donovan is not an "entity" subject to suit under Title VI; thus, Amadasu's Title VI and Title VII claims against Donovan in his individual capacity should be dismissed. (Doc. 97, p. 14) *Wathen v. General Electric*, 115 F.3d 400, 405 (6th Cir. 1997) ("individual who does not independently qualify under the statutory definition of employer cannot be held personally liable under Title VII."); *Davis v.*

*Flexmann*, 109 F. Supp.2d 776, 793 (S.D. Ohio 1999) (only entities, not persons, are subject to liability under Title VI).

**F. Amadasu Did Not Allege That Any Of The Ohio Defendants Sexually Harassed Him In His EEOC Charge Or His Amended Complaint; Thus, His Sexual Harassment Claim Should Be Dismissed.**

Nowhere in his Amended Complaint or his EEOC charge did Amadasu allege that any of the Ohio Defendants sexually harassed him. (Doc. 51; Doc. 97, Exh. A to McCrate Dec.) Amadasu cannot now in the eleventh hour claim that he was sexually harassed by Donovan, Gaynor, or any of the Ohio Defendants. *Gray v. U.S P.S.*, 133 F. Supp.2d 593, 598 (N.D. Ohio 2001) (dismissing plaintiff's sex harassment claim where plaintiff failed to check the box for "sex" on her EEOC complaint). Moreover, the gravamen of his claim is that he was wrongly accused of sexual harassment. This is not sex harassment under the standard in *Meritor Savings Bank v. Vinson*, 477 U.S. 57 (1986).

**G. Summary Judgment Should Be Granted In Favor Of The Defendants On Amadasu's Retaliation Claim.**

The only bases for Amadasu's retaliation claims are the alleged withholding of his grades, transcript, and graduation. Amadasu also alleges that Donovan falsely accused him of sexual harassment; however, Amadasu acknowledges that his grades were delayed *prior* to his alleged submission of his employment discrimination complaint to Donovan and that the alleged false sexual harassment allegations were made prior to a December 1999 letter to Donovan. (Doc. 104, ¶ 16) Evidence that a pattern of conduct occurred prior to and after the alleged protected activity defeats a retaliation claim. *Erenberg v. Methodist Hosp.*, 357 F.3d 787 (8th Cir. 2004) (no causal link between internal grievance and discharge where employee was "consistently disciplined for the same performance and attendance issues throughout her employment, both before her complaint and after."). Moreover, Amadasu's transcript was withheld months *after* his supposedly protected activity. (*See*, *e.g.*, Doc. 104, Exh. 85) *Hafford v. Seidner*, 183 F.3d 506, 515 (6th Cir.

1999) (absent additional evidence, two to five months insufficient to create a triable issue of causation). And Amadasu's admission that he was not a graduate student and that he was merely in UC's OMRP for the practicum phase of the residency program does not entitle him to graduation. (Doc. 104, ¶ 7)

Amadasu has failed to establish a causal link between his alleged protected activity and any adverse employment and/or educational action, and his retaliation claim fails.

**H. Amadasu's Hostile Work Environment Claim Should Be Dismissed.**

Title VII only covers "severe" or "pervasive" harassment. *Smith v. Leggett Wire Co.*, 220 F.3d 752, 760 (6th Cir. 2000) ("in order to establish a hostile work claim under Title VII, the plaintiff must show that the conduct in question was severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive and that the victim subjectively regarded as abusive."). As demonstrated in Section C of this Reply Brief and in the Ohio Defendants' Motion for Summary Judgment, Amadasu does not have any evidence that any of the Ohio Defendants' alleged actions altered the conditions of his employment. (Doc. 97, p. 13) Donovan did not have any of the OMRP residents, including Amadasu, Tapp, and Gabel sign the Graduate Medical Education agreement at anytime during the 1999-2000 term. (Third Donovan Dec. ¶ 3) Allegations that relate to conduct which occurred *after* he completed his participation in UC's OMRP program such as the debt issue and the denial of a transcript after he completed UC's OMRP cannot demonstrate that UC created a hostile work or education environment *during* his participation in the program. Also, Amadasu has not shown that any of the alleged actions occurred because of his race, age, or national origin. *Farmer v. Cleveland Public Power*, 295 F.3d 593, 605 (6th Cir. 2002) ("a racial hostile work environment claim is cognizable only if the purported harassment, viewed in conjunction with all of the circumstances, occurred because of the employee's race…").

For these reasons and those stated in the Ohio Defendants' Motion for Summary Judgment, Amadasu's hostile work environment claim should be dismissed. *See* Doc. 97, p.13.

**I. Amadasu's Conclusory Allegations That He Was Not Promoted To The Chief Resident Position Because Of His Race or National Origin Are Insufficient To Defeat The Ohio Defendants' Motion For Summary Judgment.**

Amadasu's bald assertion of his own belief that he is at least as "qualified" as others who have been promoted is insufficient. To withstand a motion for summary judgment, a plaintiff must present significant probative evidence tending to support such allegations. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

Moreover, Federal Rule of Civil Procedure 56(e) provides that "supporting and opposing affidavits shall be made on personal knowledge…., and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed. R. Civ. Pro. 56(e). Amadasu is not competent to testify as to UC's OMRP policy on selecting Chief Residents, and his unsupported assertions do not create a genuine issue of material fact. *Godfrey v. Ethan Allen, Inc.*, 113 F.3d 1229 (2d Cir. 1997) (unpublished table opinion) (employee's bald assertions that company had a bumping policy, where there was no evidence that such a policy existed, failed to establish the existence of a prima facie case of employment discrimination). Donovan is the proper University officer to express University policy -- he was the OMRP program director at the relevant time. (Doc. 97, Donovan Dec. ¶1) Donovan makes clear that Amadasu was not eligible to be the Chief Resident.

Amadasu was on the Accelerated Track; thus, he was ineligible for the Chief Resident position. (Doc. 97, Donovan Dec. ¶ 4) Neither Tapp nor Gabel were on the Accelerated Track; they continued through the program on the Standard Track, which is why they (unlike Amadasu) were eligible for the position. (Third Donovan Dec. ¶ 2) Tapp and Gabel were working towards completing their Masters Degree in Environmental Health while they simultaneously participated

in UC's OMRP. (Third Donovan Dec. ¶ 2; Doc. 104 ¶ 18) Amadasu cannot show disparate treatment.

**J. Amadasu's Conclusory Assertions That He Was Not Hired For The Second Year Family Practice Position Because of His Race, National Origin, Or Age Are Insufficient To Defeat Ohio Defendants' Motion For Summary Judgment.**

Amadasu cannot defeat the Ohio Defendants' MSJ by merely restating the elements of a prima facie case of employment discrimination. There is no evidence that Amadasu applied for the Second Year Family Practice position or that he was qualified for the position. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973) (listing elements of a prima facie case of racial discrimination in a failure to hire case). *Babiker v. Ross University School of Medicine*, 2000 WL 666342 (S.D.N.Y. 2000) (finding that plaintiff's conclusory allegations that "because [he] was black and a foreigner in the [US], [the University] got rid of him" was not evidence of discrimination).

The individual who was hired for the position, Geoff Harris, received his medical education from Duke University, an acclaimed medical school, and his medical board scores were very high. (Mullen Dec. ¶ 2) Further, he had excellent letters of recommendation from his dean and from a family-practice doctor. (*Id.*) Amadasu had none of these assets, and thus he is not similarly situated to Dr. Harris in all relevant respects.

**K. Amadasu's Conclusory Assertions That He Was Not Hired For The Adjunct Faculty In Health Promotions Position Are Insufficient To Defeat Ohio Defendants' Motion For Summary Judgment.**

It is undisputed that the person hired for the Adjunct Faculty in Health Promotions position had substantial teaching experience, a degree in health education and promotions and worked at UC. (Doc. 97, Hermann Dec. ¶ 4) Amadasu did not have a degree in health education or substantial teaching experience. (*Id.*) Amadasu does not present any evidence that UC's decision not to hire him was a pretext for discrimination. UC's legitimate business reason for not hiring

Amadasu has a basis in fact. Merely because Amadasu disagrees with an UC's personnel decisions does not mean UC's reasons are pretext. *McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1162 (6th Cir. 1990) (stating that a plaintiff "does not raise a factual dispute by alleging that [an employer] made a poor business decision.").

**L. Amadasu Does Not Dispute That UC Is An Arm Of The State Of Ohio, His Section 1981, 1983, 1985, 1986 And State Law Claims Against UC And Donovan In His Official Capacity Must Be Dismissed.**

As the Ohio Defendants stated in their MSJ, Amadasu cannot bring his Section 1981, 1983, 1985, 1986, and state law claims in federal court against the University and Donovan in his official capacity. (Doc. 97, p. 15 and 16) Counts 2-7 and 9-15 against UC and against Donovan in his official capacity should be dismissed.

**M. It Is Undisputed That Donovan Was Employed By UC, An Arm Of The State Of Ohio, And That Amadasu Did Not First Assert His State Law Claims Against Donovan In The Ohio Court of Claims.**

Because Amadasu did not file a claim in the Ohio Court of Claims against Donovan, this Court lacks jurisdiction over Amadasu's state law claims against Donovan in his individual capacity. *See* Doc. 97, p. 16. Counts 9-15 against Donovan in his individual capacity should be dismissed.

**N. Amadasu's Section 1981, 1983, 1985, 1986 and State Law Claims Against Donovan in His Individual Capacity Also Fail On Their Merits.**

**1. Amadasu's Section 1981 Claims Against Donovan Fail.**

For the same reasons Amadasu's Title VI and Title VII claims fail, his Section 1981 claims fail. Amadasu failed to produce any evidence that his alleged denial of a contract "materially affected the terms and conditions of his employment" or that similarly situated non-protected residents were hired pursuant to contract. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993) (elements of a prima facie case under Section 1981 same as those for Title VII action). Donovan did not have any of the OMRP residents sign the GME Agreement. (Third Donovan Dec. ¶ 3) Amadasu shown that his alleged deprivation of a GME Agreement was the result of purposeful

discrimination. *General Bldg. Contractor's Assn., Inc. v. Pennsylvania*, 458 U.S. 375, 390 (1982) (plaintiff must demonstrate purposeful discrimination to support a Section 1981 claim); *Reddy v. Good Samaritan Hosp.*, 137 F. Supp. 2d 948 (S.D. Ohio 2000) (granting summary judgment for employer where there was no showing that contractual interference was a result of race discrimination).

**2. Amadasu's Section 1983 Procedural Due Process Claim Should Be Dismissed.**

Amadasu has not shown that he has a protectable interest that due process protects. *Bartell v. Lohiser*, 215 F.3d 550, 557 (6th Cir. 2000) (due process principles protect persons from "deficient procedures that lead to the deprivation of cognizable liberty interest"). Amadasu did not have a protected interest in continued employment. *Board of Regents of State College v. Roth*, 408 U.S., 564, 578 (1972) (to have a constitutional protected property interest in future employment, Plaintiff must have a "legitimate claim of entitlement to it."). Amadasu was not hired pursuant to a contract. (Doc. 97, Donovan Dec. ¶ 3)

Moreover, Amadasu has not shown that Donovan denied him any due process he alleges was owed. Amadasu alleges that the Ohio Defendants deprived him of procedural due process by failing to give him the opportunity to confront those individuals who accused him of sexual harassment. (Doc. 106, p. 46) However, a plaintiff's mere inability to confront his accusers does not amount to a "deprivation of a cognizable liberty interest" as is required to establish the basis for a Section 1983 claim. *See Riggins v. Board of Regents of Univ. of Neb.*, 790 F.2d 707 (8th Cir. 1986) (failure of defendants' grievance procedure to provide opportunity to confront and cross-examine witness did not deny due process).

Donovan discussed the allegations with Amadasu prior to placing him on probation, just weeks before he was expected to complete the program. (Doc. 97, Donovan Dec. ¶ 5) Amadasu's stipend was never reduced, he was never suspended, and he was allowed to complete the program,

in spite of his short probationary status. (Doc. 97, Donovan Dec. ¶ 7) Amadasu alleges that Donovan failed to comply with UC's disciplinary procedures; however, even if true, this does not establish that Donovan committed a constitutional violation. *Gauder v. Leckrone*, 366 F. Supp.2d 780 (W.D. Wisc. 2005). The Sixth Circuit has recognized that a violation of internal rules, such as a university's own rules governing hearings, "does not establish a cognizable constitutional violation." *Hall v. Medical College of Ohio*, 742 F.2d 299, 309 (6th Cir. 1984); *Purish v. Tenn. Tech. Univ.*, 76 F.3d 1414, 1423 (6th Cir. 1996) (violation of internal rules does not establish a constitutional violation); *Gies v. Flack*, No. C-3-96-61, 1996 WL 1671234, at *7 (S.D. Ohio Apr. 24, 1996) ("plaintiff cannot maintain a due process for [the university's] alleged failure to adhere to its handbook procedures for removing him from tenure.").

### 3. **Amadasu's Section 1983 Substantive Due Process Claim Against Donovan Fails.**

Amadasu alleges that Donovan delayed some of his grades, failed to produce an evaluation, and falsely accused him of sexual harassment. None of these claims, even if true, deprived Amadasu of a fundamental liberty or property interest. There is no fundamental right to receive education. *San Antonio Independent School Dist. v.* Rodriguez, 411 U.S. 1 (1973). So, there can be no corresponding right to grades or class/practicum evaluations. As to his claim that Donovan defamed him, both the Supreme Court and the federal courts of appeals have stated that defamation alone does not result in a constitutional deprivation. *See, e.g., Siegert v. Gilley*, 500 U.S. 226 (1991) (emphasizing that "[d]efamation, by itself, is a tort actionable under the laws of most states, but not a constitutional deprivation"); *Mertik v. Blalock*, 983 F.2d 1353, 1362 (6th Cir. 1993) ("Defamatory publications, standing alone, do not rise to the level of a constitutional claim, no matter how serious the harm to reputation"); *Cutshall v. Sundquist*, 193 F.3d 466, 479 (6th Cir.1999) (stating that a defamatory "charge that merely makes a plaintiff less attractive to other employers but leaves open a definite range of opportunity does not constitute a liberty

deprivation"). For these reasons and those stated in the Ohio Defendants' Motion For Summary Judgment, Amadasu's Section 1983 Substantive Due Process claim should be dismissed. (See Doc. 97, p. 19-20)

**4. Amadasu Did Not Present Any Evidence That Donovan Conspired Against Him On The Basis Of His Race or National Origin.**

Amadasu failed to present any evidence that Donovan entered into a conspiracy with anyone, much less that he entered into a conspircy against Amadasu because of Amadasu's race, age, or national origin. *Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 839 (6th Cir. 1994).(to establish a claim for conspiracy, plaintiff must show that the conspiracy was motivated by class based animus). In order to state a claim for relief under 42 U.S.C. § 1985, there must be *specific allegations* showing the existence of a conspiracy. *See Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987) (vague and conclusory allegations unsupported by material facts will not be sufficient to state a conspiracy claim); *Anderson v. Ohio State University*, 26 Fed. Appx. 412, Slip Copy, 2001 WL 1563938 at 2 (6th Cir. Dec. 5, 2001) (similar). Amadasu merely alleges that the Ohio Defendants and Texas Defendants both discharged plaintiff without following their procedures. Amadasu acknowledges that he was dismissed from the Texas program before the Texas Defendants submitted information to Donovan regarding the sexual harassment allegations and he also acknowledges that he participated in UC's OMRP after his participation in the Texas rotation. (Doc. 104, ¶¶ 17, 33-34,) Thus, there was no action in furtherance of the alleged conspiracy.

Because Amadasu's Section 1985 claim should be dismissed, his Section 1986 claim should also be dismissed. *Braley v. City of Pontiac*, 906 F.2d 220, 227 (6th Cir. 1990) (failure to state a claim under Section 1985 is fatal to Section 1986 claim).

### 5. Amadasu's State Law Claims Against Donovan Should Be Dismissed.

#### a. Amadasu's Negligence, Nuisance, Premises Liability and Misrepresentation Claims Are Not Directed at Donovan. (Counts 9, 10, 11).

Amadasu alleges that UC negligently hired, supervised, and retained Donovan, not that Donovan negligently hired, supervised, or retained anyone; thus, Count 10 should be dismissed as to Donovan. (Doc. 106, pgs. 53-55)

Amadasu does not allege any specific facts that support a claim against Donovan for either negligent or fraudulent misrepresentation or educational malpractice; thus, these claims against Donovan should be dismissed. Additionally, Ohio does not recognize the tort of educational malpractice. *Malone v. Academy of Court Reporting*, 64 Ohio App.3d 588, 582 N.E.2d 54, 58 (1990).

Amadasu's invasion of privacy, trespass, negligence, nuisance, and premises liability claims are directed to the Texas Defendants; thus, claims 9 and 13 against Donovan should also be dismissed. (Doc. 106, pgs. 65-66)

#### b. Amadasu's Defamation, Libel, and Slander Claims Should Be Dismissed. (Count 2)

Amadasu continues to allege that Donovan falsely accused him of sexual harassment; however, Amadasu still does not deny that both Gaynor and the Texas Defendants told Donovan that Amadasu was engaging in inappropriate sexual behavior. For these reasons and those stated in the Ohio Defendants' MSJ, Amadasu's defamation, libel, and slander claims against Donovan should be dismissed. (See Doc. 97, p. 17)

#### c. Amadasu's Intentional Infliction of Emotional Distress Claim Must Be Dismissed.

Amadasu alleges that Donovan withheld his grades and evaluations and falsely accused him of sexual harassment. (Doc. 106, 68) Donovan's alleged actions do not rise to a level that goes beyond the boundaries of decency. For this reason and those stated in their motion for

summary judgment, Amadasu's intentional infliction of emotional distress claim against Donovan should be dismissed. (Doc. 97, p. 19).

**O. Amadasu's Federal Fair Housing Claim Against UC and Donovan Must Be Dismissed. (Count 8)**

Amadasu did not allege any facts in his Amended Complaint or his Opposition Brief to support his Federal Fair Housing claim against UC or Donovan (Doc. 51; Doc. 106, p. 52). Count 8 should be dismissed.

## III. CONCLUSION

For each and all of the foregoing reasons -- as well as those set forth in the Ohio Defendants' motion, judgment should be granted for the Ohio Defendants on all of Amadasu's claims against them.

Respectfully submitted,

By: /s/ Justin D. Flamm

Gregory Parker Rogers (0042323)
Justin D. Flamm (0071575)
Taft, Stettinius & Hollister LLP
425 Walnut Street, Suite 1800
Cincinnati, Ohio 45202-3957
(513) 381-2838
(513) 381-0205 (fax)

Special Counsel for the Attorney General of Ohio

Trial Attorneys for the Ohio Defendants

OF COUNSEL:

Mitchell D. McCrate (0047403)
Associate General Counsel
University of Cincinnati
Office of the General Counsel
300 Administrative Building
Cincinnati, Ohio 45221-0623
(513) 556-3483

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, and served copies of the foregoing upon Darlington Amadasu, Plaintiff Pro Se, at P.O. Box 6263, Cincinnati, Ohio 45206, and upon John Grey, counsel for Claudia Miller, John Grey and the University of Texas Health Science Center at San Antonio, at Assistant Attorney General for the State of Texas, General Litigation Division, P.O. Box 12548, Capitol Station, Austin, Texas 78711-2548, via regular United States mail, postage prepaid, this 13th day of June, 2005.

By: /s/ Justin D. Flamm

Gregory Parker Rogers (0042323)
Justin D. Flamm (0071575)
Taft, Stettinius & Hollister LLP
425 Walnut Street, Suite 1800
Cincinnati, Ohio 45202-3957
(513) 381-2838
(513) 381-0205 (fax)

Special Counsel for the
Attorney General of Ohio

Trial Attorneys for the Ohio Defendants