UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

05 AUG 15 AM 11: 03

| | |
|---|---|
| DARLINGTON AMADASU<br>Plaintiff | Case No: **C - 1- 01 - 210**<br>Black/Dlott |
| -V-<br><br>JAMES R. DONOVAN, MD, et al<br>Defendants | **PLAINTIFF COMBINED OPPOSITION TO OHIO & TEXAS DEFENDANTS' MOTION TO STRIKE EXHIBITS TO PLAINTIFF'S DECLARATION THIRD OMNIBUS DECLARATION OF AMADASU WITH EXHIBITS IN SUPPORT** |

**THIS COMBINED OPPOSITION IS SUPPORTED BY THIRD OMNIBUS DECLARATION WITH EXHIBITS OF AMADASU THAT IS INSTANTLY FILED SEPARATELY**

Amadasu submits this combined opposition to colluded Ohio and Texas defendants' motions (Docs.110, 114) to strike Exhibits 1-3, 5-69, 71-75, 77, 79, 81, 83-84, 86-87, 89-91, 93, 95-104, 107-108, and 110-130, which were annexed to May 27, 2005 Declaration of Amadasu (Doc.104) in Support of Plaintiff's Combined Cross-Motion for Summary Judgment & Oppositions (Docs.105, 106, 108) to all Defendants' Motions for Summary Judgment & Exhibits. As set forth in the accompanying memorandum and separately-filed Third Declaration of Amadasu in support, defendants not only authored, and produced the vast majority of the exhibits during discovery but also have them in their possession, custody and control then and now. Defendants' motions to strike the exhibits should be rejected with sanctions in their entirety because: (1) they lack merits, basis in facts, law and evidence; (2) they constitute classic evidence and example of fraud, collusion, covine, misrepresentations, misinformation, falsehood, concealment, omissions, inequities, and abuse of judicial system and integrity; (3) defendants are barred by doctrines of equity, unclean hands, estoppels, forfeiture, waiver, and laches. Their frivolous and conclusory allegations of forgery of three Exhibits should be rejected.

**I.**

**RELEVANT FACTS & PROCEDURAL PICTURE**

The specific relevant procedural picture, specific relevant facts and relevant corroborating evidentiary documentations are set forth in and/or attached to Third Omnibus Declaration of Amadasu in support. To avoid redundant or reduplicative narration of the procedural picture, specific facts and the exhibits, plaintiff respectfully refers the Court to the said declaration, particularly, beginning from No. 19 to the end.

1

Additionally, Ohio and Texas defendants and their attorneys have established patterns and schemes of collusion, fraud, covine, conspiracy and deception that pervert the judicial process and obfuscate the due process right of plaintiff as evidenced by their multiplicity of inconsequential and frivolous motions to dismiss and or transfer this action from Ohio proper venue to improper Texas venue, which this court overruled against them (Docs.4, 6, 7, 17, 23, 30, 32, 36). Their responsive pleadings or answers were collusively filed simultaneously (Docs.37, 38, 52, 53) and recently, they collusively filed their baseless motions to strike the exhibits without following the requirements of the Rules, e.g., 37(a)

It was Amadasu's motion (Doc.58) that set the discovery in motion. Amadasu filed, but defendants failed to file Rule, 26(f) Report, which resulted in Scheduling Order ("SO") [Doc.61]. Amadasu made both Rule 26(a)(1) and 26(a)(1)(B) disclosures and production of copies of documents to defendants. Defendants belatedly made Rule 26(a)(1) and (B) disclosures but failed to produce copies of documents to plaintiff. (Amadasu's Third Decln. at 18-21, Ex.149-151). With diligence, Amadasu made relentless good faith efforts to obtain documents from defendants from July 2004 to late January 2005 and continuing to the present time. (Amadasu's Third Decln. at 18-21) Defendants have discoverable information and documents before and after the commencement of this action on 4/1/01 but neglected, failed, refused, or delayed disclosing and or producing the materials until late January 2005 when they produce partial multitudinous documents in the last-minute of discovery deadline. (Amadasu's Third Decln. at 18-21, Ex.149-151).

When defendants and their attorneys failed to produce documents required by FRCP 26(a)(1)(B), answer interrogatories submitted under FRCP 33, permit inspection and copying of documents required under FRCP 34, answer sufficiently requests for admission submitted under FRCP 36, and or when defendants made evasive, incomplete disclosure, answers, or response constituting failure to disclose, produce, answer, or respond under FRCP 37(a)(3), (Amadasu Third Decln. at 34-36, Ex.165-167), in compliance or consistent with FRCP 37(a)(2)(B), Local Rule 37.2 and the Scheduling Order (Doc.61) Amadasu in good faith employed extrajudicial means of resolution of the discovery differences as set forth in Third Declaration of Amadasu (Amadasu Third Decln. at 22-30, Ex.152-161). However, Texas defendants by their attorney, Mr Grey, and Ohio defendants by Mr Flamm, made last minute production of partial documents requested under FRCP 34 in late January 2005 that composed the vast majority of the plaintiff's exhibits (Amadasu Third Decln. at 37, 45, Ex.168, 172).

After extrajudicial efforts and means of resolving the discovery differences failed, Amadasu alerted the court to take judicial notice of defendants' discovery abuses and requested discovery conference with the Magistrate Judge by filing unopposed notices and requests with the court consistent with the SO (Amadasu Decln. at 48-51; Docs.80-82, 87, 88, 92, 96) but the court did not convene the

conference. Thus, in lieu of motion to compel under Rule 37(a), Amadasu requested discovery conference to be convened by the court pursuant to the SO. *Id.* But defendants did not alert the court.

Amadasu waited, reasonably and rightfully expected the court to convene the all parties conference so that the court could direct outstanding defendants' answers and production of documents be made available to Amadasu in order for him to prepare, file his cross-motion for summary judgment and oppose defendants' motions for summary judgments.

Amadasu made and the court granted his motion for extension of time (Docs.100, 102).

The conducts of defendants constituting collusive, conspiratorial, deliberate, intentional, knowing, reckless and egregious dilatory tactics, litigation abuse, violations of discovery rules and court's order, discovery abuses, stonewalling and obstructing discovery and concealment of documents wholly caused, contributed to and prevented plaintiff from filing motion for summary judgment before the deadline. Defendants' dilatory tactics were intended to and did run out plaintiff's time to file his dispositive motion.

Ohio and Texas defendants' collusive last-minute or eleventh-hour production of numerous documents to plaintiff prejudiced plaintiff by preventing plaintiff from preparing his case, timely filing dispositive motion, and timely opposing defendants' motions.

## II.

## ARGUMENT & AUTHORITIES

**1. Statutory/Legal Controlling Standards for Discovery Issues and Sanctions**

Federal Rules of Civil Procedure ("FRCP" or "Rule") and the Local Court Rules of the United States District Court, Southern District of Ohio ("S.D.Ohio Civ.R." or "Local Rule") prescribe the standards and procedures that litigants, lawyers, judges, court personnel and the Court per se must follow in civil cases, and specifically in discovery issues. The discovery Rules 26-37, S.D.Ohio Civ.R.37.1 –37.2 prescribe discovery methodology, steps, enforcements and sanctions.

> Rule 26(a)(1) in pertinent part,
>> requires that a party must, without waiting a discovery request make automatic initial disclosure of, and provide to other parties among other three categories of information, e.g., documents.
>
> Rule 26(a)(1)(B) in pertinent part,
>> requires that parties must provide a copy of, or a description of category and location of, all documents, data compilations, and tangible things that the disclosing party may use to support its claims or defenses, *unless solely for impeachment.*
>
> Rule 26(b)(1) in pertinent part,

requires that parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and identity and location of persons having knowledge of any discoverable matter

Rule 26(b)(3) in pertinent part,
Provides that if the request is refused, the person requesting may move for a court order. The provision of Rule 37 applies for sanction

Rule 26(e) in pertinent part,
requires supplementation of disclosures and responses to discovery interrogatory, production and admission requests

Rule 33 in pertinent part,
requires a party served, must separately and fully in writing under oath shall answer each interrogatory within 30 days after service, sign the answer. Shorter or longer time may be directed by the court. The party submitting the interrogatories may move for an order under Rule 37(a) with respect to any objection to or other failure to answer an interrogatory. The party served may opt to produce its business records where answer to an interrogatory may be derived or ascertained

Rule 34 in pertinent part,
requires that any party may serve on any other party a request to produce and permit the party making the request to inspect and copy, any designated documents within the scope of Rule 26(b) and in possession, custody, or control of the party upon whom the request is served. The party upon whom the request is served shall serve a written response within 30 days after service of the request. A shorter or longer time may be directed by the court. The response shall state, with respect to each item or category, that inspection and related activities will be permitted as requested. The party submitting the request may move for an order under Rule 37(a) with respect to any objection to or other failure to respond to the request or any part thereof, or failure to permit inspection as requested.

Rule 36 in pertinent parts,
Provides that a party may serve upon any other party a written request for the admission of the truth of any matters. The matter is admitted unless, within 30 days after service of the request, or within such shorter or longer time as the court may allow, the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter. The party who has requested the admissions may move to determine the sufficiency of the answers or objection. The provisions of Rule 37(a)(4) apply to sanctions

Rule 37(a)(1) in pertinent part,
requires a party, upon reasonable notice to other parties and all persons affected thereby, may apply for an order compelling disclosure or discovery.

Rules 37(a)(2)(A) & (B) in pertinent parts,
provides that if a party fails to make a disclosure required by Rule 26(a), to answer an interrogatory submitted under Rule 33, to make response to a request for inspection submitted under Rule 34, fails to respond that inspection will be permitted as requested or fails to permit inspection as requested, the discovering party may move for an order compelling answer or inspection in accordance with the request. The motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make the discovery in an effort to secure the information or material without court action

4

Rule 37(b) in pertinent part,
: Provides for sanctions for failure to comply with order compelling response to discovery requests

Rules 37(c) & (d) in pertinent part,
: provide for sanctions for failure to disclose; false or misleading disclosure; refusal to admit; attend at deposition, to serve answers to interrogatories or respond to request for inspection and production

S.D.Ohio Civ.R.37.1 in pertinent part,
: Provides that motions, applications, and requests relating to discovery shall not be filed in this court, under Rules 26 and 37 unless counsel have first exhausted among themselves all extrajudicial means for resolving the differences about discovery have been exhausted, then in lieu of immediately filing a motion under Rules 26 & 37, any may first seek an informal telephone conference with the judicial officer assigned to supervise discovery in the case

S.D.Ohio Civ.R.37.2 in pertinent part,
: Provides that to the extent that all extrajudicial means of resolution of differences have not disposed of the matter, parties seeking discovery may then proceed with filing of a motion to compel discovery pursuant to Rule 37(a). Such motion shall be accompanied by a supporting memorandum and by an affidavit of counsel setting forth the extrajudicial means which have been attempted to resolve differences.

### 2. Scheduling Order Controlling Standards for Discovery Issues

The Scheduling Order ("SO") [Doc.61] incorporates the provisions of S.D.Ohio Civ.R.37.1 & 37.2. Additionally, counsel must notify the Court seeking a conference; and shall keep the Court currently advised of the status of discovery in this case and promptly bring to the court's attention any discovery disputes requiring court resolution; Parties who undertake to extend discovery by agreement beyond the cutoff date without Court approval do so at the risk the court may not permit its completion before trial

### 3. Precedent/Case-law Controlling Standards for Discovery Issues and Sanctions

The ruling of United States Court of Appeals First Circuit set controlling standards for discovery issues resolution and sanctions in R.W. Intern. Corp. v. Welch Foods, Inc., 937 F.2d 11 (1st Cir.1991)(rehearing and rehearing en banc denied 7/29/91), which is analogous to and applicable in this Amadasu's action. In that action based on allegedly unjustified termination of distributorship agreement, defendant filed motions seeking dismissal and sanctions. The United States District Court for District of Puerto Rico, 129 FRD 25, ordered sanctions. Thereafter, the District Court, 133 FRD 8, granted reconsideration in part and denied it in part. Plaintiff appealed. The First Circuit held that: (1) dismissal of suit could not be sustained based upon deponent's refusal to answer certain questions, *where no order compelling answers to those questions existed*, and deponent had appeared for deposition; (2) scheduling order containing general instructions on scope of discovery did not qualify as order compelling deponents to answer particular questions posed at his deposition, so as to support dismissal of suit based on deponent's refusal to answer those questions; (3) before federal rule

5

authorizes dismissal for failure to obey discovery order, court order must be in effect, and then be violated. For analysis, holdings and application hereto, please review below.

**The Court Should Not Strike Exhibits To Plaintiff's Declaration In Support of Summary Judgment Cross-Motion But Should Deny Defendants' Motions To Strike Because:**

**A. (i)    Amadasu Did Not Fail To Produce The Vast Majority Of The Exhibits Either As Part of His Required Initial Disclosures Or In Response To Rule 34 Requests**

Both Ohio and Texas defendants acknowledged and conceded that plaintiff did comply with Rules 26(a)(1), (A) & (B) requirements and provided them with copies of documents, to wit, Exhibits 4, 70, 76, 78, 80, 82, 85, 88, 92, 94, 105, 106, and 109 in the plaintiff's Declaration (Doc.110 p.1-2, Doc.114 p.1-2), also see (Amadasu Third Omni Decln at 54-55, Ex.171). Ohio defendants' statement that these documents consisted primarily of materials relating to Amadasu's unpaid balance that he owes the University is absolutely false and misleading. For example, *inter alia*: Exhibit 4 is evidence that Amadasu was employed as Occupational Medicine Resident for one year at stipend of $29,000.00 per year; Exhibit 70 shows that Amadasu does not owe the University any unpaid balance; Exhibits 76, 78, 80, 82 are evidence of fraudulent billings for non-existent or unregistered-for courses and clinical rotations for period after Amadasu had completed his program; and Exhibits 105,109 relate to Amadasu's participation in Texas defendants' federally assisted training program.

The vast majority of the other 117 of Amadasu's declaration exhibits were disclosed and provided to Amadasu by Ohio and or Texas defendants in the last-minute of the discovery deadline. See (Amadasu Third Omni Decln. at 53). Thus, Exhibits 1-3, 5-69, 71-75, 77, 79, 81, 83-84, 86-87, 89-91, 93, 95-104, 107-108, and 110-130 that defendants seek to strike are components of and among the very documents that all defendants mailed to plaintiff and crisscross mailed to each other during the discovery phase. (Amadasu Third Omni. Decln at 58-60, Ex.159, 168, 172). Thus, the Exhibits are fruits of plaintiff's Rule 34 discovery requests propounded upon the defendants who belatedly mailed them to him. The Exhibits 1-3, 5-69, 71-75, 77, 79, 81, 83-84, 86-87, 89-91, 93, 95-104, 107-108, and 110-130 and remainder of plaintiff's exhibits attached to his declaration (Doc.104) have been and are still in the possession, custody and control of the defendants who originated, authored and kept the vast majority of the exhibits in their possession, custody and control.

Ohio defendants provided Texas defendants and Texas defendants provided Ohio defendants the copies of documents they provided to plaintiff in January 2005, and likewise, plaintiff provided

6

simultaneously to both Ohio and Texas defendants the same documents in July 2004, which they admitted received. (Amadasu Third Omni. Decln at 64-65, Ex.159, 165-165/a, 168, 171,172)

Accordingly, documents provided to plaintiff and Texas defendants by Ohio defendants; to plaintiff and Ohio defendants by Texas defendants; and to Texas and Ohio defendants by plaintiff composed the vast majority of Exhibits 1-3, 5-69, 71-75, 77, 79, 81, 83-84, 86-87, 89-91, 93, 95-104, 107-108, and 110-130 attached to plaintiff's declaration (Doc.104). Plaintiff is not obligated to re-disclose and re-produce to defendants the very documents they had disclosed to and provided to plaintiff.

    (ii)    **Ohio & Texas Defendants Are Authors, Custodians, Possessors, or Controllers of The Vast Majority of The Very Exhibits They Seek To Strike Thus, Evidencing Bad Faith, Fraud, Scam and Deception On Their Part.**

For example, Ohio defendants authored, produced and are in custody, possession or control of, *inter alia*, Exhibits 2-10, 12-14, 16-30, 32, 33, 34, 36-41, 42.0.1- 42.0.3, 43-44, 46, 49-50, 63-68, 70-83, 85, 87-88, 90-91, 95-96, 121, 131-133, 137, 141-146, 148, 159, 161-163, 165-166, 172; and Texas defendants authored, produced and are in custody, possession or control of, *inter alia*, Exhibits 104-107, 109-110, 114-116, 118-119, 122-123.

Ohio defendants acknowledged that they had/have in their possession and control not less than 213 pieces of documents relevant to the merits of this action, which their attorney, Mr. Flamm affirmed and together with other documents grouped into 8-categories of documents for production by their belated Rule 26(a)(1)(B) disclosures. The 8-categories of document actually compose the bulk of the exhibits that defendants disingenuously and dishonestly seek to strike.

Texas defendants by and through their former first attorney, Mr. Ramiro Canales (Canales) acknowledged by their Rule 26(a)(1)(B) disclosures that they had/have in their possessions and control documents for production to plaintiff and the court (Amadasu Third Omni Decln at 56-57, Ex.162-165/a/b/c, 167-167/a). Texas defendants provided plaintiff with hundreds of pages of documents, *inter alia*, Exhibits 110-120, 122-123 in the eleventh-hour of discovery cutoff date on January 25, 2005 (Ex.168).

    (iii)    **Ohio Defendants' Eleventh-hour Rules 33 & 34 Discovery Requests Are Jurisdictionally Defective and Violative of The Rules 33 & 34**

On or about 01/11/05, plaintiff received Ohio defendants' purported 01/06/05 Rules 33 & 34 discovery requests in the eleventh hour of the discovery cutoff date of 01/31/05 after they failed to produce documents responsive to plaintiff's 11/30/04 Rule 34 discovery requests thereby giving

7

plaintiff shorter than legal 30 days to respond to their request thus, violating the Rule. The discovery cutoff date closes both discovery request and response. Any discovery request or response beyond the discovery deadline would violate the court Scheduling Order and the Rules without leave of the court. Rules 33 & 34 provide that a shorter or longer time for discovery request or response may be directed only by the court but not by any party. Defendants failed to move to extend time for discovery.

    **(iv)   Defendants Requested for Documents in Their Possession, Custody and Control**

Defendants requested for documents that they produced, authored and disclosed being in their possession, custody and control thus, they made generalized, over-broad, overly burdensome, cumbersome, redundant, vague, duplicative, cumulative and repetitive requests. Rule 26(b)(2) provides the court with authority to limit discovery that is unreasonably cumulative, burdensome or duplicative. See e.g., Bayer AG v. Betachem, Inc., 173 F.3d 188 (3rd Cir.1999).

    **(v)   Defendants Failed to Obtain Documents From Other Sources Available To Them**

By their Rules 26(a)(1) and 26(a)(1)(B) disclosures to all parties, defendants actually knew that sources other than plaintiff were available to them for discovery of information and documents. Such other sources are the defendants themselves, their websites and libraries from among whom/which they have "ample opportunity" to obtain the information during the discovery but they collusively forfeited, waived and failed to avail themselves of other sources. Rule 26(b)(2) provides the court with authority to limit or foreclose discovery that is obtainable from another source more conveniently, or is unduly burdensome or expensive given the nature and circumstances of the case. See e.g., Patterson v. Avery Dennison Corp., 281 F.3d 676, 681-82 (7th Cir.2002). The court may also limit discovery if the party seeking the discovery has had "ample opportunity" to obtain the information during discovery but failed to do so. See, e.g., Koch v. Koch Industries, Inc., 203 F.3d 1202, 1238 (10th Cir.2000)(parties are not entitled to conduct a "fishing expedition"), *cert. denied*, 531 U.S. 926, 121 S. Ct. 302 (2000).

    **(vi)   Information and Documents Solely For Impeachment Not For Disclosure and Production**

Some of the Exhibits in the Plaintiff's Declaration constitute information and documents withheld solely for impeachment. Rule 26(a)(1) specifically authorizes nondisclosure and non-production of information and documents "solely for impeachment" Thus, information and documents that a party may use solely for impeachment need not be disclosed. See, e.g., Searles v. Van Bebber, 251 F.3d 869 (10th Cir.2001), *cert. denied* 536 U.S. 904 (2002); The pretrial disclosure is not required to include documents or testimony to be introduced solely for impeachment. See, e.g., Debiasio v. Illinois Central Railroad, 52 F.3d 678 (7th Cir.1995), *cert. denied* 516 U.S. 1157 (1996).

8

(vii) **Defendants Forfeited, Waived and Failed To Avail Themselves of The Provisions of Rules 30(b), 33(b), 34(b) and 37(a), Local Rules 37.1, 37.2, and The Scheduling Order Enabling Them To Compel Disclosure, Production of, and Obtain The Documents.**

If the defendants were substantially and really in need of the information and documents requested and plaintiff had failed to provide them, the proper remedy is a motion to compel under Rules 33(b), 34(b) and 37(a), Local Rules 37.1, 37.2. But they failed to move to compel thereby forfeited and waived the rights, opportunity and the documents. Each party is free to conduct any authorized discovery in any sequence regardless of the discovery conducted by other parties. Keller v. Edwards, 206 FRD 412 (D.Md.2002). Only the most obviously compelling reasons are sufficient to justify a departure from the rule. Ortiz-Rivera v. Municipal Govt. of Toa Alta, 214 FRD 51, 54 (D. Puerto Rico 2003). Here no such reasons to depart from the rule demonstrated by the defendants.

(viii) **Defendants Failed To Show Any Prejudice To Them Due To Non-Disclosure & Production; Their Substantial Need, and Absent Alternative Source for Materials**

Defendants must show any prejudice to them as a result of alleged nondisclosure or production of materials, their lack of reasonable alternative source and substantial need for the materials. These are some of the factors court considers in resolving discovery differences. Defendants have sought to discover protected plaintiff's work product materials to which plaintiff objected. It has been held that work product is discoverable if the attorney makes a sufficient showing that there is no reasonable alternative source for the same or substantially equivalent information, United Kingdom v. United States, 238 F.3d 1312, 1322 (11th Cir.2001), cert denied, 534 U.S. 891 (2001); and that the attorney has a substantial need for the materials, see, e.g., Melhelm v. Meijer, Inc., 206 FRD 609 (S.D. Ohio 2002), Also see Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385 (1947), In re Perrigo Co., 128 F.3d 430, 437 (6th Cir.1997) Absent these required showing by defendants, relief sought unavailable to them.

(ix) **Defendants' Discovery Motions To Strike The Exhibits Under Rule 37 Are Jurisdictionally Defective Thus Warranting Rejection In Their Entirety**

Local Rule 37.1 and Scheduling Order requires parties to first exhaust, among themselves, all extrajudicial means of resolving their discovery differences. After said means are exhausted, then, in lieu of filing a motion under Rules 26 and 37, counsel must notify the Court seeking a conference. Local Rule 37.2 requires parties seeking discovery order under Rule 37 must satisfy the prerequisites for filing it, to wit: (1) Rule 37(a) motion, (2) accompanied by supporting memorandum, (3) an affidavit of counsel setting forth the extrajudicial means which have been attempted to resolve

9

differences, (4) Rule 37(a)(2)(B) requires that the motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make the discovery in an effort to secure the information or material without court action, (5) citation of existence of court order to compel in effect, and (6) citation of evidence of violation of the order by the party failing to make discovery. See, e.g., R.W. Intern. Corp. v. Welch Foods, Inc., 937 F.2d 11, 12-13 (1st Cir.1991). Absent satisfaction of these prerequisites by defendants, their motions are jurisdictionally defective and must be rejected in their entirety.

### B. Defendants Authored Exhibits 26, 27, and 118 In The Presence of Plaintiff and Personally Handed Him Copies

Ohio and Texas defendants made conclusory allegations, blatant lies and speculations without evidentiary support that plaintiff forged Exhibits 26, 27, and 118. Plaintif never forged, have no need to, have no and will never have disposition to forge or fabricate Ex.26, 27 and 118 or any other documents whatsoever. Upon plaintiff informing Donovan that plaintiff had retained a legal counsel to sue him, UC and Jefferson-Gaynor in court for defamation, in plaintiff's presence on 12/20/99 after Donovan and plaintiff made the draft, Donovan typed Exhibit 26 and both of them signed it. Similarly, Donovan typed, signed and personally handed to plaintiff the Exhibit 27. Exhibits 26 and 27 were among the documents that defendants presented, plaintiff inspected and marked for coping on 1/21/05 at Ohio defendants' attorney office.

As for Ex.118, on 4/19/00, in plaintiff's presence, defendant Perales maliciously and vindictively made, signed it, personally handed plaintiff a copy and faxed a copy to defendant Miller at San Antonio. Upon receipt thereof, Miller phoned Perales and asked him to connect plaintiff to the phone and Miller instantly terminated plaintiff's participation in the program on the phone thus, Exhibit 118 actually instigated Miller to terminate plaintiff. Perales lied and perjured again in his Second Affidavit attached to (Doc.114, Ex.2). Thus, defendants authored and produced Exhibits 26, 27, and 118 before and during discovery, and Exhibit 118 was the last spark that ignited plaintiff's termination.

Examples of other Documents that Donovan and Amadasu have executed together include among others, (Doc.104, Ex. 50, 63). With respect to the letterhead of Ex. 27, Donovan lied that he did not use it. In plaintiff's presence, Donovan personally picked the letterhead and he typed on it. Further, Donovan was an employee at the Department of Environmental Health. Biostatistics and Epidemiology are some of the core courses of the Occupational Medicine Residency Program of which Donovan was the program director until he was dismissed from the position due to his misconduct.

Further, Donovan has general practice of habitual indiscretion, inconstancy of the choice of

10

letterheads or papers he wrote or type on because he habitually wrote or typed on any papers that he came across with. For example, *inter alia*: Ex.17 is The University Hospital (TUH) Patient Progress Notes sheet on which Donovan improperly wrote his fraudulent instigation of a patient to report Donovan's fabricated sexual harassment against plaintiff to State Medical Board of Ohio; Ex.18-19 are plain papers on which Donovan wrote and signed; Ex.44 is a ruled piece of paper on which Donovan wrote and signed; Ex.63 is a plain paper on which Donovan wrote and signed; Ex.4 is the letterhead of the Medical Center on which Donovan wrote the 1/25/99 hiring letter purporting that TUH hired plaintiff but he did not use letterhead of UC on whose payroll Donovan placed plaintiff.

Plaintiff has already demonstrated by his declarations (Docs.104, 108) incidences, prevalence and track records of Donovan's lies, inconsistencies, contradictions, misrepresentations, misstatements, fraud, concealments and omissions in Donovan's declaration attached to (Doc.97). Thus, Donovan and other Ohio defendants and their attorney, Mr Flamm, are liars and lack credibility. (Amadasu Third Omni Decln. at 72-78).

Defendants and their attorneys' unfounded self-serving affidavits or declarations, conclusory averments, speculations or conjectures are not generally evidence of their fabricated allegation of forgery that never happened.

### C. Defendants Are Not Entitled To and The Court Has No Authority To Grant Relief Sought

Defendants are not entitled to and the court has no authority to grant the relief of striking plaintiff's Exhibits because:

(1). Defendants conceded that plaintiff made Rule 26(a)(1) and 26(a)(1)(B) automatic disclosures and documents production; (2) parties have a duty to supplement automatic disclosures and discovery responses under certain limited three conditions set forth in Rule 26(e), to wit, automatic disclosures; responses to an interrogatory, production request or admission request that the party learns about were incomplete or incorrect; and Court Order to supplement. See, e.g., Rodowicz v. Massachusetts Mut. Life Ins. Co., 279 F.3d 36, 45, n.10 (1st Cir.2002); Rodriguez v. Ibp, Inc., 243 F.3d 1221, 1229 (10th Cir.2001), cert. denied 534 U.S. 1055 (2001); (3) Defendants produced no evidence that they alerted plaintiff about any incomplete or incorrect automatic disclosures or responses to their discovery requests; (4) defendants failed to meet the Rules 26 and 37(a) motion requirements

Applying the analysis and holdings in **R.W. Intern. Corp. v. Welch Foods, Inc., 937 F.2d 11, 12-13 (1st Cir.1991)**, the question is whether the court, under the applicable rules and the circumstances obtaining, has the authority to impose the sanction. [Striking exhibits]?

The answer is "**NO**" because:

11

(1) "The Rule 37 language clearly requires two things as conditions precedent to engaging the gears of the rule's sanction machinery: a court order must be in effect, and then must be violated, before the enumerated sanctions can be imposed" *Id*, at 15

*(2)* "The decided cases, and the commentators, are consentient in the view that Rule 37 plain language means exactly what it says"(citing *Salahuddin v. Harris*, 782 F.2d 1127, 1131 (2d Cir.1986)) *Id*, at 15

"In this case, therefore, the propriety of [striking] plaintiff's Exhibits under Rule 37 hinges on the answer to the following question: Did plaintiff transgress "an order to provide or permit discovery then in effect?" *Id*, at 15. In this instance, the answer is **no** because there was no order to provide or permit discovery then in effect thus, no violation to warrant any sanctions.

(3) "The taxonomy of Rule 37 is progressive. If an order to answer is issued under Rule 37(a), and then disobeyed, Rule 37--[37(c)(1); 37(d), 37(b)(2)(B)] comes into play, authorizing the trial court to impose further sanctions, including [striking the Exhibits]" *Id*, at 15

*(4)* "In this instance, the initial hurdle was never cleared. The discovery timetable set forth in the scheduling order was not violated (by plaintiff)" *Id*, at 15. That is, defendants failed to clear Rule 37(a) hurdle, thus, Rule 37 sanctions cannot be invoke absent Rule 37(a) motion and Rule 37(a) order to compel in effect.

(5) Plaintiff made Rule 26(a)(1) & (a)(1)(B) automatic disclosure and documents production

*(6)* If plaintiff "refused to answer…no Rule 37(a) order to compel answers to those questions was extant" *Id*, 15. That is, defendants failed to comply with Rule 37(a) requirements.

(7) "Instead of following the protocol limned in Rule 37, that is, …seeking an order to compel [plaintiff] to respond…,[defendants'] counsel elected to bypass Rule 37(a) and seek immediate dismissal of the suit [striking the exhibits]" *Id*. Thus, violated Rule 37.

(8) Defendants' conduct "in the circumstances at bar, that was tantamount to a ball player sprinting from second base to home plate, without bothering to round, let alone touch, third base. Under such circumstances, the district court's [defendants] premature resort to Rule 37(b)(2) [37(c)(1), 37(d) & 37(b)(2)(B)] cannot be upheld." (Accord *Salahuddin*, 782 F.2d at 1131-32). *Id*, at 15

(9) "We find wholly disingenuous the claim that this circumstance somehow relieved the court from following the step-by-step progression delineated in Rule 37 and, in the bargain, nullified the express command of Rule 37" *Id*, at 15. That is, the court must follow the Rule 37 step-by-step progression requirements otherwise any dismissal is reversible.

(10) "A party does not thereby forfeit the ordinary procedural prophylaxis of the Civil Rules" *Id*, at 15. That is, plaintiff has not forfeited or waived the protection inherent in the procedural prophylaxis of the Civil Rules.

(11) "In the absence of Rule 37(a) order, Rule 37(b)(2) [37(c)(1), 37(d) & 37(b)(2)(B)] are not animated" *Id*, at 15. That is, the court cannot impose sanctions absent Rule 37(a) motion and Rule 37(a) order in effect.

(12) The court should be "mindful of the strong policy favoring disposition of cases on the merits" *Id*, at 16 (citing *Velazquez-Rivera*, 920 F.2d at 1075)

(13) "Once the defendants eschewed the essential interim step exemplified by Rule 37(a), the gateway to utilizing Rule 37(b)(2) [37(c)(1), 37(d) & 37(b)(2)(B)]…was blocked" *Id* at 16. Thus, defendants lack legal standing to move for Rule 37 sanctions.

(14) "The district court therefore lacked legal authority to dismiss the case" *Id*, at 16. That is, the court lacks legal authority to strike plaintiff's Exhibits.

DOCUMENT PRODUCTION

(15) "Whether or not plaintiff's failure to produce documents can logically serve as the basis for a Rule 37(b)(2) [37(c)(1), 37(d) & 37(b)(2)(B)] dismissal [striking exhibits] depends, once again on whether the refusal was in defiance of a sufficiently explicit court order. There was no specific, freestanding order for production." *Id*, at 16.

(16) "Both sides [defendants] agree that the plaintiff complied with the general directive [Rules 26(a)(1) & 26(a)(1)(B) disclosure and production]" *Id*, at 16

(17) "In such a situation…unless the failure of discovery is absolute, or nearly so, Rule 37(b)(2) [37(c)(1), 37(d) & 37(b)(2)(B)] sanctions are unripe."(citing *Badalamenti*, 896 F.2d at 1363; *Fox v. Studebaker-Worthington, Inc.*, 516 F.2d 989, 995 (8th Cir.1975; 8 *Wright & Miller*, Section 2291, at 809-10). *Id*, at 17

(18) "When a court issues…discovery order, and the party to whom it is addressed complies with it somewhat less than fully, [e.g., withholding documents solely for impeachment]…the district court cannot dismiss without first entering an order commanding production of the specific materials" *Id*, at 17

(19) "We do not believe that…compliance was so minimal as to constitute an outright failure to obey the dictates of the Scheduling Order. Thus, the court's resort to Rule 37(b)(2) [37(c)(1), 37(d) & 37(b)(2)(B)] was/will be premature" *Id*, at 17

(20) "Rule 37(d) sanctions is improper where a written response to a request to inspect documents is made but is not satisfactory"(citing Fox, 516 F.2d at 995); *Id*, at 18

13

(21) "if interrogatory answers are evasive or incomplete, a Rule 37(a) motion is the appropriate anodyne"(citing *GFI Computer*, 476 F.2d at 3). *Id*, 18

(22) "We think that there is a lesion to be learned from Rule 34, the rule which, generally, governs a party's efforts to secure document production in a federal suit. The rule provides a detailed methodology for enforcement—a methodology, which ties back into Rule 37(a). The reference, of course, necessarily incorporates the preconditions already described as a prelude to Rule 37(b)(2) [37(c)(1), 37(d) & 37(b)(2)(B)] sanctions. If a general discovery directive could satisfy Rule 37(b)(2), [37(c)(1), 37(d) & 37(b)(2)(B)]'s requirement that a party must disobey "an order to provide or permit discovery" before his case can be dismissed thereunder, the carefully crafted prophylaxis of both Rule 34(b) and Rule 37 would be severely eroded and the way paved for case management in *terrorem*" *Id*, at 18

(23) "We applaud the district court's determination that the Civil Rules not be 'trivialized,' *RWI*, 129 FRD at 31, and its view that scheduling orders serve an important function in the systematic administration of cases." Id, at 18. Thus, defendants must not trivialize Rules.

(24) "Nonetheless, laudable ends do not justify precipitate means." *Id*, at 18

(25) "We are, therefore, disinclined to allow broad-brush scheduling orders to serve as snares whereby even innocent misunderstandings or inadvertent omissions may lead to summary dismissal." *Id*, at 18

(26) "We are equally as reluctant to permit the pressing need for case management to undercut the orderly processes of Rule 37—a rule which is itself an important case management tool." *Id*, at 18

(27) "In fine, Rule 37 sets forth a clear path to be followed if a party believes that another litigant is not cooperating in the discovery process." *Id*, at 18

(28) "When the plaintiffs failed to produce…documents not specifically called for in the Scheduling Order—the defendants should have filed a motion to compel their production. That motion would have provided the court with the power, should it have found the failure to make production to be substantially unjustified, to award reasonable expenses…to the movant. (citing, e.g., Rule 16(f).)" *Id*, at 19

(29) "If, thereafter, the plaintiffs had refused to comply with the specific order for production, sanctions could appropriately have been imposed under Rule 37(b)(2) [37(c)(1), 37(d) & 37(b)(2)(B)]" *Id*, at 19

(30) "Had the defendants taken the first step [Rule 37(a) motion] and secure a Rule 37(a) order, then the totality of the plaintiff's conduct would justifiably weigh in the balance when the court select a sanction for an ensuring violation of that order." *Id*, at 19

(31) "In the absence of preexisting order to compel, however, the court had no authority under Rule 37(b)(2) [37(c)(1), 37(d) & 37(b)(2)(B)] to dismiss the case [strike exhibits]. Thus, this court has no authority to impose any sanctions upon plaintiff, such as striking the plaintiff's positive probative Exhibits.

(32) The *RWI* Court also held that "Indeed, the cases cited by the appellees--<u>Fashion House, Inc v. K Mart Corp.</u>, 892 F.2d 1976 (1st Cir.1989)(order compelling responsive answers to interrogatories); and <u>Damiani v. Rhode Island Hosp.</u>, 704 F.2d 12 (1st Cir.1983)(orders compelling answer to interrogatories and document production)—stand for this very proposition; in each of them, Rule 37(a) motion was made, a specific discovery Rule 37(a) order was in effect and was thereafter violated. We then looked to the rest of the record and consider the overall behavior of the guilty party to determine whether the particular sanction imposed by the lower court was just." *Id*, at 19

(33) "These holdings are fully consistent with the proposition that an order must be in effect, and then violated, before the gears of Rule 37(b)(2) can be engaged." Id, at 19

(34) "Because no specific discovery order was in effect and thereafter violated by plaintiffs, there was no foundation for dismissing the complaint under Rule 37(b)(2). As the court rested its order expressly and exclusively on that rule, we cannot let the dismissal stand." Id, at 20.

Thus, consistent with these holdings, because Ohio and Texas defendants failed to file Rule 37(a) motion to compel, no court Rule 37(a) order in effect, and no violation of any discovery order by plaintiff, defendants motions to strike plaintiff's exhibits cannot sustain as a matter of law.

### D. Doctrines of Equity, Unclean-hands, Forfeiture, Waiver, Equitable Estoppels and Laches Bar Defendants' Motion To Strike the Exhibits

The bulk of the documents and information that plaintiff needed and still needs to prepare his case, file timely dispositive motion and opposition to defendants' summary judgment motions were and are still in the possession, custody and control of the defendants. The defendants' violations of discovery Rules 26-37, litigation abuses, bad faith, neglect, discovery abuses, concealment of documents constitute "unclean hands." Thus, defendants are barred by the doctrines of equity and

15

unclean hands from moving to strike the very cross-motion, whose delay was caused by them or their misconduct. Federal District courts are courts of equity. A court of equity is a court of conscience. It seeks to do justice and equity between parties. See Franklin v. Jones, 191 SW2d 835; May v. Midwest Refining Co. (C.C.A.Me) 121 F.2d 431, certiorari denied 62 S.Ct.129, 314 US 668, and Bollinger & Boyd Barge Service, Inc. v. Motor Vessel, Captain Claude Bass, (C.A.La.) 576 F.2d 595. It is a maxim of courts of equity that he who seeks equity must do equity. Koster v. (American) Lumbermen's Mut. Cas. Co., N.Y., 67 S.Ct. 828, 330 US 518; and is applicable to all classes of cases whenever necessary to promote justice. Selle v. Selle, 88 SW2d 877. The party who seeks relief must do what it is equitable to be done by him; El Paso Natural Gas Co. v. Western Bldg. Associates (C.A.N.M.) 675 F.2d 1135, or what good conscience demands in the particular case as condition precedent to relief. Singer v. New Belfort Apts., 79 NYS2d 464.

    Defendants have failed to do what is equitable to be done by them or what good faith and conscience demand in this case as a condition precedent to the relief sought by them, thus, they cannot ask the court to become an instrument of inequity, Patsourakos v. Kolioutos, 26 A.2d 882, 132 N.J.Eq.87; and cannot be permitted to obtain any advantage in a court of equity by inequitable conduct. Welshire, Inc. v. Harbison, 91 A.2d 404, 408. The clean hands maxim bars relief to those guilty of improper conduct in the matter as to which they seek relief. It is invoked to protect the integrity of the court. He who comes into equity must come with clean hands. Keystone Driller Co. v. General Excavator Co., Ohio, 54 S.Ct. 146, 290 US 240; Christman v. Christman, 160 NE2d 419, 111 Ohio App. 25, affirmed 171 Ohio St. 152. Other maxims and principles inherent within the clean hands maxim are that a right cannot arise to anyone out of his own wrong, Murmanill Corp. v. Simkins, (C.A.Tex.) 251 F.2d 33, and no one should be permitted to profit by, or take advantage of, his own wrong, R.H. Stearns Co. of Boston, Mass. v. U.S., Ct. Cl., 54 S.Ct.325, 291 U.S. 56.

    Forfeiture and waiver bar defendants because they intentionally, voluntarily and knowingly abandoned their rights and opportunity to move to compel document production, if any at all and for causing undue delay in production of documents. It has been held that a defendant may be deemed to have waived the right to move for a dismissal by causing the delay. See, e.g., Herb v. Snyder, 686 A.2d 412 (1996), appeal denied, 698 A.2d 67 (1997)

    Laches bar defendants because they unreasonably delayed in asserting their rights, if any. It has been held that the maxim that equity aids the vigilant, not those who slumber on their rights, has frequently been stated and applied, and expresses equity's attitude toward laches and stale demands. See, e.g., International Union, AIWA, FL-CIO v. Local Union No.589, AIWA, (C.A. Ind.) 693 F.2d 666. Its design being to promote diligence, punish laches and discourage the assertion of stale claims.

16

See, e.g., Welch v. Welch, 109 SE.2d 757. Equity aids the diligent. Kershenbaum v. Jones, 13 FRD 333.

Equitable estoppels bar defendants because defendants seek to take undue advantage of their wrongdoings of concealing probative documents from the court that are necessary for the court fair determination of the case, and concealing and omitting to inform the court that they have provided plaintiff the very exhibits that they seek to strike. It has been held that equity will not aid a fraud doer, either to permit him to derive any benefit from his fraud or to relieve him from the consequences thereof. See, e.g., Commonwealth Finance Corp. V. McHarg, (C.C.A.N.Y.) 282 F. 560. Equity does not permit a wrongdoer to set up its own wrong to estop an innocent person. See, e.g., Federal Land Value Ins. Co. v. Taylor, (C.C.A. Cal.) 56 F.2d 351, 357.

### E. Defendants colluded to strike exhibits, fabricate none forgery out of desperation

Collusion in judicial proceedings is defined as a secret agreement between two or more persons, whose interests are apparently conflicting, to make use of the forms and proceedings of the law in order to defraud a third person—here Plaintiff, In re Insull Utility Investments, 6 F.Supp.653, 656 (DC ILL), or to obtain that which justice would not give them, by deceiving a court or its officers—Id. An agreement between two or more persons unlawfully to defraud a person of his rights by the forms of law, or to obtain object forbidden by law, as, e.g., when two persons apparently in a hostile position, or having conflicting interests, by arrangement do some act in order to injure a third person, or to deceive a court, or by keeping back evidence of what would be a good answer, or by agreeing to set up a false case—Id; In re Carpenter's Will, 40 NYS2d 13, 17. It implies a secret understanding whereby one party plays another into his or her hands for fraud, deceit or fraudulent purposes. Elias v. Erwin, 276 P.2d 848, 852. For example, Magistrate and defendants collusively played plaintiff into their hands by making plaintiff serve and file amended complaint so as to circumvent their default and Rule 55(c) bar.

### F. Defendants intentionally, collusively hold back documents from court for fraud or deceit:

Because defendants' frivolous Rule 56 motions for summary judgment were not supported by any evidence they willfully and knowingly in concert held back documents unfavorable to them but favorable to plaintiff from the court for purposes of fraud on the court and harassment of plaintiff. It has been held that in determining the validity of a judgment, resort may be had to the entire record, Mueller v. Banks, 332 SW2d 783 (Tex Civ. App.), including the pleadings filed in the action, Jackson v. Slaughter, 85 SW2d 759 (Tex Civ. App). A decision is facially void if an

inspection of its record proper shows that one or more of the requisite jurisdictional elements appear to have been absent. <u>Messenger v. Messenger</u>, (Okla) 827 P.2d 865. Here, Defendants' Rule 37(a) motion and Court Rule 37(a) Order to compel are absent from the record upon which foundation for striking of plaintiff's exhibits could be based.

### G. Procedural Posture rather than substantive facts and substantive legal issues is decisive and relevant to disposition of defendants' motion to strike

Defendants collusively and deliberately refused, neglected and failed to furnish the court with the full and complete discovery procedural picture. It has been held, "while the substantive facts of this case and the substantive legal issues are interesting, they not relevant to our decision. What is relevant is the procedural posture." <u>WMX Technologies, Inc., v. Miller</u>, 104 F.3d 1133, 1134(9th Cir.1997). They collusively omitted the discovery procedural pictures because the pictures are not favorable to them but both the court and plaintiff are entitled to the procedural pictures for determining the discovery issues. Such egregious omission, misrepresentation and concealment constitute fraud upon the court by legal officers of the court thus, warranting sanctions under Rule 26(g), 28 U.S.C. 1927 and the inherent power of the Court.

### CONCLUSION

For the foregoing reasons, plaintiff respectfully requests that Ohio and Texas defendants' collusive motions to strike Exhibits 1-3, 5-69, 71-75, 77, 79, 81, 83-84, 86-87, 89-91, 93, 95-104, 107-108, and 110-130 annexed to Plaintiff's Declaration (Doc.104) should be rejected in their entirety, and that defendants' frivolous and conclusory allegations of forgery of Exhibits 26, 27, and 118 should be rejected in their entirety. Defendants and their attorneys are ripe for 28 U.S.C.1927 sanctions

Respectfully submitted,

Darlington Amadasu, Lay Pro Se Plaintiff
P.O. Box 6263, Cincinnati, OH 45206


**CERTIFICATE OF SERVICE:**
I certify that the true copies of the foregoing was served upon Justin D. Flamm by delivery to his receptionist and Christopher Coppola by regular USPS mail to their addresses on record on 8/15/05