UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

05 AUG 15 AM 11: 03

| | |
|---|---|
| DARLINGTON AMADASU<br>Plaintiff | Case No: C - 1- 01 - 210<br>Black/Dlott |
| -V- | |
| JAMES R. DONOVAN, MD, et al<br>Defendants | **THIRD OMNIBUS DECLARATION OF AMADASU**<br>WITH EXHIBITS |

I, Darlington Amadasu, lay pro se plaintiff in this action, solemnly declare that I have personal knowledge of the facts and circumstances stated below and competence to testify to them, which are true, accurate to the best of my knowledge and belief and under the penalty of perjury pursuant to 28 U.S.C.A. 1746

1. Pursuant to FRCP 56(e), I submit this third omnibus declaration in support of: (A) reply in support of plaintiff's motion to strike declaration of Donovan and in response to Ohio defendants' opposition thereto (Doc.112; (B) my reply in combined response to Ohio and Texas defendants' oppositions to my cross-motion for summary judgment (Docs.109, 116); (C) my combined opposition to Ohio and Texas defendants' motions to strike exhibits to plaintiff's declaration (Docs.110, 114); (D) my combined opposition to Ohio and Texas defendants' motions to strike plaintiff's supplemental brief and declaration (Docs.113, 115) for summary judgment pending defendants' production of responses and documents responsive to plaintiff's discovery requests; and (E) my motion to strike Ohio and Texas defendants' pleadings and for default judgment against Ohio and Texas defendants and their attorneys

2. I incorporate by reference declaration of Darlington Amadasu and supplemental declaration of Amadasu and all my exhibits already filed in support of my cross-motion for summary judgment, in opposition to defendants' motions for summary judgment and motion to strike declaration of Donovan (Docs.104, 108)

    **A.** **Declaration in support of reply in support of plaintiff's motion to strike declaration of Donovan and in response to Ohio defendants' opposition thereto (Doc.112)**

3. I did not opine but, rather, set forth specific facts with preponderance of evidentiary

1

support—that Donovan's Declaration is 'perjurious and contemptuous' thereby subject to strike and sanctions. See (Docs.104, 105, 106 and 108), which are hereby incorporated by reference.

4. In addition to his irrefutable sets of facts and uncontroverted preponderance of evidentiary proof of Donovan and other Ohio defendants' lies and perjury already cited and presented by way of attachment to Declaration of Amadasu (Doc.104) pursuant to FRCP 56(e), Amadasu hereby submits, pursuant to **S.D. Ohio Civ. R.7.2 (e)** Exhibits 131-148 as further evidence that Donovan lied and perjured in his declaration and to rebut Ohio defendants' argument in their opposing memorandum that Amadasu failed to cite any evidence whatsoever that Donovan's declaration was 'perjurious' (Doc.112, paragraph 1).

5. Ex.131 is an excerpt from the brochure on University of Cincinnati College of Medicine (UCCM) Department of Environmental Health (DEH) sent to Amadasu by Donovan

6. Ex.132 is an excerpt from the brochure on Occupational Medicine Residency Program ("OMRP") at the Division of Occupational and Environmental Medicine (DOEM) evidencing that: the OMRP is and must be conducted through the ACGME accredited OMRP based at TUH; funding of the OMRP is by federal agency—NIOSH, and by The University Hospital ("TUH"). Thus, defendants could not have deprived me of the benefits, immunities, rights of, and participation in federally assisted OMRP.

7. Ex.133 is a true and accurate copy of 'University of Cincinnati New Hire Personnel Action Form' executed by UC evidencing that Amadasu was employed by UC from 7/1/1999 to 6/30/2000 and showing Donovan as Amadasu's supervisor and that Amadasu was an employee-resident but not a student of UC. However, in a scheme to and did defraud Amadasu, Donovan and UC falsely classified and titled Amadasu's job-position variously as Occupational Health Resident ("OHR") but there is no ACGME-accredited Occupational Health Residency Program ("OHRP") anywhere in the United States

8. Ex.133/a is a true enlarged copy of the UC employee ID-badge evidencing that Amadasu was an employee of UC. However, in a scheme to and did defraud Amadasu, Donovan and UC inconsistently classified and titled Amadasu job-position as Environmental Health Resident ("EHR") but there is no ACGME-accredited Environmental Health Residency Program ("EHRP") anywhere in the United States. Neither UC nor TUH had/has EHRP and or OHRP. Accordingly, Donovan and UC concocted the titles so as to defraud and deceive.

9. Further, Amadasu as Occupational Medicine Resident ("OMR") was supposed to be employee of, bear TUH employee-medical resident ID-badge and be placed on TUH's payroll but Donovan and UC swindled Amadasu by placing him on UC payroll for fraud.

10. Ex.134 is a true copy of State Medical Board of Ohio ("SMBO") acknowledgment of

2

application for training certificate evidencing that the SMBO recognizes that the OMRP is based at TUH but not based at UC; and it also show that the SMBO does not recognize OHRP or EHRP.

11. Ex.135 is a true copied document evidencing UC/TUH as employers and Amadasu as employee resident-medical staff but UC place me into its payroll instead of placing me in payroll of TUH, the sponsoring institution of the OMRP in order to defraud Amadasu.

12. Ex.136 is true copy of document by which Amadasu as employee and UC as employer executed agreement for payroll direct deposit into Amadasu's account with a credit union that was recommended by UC to me.

13. Ex.137 is a true copy of 8/2/99 letter document by which UC offered Amadasu as its employee Choice Benefits Enrollment in retirement system.

14. Ex.138 is a true copy of 'Employee Orientation Reference Data Report' showing UC employed plaintiff Amadasu

15. Ex.139-140 are true copies documents evidencing that Amadasu as employee of UC became public employee of the State of Ohio was thereby entitled to Public Employees Retirement System of Ohio ("PERS") as well as other rights, privileges, immunities, equal rights and equal protections, such as pre-deprivation and post-deprivation due process.

16. Ex.141-148 are true copies of documents evidencing PERS and Amadasu's enrollment therein as public new employee by UC.

17. Donovan lied and perjured in his declaration that Amadasu was not employee of UC; was a 'accelerated track student'; failed to cite evidence that Donovan's declaration was 'perjurious', etc, but the above evidentiary documentations and those other exhibits (Doc.104, 108) contradict his positions argued in memoranda in opposition to Plaintiff's Motion To Strike Donovan's Declaration and for Contempt of the court.

18. The originals of the above Exhibits are in the possession, custody and control of Donovan, other Ohio defendants and their attorney but they have absolutely failed and refused to disclose and produce them during Rule 26(a)(1) initial disclosures and discovery and to the present in spite of Amadasu relentless requests and demands for them. However, I managed to obtain them from UC Human Resources recently.

19. Ex.149 is true copy of my 10/4/04 letter evidencing my Rule 26(a)(1)(B) initial disclosures and good faith production of documents to Ohio defendants and Ohio defendants' bad faith failure to produce documents to me.

20. Ex.150-150 (a) is true copy of my 10/11/04 letter reminding, demanding and requesting

Ohio and Texas defendants to comply with Rule 26(a)(1)(B) requirements and to produce documents but they failed to produce documents

21. Ex.151-151 (a) is true copy of my 10/21/04 letter reminding, demanding and requesting Ohio and Texas defendants to comply with Rule 26(a)(1)(B) disclosures and production, and to produce documents but they failed to produce documents

22. Ex.152 is true copy of my 11/23/04 letter reminding, demanding and requesting Ohio defendants to comply with Rule 33 requirements and to produce complete, non-evasive and unambiguous responses to my Rule 33 sets of interrogatories but they failed and refused to do so, but instead they were acting as judges in their disputes.

23. Ex.153 is true copy of my 11/30/04 letter memorializing my visit to the office of Ohio defendants' attorney, Mr Justin D. Flamm ("Flamm") to inspect and copy documents and their absolute intentional and deliberate failure and refusal to allow me to inspect and obtain copies of the eight-categories of documents they disclosed and described in their belated Rule 26(a)(1)(B) disclosures. See [Ex.165-165a-c)

24. Ex.154-155 are true copies of my 1/15/05 letters memorializing my initiated good faith telephonic conference to extra-judicially resolve defendants' insufficient, evasive, incomplete and or non-answers to my Rule 26, 33, 34, and 36 discovery requests, and my 1/21/05 scheduled all-parties' conference to extra-judicially resolve the discovery problems.

25. Ex.156 is a true copy of my 1/21/05 letter memorializing Texas and Ohio defendants denying Amadasu inspection and copying of the documents described in their belated Rule 26(a)(1)(B) disclosures during the Amadasu' scheduled 1/21/05 conference to resolve the discovery disputes extra-judicially and failure of Texas defendants to participate in it. See Ex.165 below

26. Ex.157 is a true copy of my 1/22/05 letter demanding upon Texas and Ohio defendants to allow Amadasu inspection and copying of the documents described in their belated Rule 26(a)(1)(B) disclosures and warning them of Amadasu's intent to move to compel and for sanctions if they failed to produce document on or before 1/26/05.

27. Ex.158 is a true copy of my 1/30/05 informing Texas and Ohio defendants and their attorneys of their intentional, willful and reckless failure and refusal to produce documents for inspection and copying; their flagrant violations of Rules 11, 26, 33, 34, 36, and 37; and knowing dilatory tactics, abuse of judicial system, obstruction and hindrance of discovery

28. Ex.159-159 (a-b) is a true copy of Ohio defendants' 2/1/05 letter evidencing: (a) last-minute partial tender of documents on 1/27/05, i.e., 60-days after my 11/30/04 review of the partial documents and 4-days to discovery cutoff date; (b) that their attorney, Mr Flamm failed his duty of obtaining

4

documents from his clients for inspection and copying by me; that Ohio defendants and Mr Flamm were/are still stonewalling, withholding and refusing to produce documents in their possession and control relevant to the merits of this action in violation of Rule 11, 26(g), 34 and 37; (c) and that Mr Flamm illegally answered and, but defendants did not actually answer, sign and verify my interrogatories to them in violation of Rule 26(g), 33, and 37 requirements.

29. Ex.160 is a true copy of my 2/15/05 letter informing Ohio defendants and Mr Flamm: that their eleventh-hour Rule 33 and 34 discovery requests were/are jurisdictionally defective and violative of the Rules; that their 1/28/05, 2/8/05 and 2/11/05 letters proved that party-defendants did not actually answer, sign and verify my interrogatories upon them; and that Rules 33 and 34 do not provide for fragmented and piecemeal responses to Rule 33 and 34 discovery requests.

30. Ex.161 is a true copy of Ohio defendants' 4/27/05 letter preventing me from obtaining from other sources documents necessary to prove the elements of my claims; acknowledging and admitting that they, in fact, have numerous discoverable documents in their possession relevant to the merits of this case and, but they have failed and refused to produce them even to this moment.

31. Ex.162 is a true copy of 7/14/00 certification of 96-numbered original documents relating to plaintiff Dr Amadasu and relevant to the merits of this case that Donovan and UC kept and maintained at DOEM but concealed from, failed and refused to produce them to the court.

32. Ex.163 is a true copy of 3/23/01 receipt that UC issued to me for copies of original documents that I obtained; and evidencing that UC has in its possession and control at DEH the originals of those documents relevant to the merits of this case, which they failed and refused to produce to the court.

33. Ex.164 is a true copy of 4/4/01 certification and release of copies of the original documents relating to plaintiff Dr. Amadasu and relevant to the merits of this action, and evidencing that Ohio defendants have possession and control of the original documents kept and maintained at its Office of Graduate Medical Education (OGME).

34. Ex.165-165 (a-c) is a true copy of plaintiff's instigated Ohio defendants' October 2004 supplemental Rule 26(a)(1) and Rule 26(a)(1)(B) belated disclosures, i.e., 90-days past 7/15/04 Scheduling Order deadline, evidencing that Ohio defendants and their attorney, Mr Flamm have in their possession and control at least 8-categories of relevant and discoverable documents, which they delayed, concealed and withheld from Amadasu's inspection and copying on 11/30/04 but which they partially produced on 1/31/05 in the eleventh-hour of the 1/31/05 discovery cutoff date.

35. Ex.166 is a true copy of the excerpt from UC's ambiguous responses and objections to

plaintiff's first requests for combined Rule 34 production of documents in which UC stated that responsive information sought did not necessarily exist. See page 2, paragraph 8; and in all responses to each of my 75-numbered request for production of documents, Ohio defendants stated, "it will produce...documents that are relevant..., if any, such exist (sic)." See (Doc.84, with attached Plaintiff's First Request for Combined Production of Documents to Ohio Defendants of University of Cincinnati). Thus, Ohio defendants failed and refused to produce documents before and after the 30-days fixed by Rule 34.

36. Ex.167-167(a) is a true copy of Texas defendants' Rule 26(a)(1) disclosure of only witnesses' list and Rule 26(a)(1)(B) disclosure of documentation without production of copies of documents relating to plaintiff's participation in their federally funded STEER program. They unreasonably wanted me to inspect and copy unspecified documents at their attorney's office at Texas.

37. Ex.168 is a true copy of Texas defendants' attorney, Mr. John M. Grey ("Grey") 2/25/05 last minute production of partial documents that plaintiff requested under Rule 34. See (Doc.84 with attached plaintiff's first combined production of documents to Texas defendants' of UTHSCA). Mr Grey is the immediate predecessor of Mr Coppola.

38. Ex.169 is a true copy of excerpt from a copy of Graduate Medical Education (GME) Directory published by American Medical Association and located at UC library. Section 1—Graduate Medical Education Information—showing review and accreditation of GME programs adapted from official Manual of Policies and Procedures of Accreditation Council for Graduate Medical Education ("ACGME") containing the Essentials of Accredited Residencies in Graduate Medical Education ("Essentials") available also at ACGME Web site at www.acgme.org.

39. Under sub-subject "Program Organization" (Ex.169, p.6-7) TUH, the sponsoring institution must exercise oversight over the educational program, that is, OMRP that it sponsors.

40. Under sub-subject "Institutional Review" the duty, obligations and responsibilities of the sponsoring organization—here, TUH, are summarized.

41. Ex.170 is a true copied excerpt from a copy of Graduate Medical Education (GME) Directory published by American Medical Association and located at UC library. The sub-subject "Program Requirements for Residency Education in Preventive Medicine" is adapted from "Essentials", which describe the national standards prescribed by the ultimate accrediting body, — ACGME--for approved internships and residencies in the United States. Occupational Medicine is an accredited medical specialty residency program within the Preventive Medicine. The duration and scope of education in OMRP are described at page 348, Id. That is, a 12-month clinical phase; a 12-month academic phase; and a 12-month practicum phase.

42. Pursuant to the Essentials, under sub-subject "Sponsoring Institution" (Ex.170, p.350-351) Occupational Medicine ("OM") practicum phase, which is the acquisition of practice competencies in OM, must be accomplished in institutions that provide comprehensive occupational health services, which as here, is TUH and not UC that does not sponsor OMRP.

43. Pursuant to the Essentials, under sub-subject "Participating Institutions and Training Sites" (Ex.170, p.351). UC, as a mere participating institution and training site under inter-institutional affiliation contract with TUH must meet all requirements of the Institutional Requirements (Doc.104, Ex.97, p.13-16; Ex.6-7).

44. Ex.171 is a true copy of my 7/16/04 Rule 26(a)(1) Initial Disclosure, and evidencing my good faith Rule 26(a)(1)(B) production of documents to both Ohio and Texas defendants.

45. Ex.172 is a true copy Ohio defendants' 1/27/05 letter evidencing Ohio defendants' last minute production of copies of partial documents to Texas defendants and plaintiff in belated partial response to plaintiff's Rule 34 documents production request.

46. Belatedly, on 10/21/04, Mr Flamm, Ohio defendants' attorney affirmatively represented to plaintiff that those 8-categories of document were in possession of Mr. Flamm and located at his 425 Walnut Street, Cincinnati, OH office for my inspection and copying (Ex.165) but on 11/30/04 only 8-pages of documents were presented for my inspection but without allowing me copying them;

47. On 1/21/05, Mr. Flamm produced more partial documents for my inspection only but abruptly stopped my inspection and absolutely refused me copying and obtaining any copies thereof. Inconsistent with his prior representation that all documents were in his office for inspection and copying, Flamm now stated that documents were in UC and demanded that I should follow him in a fishing expedition to search and seize documents at UC ignoring the fact that he has an affirmative duty to obtain from his clients documents and produce them for my inspection and copying at his office. See, Ex.159(a) and Ex.161

48. In November 2004, in good faith efforts to obtain documents from all defendants and for defendants to depose plaintiff, Plaintiff alerted the court by filing notices, which were also wake-up call for Texas defendants to conduct their discovery. See (Docs.80-82, 87)

49. In December 2004, plaintiff requested this court to take judicial notice of all defendants' failure and refusal to comply with Rule 26(a)(1), (B) and (D) production of documents requirements. (Doc.88). Thus, evidencing my compliance with the Scheduling Order.

50. On 1/19/2005, plaintiff filed notice of extra-judicial conference to resolve defendants' insufficient, evasive, incomplete or non-responses to his discovery requests. (Doc.92)

51. On 2/15/05, plaintiff sought all parties' conference with the Magistrate Judge on discovery

7

disputes but defendants did not support or oppose it and the court did not convene conference to resolve the discovery dispute. (Doc.96).

52.     The above conducts of defendants constituting collusive, conspiratorial, deliberate, intentional, knowing, reckless and egregious dilatory tactics, litigation abuse, violations of discovery rules and court's order, discovery abuses, stonewalling and obstructing discovery and concealment of documents wholly caused, contributed to and prevented plaintiff from filing motion for summary judgment before the deadline.

53.     Ohio and Texas defendants' collusively last-minute or eleventh-hour production of numerous documents to plaintiff prejudiced plaintiff by preventing plaintiff from preparing his case, timely filing dispositive motion, and timely opposing defendants' motions

**In Specific Omnibus Response To Ohio and Texas Defendants' Motions To Strike Exhibits To Plaintiff's Declarations (Docs.110, 114), plaintiff declares as follows**

54.     Both Ohio and Texas defendants acknowledged, admitted and conceded that Amadasu did provide them with not only disclosures but also copies of documents in full compliance with Rule 26(a)(1), 26(a)(1)(B), but on the contrary, all defendants absolutely failed and refused to produce documents in violations of Rule 26(a)(1), 26(a)(1)(B) requirements. (Doc.110, p.1-2, Doc.114, p.1-2) Also see hereto annexed (Ex.171).

55.     It is undisputed that plaintiff's Rule 26(a)(1)(B) documents produced to all defendants form components of the exhibits attached to plaintiff's declaration (Doc.104) and defendants are not seeking to strike those documents, which, exclusive of other exhibits, still create genuine issue of material facts for the jury thus, precluding summary judgment for defendants.

56.     Ohio defendants acknowledged that they had/have in their possession and control not less than 213 pieces of documents relevant to the merits of this action, which their attorney, Mr. Flamm affirmed and together with other documents grouped into 8-categories of documents for production by their belated Rule 26(a)(1)(B) disclosures. (Ex.162-165/a/b/c). The 8-categories of document actually compose the bulk of the exhibits that defendants disingenuously and dishonestly seek to strike.

57.     Texas defendants by and through their former first attorney, Mr. Ramiro Canales (Canales) acknowledged by their Rule 26(a)(1)(B) disclosures that they had/have in their possessions and control documents for production to plaintiff and the court (Ex.167)

58.     Almost contemporaneously, in the last-minute or eleventh hour of discovery deadline in January 2005, Ohio defendants through Mr Flamm and Texas defendants through their former second Attorney, Mr John M. Grey (Grey) collusively but separately mailed to plaintiff numerous

8

disorganized documents in belatedly partial responses to my Rule 34 requests for production of documents that I propounded on them. (Ex.168 & 172)

59. Almost all of the Exhibits 1-3, 5-69, 71-75, 77, 79, 81, 83-84, 86-87, 89-91, 93, 95-104, 107-108, and 110-130 that defendants seek to strike are components of and among the very documents that all defendants mailed to plaintiff and crisscross mailed to each other during discovery phase. (Ex.168, 172). Thus, they are fruits of my discovery requests propounded upon the defendants who belatedly mailed them to me.

60. The Exhibits 1-3, 5-69, 71-75, 77, 79, 81, 83-84, 86-87, 89-91, 93, 95-104, 107-108, and 110-130 and remainder of my exhibits attached to my declaration (Doc.104) have been and are still in the possession, custody and control of the defendants who originated, authored and kept the vast majority of the exhibits.

61. Unbelievably, in their state of confusion, defendants seek to strike Exhibit 120 corresponding to First Amadasu Deposition Exhibit 1 that Ohio Defendants' adduced on 12/13/04. (Doc.106, 1st Amadasu Depo. p.50; Doc.104, Ex.120).

62. Texas defendants have actual knowledge that Ohio defendants had/have discoverable documents for production (Ex.159, 165, 165/a) but forfeited, waived their rights and opportunity to, neglected, failed and refused to demand them by way of Rule 34 requests for production of documents upon Ohio defendants.

63. Similarly, Ohio defendants have actual knowledge that Texas defendants had/have discoverable documents for production (Ex.167, 167/a) but forfeited, waived their rights and opportunity to, neglected, failed and refused to demand them by way of Rule 34 requests for production of documents upon Texas defendants.

64. Nevertheless or notwithstanding their failure and negligence to make Rule 34 requests upon each other, Ohio defendants provided Texas defendants and Texas defendants provided Ohio defendants the same copies of documents they provided to plaintiff in January 2005 (Ex.168, 172), and likewise, plaintiff provided simultaneously to both Ohio and Texas defendants the same documents in July 2004, which they admitted received. (Ex.171)

65. Accordingly, documents provided to plaintiff and Texas defendants by Ohio defendants; to plaintiff and Ohio defendants by Texas defendants; and to Texas and Ohio defendants by plaintiff composed the Exhibits attached to plaintiff's declaration (Doc.104).

66. Plaintiff is never obliged to conduct discovery from Texas defendants for Ohio defendants and from Ohio defendants for Texas defendants

67. Some documents, if any, that plaintiff might not have disclosed or provided to defendants

9

were either in possession of defendants, undisclosed to plaintiff or, if in possession of plaintiff were not disclosed or not provided to defendants, for reason solely for impeachment consistent with FRCP 26(a)(1)(B), and which plaintiff has effectively used to impeached defendants in his cross-motion for summary judgment, his opposition to defendants' summary judgment motions, his supplemental declaration (Docs.104, 105, 108)

68. Ohio and Texas defendants are barred by doctrines of forfeiture, waiver, laches, equity, unclean hands and estoppels from seeking to strike plaintiff's exhibits because, assuming that plaintiff did not disclose and provide to them documents (which is not) they failed to exercise their rights and opportunity and to follow the steps provided by Rule 37(a), Local Rules 37.1, 37.2 and this Court's Scheduling Order (Doc.61), that is, they failed to move to compel production.

69. Defendants deliberately, knowingly, intentionally, egregiously and recklessly misrepresented, misstated, concealed, lied about and omitted material facts of the procedural discovery history from the court thereby committed fraud upon the court by failing to inform the court that they provided plaintiff and themselves with numerous documents composing the exhibits attached to Plaintiff's declaration (Doc.104) and which they collusively and conspiratorially seek to strike.

70. In violation of Rule 34(b), defendants failed to produce their documents as they were kept in the usual course of business and failed to organize and label them to correspond with the categories in my requests under and as mandated by Rule 34, thus, defendants could not and cannot state with specificity which/what and which/what not documents they had provided plaintiff with.

71. In an improper piecemeal production of documents for inspection and copying, on 11/30/04 Ohio defendants by Mr. Flamm produced only 8-documents, which I described and identified in my 11/30/04 memorial letter (Ex.153), subsequently, on 1/21/05, Mr. Flamm partially produced hundreds of pages of voluminous disorganized and unlabeled documents for partial inspection, which he and Mr Grey abruptly terminated and denied me copying. Texas defendants failed to produce their documents for inspection and copying. (Ex.154, 155, 156, 157, 158).

72. In response to Ohio and Texas defendants' conclusory allegations, blatant lies and speculations without evidentiary support that I forged Exhibits 26, 27, and 118, I never forged, have no need to, have no and will never have disposition to forge or fabricate Ex.26, 27 and 118 or any other documents whatsoever. Upon my informing Donovan that I had retained a legal counsel to sue him, UC and Jefferson-Gaynor in court for defamation, Donovan, in my presence on 12/20/99 after we both made the draft, typed Exhibit 26 and both of us signed it. Similarly, Donovan typed, signed and personally handed to me the Exhibit 27. Exhibits 26 and 27 were among the documents that defendants presented, I inspected and marked for coping on 1/21/05 at Ohio defendants' attorney office.

10

73. As for Ex.118, on 4/19/00, in my presence, defendant Perales maliciously and vindictively made, signed it, personally handed me a copy and faxed a copy to defendants Miller and Donovan. Then Miller instantly phoned and discussed with Perales during which Perales joined me and Miller instantly terminated plaintiff from their program. Then, in the evening Donovan acknowledged receipt of the Exhibit from Perales. Thus, the exhibit initiated the termination and was the trigger for Miller to terminate plaintiff. Thus, Perales lied and perjured again in his Second Affidavit attached to (Doc.114, Ex.2). Thus, defendants authored and produced Exhibits 26, 27, and 118 during discovery.

74. Examples of other Documents that Donovan and Amadasu have executed together include among others, (Doc.104, Ex. 50, 63, 108).

75. With respect to the letterhead of Ex. 27, Donovan lied that he did not use it. In my presence, Donovan personally picked the letterhead and he typed on it. Further, Donovan was an employee at the Department of Environmental Health; Biostatistics and Epidemiology are some of the core courses of the Occupational Medicine Residency Program of which Donovan was the program director until he was dismissed from the position due to his misconduct.

76. Further, Donovan has habitual indiscretion, inconstancy of the choice of letterhead or papers he wrote or type on because he habitually wrote or typed on any papers that he came across with. For example, *inter alia*: Ex.17 is The University Hospital (TUH) Patient Progress Notes sheet on which Donovan improperly wrote his fraudulent instigation of a patient to report Donovan's fabricated sexual harassment against plaintiff to State Medical Board of Ohio; Ex.18-19 are plain paper on which Donovan wrote and signed; Ex.44 is a ruled piece of paper on which Donovan wrote and signed; Ex.63 is a plain paper on which Donovan wrote and signed; Ex.4 is the letterhead of the Medical Center on which Donovan wrote the 1/25/99 hiring letter purporting that TUH hired plaintiff but he did not use letterhead of UC on whose payroll Donovan placed plaintiff.

77. Donovan is an imposter by claiming that he was the Medical Director of OMRP when he was not, but was the Program Director, which is the title accredited by ACGME. [Doc.110, Decln of Donovan at 1; Cf: Doc.104, Ex.97, p.18 at IV(A, B)]

78. Plaintiff has already demonstrated by his declarations (Docs.104, 108) incidences, prevalence and track records of Donovan's lies, inconsistencies, contradictions, misrepresentations, misstatements, fraud, concealments and omissions in Donovan's declaration attached to (Doc.97). Thus, Donovan and other Ohio defendants and their attorney, Mr Flamm, are liars and lack credibility.

79. Again, the 6/13/05 Third Declaration of Donovan is laced with inconsistencies, lies, contradictions, vacillations and misrepresentations. In his first declaration, Donovan lied, misrepresented and misstated facts that plaintiff was not promoted to Chief Resident position in the

11

OMRP because plaintiff was placed on ACGME non-accredited and non-existent "academic accelerated track" or because plaintiff was "accelerated track student" (Doc.97, Donovan Decln p.2 at 3-4), whereas in his belated sham third declaration, Donovan changed his reason for not promoting plaintiff to Chief Resident position as because plaintiff was on short period of 'Practicum Year Track.' Donovan prior and latest inconsistent reasons are false, preposterous, doubtful and fraudulent because they lack evidentiary enabling policy and procedures documentation and Donovan has been vacillating and making inconsistent, contradictory, discrediting perjured testimonies.

80. Donovan's testimony that he did not have any of the OMRP residents---including Amadasu --sign a Graduate Medical Education contract/agreement at anytime during their participation in UC's OMRP in the 1999-2000 term (6/13/05 Third Decln of Donovan, paragraph 2) is clear and compelling evidence of and constitutes Donovan and UC's acknowledgement and admission that: (a) they intentionally, flagrantly, willfully and knowingly violated the very national standard requirements of the accrediting body---ACGME--that they must comply with as condition precedent for accreditation of OMRP and funding it by federal government; (b) they violated the requirements, policy and procedure of TUH, the OMRP sponsoring institution mandating execution of GME-contract/agreement with all residents regardless of their residency specialties; (d) they carelessly, recklessly, knowingly, and intentionally violated Amadasu's rights to 'make and enforce' contract guaranteed to him by the standards of ACGME, JCAHO, TUH and federal law---42 USC 1981; and (e) they have a scheme designed for defrauding Amadasu and residents thereby providing clear grounds for class-action lawsuit against Donovan and UC.

81. Belated Declaration of Sharon Mullen dated 6/13/05 regarding reason for not hiring Amadasu into second year position of the Family Practice Residency Program (FPRP) is false, conclusory and unsupported by evidentiary documentation of the enabling policy, procedures, weighted and scored selection criteria and comparative qualifications relied on. It lacks credence because the purported program manager produced no evidence of her position, job description and function and was not one of authorized hiring selection and decision-making committee members with power to decide whom to hire.

82. Donovan and UC have general practice and habit of forging and fabricating documents. For examples, *inter alia*: UC Student Account Statement (Doc.97, Ex.D) was forged and fabricated because the bill represented a bill for a period when Amadasu did not register for any courses or clinical rotations and had completed his Practicum Phase requirements as evidenced by their own admission (Doc.97, Donovan Decln.p.2, para.3); Donovan solicited defendant Pohl to and did forge

and fabricate Ex. "A" (attached to Doc.97) of non-existent patient's sexual harassment complaint because defendant Pohl was not employee of UC as evidenced by (Doc.97, McCrate Decln. at 2).

83. Ohio defendants' attorney, Mr Flamm, forged and fabricated answers to my Rule 33 Interrogatories to parties and feigned them to have been answered by party defendants in violation of Rule 33.

84. Ohio and Texas defendants provided insufficient, evasive, incomplete, ambiguous, or no Answers or responses at all to plaintiff's Rule 33, 34 and 36 discovery requests in violation of Rule 37(a)(2)(B)(3). See (Doc.105, attached Answers to Pltf's interrogatories and admission requests).

85. Mr Flamm, attorney for Ohio defendants, and Mr Coppola, attorney for Texas defendants have colluded, conspired and combined to and did misrepresented, misstated to, concealed and omitted material facts from the court regarding their January 2005 production of hundreds of pages of documents including without limitations, almost all of the Exhibits 1-3, 5-69, 71-75, 77, 79, 81, 83-84, 86-87, 89-91, 93, 95-104, 107-108, and 110-130 that they want the court to strike because the exhibits overwhelmingly weighed in favor of plaintiff and against the defendants.

86. Before and at the time of filing their summary judgment motions, defendants had in their possession, custody and control vast majority of the relevant evidentiary Exhibits 1-172 but lied to the court that Amadasu has no evidence to support his claims, thus, defendants' motions on their theory of no-evidence to support the claims constitute willful and egregious fraud, frivolity, and falsehood

87. Such intentional, deliberate, knowing, egregious, wanton, contumacious, purposeful and reckless concealment, misrepresentations, misstatements, omission of material procedural discovery facts by Messrs Flamm and Coppola, who are both legal officers of the court constitute outright deception, fraud upon the court, contempt of the court and abuse of the judicial system. Thus, Ohio and Texas defendants and their attorneys, Messrs Flamm and Coppola lack credibility, integrity and candor.

Dated 07/29/05

_____
Darlington Amadasu

CERTIFICATE OF SERVICE

I certify that a true copy of the foregoing was served upon Justin D. Flamm by delivery to receptionist and upon Christopher Coppola by USPS mail on 8/15/05

13