UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

05 AUG 25 PM 1: 1

| | |
|---|---|
| DARLINGTON AMADASU<br>Plaintiff | Case No: C-1-01-210<br>Black/Dlott |
| -V- | |
| JAMES R. DONOVAN, MD, et al<br>Defendants | REPLY IN SUPPORT OF<br>PLAINTIFF'S OMNIBUS CROSS-MOTION TO STRIKE<br>OHIO & TEXAS DEFENDANTS' ANSWERS,<br>SUMMARY JUDGMENT MOTIONS, FOR DEFAULT<br>JUDGMENT & SANCTIONS. |

Plaintiff submits his Reply in support of Plaintiff's Omnibus Cross-Motion (Doc.126, 127) To Strike Ohio and Texas defendants' Answers (Docs.37, 38, 52, 53), Summary Judgment Motions (Docs.97, 98), for Default Judgment and Sanctions, and in response to Ohio defendants' opposition thereto.

The Ohio defendants' memorandum in opposition to Doc.126 should be rejected because it lacks merits, and basis in facts, law and evidence. Amadasu will now reply in seriatim to defendants' baseless opposition:

1. **Ohio defendant's memorandum in opposition does not contest or confute the various grounds in Plaintiff's motion (Doc.126, 127) for striking their answers, summary judgment motions, & for default judgments and sanctions against them:**

Amadasu has set forth uncontroverted specific facts and cited and presented unrebutted corroborating best evidentiary and the legal basis for the relief sought in Docs.126, and 127. Thus, needless to rehash herein those facts, evidences and the legal basis already contained in Docs.126, 127, therefore, plaintiff respectfully refers this court to Docs.126-127, which are hereby incorporated by reference.

Because defendants failed to present excusable cause(s) for their misconducts and for failing to

1

rebut plaintiff's presented facts, evidence, legal and case law bases for striking their answers and summary judgment motions, the relief sought in plaintiff's omnibus cross-motion should be granted as a matter of law.

**2. Ohio defendants conceded that plaintiff's motion (Docs.126-127) is more than rehashing their discovery abuses.**

Ohio defendants conceded that plaintiff's motion (Docs.126-127) is more than rehashing their discovery abuses (Doc.129, p.1). Certainly, defendants' and their counsels' misconducts include without limitations, discovery abuses, litigation buses, judicial process abuses, dilatoriness, intrinsic and extrinsic frauds, misrepresentations, perjuries, falsehood, fraudulent certification of legal documents, violations of the rules; and violations of court orders; etc. They fail to confute any of these misconducts, thereby warranting granting plaintiff's relief sought in his motion.

**3. Ohio defendants' argument that Amadasu has already raised discovery issues with this court is vastly untrue**

Defendant failed to cite or state the substance of the discovery issues that Amadasu has raised with the court to no avail. Prior to plaintiff's motion (Doc.126, 127), Rules 33, 34, 36, 37 discovery issues were not raised; defendants violations of Rules 16(f), 26(g), 33, 34, 36 and 37 et seq.; defendants violations of Local Rules 37.1, 37.2; and violations of the court orders, e.g., Scheduling Order (Doc.61) were not raised with this court; defendant's perjuries, fraud upon the court, misrepresentations, contradictions, inconsistencies, vacillations, false pretenses or impersonation, fraudulent omissions and concealment of facts and evidences were not raised with the court, thus, defendants' arguments that Amadasu has raised discovery issues with this court to no avail lacks merits and is misleading. Defendants' sanctionable misconducts arose pre, intra, and post the discovery phase; thus, defendants' vast misconducts are beyond discovery issues.

4. **Defendants' Reliance on their February 1, 2005 letter (Exhibit 159) in support of their <u>memorandum in opposition to plaintiff's motion (Docs.126, 127) must fail because:</u>**

   (a) **Defendants vindicated Amadasu's claim that the court was wrong in overruling his objections to Ohio defendants' initial disclosures:**

Ohio defendants vindicated Amadasu's claim the court was wrong in overruling his objections to Ohio defendants' initial disclosure because subsequent to the court overruling plaintiff's objections and as a result of plaintiff's relentless demand for proper initial disclosures (Doc.127, Ex.150-151), Ohio defendants belatedly served plaintiff the initial disclosures that they should have served before plaintiff's objections (Doc.127, Ex.165-165a/b/c). Plaintiff not only made initial disclosures of but also in good faith and to expedite discovery and litigation provided defendants copies of the not-for-impeachment documents that were then in his possession (Doc.127, Ex.171). But, on the contrary, defendants in bad faith, in furtherance of their premeditated deliberate and purposeful dilatoriness opted to disclose and belatedly rather than providing plaintiff with copies of the documents that were already in their possession, custody and control. In spite of plaintiff's Rule 34 production requests, defendants continued to withhold the documents but only to make a last-minute partial production of the documents in the eleventh hour of the discovery deadline (Doc.127, Ex.172); thus, they committed sanctionable bad faith and deliberate dilatoriness, which prejudiced plaintiff.

In 10/6/04 letter, defendants falsely asserted that Rule 26 explicitly provides that copies of documents need not be provided with initial disclosures. (Doc.127, Ex.150-150a). Defendants purposefully, willfully, intentionally and knowingly conducted discovery in a way to make a trial more "a game of blind man's buff and more an unfair contest without the basic issues and facts disclosed to the fullest practicable extent" in disobedience of the United States Supreme Court rulings in <u>United States v. Procter & Gamble Co.</u>, 356 US 677, 78 S.Ct. 983, 986-87 (1958)(holding "pretrial discovery in this modern era is to make a trial less a game of blind man's buff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent.").

3

### (b) Ohio defendants argued that they provided Amadasu documents that he had marked in his initial review of discoverable materials but defendants failed to state the timing, description and the quantity of documents provided and why other unmarked discoverable documents were not provided to Amadasu

First, defendants by their counsel lied that Ohio defendants provided Amadasu documents that he had marked in his initial review of discoverable materials because during the 11/30/04 plaintiff's initial review, defendants produced only 8 pieces of documents for inspection but refused to provide Amadasu with copies nor allowed Amadasu to make copies for himself. Amadasu memorialize the initial review (Doc.127, Ex.153). Those 8 pieces of documents are among the exhibits attached to Declaration of Amadasu (Doc.104) that defendants want the court to strike.

Second, at the 01/21/05 second review, defendants' counsel, Mr. Flamm allowed only partial inspection, which he abruptly terminated without justification and he refused to give copies nor allowed plaintiff to make copies of the documents (Doc.127, Ex.156). Mr Flamm allowed inspection of about 300 out of about 900 pieces of documents in his possession. About sixty (60) days after 11/30/04 initial partial inspection and about ten (10) days after the 01/21/05 second aborted partial inspection, Ohio defendants eventually provided Amadasu with about 300 pieces of documents out of the about 900 documents exclusive of those documents that defendants have refused to produce for inspection and copying.

Third, the partial provision and timing—the last-minute of the eleventh hour of discovery deadline—of providing Amadasu with the partial documents by defendants prejudiced Amadasu because Amadasu was prevented from prosecuting his claims, preparing and making dispositive motion, and responding to defendants' dispositive motions. Defendants claimed that they provided Amadasu with document at no charge, similarly, Amadasu provided defendants with documents at no charge.

Fourth, defendants, in effect, acknowledged and conceded that they failed and refused to provide Amadasu with the remaining about 600 documents that they prevented plaintiff from

4

inspecting and copying on 11/30/04 and 01/21/05 exclusive of those numerous discoverable documents at the University of Cincinnati.

> **(c) Defendants' argument that Amadasu declined the Ohio defendants' offer to meet and review numerous additional discoverable documents at counsel's office and at the University of Cincinnati is false, misleading and lacks merits:**

First, Amadasu is not obligated to follow defense counsel for fishing expedition for unidentified numerous discoverable materials at the university wide-spread-out campuses, nonetheless, Amadasu did not decline and defendants failed to produce evidence of plaintiff's declination of the purported offer.

Second, defendants deliberately failed to suggest or state specific dates, time and location within the vastly spread-out UC campuses for reviewing the numerous additional discoverable materials in order for plaintiff to choose date and time and prepare for the review (Doc.127, Ex.159).

Third, on various occasions, defendants sent conflicting, confusing, incredible and inconsistent signals of their "discovery games" that frustrated and prejudiced plaintiff. For example, inter alia, in their evasive responses to plaintiff's Rule 34 production and Rule 33 interrogatories, defendants stated, "UC states that it will produce non-privileged documents that are relevant…if any such documents exist (sic)" thus, defendants were not certain that documents exist for plaintiff to inspect and copy. See (Doc.127, Ex.166, p.3); Also defendants by counsel stated, "The offer for you to meet and review documents remains open, subject to my (Flamm) availability and our agreement to a mutually acceptable time for doing so(sic)"; thus, defendants were not certain about their availability and time for plaintiff to meet them for review. (Doc.127, Ex.159a, p.2, para.1).

Fourth, at 11/30/04 and 1/21/05 plaintiff's initiated meetings, Amadasu met defendants' counsel for inspection and copying of documents but counsel failed to produce the 'numerous discoverable documents; prevented and refused plaintiff from inspecting and copying the documents; and abruptly aborted plaintiff's inspection of the documents. (Doc.127, Ex.153, 155-158)

5

Fifth, however, reviewing unidentified numerous additional discoverable documents at counsel's office and at another unspecified location in the wide-spread-out UC campuses are unduly burdensome, cumbersome, expensive and uncertain; thus, defendants intended to set-up plaintiff to fail

Sixth, Plaintiff put defendants on notice by the commencement of this action and through their Counsels, Mr. Flamm regarding the pertinent and specific documents he would want them submit to plaintiff to enable him efficiently and adequately prepare his case for resolution of this matter on merits. In Telecom Intern. America, Ltd. v. AT & T Corp., 189 F.R.D. 76 (S.D.N.Y., 1999) the court ruled " party is put on notice of its duty to preserve evidence when an opponent has made a specific request. ...such notice is usually provided when suit has been filed, which provides party responsible ...with express notice, but also may arise in other circumstances, such as when a party should have known that the evidence may be relevant to future litigation. Once notice of duty to preserve evidence is provided, *obligation runs first to counsel*, who then has a duty to advise and explain to the client its obligations to retain pertinent document that may be relevant to the litigation" Here in this case defense counsels have affirmative duty to advise their clients to cooperate fully in discovery and to provide plaintiff with all the 'numerous additional discoverable documents' but breached that duty that they owe to plaintiff.

### (d) Defendants' argument that Amadasu refused the Ohio defendant's repeated requests to provide any detail as to which requests he thought had not been fully answered and why, lacks merits because:

First, Amadasu Rules 33, 34, and 36 discovery requests are sufficiently detailed, direct, unambiguous and reasonably specific allowing defendants to identify readily what plaintiff wanted. See, (Doc.84 & its attachments; Doc.105 & its attachment).

Second, defendants made **many bad faith excuses** such as the requests were outside court-ordered limitation of discovery to Titles VI & VII and or requests were too many for them to answer, or were improper. It has been held that litigants or their counsels cannot decide for themselves discovery issues and it is inappropriate for a party to decide for itself that interrogatory is improper. It is its responsibility either to answer the interrogatory or to object. See, e.g., United Nuclear Corp. v.

6

General Atomic Co., 629 P.2d 231, 287, 96 NM 155, appeal dismissed, certiorari denied 101 S.Ct. 1966, 451 US 901, rehearing denied 101 S.Ct.3070, 452 US 932 (1980)(citing *Wright & Miller*).

The burden is upon objector to interrogatory to show that answer sought is privileged, not relevant, or some other way, is not proper subject of an interrogatory. See, e.g., Bowles v. Safeway Stores, Inc., 4 FRD 469 (1945). Here, defendants failed to meet their burden.

### (e) Ohio defendants' argument that Ohio defendants abided by the Court-ordered limitation of discovery to Amadasu's Title VI & VII claims and expected Amadasu to do so as well lacks merits because:

First, the court-ordered limitation of discovery to Titles VI & VII claims does not relieve defendants of their obligation and responsibility of providing answers to plaintiff's discovery requests.

Second, the burden is upon defendants to show that Amadasu's discovery requests were irrelevant but they failed to state or describe specific and particular plaintiff's discovery requests that were purportedly irrelevant to the Titles VI & VII claims

Third, if plaintiff's discovery requests were irrelevant to Title VI & VII claims, (which are not), defendants have no authority, power or discretion to determine relevancy because defendants could not be judges in their disputes. "The court, and not adverse party, determines the question of competency, or relevancy." Ex parte Rowell, 248 Ala.80, 26 So.2d 554 (1946)

Fourth, Amadasu's discovery requests were unambiguous, direct, non-vague, within and specific to Titles VI & VII claims.  For example, *inter alia*, Amadasu requested a copy of job descriptions and specifications of positions of second year Family Practice Residents and Adjunct Faculty in Health Promotions that plaintiff applied for in defendants' organization at the times relevant to the subject matter of this action; Defendants' responses were: "this request is vague, overbroad, burdensome...and goes outside the court-ordered limitation of discovery to plaintiff's Title VI & VII claims. Plaintiff's discovery requests are absolutely related to and within Title VI & VII claims. See, University of Cincinnati's Responses and Objections to Plaintiff's First Requests for Combined Production of Documents Upon Defendants (Doc.127, Ex.166, p.3). Defendants provided the same

7

pattern of responses to almost all of plaintiff's discovery requests (Doc.105, attached exhibits—defendants' responses to plaintiff's Rule 33, 36 discovery requests; see also, Doc.84)

### (f) Ohio defendants' willingness to work with Amadasu to resolve any discovery issues is unavailing mere post-damage control and cannot avert the sanctions already due to them because:

First, defendant's purported willingness to work with Amadasu after they had prejudiced Amadasu, abused discovery, violated discovery Rules 26-37 constitutes 'posthumous medications for a dead person' that cannot cure the prejudice to plaintiff. Belated compliance with the rules of discovery does not purge a failure to comply with the rules. See, e.g., Henry, 983 F.2d at 947. "Last minute tender" of relevant documents does not cure effects of discovery misconduct, G-K Properties v. Redevelopment Agency of San Jose, 577 F.2d 645, 647-48 (9th Cir.1978)

Second, defendants' deliberate and egregious obstruction of discovery and violations of the rules and court scheduling orders are not cured by defendants' posthumous willingness to work with plaintiff. Continuous pattern of delay and obfuscation on part of employer's counsel (and employer per se) during discovery warranted order precluding employer from introducing evidence in opposition to former employee's claims. See, e.g., Jankins v. TDC Management Corp., Inc., 131 FRD 629 (DDC 1989). However, defendants failed to demonstrate that they have any evidences in support of their non-existent defenses or rebuttal to plaintiff's claims

Third, defendants had ample opportunity to work with plaintiff but used the opportunity to frustrate, annoy, harass, prejudice plaintiff and obfuscate due process right of plaintiff.

### (g) Ohio defendants' Opposition (Doc.129), is frivolous in part; and in other part laced with their concessions, acknowledgement, admissions vindicating Amadasu's claims and his motions for relief and oppositions to defendants' barraged frivolous motions because:

First, defendants failed to set forth facts, present evidence, or cite any rule, law or case law in support of their opposition to plaintiff's motion and declaration (Docs.126, 127)

Second, defendants failed to contest, rebut or confute any of the grounds for the relief sought by plaintiff in his motion and declaration (Docs.126, 127)

Third, defendants acknowledged, conceded and admitted that they provided Amadasu with the vast majority of the Exhibits 1-172 attached to plaintiff's declarations (Docs.104, 105, 108, 127)

Fourth, defendants acknowledged that the vast majority of the Exhibits 1-172 were already in their possession, custody and control before, during and after (i) their summary judgment motions (Docs. 97, 98); (ii) their motions to strike Declarations of Amadasu and attached Exhibits

Fifth, defendants' acknowledgement vindicated that Amadasu was/is not obligated to provide defendants with information, materials or documents already in their possession, custody and control or readily available to them. It has been held that it is not the purpose of discovery for a party to supply information already under the control or readily available to the opposing party. See, e.g., Boyle v. Steinman, 429 Pa. Super.1, 631 A.2d 1025 (1993).

Sixth, defendants' acknowledgement defeated their very illegalities—fraud, misrepresentations, omissions, perjuries, manipulations, lies, discovery abuses, violations of Rules 26-37, violations of court orders, falsehood, deceptions, concealment, maneuvering of counsels, collusions, etc, --that they purposefully designed to defeat Amadasu's meritorious claims. "Laudable ends do not justify precipitate means." R.W. Intern. Corp. v. Welch Foods, Inc., 937 F.2d 11, 18 (1st Cir.1991).

Seventh, defendants attempted to use the court as "shield and sword" to prevent discovery and to defeat plaintiff's claims by (i) use of court-ordered limitation of discovery to Amadasu's Titles VI & VII claims as "shield" to prevent discovery of the truth; (ii) use the court as "sword" to prevent admissibility of relevant, probative and credible Exhibits as evidence that they provided Amadasu, and necessary for this court determination of issues in Amadasu's claims. A client cannot use the advice of counsel as a sword to prove his case while also raising the attorney-client privilege as a shield to prevent the disclosure of harmful information. See, e.g., ST Systems Corp. v. Maryland Nat. Bank, 112 Md. App.20, 684 A.2d 32 (1996); thus, applying this holding to this instant action, defendants cannot use court-ordered limitation of discovery to Amadasu's Titles VI & VII claims as "shield" to prevent discovery of the truth while using the court as sword to prevent discovered documents from

9

admissibility into evidence to bring out the truth against them or in favor of the plaintiff. After all, the court's paramount goal is truth, and the broad rules of discovery are essential to finding truth. See. e.g., Golf Kroger Co., 121 FRD 61, 62 (SD Ohio 1988)(Weber, J.). In employment discrimination cases, employers have most of the evidence of whether they discriminated against a particular plaintiff or engaged in a pattern and practice of discrimination against their employees in general. Particularly, in cases based on federally protected civil rights, full discovery is warranted. Irvine v. Airco Carbide, (837 F.2d 724, 726 (6th Cir. 1987).

Eighth, defendants acknowledged that they still possess relevant numerous discoverable documents in their custody and control that they have refused to provide to plaintiff and the court. Failure to disclose or produce materials requested in discovery can constitute misconduct within the purview of Rule 60(b)(3). See, e.g., Jones, 921 F.2d 879; Anderson v. Cryovac, Inc., 862 F.2d 910, 923 (1st Cir.1988).

5. **Control by court:**

The trial court has an obligation to see that discovery rules are followed, Whitworth v. Whitworth, 878 S.W.2d 479 (1994); Court has broad powers to control the use of the discovery process to prevent its abuse by any party. Jack's Restaurant v. Turnbow, 674 So.2d 573 (1995)

Every, any and the totality of misconduct of defendants and totality of circumstances warrant striking defendants' answers, defendants' summary judgment motions; granting default judgment and other sanctions against defendants and their counsels as matter of law.

Respectfully submitted,

Darlington Amadasu, Lay pro se plaintiff

**CERTIFICATE OF SERVICE:**
I certify that the true copies of the foregoing was served upon Justin D. Flamm via receptionist and Christopher Coppola by regular USPS mail to his address on record on 8/25/05

10