UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

DARLINGTON AMADASU,

       Plaintiff,                        Case No.  1:01-cv-210

vs.                                   Dlott, J.
                                        Black, M.J.

JAMES R. DONOVAN, M.D., *et al.,*

       Defendants.

**REPORT AND RECOMMENDATION[1] THAT DEFENDANTS' MOTIONS FOR
SUMMARY JUDGMENT (Docs. 97 and 98) SHOULD BE GRANTED;
ALL OTHER PENDING MOTIONS SHOULD BE DENIED AS MOOT;
AND THIS CASE SHOULD BE CLOSED.**

Plaintiff, Darlington Amadasu, initiated this action on April 11, 2001 by filing a

*pro se* complaint pursuant to 42 U.S.C. § 2000e-5, 42 U.S.C. §§ 1981, 1983, 1985, and

1986, and 42 U.S.C. § 3601, *et seq.*  (Doc. 2.)  Plaintiff's complaint also alleges various

violations of Ohio and Texas state law.  *Id.*  Now before the Court are Defendants'

motions for summary judgment (docs. 97 and 98) and supporting affidavits, and the

parties' responsive memoranda (docs. 104, 106, 108, 111.)

## I.  BACKGROUND AND PROCEDURAL HISTORY

Plaintiff's allegations arise out of his participation in a residency program at the

University of Cincinnati, as well as his four-week clinical rotation at the University of

Texas in Laredo, Texas.  Plaintiff's complaint names as defendants the University of

---

[1]  Attached hereto is a NOTICE to the parties regarding objections to this Report and
Recommendation.

Cincinnati ("UC"), and UC employee James R. Donovan, and the University of Texas ("UT"), and UT employees, Claudia S. Miller and Roger B. Perales.  (Doc. 2).

In November 2001, Plaintiff moved to add twenty-seven additional claims and to add as defendants eight individuals, seven of whom were employed at UC at the relevant time:  James Lockey, Andrew Freeman, Deborah Ann Middaugh, Muriel Pohl, Dora Jefferson-Gaynor, Ralph Charles Buncher, Judy Jarrell, Tracy Hermann and Andrew Filak.

By Order of September 17, 2003 (doc. 50), the Court permitted the Plaintiff to amend and proceed against the additional defendants, but joined only in their official capacities and only as to Plaintiff's claims under Title VI, 42 U.S.C. § 2000d, *et seq*., and Title VII, 42 U.S.C. § 2000d, *et seq*.  Plaintiff was denied leave to amend his complaint with respect to Counts 19-25 and 27-35 of the proposed amended complaint.  *Id.* Furthermore, the Court has limited discovery to Plaintiff's claims under Title VI and Title VII.

Accordingly, Plaintiff's amended complaint asserts the following claims:

1.   Civil Rights Discrimination:  42 U.S.C. § 2000e, *et seq*.;
2.   Equal Rights Under the Law:  42 U.S.C. 1981;
3.   Equal Protection/Deprivation of Civil Rights:  42 U.S.C. 1983;
4.   Substantive Due Process:  42 U.S.C. 1983,;
5.   Civil Rights Violation Procedural Due Process:  42 U.S.C. 1983,;
6.   Conspiracy to Interfere with Civil Rights:  42 U.S.C. § 1985;
7.   Neglect to Prevent Civil Rights Violation & Conspiracy:  42 U.S.C. § 1986;
8.   Violation of Federal Fair Housing:  42 U.S.C. § 3601, et seq.;
9.   Negligence, Nuisance, Premises Liability:  state law;
10.  Negligence Hiring/Supervising/ Retention:  state law;
11.  Misrepresentation and Education Malpractice:  state law;

    12.    Defamation - Libel and Slander:  state law;
    13.    Invasion of Privacy and Trespass:  state law;
    14.    Intentional Inflection of Emotional Distress:  state law;
    15.    Violation of Texas Bill of Rights and Ohio Revised Code 4112, *et seq*.;
    16.    Race, Sex, Color and Nat'l. Origin Discrim.: 42 U.S.C. § 2000e, *et seq*.;
    17.    Hostile Environment, Racial Harassment:  42 U.S.C. § 2000e, *et seq*.;
    18.    Civil Rights Violation:  42 U.S.C. § 2000e, *et seq*.;
    19.    Retaliation:  42 U.S.C. § 2000e, *et seq*.

(Doc. 51.)

On November 16, 2004, the Ohio Defendants filed a motion to dismiss pursuant to Fed. R. Civ. P. 41(b) as result of Plaintiff's failure to attend his scheduled deposition. (Doc. 76.)  The Ohio Defendants rescheduled Plaintiff's deposition, and he was deposed on December 14 and 15, 2004.  Accordingly, the Court denied the Ohio Defendants' motion as moot  (Doc. 24.)

On March 30, 2005, the Texas Defendants filed a motion for summary judgment. (Doc. 98.)  The Ohio Defendants filed a motion for summary judgment on March 31, 2005.  (Doc. 97.)  Plaintiff then filed a motion for summary judgment on June 1, 2005. Thereafter, the Defendants filed motions to strike Plaintiff's affidavit and exhibits filed in support of his memorandum in opposition to Defendants' motions for summary judgment. (Docs. 110, 114.)  The motions to strike were granted in part and denied in part by Order entered today.  (*See* Doc. 137.)

Additional pending motions include: Defendants' motions to strike Plaintiff's supplemental opposition memorandum (docs. 113, 115), and Plaintiff's motion for default judgment, motion for sanctions, and motion to strike (doc. 126.).

## FACTS

Plaintiff is a black male originally from Nigeria.  (Doc. 51, ¶ 1).  Plaintiff was accepted into UC's Occupational Medicine Residency Program ("OMRP") in 1999 and placed on the Program's Accelerated Track.[2]  (Donovan Dec. ¶ 3).  Drs. Donovan, Lockey , Middaugh and Freeman supervised Plaintiff's residency.  (Amadasu dep. at 35.)

In the fall of 1999, the OMRP selected a Chief Resident.  (Donovan Dec. ¶ 4) Residents on the Accelerated Track are ineligible for the position due to their short term participation in the program.  *Id*.  Thus, although Plaintiff expressed interest in the position, because he was on the Accelerated Track, he was ineligible and not selected.

Shortly after Plaintiff began the OMRP, Dr. James Donovan, the Director of the Residency Program in Occupation and Environmental Medicine, began to receive complaints of improper sexual conduct by Plaintiff.  *Id*. at ¶ 5.  In October 1999, Donovan received a complaint from two female UC employees who said that Plaintiff had sexually harassed them.  *Id*.  In December 1999, another UC employee complained that she believed Plaintiff was sending her sexually harassing emails.  *Id*.  Furthermore, around February 2000, Donovan received a complaint from a female patient who stated that Plaintiff made her feel uncomfortable when he examined her, and when he contacted her at home thereafter, without her permission, to ask her to go out on a date.

---

[2]  The OMRP has four academic tracks.  (Donovan Dec. ¶ 2)  The fourth track, know as the "Accelerated Track," can be completed in two years.  *Id*.  Individuals already possessing a Master of Public Health or an equivalent degree are placed on the Accelerated Track.  *Id*.  Accelerated Track residents do not graduate from UC; rather, they receive a certificate of completion from the program.  *Id*.

Donovan discussed the allegations of sexual harassment with Plaintiff. *Id.* at ¶ 5. Thereafter, in April 2000, due to the complaints of sexual harassment against Plaintiff, Donovan required Plaintiff to be chaperoned while examining female patients. *Id.*

Additionally, Donovan and some other OMRP faculty members learned that Plaintiff had been dismissed from one of his required off-site clinical rotations after he had been found to have committed improper sexual behavior. *Id.*

In April 2000, Plaintiff applied for and was accepted into a four week residency rotation in Laredo, Texas, with the South Texas Environmental Education and Research program ("STEER").

Dr. Claudia Miller was the Director of the STEER program, and Roger Perales was a student at the University of Texas Health Science Center at San Antonio ("UTHSC"). Plaintiff was informed that the program provided free housing and onsite transportation. (Doc. 104, Ex. 122.)

Plaintiff began his rotation with UTHSC on April 3, 2000 and was scheduled to remain through April 28, 2000. (Doc. 51 at ¶ 24.) Plaintiff, however, did not complete the entire rotation and was released early because of inappropriate behavior. (Miller Aff. at 2; Perales Aff. at 2.)

After Plaintiff returned from Texas, and despite being dismissed from two clinical rotations and numerous allegations of sexual harassment, UC permitted Plaintiff to continue in the OMRP program. (Donovan Aff. ¶ 7.) However, after Donovan learned on April 19, 2000 of Plaintiff's dismissal from the UT program, Plaintiff was placed on

probation.  *Id*.  Nonetheless, Plaintiff's stipend was not reduced, he was not suspended, and he was allowed to continue in the program.  *Id*.  Plaintiff completed the OMRP program in June 2000.  *Id*.

Thereafter, Plaintiff waited until April 11, 2001, the day he filed this lawsuit, to submit a signed residency termination clearance form, a requirement that every resident must sign before the department can order a certificate for completion of the program.  Plaintiff received his certificate five days after submitting the residency termination form.  (*Id*.; Ex. C.)

Additionally, UC held Plaintiff's transcript after he completed the program because of unpaid fees.  Plaintiff received a graduate scholarship that required him to become an Ohio Resident.  (Donovan Aff. ¶ 11.)  However, Plaintiff failed to become an Ohio resident, and, as result, UC charged Plaintiff a non-resident fee.

In June 2000, Plaintiff applied for an adjunct teaching position in Health Promotions at UC's Raymond Walter's College.  The position required, at a minimum, successful teaching experience, and a master's degree in a health related field, with a degree in health education preferred.  (Herrmann Aff., Ex. A.)  Plaintiff lacked significant teaching experience and was not hired for the position.  (*Id*. at ¶ 4.)  The individual hired for the position was teaching a health promotions course at UC's College of Education, had a degree in health education and promotion, and was a health promotions coordinator for an area business.  *Id*.

However, according to Plaintiff, Defendants engaged in regular, repeated and continuing discriminatory acts and systematic patterns of discrimination against him.

Specifically, Plaintiff asserts that he was not selected as the chief resident at UC in the fall of 1999 because of his race and that preference was given to "white males."

Plaintiff further asserts that he was not given computer passwords and a microcassette dictation device that the white residents received.  (Amadasu dep. at 36.) With respect to the microcassette, Plaintiff asserts that defendant Freeman asked Connie Brockman, a receptionist at UC, to give Plaintiff a microcassette, she refused, and then used a racial slur, the "N word," in reference to Plaintiff.  *Id.* at 146.

Plaintiff denies Defendants' allegations of sexual harassment, and he maintains that Defendants Gaynor and Donovan conspired to "paper" Plaintiff's file and fabricated the allegations of sexual harassment.  Plaintiff further asserts that Defendants Donovan and Pohl "set up" Plaintiff during an examination of a female patient.

Furthermore, while participating in the UT program in Laredo, Texas, Plaintiff claims that he was assigned "archaic substandard" housing, while white participants "were given safer, healthful modern homes. . . ." (Doc. 51, ¶ 29.)  Plaintiff further alleges that he was not provided transportation around town as promised, and he experienced a lack of cooperation from Perales, who worked with Plaintiff in Laredo.  Plaintiff asserts that he (Plaintiff) told Dr. Miller about the discrimination he (Plaintiff) was facing in the UT program, and that she did nothing.  (Amadasu dep. at 47-48.)

Plaintiff alleges that Perales made racial slurs towards him, conducted unauthorized searches of Plaintiff's UTHSC provided housing, and that Perales made Plaintiff give up his housing to three Caucasians.  (*Id.* at 46, 48-50.)  Plaintiff also asserts

that Perales wrongly accused Plaintiff of sexual harassment.  (Doc. 51 at ¶¶ 36, 39.)

Plaintiff also asserts that the UTHSC program in Laredo was poorly organized, and that Miller also wrongfully accused Plaintiff of sexual harassment.  Lastly, Plaintiff claims that he was wrongfully dismissed from the UTHSC program in Laredo, wrongfully evicted from his housing, and wrongfully placed on probation by Donovan at UC because of the false accusations made by Perales and Miller in Laredo.

Plaintiff asserts that his bill to UC was zero, but that UC nevertheless sent him "distressing, harassing, vexatious and fraudulent bills. . . ." (Doc. 104 ¶ 68.)  Thus, Plaintiff alleges that he suffered emotional distress and continuing injuries as a result of UC's failure to release his transcript.

Plaintiff further alleges that he was not hired in June 2000 for the adjunct teaching position because of his race, age, sex, and national origin, and in retaliation for his opposition to UC's discriminatory practices.  (Doc. 104, ¶ 59.)  Plaintiff claims that UC hired a less qualified person for the position because she was a white female.  (Doc. 104, ¶ 59.)

The undersigned finds that Plaintiff's unsupported conclusory allegations are not sufficient to defeat the Defendants' properly supported summary judgment motions, and, for the reasons that follow, recommends that Defendants' motions for summary judgment be granted, that all other pending motions be denied as moot, and that this matter be closed.

**III**.

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party has the burden of showing the absence of genuine disputes over facts which, under the substantive law governing the issue, might affect the outcome of the action. *Celotex*, 477 U.S. at 323. All facts and inferences must be construed in a light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The Court is not duty bound to search the entire record in an effort to establish a lack of genuinely disputed material facts. *Guarino v. Brookfield Township Trustees,* 980 F.2d 399, 404 (6th Cir. 1992); *InterRoyal Corp. v. Sponseller,* 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied,* 494 U.S. 1091 (1990). Rather, the burden is on the nonmoving party "to present affirmative evidence to defeat a properly supported motion for summary judgment," *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479-80 (6th Cir. 1989), and to designate specific facts in dispute. *Anderson,* 477 U.S. at 250; *Guarino,* 980 F.2d at 404-05.

A court need not give credence to "mere allegations" nor draw inferences where they are implausible or not supported by "specific facts." *See Anderson,* 477 U.S. at 249; *see also Mitchell v. Toledo Hosp.,* 964 F.2d 577, 585 (6th Cir.1992). Furthermore,

-9-

"self-serving affidavits, alone, are not enough to create an issue of fact sufficient to survive summary judgment."  *Wolfe v. Village of Brice*, 37 F.Supp.2d 1021, 1026 (S.D. Ohio 1999) (citing *Anderson*, 477 U.S. 242).

Thus, the law is clear:  conclusory allegations are not sufficient to defeat a properly supported summary judgment motion.  *McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1162 (6th Cir. 1990) (citing *Patterson v. General Motors Corp.,* 631 F.2d 476, 482 (7th Cir. 1980), *cert. denied,* 451 U.S. 914 (1981)).

## VI.

**A.    The Ohio Defendants Motion for Summary Judgment
       Should be Granted in Its Entirety.**

i.    <u>Plaintiff's Title VI Claim and Title VII Claims
      Are Analyzed Under the Title VII Paradigm.</u>

Title VI prohibits discrimination "under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d; *see also Moss v. Columbus Bd. of Educ*., 98 Fed.Appx. 393, 395 (6th Cir. 2004) (Title VI of the Civil Rights Act of 1964 prohibits racial discrimination by a recipient of a federal grant); *Almendares v. Palmer*, 284 F.Supp.2d 799, 802 (N.D.Ohio 2003) (Title VI excludes from participation in federal assistance recipients of aid that discriminate against racial groups.)

In order to maintain an employment discrimination action under Title VI, a plaintiff must either allege that the primary objective of the federal aid is to provide

employment or that discrimination in employment necessarily causes discrimination against primary beneficiaries of aid. *Stewart v. Simpson Co. Bc of Educ.*, 871 F.2d 1089 (6th Cir. 1989). Moreover, a claim under Title VI requires a plaintiff to allege intentional discrimination. *Alexander v. Sandoval*, 532 U.S. 275, 280-81 (2001); *D.J. Miller & Associates, Inc. v. Ohio Department of Administrative Services*, 115 F.Supp.2d 872 (S.D.Ohio 2000).

Thus, it must be determined whether Plaintiff has evidenced intentional discrimination, specifically, that UC's decisions were motivated by race, color, national origin or sex, and that race, color, national origin or sex was a determining factor in UC's decisions. *D.J. Miller & Associates, supra*, 115 F.Supp.2d at 878 (S.D.Ohio 2000) (citing *David K. v. Lane,* 839 F.2d 1265, 1275-76 (7th Cir.1988)). Plaintiff may utilize direct or circumstantial evidence, see *Kline v. Tennessee Valley Authority,* 128 F.3d 337, 348 (6th Cir.1997), and his discrimination claims under Title VI and Title VII are analyzed under the Title VII paradigm. *D.J. Miller & Associates*, 115 F.Supp.2d at 878. In this context, Plaintiffs claims fail.

> a.   Plaintiff has failed to introduce any direct evidence
>      of discrimination under Title VI or Title VII.

"[D]irect evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *White v. Columbus Metropolitan Housing Authority,*  429 F.3d 232, 238 (6th Cir. 2005). Isolated and ambiguous comments are insufficient to support a finding of direct discrimination. *Id.* at 239.

Here, Plaintiff asserts that Connie Brockman used the "N word" toward him and that defendant Freeman mentioned Plaintiff's "heavy African accent." (Amadasu depo. at 111, 146, 49). However, as noted by Defendants, even if true, these statements do not constitute direct evidence of discrimination because discriminatory statements do not constitute direct evidence of discrimination unless the statements are made by both the "decisionmaker" and are "related to the employment decision at issue." *Wohler v. Toledo Stamphing & Mfg. Co.*, 125 F.3d 856 (6th Cir. 1997)(table).

Brockman was a receptionist, had no authority over Plaintiff, and, therefore, was not a "decisionmaker." (Donovan Dec. ¶ 9). Moreover, Plaintiff has not shown that Freeman's alleged statement was related to any employment decision, and, therefore, does not demonstrate direct evidence of discrimination. *See Ndongo v. Tomasco Mulciber*, No. C2-01-381, 2002 WL 1584260, *4 (S.D.Ohio May 31, 2002) ("Direct evidence is not demonstrated through stray remarks, remarks by non-decision makers, comments that are vague, ambiguous, or isolated, and comments that are not proximate in time to the [adverse employment action]." )

       b.     <u>Plaintiff has failed to establish a *prima facie* case of race, color and/or national origin discrimination under Title VI or Title VII.</u>[3]

Although Plaintiff has not provided any direct evidence of discrimination, he may establish his claim of discrimination using the circumstantial evidence approach. *See*

---

[3] Plaintiff did not allege sex discrimination in his EEOC charge, and, therefore, his sex discrimination claim fails. *See Ang v. Proctor and Gamble Co,* 932 F.2d 540 (6th Cir. 1991) (plaintiff preluded from alleging race discrimination where administrative complaint only included national origin discrimination.)

-12-

*Kline v. Tennessee Valley Auth.*, 128 F.3d at 348-49.

In order to prevail on his race, color and/or national origin discrimination claim under Title VI and/or Title VII, plaintiff bears the initial burden of establishing a *prima facie* case of discrimination by a preponderance of the evidence. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973); *Simon v. City of Youngstown,* 73 F.3d 68, 70 (6th Cir. 1996); *see also D.J. Miller & Assoc.*, 115 F. Supp.2d 872 (S.D. Ohio 2000).

In order to make this showing under Title VII, plaintiff must demonstrate: (1) that he was in a protected class; (2) that he was qualified for the job that he held during the time in question; (3) that he suffered an adverse employment action; and (4) that he was treated differently than similarly-situated individuals who were not members of his protected class. *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 252-53 (1981); *McDonnell Douglas Corp.*, 411 U.S. at 802-03.

Similarly, to establish a *prima facie* case of discrimination under Title VI using the indirect method, a plaintiff must show the following: (1) he is a member of a protected class; (2) his performance met the defendant's legitimate expectations; (3) he suffered an adverse action; and (4) the defendant treated other similarly-situated persons outside of the plaintiff's classification more favorably. *Brewer v. Board of Trustees of the University of Illinois,* 407 F.Supp.2d 946, 972 (C.D. Ill. 2005).

If plaintiff establishes a *prima facie* case, a defendant may rebut plaintiff's claim by introducing evidence of a legitimate nondiscriminatory reason for its actions.

-13-

*McDonnell Douglas*, 411 U.S. at 803; *see also Texas Dep't of Comty. Affairs v. Burdine*, 450 U.S. 248, 253-54 (1981).  If defendant presents such evidence and if it is accepted as true, then the Court can conclude that a nondiscriminatory reason existed.  *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993).  Accordingly, once a defendant makes this showing, then the burden shifts back to plaintiff to demonstrate that defendant's stated reason is merely a pretext for discrimination.  *See Burdine*, 450 U.S. at 256.

Here, it is undisputed that Plaintiff is a member of a protected class.  However, he plainly has failed to come forward with sufficient facts to prove that he suffered an adverse action and/or was treated differently than similarly situated non-members of his protected class.

To establish the existence of an adverse action, the Defendants' actions must have "materially altered" the terms and conditions of Plaintiff's residency and/or educational experience.  *See Hollins v. Atlantic Co.*, 188 F.3d 652, 662 (6th Cir. 2002)("adverse employment action" requires events such as termination or a demotion evidenced by a decrease in wage or salary or a material loss of benefits).

Plaintiff's alleged failure to receive a computer password, failure to receive a new – instead of "old" – microcassette recorder, and the denial of funds to attend a clinical conference, even if true, do not constitute adverse employment/educational actions.  *See Miller v. Vanderbilt University*, 389 F.3d 177, 182 (6th Cir. 2004) (deprivation of graduate assistantship, revocation of mentor status, removal from medical director

-14-

position, and drastic reduction in lab space did not constitute adverse actions); *Douglas v. Caldera*, 29 Fed. Appx. 257 (6th Cir. 2002)(denial of request to attend training workshop not adverse action); *Cartwright v. Tacala*, Inc., 2000 WL 33287445 (M.D. Ala. Nov. 1, 2000) (denial of computer password does not constitute adverse action); *Gonzalez v. Fla. Dep't of Highway and Safety*, 237 F. Supp.2d 1338 (S.D. Fla 2002) (issuance of old equipment not adverse action).

Furthermore, even assuming Plaintiff suffered an adverse action, he cannot show that he was treated differently than similarly situated OMRP residents outside his protected class.  Plaintiff's self-serving affidavit and conclusory allegations that he was treated differently than others because of his race, color and/or national origin are insufficient to defeat Defendants' properly supported summary judgment motion.

Accordingly, the Ohio Defendants are entitled to judgment as a matter of law with respect to Plaintiff's race, color and/or national origin discrimination claims under Title VI and Title VII.[4]

iii.    Plaintiff's Hostile Work Environment Claim Fails.

Title VII prohibits racial harassment that creates a hostile or abusive work environment.  *See Hafford v. Seidner,* 183 F.3d 506, 512 (6th Cir.1999).  In order to

---

[4] Plaintiff's Title VI and VII claims against Donovan in his individual capacity also fail as a matter of law.  *See Davis v. Flexman*, 109 F. Supp. 2d 776, 793 (S.D. Ohio 1999) (only entities, not persons, are subject to liability under Title VI); *see also Wathen V. General Electric*, 115 F.3d 400, 405 (6th Cir. 1997)(An individual employee who does not independently qualify under the statutory definition of "employer" cannot be held personally liable under Title VII).

establish a prima facie case of hostile work environment based on race under Title VII, a plaintiff must show: (1) that he is a member of a protected class; (2) that he was subjected to unwelcome racial harassment; (3) that the harassment was based on race; (4) that the harassment had the effect of unreasonably interfering with his work performance by creating an intimidating, hostile, or offensive work environment; and (5) the existence of employer liability. *Id.*

A hostile work environment occurs "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc*., 510 U.S. 17, 21 (1993) (internal quotations and citations omitted).

Plaintiff alleges that he was "subjected to unwelcome conduct constituting harassing racial slurs, epithets, stereotypes, disrespect, verbal abuse and innuendoes." (Doc. 51 at ¶ 122).  Again, however, Plaintiff's unsupported conclusory allegations, without more, are insufficient to establish a *prima facie* case of hostile work environment. Accordingly, the Ohio Defendants' motion for summary judgment should be granted with respect to Plaintiff's hostile environment claims.

iii.    <u>Plaintiff's Retaliation Claim Fails</u>.

In order to establish a *prima facie* case of retaliation, a plaintiff must show that: (1) he engaged in activity protected by Title VII; (2) the exercise of his civil rights was

known to the defendant; (3) thereafter, the defendant took an employment action adverse to the plaintiff; and (4) there was a causal connection between the protected activity and the adverse employment action. *Allen v. Mich. Dep't of Corrections,* 165 F.3d 405, 412 (6th Cir.1999).

Here, Plaintiff asserts that the Ohio Defendants failed to provide his grades, conduct evaluations, and allow him to graduate as a result of his complaints of discriminatory treatment. However, as noted above, Accelerated Track residents do not "graduate" from UC. More importantly, Plaintiff completed the UC program and received his certificate of completion. Plaintiff cannot show that he suffered an adverse action, and, as a result, cannot show a causal connection between the protected activity and the adverse action.

Accordingly, the Ohio Defendants are entitled to judgment as a matter of law with respect to Plaintiff's retaliation claim.

iv.　　Plaintiff's Section 1981, 1983, 1985, and 1986 Claims against the Ohio Defendants are Barred by the Eleventh Amendment.

The Eleventh Amendment provides that:

The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens of Subjects of a Foreign State.

U.S. Const. amend. XI.

-17-

This immunity is far reaching.  It bars all suits, whether for injunctive, declaratory or monetary relief, against the state and its departments, *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 100-01 (1984), by citizens of another state, foreigners or its own citizens.  *Hans v. Louisiana,* 134 U.S. 1 (1890).  Thus, the State of Ohio is immune from suit unless it waives its sovereign immunity.  *Mixon v. Ohio*, 193 F.3d 389, 396-97 (6th Cir. 1999).[5]

UC is an arm of the State of Ohio and, therefore, entitled to Eleventh Amendment immunity.  *Dillion v. Univ. Hosp.*, 714 F.Supp. 1384 (S.D. Ohio 1989).  Accordingly, Plaintiff's section 1981, 1983, 1985, and 1986 claims against the Ohio Defendants in their official and/or individual capacities fail as a matter of law.  *See Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 571 (6th Cir. 2000) ("[i]t is well settled that a plaintiff is precluded from directly suing a State in federal court" under § 1981); *Whittington v. Milby*, 928 F.2d 188, 193-94 (6th Cir. 1991) ("Congress did not intend by the general language of Section 1983 to override the traditional sovereign immunity of the states"); *Moss v. Columbus Bd of Educ.*, 2001 WL 7681117 *9 (S.D. Ohio 2001) (Eleventh Amendment immunity extends to section 1985 claims); *Moss v. Columbus Bd of Educ.*, 98 Fed. Appx. 393 (6th Cir. 2004) (Eleventh Amendment immunity extends to section 1986 claims).

---

[5]  However, Plaintiffs may directly sue a State in federal court when a State consents to suit or if the case concerns a statute passed pursuant to Section 5 of the Fourteenth Amendment, such as Title VII claims.  *See Alden v. Maine*, 119 S.Ct. 2240, 2267 (1999); *Seminole Tribe of Florida v. Florida*, 116 S.Ct. 1114, 1125 (1996); *City of Boerne v. Flores*, 521 U.S. 507, 516-36 (1997).

Finally, it is not necessary to address the merits of Plaintiff's state law claims against the Ohio Defendants.

That is, under 28 U.S.C. § 1367(c)(3), the district court has the discretion to dismiss claims over which it has supplemental jurisdiction when it has dismissed all claims over which it has original jurisdiction. *Dobbs-Weinstein v. Vanderbilt Univ.,* 185 F.3d 542, 546 (6th Cir. 1999), *cert. denied,* 529 U.S. 1019 (2000). Moreover, the Sixth Circuit has recognized a general rule disfavoring a district court's exercise of pendent jurisdiction when federal question claims are dismissed before trial. *See Gaff v. Federal Deposit Ins. Corp.,* 814 F.2d 311, 319 (6th Cir. 1987) (*citing United Mine Workers v. Gibbs,* 383 U.S. 715 (1966)); *see also Wolotsky v. Huhn,* 960 F.2d 1331, 1338 (6th Cir. 1992) ("Where a district court exercises jurisdiction over state law claims solely by virtue of pendent jurisdiction and the federal claims are dismissed prior to trial, the state law claims should ordinarily be dismissed without reaching their merits.").

Accordingly, in light of the recommendation that the Defendants are entitled to summary judgment on Plaintiff's federal claims, it is further recommended that Plaintiff's state law claims should be dismissed without prejudice.

**B.** **The Texas Defendants' Motion for Summary Judgment**
**Should be Granted in Its Entirety.**

      i.      <u>Plaintiff's Title VI and Title VII Claims</u>
                    <u>Against the Texas Defendants Fail.</u>

With respect to Plaintiff's Title VI claim against the Texas Defendants, he has not produced any direct evidence of discrimination, and he has failed to establish a *prima facie* case of discrimination through indirect evidence because he cannot show that his performance met the Texas Defendant's expectations nor that he was treated differently than similarly simulated persons outside his protected class.  *See Brewer,* 407 F.Supp.2d at 972.

Plaintiff's unsupported conclusory allegations of discriminatory treatment by the Texas Defendants (*i.e.*, substandard housing, lack of transportation, racial slurs, early dismissal from program) are not sufficient to defeat a properly supported summary judgment motion.  *See McDonald,* 898 F.2d at 1162.

Additionally, Plaintiff has failed to produce any evidence that he was employed by the Texas Defendants, and, as a result, his claims against the Texas Defendants under Title VII fail as a matter of law.  *See* 42 U.S.C. § 2000e-2, § 2000e-3 (Title VII prohibits *employers* from engaging in unlawful employment practices against *employees*) (*emphasis added*).

Accordingly, Plaintiff's Title VI and Title VII claims against the Texas Defendants

should be dismissed.

      ii.    <u>Plaintiff's Section 1981, 1983, 1985, and 1986 Claims against the Texas
Defendants are Barred by the Eleventh Amendment.</u>

As noted above, the Texas Defendants, as an arm of the state of Texas, are entitled
to Eleventh Amendment immunity. Here, the State of Texas has not waived immunity by
consent, nor did Congress abrogate the Eleventh Amendment by enacting 42 U.S.C. §§
1983, 1985, or 1986. *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 66-71, (1989);
*Quern v. Jordan*, 440 U.S. 332, 341 (1979). Accordingly, the Texas Defendants are
entitled to judgment as a matter of law with respect to Plaintiff's section 1981, 1983,
1985, and 1986 claims.

      iii.    <u>Plaintiff's Claims Under the Fair Housing Act, 42 U.S.C. § 3601 et seq.,
Should Be Dismissed.</u>

The Fair Housing Act (the "FHA") prohibits all practices which make housing
unavailable to persons because of, *inter alia*, race. 42 U.S.C. § 3604. Discrimination
under the FHA may take one of two forms: intentional discrimination or discriminatory
effect. *Arthur v. City of Toledo*, 782 F.2d 565 (6th Cir. 1986).

Plaintiff asserts that he was given substandard housing because of his race.
However, he has failed to provide any evidence of intentional discrimination and/or
discriminatory effect. Plaintiff's self-serving affidavit and conclusory allegations,
without more, are insufficient to defeat the Texas Defendants' properly supported motion

-21-

for summary judgment.  Accordingly, the Texas Defendants are entitled to judgment with respect to Plaintiff's Fair Housing Act claims.

Furthermore, in light of the recommendation that the Texas Defendants are entitled to summary judgment on Plaintiff's federal claims against them, it is further recommended that Plaintiff's state law claims against the Texas Defendants should be dismissed without prejudice.  *See Dobbs-Weinstein,* 185 F.3d at 546.

### IT IS THEREFORE RECOMMENDED THAT:

1.  The Ohio Defendants' motion for summary judgment (doc. 97) should be **GRANTED**;

2.  The Texas Defendants' motion for summary judgment (doc. 98) should be **GRANTED**;

3.  All other pending motions should be **DENIED** as **MOOT**; and

4.  This case should be **CLOSED**.


Date:  March 2, 2006                              s/ Timothy S. Black

                                                  Timothy S. Black
                                                  United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

DARLINGTON AMADASU,

      Plaintiff,                          Case No. 1:01-cv-210

vs.                                 Dlott, J.
                                    Black, M.J.

JAMES R. DONOVAN, M.D., *et al.,*

      Defendants.

**NOTICE**


      Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **TEN (10) DAYS** of the filing date of this R&R.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **TEN (10) DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).