UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

06 MAY 12 PM 3: 13

| | |
|---|---|
| DARLINGTON AMADASU | Case No: **C - 1- 01 - 210** |
| Plaintiff | Judge: Dlott |
| -V- | |
| JAMES R. DONOVAN, MD, et al<br>Defendants | **PLAINTIFF'S MOTION TO REVIEW**<br>**1. PLAINTIFF'S CROSS-MOTION FOR SUMMARY**<br>**JUDGMENT; and**<br>**2. REPORT & RECOMMENDATION;**<br>**3. REQUEST FOR HEARING under 42 USC 2000e-5(f)**<br>**AMADASU FOURTH DECLARATION FILED** |

Plaintiff, Darlington Amadasu, objects to all of Magistrate Judge Black (Magistrate) Report and Recommendation (R&R) and moves this Court:

A. To review Plaintiff's Cross-motion for summary judgment (Docs.104, 105, 106,108, 121, 123,127;Ex.1-173) pursuant to Sixth Circuit in, <u>Westfield Ins. Co. v. Tech Dry, Inc.</u>, 336 F.3d 503, 506 (6th Cir.2003)

B. To review Magistrate Judge Black (Magistrate)'s Report and Recommendation (R&R) (Doc.138) pursuant to FRCP 72

C. For Evidentiary Hearing, under 42 USC 2000e-5(f) et seq.

## A. **Review of Plaintiff's Summary Judgment Cross-motion, Affidavits & Exhibits Warranted**

Plaintiff requests evaluation of his cross-motion, supporting affidavits and exhibits for summary judgment (Docs. 104, 105, 106, 108, 121, 123, 127, and Ex.1-173) because:

### 1.    **Magistrate Neglected, Failed, and Refused To Consider Plaintiff's Cross-Motion, Supporting Affidavits/Declarations & Exhibits for Summary Judgment**

Magistrate is obligated to consider plaintiff's summary judgment cross-motion and all the supporting affidavits/declarations and evidentiary documents (Docs. 104, 105, 106, 108, 121, 123, 127, and Ex.1-173) but Magistrate neglected, failed and or refused to mention that plaintiff's cross-motion, affidavits and evidentiary exhibits were before the court, let alone evaluate them separately and independent of defendants' summary judgment cross-motions as evidenced by Magistrate's statement on page 1 of the R&R (Doc.138):

"Now before the Court are Defendants' motions for summary judgment (docs.97 and 98)

1

and supporting affidavits, and parties' responsive memoranda (docs.104, 106, 108, 111)"

Thus, Magistrate failed to recognize that Plaintiff's cross-motion, supporting affidavits and evidentiary exhibits (docs.104, 105, 106, 108, 121, 123, 127 and Ex.1-173) for summary judgment were also before the court for decision. For example, the Magistrate failure to cite (docs.105, 121, 123, 127, and the Ex.1-173) shows that the Magistrate never evaluated plaintiff's cross-motion papers for summary judgment contrary to the Sixth Circuit case law—Id, Westfield Ins. Co. v. Tech Dry, *infra*

## 2.  Magistrate failed to adhere to summary judgment standard for deciding parties' cross-motions, supporting and opposing affidavits, and exhibits.

The Sixth Circuit, like other Circuits, mandates that each cross-motion for summary judgment should be examined separately on its own merits under the same standards consistent with this court precedents, See, e.g., Westfield Ins. Co. v. Tech Dry, Inc., 336 F.3d 503, 506 (6th Cir.2003) (Each cross-motion must be evaluated on its merits under the same standards).

Magistrate acknowledged that both defendants and plaintiff filed cross-motions for summary judgment (R&R, p.3) thus, those cross-motions must be considered separately consistent with the Sixth Circuit's precedent. It has been held that: "When parties file cross-motions for summary judgment, court must consider each motion separately, since each party, as movant, bears burden of establishing the nonexistence of genuine issues of material fact, as well as his/her entitlement to judgment as matter of law." In re Rehab Project, Inc., 238 B.R. 363 (N.D. Ohio 1999). When adverse parties each moves for summary judgment, the court will draw all permissible inferences in the light most favorable to each party when considering the motion of the parties. Feldstein v. Nash Community Health Services, Inc., 51 F.Sup.2d 673 (1999). A defendant may defensively move and plaintiff may offensively move for summary judgment, the court must evaluate the materials presented in support of and in opposition to the motions, and can then determine whether there is a need for trial. See, e.g., Wagner v. Allied Chemical Corp., 623 F. Supp. 1407 (D.Md.1985). In this present case, the Magistrate failed to adhere to the precedents by failing to evaluate separately plaintiff's cross-motion for summary judgment

## 3.  Magistrate's failure to consider plaintiff's cross-motion constitutes partiality and deprives plaintiff of his rights to due process and equal protection

Defendants may use summary judgment motion as defensive tactics pursuant to Rule 56(b), and equally, plaintiff may use summary judgment as offensive tactics pursuant to Rule 56(a) thus, summary judgment motion may be utilized offensively and defensively and no party has any exclusive

right to the use of summary judgment motion pursuant to Rule 56(a) and (b). The magistrate considering defendants' cross-motions without separately considering plaintiff's cross-motion constitutes Magistrate's partiality, bias against plaintiff and deprivation of plaintiff's right to equal protection and due process. It has been held, "An impartial judge is a basic due process requirement." U.S. v. Nathan, (3d Cir. N.J. 1999), 188 F.3d 190.

**B. To review Magistrate Judge Black (Magistrate)'s Report and Recommendation (R&R) (Doc.138)**

Plaintiff disagrees with all of the Magistrate's R&R and therefore, pursuant to Rule 72 of the Federal Rules of Civil Procedures (FRCP 72), plaintiff requests de novo review of all the parties' cross-motions, supporting and opposing affidavits/declarations and evidentiary exhibits; vis-à-vis Magistrate's R&R concerning:

    I.    The facts misrepresented and falsified by the defendants in their summary judgment motions, as well as misrepresented and or adopted by the Magistrate in the R&R

    II.    The standard for summary judgment utilized by the Magistrate is inconsistent with the Supreme Court's landmark, and Circuit Court's summary judgment standard

    III.    Existence of questions of fact (issues of material facts), and non-existence of questions of law precludes summary judgment in favor of defendants

    IV.    Defendants' Credibility issues & their lack of evidence preclude summary judgment.

    V.    Findings concerning direct evidence and circumstantial evidences of Plaintiff's Title VI and Title VII Claims against Ohio and Texas defendants who absolutely failed to meet their burden of production

    VI.    Plaintiff's Sections 1981, 1983, 1985, and 1986 Claims against Ohio and Texas defendants

    Each of these issues will be addressed in turn below:

**Magistrate Reported Biased and Incomplete Case Background and Procedural History**

Plaintiff's allegations do not arise out of his participation in a residency program at the University of Cincinnati (UC) as misrepresented by the magistrate but instead plaintiff's allegations arise from his participation in a residency program of The University Hospital, Inc. ("TUH"). See (doc.104, 1st Amadasu Dec. p.2, #7-8) and contemporaneously filed Fourth Amadasu Dec. with (Ex.174, 175, & 176). UC has no accredited residency programs whatsoever. Only TUH has.

I.

**DEFENDANTS' FALSIFIED FACTS THAT MAGISTRATE IMPROPERLY ADOPTED**

The "Facts" stated and adopted by the Magistrate on pages 1 through 6 of the R&R are absolutely falsified, fabricated or misrepresented. Plaintiff had disputed and refuted them in his prior papers (Docs. 104, 105, 106, 108, 121, 123, 127, and Ex. 1-173), nonetheless, plaintiff disputes and refutes those facts in seriatim in the contemporaneously filed Fourth Plaintiff's Declaration at # 3-27

**II.**

1.  **The Magistrate utilized standard for summary judgment that is inconsistent with the Supreme Court's landmark and the Circuit Courts' summary judgment standard**

In 1986 United States Supreme Court made landmark precedential trilogy of summary judgment standard, to wit; Anderson v. Liberty Lobby. Inc., 106 S.Ct.2505 (1986); Celotex Corp. v. Catrett, 106 S.Ct. 2548 (1986); and Matsushita Electric Industrial Co. v. Zenith Radio Corp., 106 S.Ct.1348 (1986), which constitute "Stare Decisis" the doctrine of which is binding on all nation courts, judges, attorneys and litigants.

In Anderson v. Liberty Lobby, Inc., 106 S.Ct.2505 (1986), the Supreme Court held:

> "...in ruling on summary judgment motions...it by no means authorizes trial on affidavits. Credibility determinations, the weighing of the evidence, and drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on motion for summary judgment or for a directed verdict. The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Id. at 2511-13

In Matsushita Electric Industrial Co. v. Zenith Radio Corp., 106 S.Ct. 1348 (1986).

> The district court ruled that the bulk of the plaintiffs' evidence was inadmissible and then granted summary judgment, finding that the admissible evidence did not raise a genuine issue of material fact as to the existence of a conspiracy. It would be unreasonable for the jury to infer a conspiracy because "evidence that bore directly on the alleged price-cutting conspiracy did not rebut the more plausible inference that [defendants] were cutting prices to compete in the American market and not to monopolize it." Id. at 1352.
> The third Circuit reversed. First, it found that much of the evidence deemed inadmissible was in fact admissible. Second, looking at the enlarged record, it found that there was direct and circumstantial evidence from which a jury could infer the existence of a conspiracy. The court of appeals did not consider whether it was more plausible to conclude that the defendant's price-cutting was independent and non-conspiratorial. Id. at 1353-54.
> The court must view the evidence in the light most favorable to the non-moving party. Id.

In Celotex Corp. v. Catrett, 106 S.Ct. 2548 (1986), the Supreme Court began review and analysis of grant of summary judgment with Rule 56(c) rather than Rule 56(e) and ruled:

> Under Rule 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is

4

no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id.* at 2552.

Accordingly, the movant "bears the initial responsibility of identifying the parts of the record that demonstrate the absence of issues of material fact. *Id.* at 2553. However, this does not mean that the movant must "support its motion with affidavits or other similar materials negating the opponent's claim." *Id.* Rule 56 contains no such "express or implied requirement." *Id.* Rather, Rules 56(a) and (b) provide that a motion may be made "with or without supporting affidavits." *Id.* quoting, Rule 56 (emphasis added by the Court).

Accordingly, the three cases roughly correspond to the three analytical stages of a motion for summary judgment. First, what are the components of a proper motion for summary judgment; i.e., when is a motion "properly made?" That question is addressed in <u>Celotex Corp. v. Catrett</u>, 106 S.Ct. 2548 (1986). Second, assuming the motion is properly made, what is the opposing party's burden; i.e., what evidence must an opposing party adduce? That question is partly answered by <u>Celotex</u> and partly by <u>Anderson v. Liberty Lobby, Inc.</u>, 106 S.Ct. 2505 (1986). Third, what is the standard for granting summary judgment? Both <u>Anderson</u> and <u>Matsushita Electric Industrial Co. v. Zenith Radio Corp.</u> 106 S.Ct. 1348 (1986), address the question. See also Sixth Circuit case laws below.

**Utility of Summary Judgment Motion**: The summary judgment procedure has utility in nearly every case, both as an <u>offensive</u> and a <u>defensive</u> tactic pursuant to Rule 56(a) and (b).

**(1)    Magistrate failed to adhere to the U.S. Supreme Court's Trilogy of Summary Judgment**

The court is obligated to review the pleadings, depositions, answers to interrogatories, admissions and affidavits with exhibits on file to find, not to determine, disputed material facts as mandated by FRCP 56(c) and case laws. See, e.g., Hilton <u>Brooks, III, MD v. United States of America</u>, 2004 WL 2008189 (6th Cir.2004); <u>Farhat v. Jopke</u>, 370 F.3d 580, 587 (6th Cir.2004); <u>Meyers, et al. v. Columbia/HCA Healthcare Corp., et al</u>, 342 F.3d 461(6th Cir.2003); and <u>Honnover Ins. Co. v. American Eng'g Co.</u>, 33 F.3d 727, 730 (6th Cir.1994).

In <u>Anderson, Id.</u>, supra, at 2511-13, the Supreme Court commands that the courts and the judges considering the motion for summary judgment must find, not determine, factual issues. In the present case, the Magistrate determined the parties' genuinely disputed material facts stated in (R&R, p.4-9) in violation of the Supreme Court's and Sixth Circuit's Standard or mandate.

**Obligation of the Court at Summary Judgment Level**: The court has obligation to define, not decide, those issues. <u>Caravan Mobile Home Sales, Inc. v. Lehman Bros. Kuhn Loeb, Inc.</u>, 769 F.2d 561, 564 (9th Cir. 1985); <u>Pfeil v. Rogers</u>, 757 F.2d 850, 857 (7th Cir. 1985), cert. denied, 106 S. Ct. 1513 (1986). Here, Magistrate improperly determined the issues, and believed defendants' fictions.

**(2) Magistrate improperly usurped the duty of the jury in determining disputed material facts:**

Magistrate usurped the duty of the jury, of credibility determinations, evidence weighing and deciding disputed material facts in violation of summary judgment standard-Stare Decisis of the U.S. Supreme Court in the said trilogy of case laws, e.g., Anderson, *Id.* at 2511(it is clear enough from our recent cases that at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is an issue for trial).

The Sixth Circuit held that in order not to usurp the right of a party to a trial by jury, the court is precluded from weighing the evidence, and must construe all evidence in a manner most favorable to the nonmovant (plaintiff). Honnover Ins. Co. v. American Eng'g Co., 33 F.3d 727, 730 (6th Cir.1994)

In this present case, the Magistrate improperly usurped the duty of the jury, *inter alia*, by deciding disputed material facts stated on pages 4-9 of the R&R.

**(3) Magistrate failed to view the evidence and inferences in the light most favorable to plaintiff**

Every reasonable and favorable inference should be given to plaintiff's version or allegations of discriminatory intent by the court consistent with this court's precedent. See, e.g., Anderson, *Id.*; Canitia v. Yellow Freight System, Inc., 894 F.2d 196, 199 (6th Cir.1990) (every reasonable and favorable inference should be given to plaintiff's version or allegations of discriminatory intent); The court must view the evidence in the light most favorable to the non-moving party [Plaintiff]. Meyers, et al. v. Columbia/HCA Healthcare Corp., et al, 342 F.3d 461(6th Cir.2003) (citing: *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). In this present case, the Magistrate failed to adhere to these precedents by failing to give reasonable and favorable inference to plaintiff's version and to view the evidence (Docs.104 with Ex.1-130; 105, 106, 108, 111,121, 127 with corroborating Ex.131-148, 169-170) in the light most favorable to plaintiff; and by "impermissibly weighed the evidence on summary judgment," U.S. Corrections v. ODIR, 73 Ohio St.3d 214(1995) Thus, such action renders the R&R voidable.

**III**

**Existence of questions of fact (issues of material facts) precludes summary judgment in favor of defendants**

Defendants' motions and plaintiff's cross-motion for summary judgment, and the R&R show that the issues of ultimate material fact can be isolated and examined free from evidentiary disputes and present clear and genuine material factual disputes, thus, their resolutions are not a matter of substantive law but of questions of fact inappropriate for summary judgment but is for jury trial.

6

**1.    There Exist Genuinely Disputed (Issues of) Material Facts For Disposition By The Jury**

Amadasu presented specific material facts consistent with <u>Celotex</u> that "a plaintiff's declaration is an acceptable method for presenting material facts known to the affiant. *Id.* at 2553-54.

The dispute must be over a material fact. In <u>Anderson</u>, 106 S. Ct. at 2510, the Supreme Court ruled that a fact is material for purposes of a summary judgment motion only if it must be resolved to decide the motion. Ohio Court of Appeals reversed the judgment of the trial court, finding that the existence of genuine issues of material fact precluded summary disposition of the case. <u>U.S. Corrections v. ODIR</u>, 73 Ohio St.3d 214 (1995). Accordingly, in this present case, the existence of genuine issues of material fact precludes summary judgment for the defendants consistent with Rule 56(c) and precedents.

**(a)    Magistrate acknowledged the existence of genuinely disputed material fact (questions of fact) from parties' submission without citing any evidentiary supports adduced by parties:**

On pages 4 to 6 of the R&R (doc.138), Magistrate reported the defendants' fabricated conclusory allegations purporting their versions of facts solely from defendants' Declarations or Affidavits without citing any shred or scintilla of supporting evidentiary materials adduced by the defendants who adduced no evidentiary materials in support of their conclusory allegations, thus the Magistrate relied solely on defendants' affidavits/declarations in granting them summary judgment.

On pages 7 to 9 of the R&R (doc.138), Magistrate partially reported plaintiff's versions of the material facts without citing any of the uncontradicted preponderance of specific evidentiary materials adduced by plaintiff in support of his versions of the material facts. (docs.104, 1st Amadasu Dec., Ex.1-130). Accordingly, the defendants' versions and plaintiff's version of the material facts demonstrate substantially or wholly disputed versions of the material facts thereby created genuine issues of material facts precluding summary judgment.

Some of the genuinely disputed material facts arising from parties' summary judgment motions submissions and the Magistrate's reported parties' versions of material facts in the R&R are set forth in the contemporaneously filed **Fourth Amadasu's declaration at # 28 (a- ii).**

**(b)    Magistrate improperly failed to accept plaintiff's version of the material facts with evidence**

The court must view the evidence in the light most favorable to the non-moving party [Plaintiff]. Id. Meyers, et al. v. Columbia/HCA Healthcare Corp., et al, 342 F.3d 461(6th Cir.2003) (citing: *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

It has been held: "As with every summary judgment motion, this court accepts non-movant's version of the disputed facts. What follows, then, is a version of the material facts culled from the parties' submissions, with any differences being resolved in non-movant's [plaintiff's] favor. Siwik v. Marshall Field & Co., 945 F.Supp.1158, 70 EPD 44,647 (1996).

## (c)    Magistrate impermissibly relied solely on fabricated conclusory allegations in defendants' affidavits unsupported by any evidentiary materials in disobedience of U.S. Supreme Court

The courts must not grant summary judgment solely on **mere affidavits** without supporting evidentiary material. Anderson v. Liberty Lobby, Inc., 106 S.Ct.2505 (1986) ("...in ruling on summary judgment motions...it by no means authorizes trial on **affidavits**. The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Id. at 2511-13; "It is only where witnesses are present and subject to cross-examination that their credibility and the weight to be given their testimony can be appraised. Trial by **affidavit** is no substitute for trial by jury, which so long has been the hallmark of "even-handed justice." Poller v. Columbia Broadcasting System. Inc., 368 U.S. 464, 473 (1962).

## 1.    Defendants Declarations contain inconsistencies, contradictions, lies, fraud and misrepresentation

The inconsistencies, self-contradictions, lies, fraud and misrepresentations in defendants' declarations without evidentiary support (docs.97 & 98) are described in prior plaintiff's papers together with motion to strike them. Needless to re-write them herein thus, plaintiff respectfully refers the court to (doc.108, Memo.p.29-33, 2nd Amadasu Supp. Dec. attached thereto)

## 2.    Conclusory allegations laced Magistrate's reported defendants' version of material facts

Allegation is the assertion, declaration, or statement of a party of what he can prove. *Bouvier's Law Dictionary, Baldwin's Students Edition (1946) p.66.* Allegation is a statement setting out a fact that one side expects to prove in a lawsuit. An alleged statement of facts is not considered a proved statement. Accordingly, *inter alia*, the following statements in magistrate's reported version of defendants' material facts are legally **conclusory allegations** and or **hearsays** that preclude summary judgment and are yet to be proved with credible probative evidence (R&R p.4-6):

(i) Plaintiff was accepted into UC's OMRP...and placed on the program's accelerated track: [*No evidence and proof adduced*]; (ii) Resident on the accelerated track are ineligible for the

8

position of chief resident: [*No evidence, policy, procedures and proof adduced*]; (iii)
...Donovan...began to receive complaints of improper sexual conduct by plaintiff: [No
specific facts, evidence & proof adduced]; (iv) Donovan received a complaint from two
female UC employees who said that plaintiff had sexually harassed them, another UC
employee complained that she believed plaintiff was sending her sexually harassing emails, a
female patient stated he contacted her at home to ask her to go out on a date: [*Hearsays;
speculations, subjective beliefs, no specific facts, evidence and proof adduced*]; (v)
plaintiff...was released early because of inappropriate behavior:[hearsays, no specifics,
evidence and proof]; (vi) UC held plaintiff's transcript after he completed the program
because of unpaid fees:[*No specifics, no evidence and proof*]; (vii) Plaintiff received a
graduate scholarship...plaintiff failed to become an Ohio resident, and, as result, UC charged
Plaintiff a non-resident fee:[*No specific facts, evidence and proofs*]; etc.

Defendants admitted and the Magistrate acknowledged that defendants had, and made
"numerous allegations" without specific facts, evidence and proof. (R&R, p.5; Donovan Dec.# 7).

Employer's conclusory allegation...was insufficient to sustain employer's burden on its motion
for summary judgment. Luttjohann v. Goodyear Tire and Rubber Co., 938 F.Supp.694 (D.Kan.1996).
Bald assertions and conclusory statements did not satisfy requirements for motion for summary
judgment. Pitman v. Aran., 935 F.Supp.637 (D.Md.1996). A court therefore cannot rely on
inadmissible hearsay when deciding a motion for summary judgment. Mitchell v. Toledo Hosp., 964
F.2d 577, 584-85 (6th Cir.1992). Here, Magistrate relied solely on conclusory allegations and hearsays.

A court need not give credence to "mere allegations" nor draw inferences where they are
implausible or not supported by specific facts and evidence. See Anderson v. Liberty Lobby, Inc., 477
U.S. at 249, The purpose of summary judgment is to isolate, and then terminate defenses that are
factually unsupported. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24, 106 S.Ct. 2548, 2552-53 (1986).

A party plaintiff cross-moving for summary judgment...forces defendants to produce evidence
on any issues for which that party bears the burden of production at trial, regardless of whether
plaintiff supports the motion with affidavits. Wing v. Anchor Media Ltd of Texas, 59 Ohio St.3d 108,
507 (1991)(Ohio Supreme Court adopting the *Celotex* case). There must be evidence upon which a
jury could reasonably find for defendants' favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-

52 (1986); In this present case, defendants' summary judgment motions are composed of mere memoranda of law and self-serving bad-faith affidavits laced with conclusory allegations and hearsays as set forth above. Specific facts and any evidence do not support their conclusory allegations.

The briefs of parties, memoranda of law, oral arguments, unsworn, undated statements of parties and witnesses are not properly considered evidence under Rule 56. See e.g. Orson, Inc. v. Miramax Film Corp., 79 F.3d 1358, 1372 (3d Cir.1996); Hickmam v. Ford Motor Co., 52 Ohio App.2d 327, 370 NE2d 494 (1977). Ordinarily, statements of counsel in a memorandum of law are not competent to support or oppose a motion for summary judgment, *Id.* Orson. Thus, defendants must produce evidence to support and prove their "numerous allegations." But they have failed to produce evidence

### (d)    Magistrate impermissibly failed to construe slightest doubt in favor of plaintiff
### Thus, Positive Slightest Doubt Test Precluding Summary Judgment for defendants

In Chubbs v. City of New York, 324 F. Supp. 1183 (E.D.N.Y. 1971), the court stated:

> "But, in this Circuit at least, District Courts may not rely to any substantial extent on summary judgment predicated upon testimonial proof to avoid a full trial...Since courts are composed of mere mortals, they can decide matters only on the basis of probability, never on certainty. The **'slightest doubt' test,** if it is to be taken seriously, means that summary judgment is almost never to be used. Id. at 1189.

The standard for granting summary judgment adopted by courts has been to deny summary judgment if the existence of material facts was uncertain or if there was the **"slightest doubt"** as to the facts or a "scintilla of evidence" supporting the opponents [defendants'] position. See. e.g.. Devex Corp. v. Houdaille Indus., Inc. 382 F.2d 17 (7th Cir. 1967); Dawn v. Sterling Drugs. Inc. 319 F. Supp. 358 (N.D. Ca. 1970). See Wright & Miller Vol. 10 at 589 & n.37.

Defendants have admitted and the Magistrate acknowledged that defendants have "numerous allegations" (R&R, p.5, Donovan Dec.# 7). Also plaintiff has set forth above additional defendants' numerous allegations. The combined defendants' numerous allegations without supporting specific facts and evidence create **multiple doubts**. Other examples of **doubts** in defendants' actions and statements, *inter alia*, UC declared: "Amadasu was not employed and did not have a contract with UC" (doc.97 Donovan Dec. p.2) but regarded plaintiff as its personnel, public employee, and new-hire by placing plaintiff on its payroll, health insurance plan and public employee retirement system of Ohio (Doc.127 3rd Amadasu Dec. Ex.133, 133/a, 136-148); UC admitted that plaintiff completed his program in June 2000 but UC billed plaintiff for non-existent courses for winter 2001 (doc.97 Donovan Dec.p.2, Ex. D). On one hand, UC certified to TUH, the Sponsor of OMRP, that plaintiff has

completed both the Clinical Phase and Academic Phase with MPH degree since May 1999 and was R-3/Practicum Phase/PGY-3 resident in OMRP and Medical Staff member of TUH, but, on the other hand, UC regarded plaintiff as its environmental health resident, occupational health resident and student, etc. Slightest doubt precludes summary judgment and must be construed in favor of plaintiff.

IV

## Credibility Issues, Inconsistencies and Self-Contradictions Preclude Summary Judgment:

Plaintiff pointed out and presented specific facts with corroborating evidence demonstrating the inaccuracies, lies, materially false statements, doubts, inconsistencies, misrepresentations and misstatements in defendants' affidavits in support of their motions thus creating credibility issue precluding summary judgment. (Doc.108 Memo. p.23-33, 2nd Amadasu Supp. Dec. p.1-6); (doc.97 Donovan Dec. at 3-4, contradicts 3rd Donovan Dec. at 2). Plaintiff respectfully refers the court thereto.

It has been held: "But a full trial is often unnecessary if the material facts are undisputed and witness credibility is not an issue. See Nunez v. Superior Oil Co., 572 F.2d 1119 (5th Cir. 1978). The converse is equally true, if the material facts are disputed and credibility is an issue, full trial by jury is mandatory. In this action, material facts are disputed and the credibility of the defendants is an issue thus a jury trial is warranted. Credibility determinations, the weighing of the evidence, and drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on motion for summary judgment. Anderson v. Liberty Lobby, Inc., 106 S.Ct.2505, 2511-13 (1986).

V

**Ohio and Texas Defendants' Motions for Summary Judgment Should by Denied in Their Entirety; And Magistrate's Report & Recommendation Should Be Set Aside in Its Entirety**

1.    **Plaintiff's Title VI and Title VII Claims against Ohio and Texas defendants should sustain**

Title VI, Section 601, 42 U.S.C. 2000d provide in pertinent part:

> No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

Title VII, 42 USC 2000e-2 (a) provide in pertinent part:

> It shall be an unlawful employment practice for an employer (1) to fail or refuse to hire or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an

employee, because of such individual's race, color, religion, sex, or national origin.

Title VII, 42 USC 2000e-2(d) provide in pertinent part:

> It shall be an unlawful employment practice for an employer,…controlling apprenticeship or other training or training, including on-the-job training programs to discriminate against any individual because of his race, color,          religion, sex, or national origin…in any program established to provide apprenticeship or other training or training.

U.S. Supreme Court in United States v. Ron Pair Enterprises, Inc., 489 U.S. 235, 240 (1989) ruled: "Our first step in interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context in which that language is used, and the broader context of the statute as a whole. Estate of Cowart v. Nicklos Drilling Co., 505 US 469, 477 (1992).

In this case, consideration of those factors and the material facts and evidence in the record would lead the court to conclude that defendants violated the elements of the provisions of Title VI and Title VII regarding (1) prohibited discrimination against and disparate treatment of plaintiff in the hiring, promotion, compensations, terms, conditions, privileges of employment and training; (2) limiting or segregating plaintiff that deprived him of or adversely affected opportunities and status; (3) excluding from participation in, denying the benefits of, or subjecting plaintiff to discrimination, disparate treatment and retaliation under defendants' programs or activities receiving Federal financial assistance because of plaintiff's race, color, national origin and engaging in protected activities.

### Samples of Sixth Circuit Summary Standard

A district court may grant a motion for summary judgment if it finds that the "pleadings, depositions, answers to interrogatories, and admissions on the file together with the affidavits, if any, show that there is no genuine issue as to any material fact." FRCP 56(c). [The converse is equally true and mandatory]. The moving party bears the initial burden of specifying the basis for its motion and of identifying that portion of the record, which demonstrates the absence of a genuine issue of material fact. Meyers, et al. v. Columbia/HCA Healthcare Corp., et al, 341 F.3d 461 (6th Cir.2003) (citing Celotex Corp. v. Catrett, 477 U.S.317, 322 (1986). Also see Thaddeus-X v. Blatter, 175 F.3d 378, 385 (6th Cir.1999).

The Sixth Circuit will not affirm the grant of summary judgment to movant [defendants] where there was legally insufficient evidentiary basis for a reasonable jury to find for the movant. See, e.g., Gray v. Toshiba Am. Consumer Prods., Inc., 263 F.3d 595, 598 (6th Cir.1999). Thus, in this action there is legally absolute insufficient evidence to grant defendants summary judgment.

When defendants' and plaintiff cross-motions for summary judgment are reviewed and analyzed consistent with the Supreme Court 1986 Trilogy of Summary Judgment Standards articulated in Anderson, Celotex, and Matsushita Elec. Indus. Co., *Id. supra*, as well as the above stated Circuit Courts' standard, the defendants' summary judgment motions should be denied in their entirety, the Magistrate's R&R should be rejected in its entirety, and the unevaluated plaintiff's summary judgment motion should be granted or alternatively, the case should proceed to trial by the jury.

## a. Plaintiff, and defendants have introduced direct evidences of discrimination and disparate treatment under Title VI and Title VII

Magistrate's finding that plaintiff has failed to introduce any direct evidence of discrimination is frivolous because it is against the weight of plaintiff's specific material facts and evidence in the record. Also the Magistrate, in effect, was impermissibly weighing the evidence in violation of the Supreme Court Standard. A plaintiff "may establish discrimination either by introducing direct evidence of discrimination or by proving inferential and circumstantial evidence that would support an inference of discrimination." Kline v. Tennessee Valley Authority, 128 F.3d 337, 348 (6th Cir.1997)

## Plaintiff and defendants introduced direct evidences in the record(docs.104-106, 108), inter alia:

### i. Direct evidence of discrimination/disparate treatment in compensation:

**Undisputed Facts**: Ohio defendants paid plaintiff stipend of $29,000.00 per annum instead of his entitled $42,000.00 paid to similarly situated residents of non-protected class in PGY-3 level of the residency programs. **Undisputed Evidence**: 10/15/98 benefits letter and 01/25/99 employment letter, (doc.104, Ex.3, 4); Resident/Clinical Fellows Compensation & Benefits document (doc.104, Ex.7); Graduate Medical Education Agreement ("GME Contract") (doc.104, Ex.6); Ohio defendants' admissions/concessions/declarations that they denied plaintiff's his right to make GME Contract. (Doc.97, Donovan Dec. p.2, #3). Court considers concessions in a party's brief as direct evidence, See, e.g., Orson, Inc. v. Miramax Film Corp., 79 F.3d 1358, 1372 (3rd Cir.1996).

### ii. Direct evidence of discrimination/disparate treatment in other benefits:

**Undisputed Facts**: Ohio defendants denied plaintiff his entitled benefits, *inter alia* full stipend, dental, disability and life insurances, full retirement, vacation and sick time, tuition reimbursement, **Undisputed Evidence**: 10/15/98 benefits letter and 01/25/99 employment letter, (doc.104, Ex.3, 4); Resident/Clinical Fellows Compensation & Benefits document; GME-Contract (doc.104, Ex.6, 7); (doc.97, Donovan Dec. p.2, #3).

**Undisputed Facts**: Texas defendants denied plaintiff his entitled and promised benefits, *inter alia*

13

full free transportation; safe healthful and fully furnished modern housing; full educational, instructional and practicum activities. **Undisputed Evidence**: (doc.104, Ex.104-107, 122);

### iii. Direct evidence of discrimination/disparate treatment in terms, conditions and privileges:

**Undisputed Facts**: Ohio defendants, *inter alia*, denied plaintiff his entitled mandatory Graduate Medical Education Agreement ("GME Contract"); tools of training, timely rendition of grades and evaluations of work; graduation; clinical conferences and training travel expenses funds; full benefits; due process; billing plaintiff for residency training that is free and federally funded; release of transcripts, validation of attendance, references needed to obtain board certification, employment funded. Similarly situated residents of non-protected class were treated favorably than plaintiff.

**Undisputed Evidence**: *Inter alia*, 10/15/98 benefits letter and 01/25/99 employment letter,

(doc.104, Ex.3, 4); Resident/Clinical Fellows Compensation & Benefits document (doc.104, Ex.7), Graduate Medical Education Agreement ("GME Contract") [doc.104 Ex.6 p.1-12); Excerpts of Essentials of Accredited Residencies in Graduate Medical Education of ACGME published in Graduate Medical Education Directory ("Green Book") of American Medical Association ("AMA") [doc.104 Ex.97-101; doc.127 Ex.169, 170]; (doc.104 Ex.36-42); (doc.97, Donovan Dec. p.4, #11 & #12)

**Undisputed Facts**: Texas defendants, *inter alia*, excluded plaintiff from federally funded program, abruptly shortened the training term from 4 to 3 weeks without notice, denied educational and practicum activities and transportation; denied due process; denied equal fair housing;

**Undisputed Evidence**: (doc.104, Ex.104-107, 122); (doc.106, 2nd Amadasu Depo. p.50-77).

### iv. Direct evidence of discrimination/disparate treatment in promotion to Chief Resident:

**Undisputed facts**: Ohio defendants denied plaintiff promotion to Chief Resident position.

**Disputed facts & Pretext**: Ohio defendants alleged that because they purportedly placed plaintiff on accelerated track (without plaintiff's notice and consent) plaintiff was not qualified to be promoted. Plaintiff disputed and refuted their claims by asserting that plaintiff was placed on Practicum Phase, never ever placed on accelerated track. **Undisputed Evidence**: Plaintiff adduced direct evidence of Ohio defendants' absolutely placing plaintiff on Practicum Phase (4th Amadasu Dec. Ex.174-276; doc.104 Ex.1-5, 9). But Ohio defendants adduced no evidence of placing plaintiff on accelerated track and with privity of plaintiff. Thus, their reason is absolutely false and pretextual

The above plaintiff's partial list of direct documentary evidence, as well as defendants' concessions, acknowledgments, and declarations constitute direct evidence of discrimination and disparate treatment in hire, employment, promotion, training, compensations, benefits, terms and conditions; as well as exclusion from, denial of benefits, privileges of and denial of participation in

14

federally assisted programs pursuant to impermissible practices provisions under Title VII, 42 USC 2000e-2(a) and (d); and Title VI, 42 USC 2000d respectively. It has been held that Court considers concessions in a party's brief as evidence, See, e.g., Orson, Inc. v. Miramax Film Corp., 79 F.3d 1358, 1372 (3rd Cir.1996). For purposes of civil rights statute prohibiting racial discrimination in making and enforcing contract, implied contract arises between student (resident) and university upon student's (resident) enrollment, and implicit terms of such contract is that university will act in good faith toward student (resident) and student (resident) will fulfill university's academic (residency) requirements and comply with its ethical procedural, and other standards, Tripp v. Long Island University, 48 F.Supp.2d 220 (EDNY 1999).

## b. **Plaintiff has established a prima facie case of race, color, national origin discrimination and disparate treatment in employment & training under Title VI and Title VII**

Plaintiff needs only to show either direct evidence or circumstantial evidence, not both, of discrimination/disparate treatment. However, although plaintiff has provided direct evidence of, he also provided circumstantial evidence by fully establishing, with full analysis, *prima facie case* of race, color, and national origin discrimination and disparate treatment in hire, compensations, benefits, employment, promotion, terms, conditions, training, and federally assisted programs or activities by using shifting burden framework in McDonnell Douglas Corp. v Green, 411 U.S. 792, 802 (1973); Texas Dept of Comm. Affairs v. Burdine, 450 US 248, 252-53, 101 S.Ct. 1089 (1981); Simon v. City of Youngstown, 73 F.3d 68, 70 (6th Cir. 1996). Plaintiff established *prima facie* case as follows:

> He: (1) is a member of the protected class under Title VI and Title VII; (2) was qualified for the job and training that he held during the time in question; (3) suffered an adverse employment and training actions; and (4) that he was treated differently than similarly-situated individuals who were not members of her protected class, or others similarly situated were more favorably treated. Texas Dep 't of Community Affairs v. Burdine, 450 U.S. 248, 252-53 (1981); Rutherford v. Harris County, Tex., 197 F.3d 173 (5th Cir.1999); McDonnell Douglas Corp., 411 U.S. at 802-03; Talley v. Bravo Pitino Restaurant, Ltd, 61 F.3d 1241, 1246 (6th Cir.1995)

Establishing these elements creates a presumption that the employer unlawfully discriminated against the employee or trainee. Texas Dept of Comm. Affairs v. Burdine, 450 US 248, 252-53, 101 S.Ct. 1089 (1981). "Disparate treatment" in violation of Title VII is deliberate discrimination in terms or conditions of employment (and training) on account of race, national origin, or gender." Munoz v. Orr, 200 F.3d 291(5th Cir.2000). **See [Doc.108, Memo. p.4-13; Doc.105, Memo. p.38-41, 70-72; Deft. Answers to Interrogatories and Admissions; Doc.106 Amadasu 1st & 2nd Depositions]**

## **Magistrate failed to adhere to Standard for Analysis and Determination of *Prima Facie* Case**

District court applied wrong standard in evaluating employer's proffered non-discriminatory reasons for failing to hire, promote and graduate applicant, i.e., (plaintiff was not promoted Chief Resident because he was placed on accelerated track, and his transcripts withheld because he owed tuition fees), when court based its decision in favor of employer solely on (employer's subjective assertion and self-serving affidavits), without taking into account…the credibility of employer. See, e.g., Chapman v. Al Transport, 180 F.3d 1244 (11th Cir.1999). Here, Magistrate bypassed the standard.

The Sixth Circuit in Wexler v. White's Fine Furniture, 317 F.3d 564 (6th Cir.2003) held, "A court may not consider the employer's alleged nondiscriminatory reason for taking an adverse employment action when analyzing the prima facie case. To do so would bypass the burden-shifting analysis and deprive the plaintiff of the opportunity to show that the nondiscriminatory reason was in actuality a pretext designed to mask discrimination. (quoting Cline v. Catholic Diocese of Toledo, 206 F.3d 651, 660-61 (6th Cir. 2000) ("[W] hen assessing whether a plaintiff has met her employer's legitimate expectations at the prima facie stage of a termination case, a court must examine **plaintiff's evidence** independent of the nondiscriminatory reason 'produced' by the defense as its reason for terminating plaintiff.")." Here, Magistrate failed to examine plaintiff's evidence.

### Defendants fail to overcome burden of production rebuttal to plaintiff's prima facie case claim

If plaintiff establishes a prima facie case, a defendant must rebut plaintiff's claim by producing **evidence** of a legitimate nondiscriminatory reason for its actions—*id.*, McDonnell Douglas, 411 US at 803; Burdine, 450 U.S. at 253-54. Because Defendants absolutely failed to meet this burden of production of evidence, the burden does not shift back to plaintiff to demonstrate that defendants' stated reason is merely a pretext for discrimination. Accordingly, "The Sixth Circuit will not affirm the grant of summary judgment to movant [defendants] where there was legally insufficient evidentiary basis for a reasonable jury to find for the movant. See, e.g., Gray v. Toshiba Am. Consumer Prods., Inc., 263 F.3d 595, 598 (6th Cir.1999). Here, defendants undisputedly failed to produce evidence.

Scope of Title VII's prohibition against employment discrimination is not limited to economic or tangible discrimination. Hafford v. Seidner, 183 F.3d 506 (6th Cir.1999). Adverse employment action may include instances of discrimination and or disparate treatment in hiring, employment, promotion, training, apprenticeships, compensation, benefits, privileges, terms, or conditions thereof. 42 USC 2000e et seq. Phipps v. New York State Dept. of Labor, 53 F.Supp.2d 551(N.D.N.Y. 1999).

### Plaintiff suffers race and national origin-based disparate treatment in compensation, stipend and benefits package:

Plaintiff establishes prima facie case that: (1) he belongs to a racial minority/national origin, (2) he was paid less stipend and denied benefits than a Caucasian resident in the same position/level, (3) he was qualified as the Caucasian resident, (4) at the time he was paid less stipend and denied benefits, comparable residents of different race received higher stipend and all benefits than what plaintiff received. See, e.g., Malone v. K-Mart Corp., 51 F.Supp.2d 1287 (M.D.Ala.1999).

Ohio defendants have failed to proffer legitimate non-discriminating reason for paying plaintiff less stipend and paying more stipend and benefits to similarly situated residents of non-protected class.

## **Direct evidence of plaintiff not placed on accelerated track, and not owing UC any debt, make UC's reasons false & pretexts for not promoting plaintiff and for withholding his transcripts**

**Disputed facts**: UC alleged that plaintiff's tuition debt is the reason for withholding transcripts; and alleged placing plaintiff on accelerated track is the reason for not promoting him as chief resident but plaintiff disputed and rebutted with evidence their reasons as false and pretext for discrimination

**Undisputed evidence**: Ohio defendants produced direct evidence (doc.97 Donovan Dec.p.2, Ex. D) that proves the debt was fabricated for winter quarter 2001 when plaintiff was no more their resident; and direct evidence, (4th Amadasu Dec. Ex.174-176; doc.104 Ex.72, 87, 90) that proves that plaintiff was not placed on accelerated track; On 3/29/05 Donovan declared that plaintiff was an Accelerated Track student and resident (doc.97 Donovan Dec. at 3-4) but on 6/13/05 in self-contradiction and changing his position, Donovan affirmatively admitted that plaintiff was a Practicum Phase Resident (3rd Donovan Dec. at 2). These inconsistencies, self-contradictions and vacillations creating doubts and incredibility must be viewed in favor of plaintiff and must thereby preclude summary judgment.

**Plaintiff suffers race and national origin-based discrimination and disparate treatment** in promotion, fringe benefits, paid vacations, paid sick days, terms, conditions and privileges; disability, dental and life insurances; negative or withholding grades and evaluations, withholding graduation, transcript, attendance validation and exclusion from federally funded programs and activities

Plaintiff suffers race and national origin-based discrimination and disparate treatment in housing, transportation and segregation from safe, healthful, and full furnished housing receiving federal funds because of his race, national origin. For plaintiff's Title VI material facts and *prima facie case,* see (doc.105 Memo. p.8-36 and 37-41)

Ohio and Texas defendants have failed to proffer legitimate non-discriminating reason(s) for subjecting plaintiff to those discriminations and disparate treatments than similarly situated residents of non-protected class.

In Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970), reversing the grant of summary judgment

…

to defendant, the Supreme Court's opinion was a construction of the procedural burden of a party moving for summary judgment. According to the Court, summary judgment had to be reversed because the defendant "failed to carry its burden of showing the absence of any genuine issue of material fact." Id. at 153. Rule 56 requires the movant to show with evidence that there are no genuine issues of material fact. The Court stated that summary judgment could not be granted on "this" record: "As the moving party, [defendant) had the burden of showing the absence of a genuine issue as to any material fact, and for these purposes the material it lodged must be viewed in the light most favorable to the opposing party (Plaintiff). [Defendant] here did not carry its burden. Therefore, wrote the Court: Given these unexplained gaps in the materials submitted by (defendant], we conclude that respondent failed to fulfill its initial burden of demonstrating what is a critical aspect of this case, because the defendant failed to properly support its motion for summary judgment by failing to foreclose all issues of material fact; "Where the evidentiary matter in support of the motion does not establish the absence of a genuine issue, summary judgment must be denied even if no opposing evidentiary matter is presented." Id. at 160, quoting Advisory Committee Note to Amended Rule 56(e).

The problem with Rule 56, of course, is that although the procedure seems well suited to ferreting out factually unfounded claims and defenses, it may not be used to deprive a litigant of a trial if there are genuine issues of material fact.

In Whitaker v. Coleman, 115 F.2d 305, 307 (5th Cir. 1940), the court held:

> Summary judgment procedure is not a catchpenny contrivance to take unwary litigants into its toils and deprive them of a trial, it is a liberal measure, liberally designed for **arriving at the truth.** Its purpose is not to cut litigants off from their right of trial by jury if they really have evidence which they will offer at trial, it is carefully to test this out, in advance of trial by inquiring and determining whether such evidence exists.

**c.    Plaintiff's harassment and Hostile Work Environment Claim Should Sustain Because:**

Plaintiff establishes race, sex and national origin based prima facie case of harassment and hostile work environment. (doc.108, Memo. p.13-20). Plaintiff set forth material facts and produced evidence indicative of sexual and racial harassment and hostility. (doc.104 1st Amadasu Dec. #11-12, 15-25, 36-53, 66-73, Ex.10-14, 17-19, 26-27, 30-43, 69-94. Ohio defendants have failed to proffer legitimate non-discriminatory reason for their actions. Under the totality of circumstances, defendants harassed

**d.    Plaintiff's Retaliation Claim Against Ohio and Texas Defendants Should Sustain Because:**

Plaintiff establishes prima facie case of retaliation Allen v. Mich. Dep't of Corrections, 165 F.3d

405, 412 (6th Cir. 1999). See (doc.108 Memo. p.20-23). A retaliation claim is subject to the same sequence and burden of proof used in other cases involving discrimination. Anders v. National R.R. Passenger Corp., 898 F.2d 1127, 1134(6th Cir. 1990). **Undisputed facts**: Plaintiff engaged in protected activity known to defendants. See Plaintiff's 12/20/99 & 4/12/00 written complaints (doc.104 Ex.69, 117]. Thereafter, in retaliation, defendants took employment and/or training adverse actions, *inter alia*: Texas defendants excluded plaintiff from 4-week term training, evicted plaintiff from housing; Ohio defendants denied plaintiff benefits, hire, promotion, grades, evaluations, transcript and verification of attendance to obtain board certification, licensure, and job; denied graduation; negatively altered the terms and conditions, fabricated undocumented sexual harassment complaint, solicited harassing debt collection activities for nonexistent debt, fabricated tuition debt for unspecified courses and clinical rotations, denied full stipend, etc. **Uncontradicted Evidence**: Plaintiff was not Accelerated Track, but was Practicum Phase Resident (Ex.274-276; 3rd Donovan Dec. at 2). Practicum Phase residents do graduate (doc.104 Ex.97; compensation and benefits reduced and or denied (doc.104 Ex.3, 5, 6-7); grades and evaluations denied (doc.104 Ex.30-41); for 6-years and to date, Defendants' admissions that they are still ongoing denying plaintiff transcript, reference and attendance validation needed to obtain employment, license and board certification.

The adverse actions closely link and follow plaintiff's 12/20/99 & 4/12/00 written complaints.

e.    **Defendants failed to meet their burden of specific facts and evidence production:**

Like defendants in <u>Adickes</u> and <u>Celotex</u>, both Ohio and Texas defendants failed to carry their burden of production of specific facts and evidence showing, *inter alia,* full stipend and benefits payments to plaintiff; rendition of grades and evaluations, being Accelerated Track resident; "inappropriate behavior"; owing debt to UC. In <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 153 (1970) (summary judgment had to be reversed because the <u>defendant</u> "failed to carry its burden of showing the absence of any genuine issue of material fact."). "Findings of fact are conclusive if supported by substantial evidence" <u>Wilson Air Center v. FAA</u>, 372 F.3d 807 (6th Cir.2003). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion—Id. Here, Magistrate's findings and conclusions are not supported by any record evidence, thus, Court "must consider 'the record in its entirety…, including the body of evidence opposed to the [Magistrate's] view," *Id.*, citing *Am. Textile Mfrs. Inst. V. Donovan*, 452 U.S. 490, 487-88 (1981), when reviewing the record for substantial evidence. "The mere existence of a scintilla of evidence in support of the [defendants'] position will be insufficient; there must be evidence on which the jury could reasonably find for the [defendants]—Id. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. at 252.

**f.**    **Plaintiff's direct evidence standard also serves as circumstantial evidence standard**

Given the U.S. Supreme Court's decision in Reeves v. Sanderson Plumbing Prod., Inc., 530 U.S. 133 (2000), it is clear that the requirement that Plaintiff prove "pretext plus" is not necessary under a shifting burden test, and thus the bright line between direct evidence and circumstantial evidence has been partially dissolved. Evidence constituting the "direct" evidence standard can also be used to satisfy a shifting burden standard, and vice versa. Magistrate admitted into evidence plaintiff's Exhibits 1-173 but failed to evaluate and cite them

VI.

**Plaintiff's Section 1981, 1983, 1985, and 1986 Claims against Ohio and Texas Defendants, particularly States' Officials individually, are not barred by the Eleventh Amendment**

Plaintiff's Section 1981, 1983, 1985, and 1986 claims against Ohio and Texas defendants, particularly states' officials in their individual capacities, not barred by the Eleventh Amendment.

**a.**    **11th Amendment Bars No Suit Against State Officials In Official & Individual Capacity:**

The U.S. Supreme Court rulings in Tindal v. Wesley, 167 U.S. 204 (1897) adopted the rule of United States v. Lee, 106 U.S. 196 (1883) a tort suit against federal officials, to permit a tort action against state officials to recover real property held by them and claimed by the State and to obtain damages for the period of withholding. The immunity of a state from suit has long been held not to extend to actions against state officials for damages arising out of willful and negligent disregard of federal and state laws. Johnson v. Lankford, 245 U.S. 541 (1918); Martin v. Lankford, 245 U.S. 547 (1918). Thus, officials of UC and UTHCSA have no immunity.

In Hopkins v. Clemson Agric. College, 221 U.S. 636, 31 S. Ct. 654 (1911), where the College was held liable for acts of trespass upon private property, and it was held by Justice Lamar, speaking for the court, that immunity from suit was a "high attribute of sovereignty-a prerogative of the State itself, which cannot be availed of by public agents when sued for their torts. The Eleventh Amendment was not intended to afford them [public agents] freedom from liability in any case where, under color of their office, they have injured one of the state's citizens." The reach of the rule is evident in Scheuer v. Rhodes, 416 U.S. 233 (1974) in which the Supreme Court held that plaintiffs were not barred by Eleventh Amendment or other immunity doctrines from suing the governor (of Ohio) and other officials of a state alleging that they deprived plaintiffs of federal rights under color of state law and seeking damages, when it was clear that plaintiffs were seeking to impose individual and personal liability on the officials. There was no **"executive immunity"** from suit, the Court held; rather, **the immunity of state officials is qualified** and varies according to the scope of discretion and responsibilities of the particular office and the circumstances existing at the time the challenged action

was taken. Accordingly, here, contrary to Magistrate's conclusion, the Ohio and Texas States' actors have no Eleventh Amendment immunity but may have conditional immunity.

These suits against state actors or officials are typically brought pursuant to 42 U.S.C. 1983 and typically involve all the decisions respecting liability thereunder as the Sixth Circuit in Leaman v. Ohio Dept. of Mental Retardation & Dev. Disabilities, 825 F2d 946 (6th Cir.1987), cert denied, 487 US 1204 (1988) held that Ohio Revised Code 2743.02(A)(1) gives plaintiffs an option not otherwise available to them—the right to sue the state and state officials in their official capacities for damages. This statute put all claimants who wish to take the advantage of the state's voluntary waiver of sovereign immunity on notice that by preceding in the court of claims the claimants themselves "waive any cognate claims they might have against the states employees, *Id*, at 951. A plaintiff who chooses not to exercise this option may sue under 42 USC 1983 either in federal district or in the state court of common pleas—Id. Thus, plaintiff chooses to sue in federal court rather than in state court. Defendants acted in bad faith, arbitrary, capricious, wanton, reckless manner, manifestly outside the scope of their employment or office. Plaintiff asserted claims against the Ohio and Texas States' officials in their individual capacity

Plaintiff claims that defendants violated certain of plaintiff's federal constitutional and statutory rights. Enforcement of these constitutional and statutory rights is possible by Section 1983. Thomas v. Shipka, 818 F.2d 496, 499, 503 (6th Cir.1987). Defendants acknowledge this mandate (doc.28 p.7)

The Court in dealing with questions of governmental immunity from suit has traditionally treated interchangeably precedents dealing with state immunity and those dealing with federal governmental immunity. As Justice Holmes explained, the doctrine is based "on logical and practical grounds that there can be no legal right as against the authority that makes the law on which the right depends," Kawananakoa v. Polyblank, 205 U.S. 349, 353 (1907). Of course, when a state is sued in federal court pursuant to federal law, the Federal Government, not the defendant State, is "the authority that makes the law" creating the right of action. See Seminole Tribe of Florida v. Florida, 116 S. Ct. 1114, 1170-71 (1996). Viewing the Amendment and its radiations into Article III in this way provides a consistent explanation of the consent to suit as a waiver, United States v. Lee, 106 U.S. 196, 210-14 (1882); Belknap v. Schild, 161 U.S. 10, 18 (1896); Hopkins v. Clemson Agricultural College, 221 U.S. 636, 642-43, 645 (1911).

In this case, by raising defenses, the UC and UTHCSA, in effect and by implication, have waived their purported immunity because they are actively participating in their own defense and therefore barred by the principles of Estoppels to raise their purported immunity to suit. See, Clark v. Bernard, 108 U.S. 436 (1883). Some Courts in some cases have found a waiver by implication.

"The Eleventh Amendment and the principle of state sovereignty which it embodies...are necessarily limited, by the enforcement provisions of Sec. 5 of the Fourteenth Amendment." Pennhurst State School & Hosp. v. Halderman, 465 U.S.89, 99 (1984); Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 238 (1985).

**b. Educational Resource Center (ERC) and Area Health Education Center (AHEC) Where Discriminations Took Place Are Not Agency or Department of The States of Ohio and Texas**

The Department of Occupational Medicine ("DOM") of The University Hospital, Inc. ("TUH") and Department of Environmental Health ("DEH") of the University of Cincinnati ("UC") together form one of the fourteen (14) or so Educational and Research Resource Centers ("ERC") owned by federal government and funded through Federal Agency, National Institute of Occupational Safety and Health ("NIOSH"). UC and TUH contracted with federal government and NIOSH to maintain and administer the ERC's programs, therefore, it is foreseeable that the UC knows or should expect to be sued in federal court. (doc.127 Ex.132). The University of Texas Health Science Center, San Antonio ("UTHSCSA") contracted with federal government to administer the federal Area Health Education Center ("AHEC") that is federally funded. Therefore, it is foreseeable that the UTHSCSA knows or should expect to be sued in federal court. (doc.104 Ex.104). UC and UTHSCSA do not own or fund the ERC and AHEC. ERC and AHEC are not arms or instrumentalities of the States of Ohio and Texas. Plaintiff was beneficiary. The disparate treatment of plaintiff took place at the ERC and AHEC.

**c.    Defendants Waived Failed to Prove That UC and UTHSCSA Are Agencies of The States**

The Sixth Circuit held: "It is not enough to conclusorily assert the Eleventh Amendment immunity defense without being fully developed by their briefs or in the record. The Court should not have considered this issue of Eleventh Amendment defense that has not been fully developed by Defendants in the record. See McPherson v. Kelsey, 125 F.3d 989, 995 (6th Cir. 1997) (quotations omitted) (" Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation are deemed waived."). The Supreme Court has now made it clear that Courts are not required to raise the issue of Eleventh Amendment immunity if the state (or defendants have) has not done so. See Wis. Dep't of Corrs. V. Schacht, 524 U.S. 381, 389 (1998). Many Circuits have determined that, "like any other such defense, that which is premised by the Eleventh Amendment must be proved by the party that asserts it and would benefit from its acceptance," ITSI TV Products, Inc. v. Agric. Ass'ns, 3 F.3d 1289, 1291 (9th Cir. 1993). See also Skelton v. Camp, 234 F.3d 292, 297 (5th Cir. 2000) (ruling that a defendant seeking Eleventh Amendment immunity had the burden to show

it was an arm of the state); Christy v. Pa. Turnpike Comm'n, 54 F.3d 1140, 1144 (3rd Cir. 1995) ("We conclude that the party asserting Eleventh Amendment immunity...bears the burden of proving its applicability."); Baxter v. Vigo County Sch. Corp., 26 F.3d 728, 734 n.5 (7th Cir. 1994) (same). Courts find the reasoning of these cases persuasive and hold that the entity asserting Eleventh Amendment immunity has the burden to show that it is entitled to immunity, *i.e.,* that it is arm of the state. UC failed to demonstrate that UC is an arm of, and DEH and ERC are departments of Ohio State. UTHSCSA failed to demonstrate that it is an arm of, and AHEC is department of Texas State. The ERC and ERC are in Common-law Agency Relationship with UC; and AHEC is in Common-law Agency Relationship with UTHSCSA where merely administers the ERC. Plaintiff did not bring this action against the States. Rather, he sued UC and UTHSCSA and their various officials that administer the ERC and AHEC.

Defendants have pointed to nothing in the record, and this Court have not found anything in the record that would establish that UC, DEH, ERC, UTHSCSA and AHEC are arms of the state entitled to the protections of the Eleventh Amendment. For example, there is nothing in the record to show that defendants made prima facie case defense of Eleventh Amendment consistent with this and other Circuits' precedents, that is, "How state law defines the entity or the sub-entity where the discriminations took place; what degree of control the state maintains over the entity/sub-entity; where the funds for the entity/sub-entity are derived; who is responsible for judgment against the entity/sub-entity." Brotherton v. Cleveland, 173 F.3d 552, 560 (6th Cir. 1999) (citation and quotations omitted); "Whether entity can sue and be sued in its own name; and whether entity has right to hold and use property" U.S. v. Mack, 48 F.Supp.2d 708 (S.D.Tex.1999). Therefore, this Court should hold that the defendants have waived the defense of Eleventh Amendment immunity—id. The sub-entities, to wit, ERC and AHEC where the adverse employment and training actions took place are not arms of the State.

In Ex parte Young, 209 U.S. 123 (1908) the Supreme Court announced an exception to Eleventh Amendment immunity for claims for injunctive relief against individual state officials in their official capacities. "In general, public officials are entitled to qualified immunity if: (a) their conduct does not violate clearly established constitutional rights, or (b) it was objectively reasonable for them to believe their acts did not violate those rights." Provost v. City of Newburgh, (2nd Cir. 2001) 262 F.3d 146. Here, their conduct violated clearly established plaintiff's constitutional and statutory rights.

The individual defendants concertedly acted under color of state law not only for their employers but also for themselves to deprive plaintiff of rights secured under the constitution and laws of the United States thus warranting suing them in their individual and personal capacities. "Federal

23

civil rights statute create a cause of action sounding essentially in tort on behalf of any person deprived of a constitutional right by someone acting under color of state law," Smith v. City of Dayton, 68 F.Supp.2d 11(S.D. Ohio 1999).    "Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages…" Scott v. Coughlin, 78 F. Supp. 2d 299 (S.D.N.Y. 2000).

**d.    Claims Against Texas Defendants Under the FHA, 42 USC 3601 et seq. Should Sustain:**

Plaintiff has established a prima facie case of race, color, national origin discrimination and disparate treatment in housing under FHA, 42 USC 3601 et seq. Selden Apartments v. United States Dept. of HUD, 785 F.2d 152 (6th Cir.1986). Plaintiff has set forth specific facts with evidence (doc.104 1st Amadasu Dec.#27, 32-35, Ex.112-113; doc.105 p.52), but Defendants failed to proffer legitimate non-discriminatory reason for their actions nor carry their burden of production thus, precluding summary judgment. (doc.108 p.33-36, 2nd Amadasu Dec.#20, p.6).

**WHEREFORE, Plaintiff prays the court that:**

1.    Ohio Defendants' jurisdictionally defective summary judgment motion without factual and evidentiary supports (doc.97) should be **DENIED** in its entirety

2.    Texas Defendants' jurisdictionally defective summary judgment motion without factual and evidentiary supports (doc.98) should be **DENIED** in its entirety

3.    The Magistrate's jurisdictionally defective partisan Report and Recommendation without record factual and evidentiary supports (doc.138) should be **REJECTED** in its entirety

**4.**    Plaintiff's jurisdictionally sound summary judgment cross-motion with substantial record factual and evidentiary support s (docs.104, 105, 108, 121, 123, 127; Ex.1-176) should be **EXAMINED** comporting with due process, and be **GRANTED**

**5.**    This case should remain open and proceed to evidentiary hearing and jury trial.

Respectfully submitted,

Darlington Amadasu
Plaintiff Pro se

**CERTIFICATE OF SERVICE**
I hereby certify that true copies of the foregoing were served on Justin D. Flamm by delivery to his receptionist and on Christopher Coppola by USPS mail on 05/12/06

24