UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

05 MAY 12 PM 3: 12

| | |
|---|---|
| DARLINGTON AMADASU<br>Plaintiff | Case No: C - 1- 01 - 210<br>Black/Dlott |
| -V-<br><br>JAMES R. DONOVAN, MD, et al<br>Defendants | FOURTH DECLARATION OF AMADASU IN<br>  SUPPORT PLAINTIFF MOTION TO REVIEW<br>1. PLAINTIFF'S CROSS-MOTION FOR SUMMARY<br>   JUDGMENT; and<br>2. MAGIST. REPORT & RECOMMENDATION;<br>   & EXHIBITS ANNEXED HERETO<br>3. EVIDENTIARY HEARING, 42 USC 2000e-5(f) |

I, Darlington Amadasu, lay pro se plaintiff, solemnly declare that I have personal knowledge of the facts and circumstances stated below and competence to testify to them, which are true, accurate to the best of my knowledge and belief and under the penalty of perjury pursuant to 28 U.S.C.A. 1746

1. Pursuant to FRCP 56(e) and 72, I submit this fourth declaration

2. I incorporate by reference my earlier memoranda, declarations and all the exhibits already filed in support of my cross-motion for summary judgment and in opposition to defendants' motion for summary judgment (Docs.104, 105, 106, 108, 121, 123, 127 and Ex.1-173) including First Amadasu's declaration (doc.104 with Ex.1-130), Second Amadasu's (supplemental) declaration (doc.108); and Third Amadasu's declaration (doc.127, with Ex.131-172), all of the which the Magistrate failed to evaluate. This instant declaration is the Fourth Amadasu Declaration with annexed (Exhibits 174, 175, 176). As will be shown below, Ex.174-176 together with (Doc.104 Ex.1-5, 8-9) show that plaintiff applied for and was placed on ACGME-accredited one-year Practicum Phase ("PP"), a.k.a. Resident Level-3 ("R3"), a.k.a. Post Graduate Year Three (PGY-3) of Occupational Medicine Residency Program ("OMRP") of the University Hospital, Inc. ("TUH"), and not on ACGME-unaccredited 2-yr "Academic Accelerated Track" of University of Cincinnati ("UC").

3. Magistrate's report that "Plaintiff was accepted into UC's Occupational Medicine Residency Program ("OMRP") and placed on the Program's Accelerated Track" (R&R, p.4) is absolutely false and lacking evidentiary support in the record. The supportable truth is that Plaintiff was never accepted into non-existent UC's Occupational Medicine Residency Program ("OMRP") in 1999 and was never placed on the Program's Accelerated

1

Track ("AT") as falsified by Donovan and improperly adopted by the Magistrate (R&R, p.4; Donovan Dec. #3); Also see (Doc.104, 1st Amadasu Dec. #7-9, Ex.1-5, 8-9) because, *inter alia*, (a) UC had/has no OMRP; (b) Accreditation Council for Graduate Medical Education ("ACGME"), American Board of Preventive (Occupational) Medicine ("ABPM") and State Medical Board of Ohio ("SMBO") never accredited OMRP for UC, rather, they accredit it for TUH, a.k.a. UCMC. Hereto annexed (Ex.176); (c) The purported UC's "Four academic tracks" and "Accelerated Track" are absolutely never ACGME-accredited structure and components of OMRP; (d) Plaintiff was accepted absolutely into Resident Level-3, a.k.a. Practicum Phase, or Post Graduate Year-3 (PGY-3) [interchangeably referred to as, or a.k.a. "Practicum Phase," or "Resident Level-3," or "PGY-3"] of the TUH's OMRP in 1999; (e) Donovan absolutely placed plaintiff on "Practicum Phase," a.k.a. "Resident Level-3," or "PGY-3"] of the OMRP in 1999 when Donovan affirmatively certified to TUH that he had placed Plaintiff on Practicum Phase or Resident Level-3 of TUH's OMRP. See hereto annexed Ex.174-176) and (doc.104, 1st Amadasu Dec. p.2-3, #8-9, #63-65; Ex.1-5, 8-9, 97-100; doc.108 3rd Amadasu Dec.p, 1-6).

4. It is absolutely false and lacking evidentiary support in the record the Magistrate's report, that "the OMRP has four academic tracks. (Donovan Dec.#2). The fourth track, known as the 'Accelerated Track,' can be completed in two years. *Id.* Individual already possessing a Master of Public Health or an equivalent degree are placed on the Accelerated Track. *Id.* Accelerated Track residents do not graduate from UC; rather, they receive a certificate of completion from the program." *Id.*, (R&R, p.4 footnote). Plaintiff disputes this by producing rebuttal evidence (doc.104, Ex.97-100) showing that ACGME and ABPM accredited OMRP three Phases, i.e., Clinical Phase, Academic Phase, & Practicum Phase.

5. The absolute truth is that: (i) The ACGME, ABPM and American Board of Medical Specialties (ABMS) structure and accredit OMRP into three required Phases, to wit, (a) one-year of Clinical Phase, a.k.a. Resident Level-1 or PGY-1; (b) one-year of Academic Phase, a.k.a. Resident Level-2 or PGY-2; and (c) one-year of Practicum Phase, a.k.a. Resident Level-3 or PGY-3. See (docs.104, 1st Amadasu Dec. Ex.97, 98, 99, 100); and hereto-annexed (Ex.174, 175,176); (ii) Individuals, like the Plaintiff, who already completed Clinical Phase and Academic Phase with possession of a Master of Public Health (MPH) or an equivalent degree are placed on the Practicum Phase, a.k.a. Resident

2

Level-3 or PGY-3. *Id.* (iii) Practicum Phase residents always graduate from TUH; and they receive a diploma of completion from TUH; (Doc.127 Ex.170 p.349)

In contradiction to Donovan's material false statement of placing Plaintiff on the "Academic/Accelerated Track," in 1999, Donovan certified in writing to TUH that because Plaintiff had satisfied the prerequisite accredited Clinical Phase/Resident Level-1/PGY-1, and the Academic Phase/Resident Level-2/PGY-2 with MPH degree, he placed Plaintiff on "Practicum Phase/Resident Level-3/PGY-3 of OMRP, and on the House Staff membership of TUH. (Cf. Donovan Dec. #3 with Doc.104, 1st Amadasu Dec., p.2, #5-9, Ex.1-5, 9,98-100; doc.108 Memo. p.24-25, 29-33, 3rd Amadasu Dec.p.1-6; and hereto-annexed Ex.174, 175, 176). Donovan admitted placing plaintiff on Practicum Phase (3rd Donovan Dec. #2)

6. Annexed Documents identified as Exhibits 174 and 175 are true copies of TUH's Form for Nomination for Membership on the Resident/Fellow Staff and Resident Placement of TUH, on which Donovan certified to TUH placement of plaintiff on TUH's OMRP. On Ex.174, Donovan certified to TUH that he had placed plaintiff: (a) on Resident Level Three ("R3") a.k.a. Practicum Phase ("PP") or Post Graduate Year Three ("PGY-3") in Occupational Medicine Residency Program ("OMRP"); (b) on UC Payroll on R3 / PGY-3 without stating the compensation amount for R3 / PGY-3. On Ex.175 (page 2 of Ex.174), Donovan certified to TUH that: (c) On 09/21/93, Plaintiff had completed Resident Level One ("R1") a.k.a. Clinical Phase ("CP") or PGY-1; (d) Plaintiff had completed on 05/31/99 Resident Level Two ("R2"), a.k.a. Academic Phase ("AP") or PGY-2. By Donovan's Signature on Ex.174-175, Donovan certified to TUH that Plaintiff had completed R1/CP/PGY-1 and R2/AP/PGY-2 as of 05/31/99, accordingly, Donovan placed plaintiff on R3/PP/PGY-3 of OMRP at the TUH's Department of Occupational Medicine ("TUHDOM") starting from 07/01/99 to end on 06/30/00. (Ex.174-176) and (doc.104 Ex.8)

7. Donovan never certified on Ex. 174-175 that Donovan had placed Plaintiff on the "Fourth Academic Track", known as "Accelerated Track" as Donovan had fabricated (Donovan Dec. at 3; and R&R at p.4). Thus, Donovan never placed Plaintiff on "Accelerated Track"

8. UC and TUH are separate distinct legal entities or institutions. UC, per se, had/has no accredited residency programs whatsoever. UC was/is a mere participating independent contractor affiliate of TUH, the Institution, which the State Medical Board of Ohio

3

("SMBO") and ACGME accredited to operate Occupational Medicine Residency Program (OMRP) See (doc.104 Ex.97-101; doc.105 p.3-5; doc.108, 3rd Amadasu Dec. p.1-6; doc.127 Ex.134) and hereto annexed Ex 176. TUH, <u>not</u> UC, sponsors and has authority, control and responsibility over OMRP. ACGME mandates that the Sponsoring Institution (TUH) retain responsibility for OMRP even when resident education occurs in other Participating Institutions (UC). Only TUH has ACGME-accredited residency programs including OMRP. (doc.104 Ex.97 p.13) "

9. UC's Department of Environmental Health (UCDEH) is separate and distinct from TUH's Department of Occupational Medicine (TUHDOM) where Donovan had placed Plaintiff on R3/PP/PGY-3. (Annexed Ex.174-175); (doc.104 Ex.8). TUHDOM offers Practicum Phase in ACGME-accredited OMRP whereas UCDEH offers non-residency programs in environmental health sciences. There is no ACGME-accredited Environmental Health Residency Program ("EHRP") anywhere in the United States of America. Donovan placed plaintiff on R3/PP/PGY-3 of in OMRP of TUH where Plaintiff was a bona fide member of House/Medical Staff with a title of Occupational Medicine Resident ("OMR"). See (doc.104 Ex.1-5; 8-9 and annexed Ex.174-176) and, paradoxically, Donovan fraudulently placed plaintiff on UC's Payroll and gave plaintiff a various fraudulent Titles of "Environmental Health Resident" ("HER") and "Occupational Health Resident." ("OHR") See (doc.127, Ex.133, 133/a, 135-148). Thus, Donovan segregated plaintiff from TUH.

10. Proctor & Gamble Co. ("P&G") and NIOSH co-opted with UC the "Accelerated Track. ("AT"). Placement of resident and non-resident on UC's purported Academic "Accelerated Track" ("AT") is not automatic, arbitrary, capricious and unilateral. Only resident and non-resident who have written-expressed interest to be placed on the AT are placed on it. Such interested resident(s) must make application specifically for AT to the Residency Director (Donovan) before being placed on it. The AT-Resident must be assigned to either P&G or NIOSH. (doc.104, Ex.28 p.1 or 6/24). Thus, placement on AT must be documented pursuant to ACGME requirements. AT is not accredited by ACGME and SMBO. UC has no shred of evidence of plaintiff's application for and placement on AT

11. UC and Donovan failed their burden of production of evidentiary documentations showing plaintiff's application to UC for AT, actual placement of Plaintiff on AT, and assignment of

4

plaintiff to P&G or NIOSH, and notice of placement to plaintiff. Thus, Donovan made material false statement of placing plaintiff on AT of which plaintiff was never in privity with UC, nor consented to it. Plaintiff knew for the first time in or about March 2005 during this litigation that Donovan purportedly placed plaintiff on "Accelerated Track". Had plaintiff knew about it during the residency period he would have objected or rejected it.

12. Accelerated Track ("AT") providing combined academic and clinical training can be completed in two years (Donovan Dec. at 2; R&R p.4; doc.104 Ex.28 p.6/24), whereas Practicum Phase can be completed in one year and was actually offered plaintiff to be completed in one year consistent with ACGME/ABPM standard. (doc.104 Ex.1, 2, 4, 97-100; doc.127 Ex.133, 135, 170 p.349) and annexed (Ex.174-176). Plaintiff did not need combined academic and clinical training because he already had academic training.

13. Under academic affiliation contract with TUH, UCDEH serves as borrowed academic site for providing didactic academic courses leading to and award Master of Science degree (MS) to TUHDOM's Occupational Medicine Residents (OMR) on Academic Phase, a.k.a. Resident Level-2 or PGY-2 entering the Academic Phase of OMRP without MPH degree

14. ACGME requirements (policy and procedures) regarding Resident qualifications "Entering the practicum phase only" of OMRP provide that "The entering resident must have completed an ACGME-accredited clinical year and have an MPH or other appropriate postgraduate degree." (doc.97; doc.127 Ex.170 p.349). Donovan had certified that plaintiff had satisfied those requirements (Annexed Ex.174-175) Thus, there was no rational basis for placing plaintiff on AT except for intentional and purposeful discrimination, and there is absolute doubt that UC actually placed plaintiff on AT because of lack of documentation.

15. It is absolutely false and lacks evidence the Magistrate's Report, that "Residents on the Accelerated Track are ineligible for the position (Chief Resident)...because he (plaintiff) was on the Accelerated Track, he (plaintiff) was ineligible and not selected" (R&R, p.4; Donovan Dec.#4-5). The absolute truth is that Plaintiff was never placed on the Accelerated Track because Donovan certified to TUH that he had placed plaintiff on Practicum Phase/Resident Level-3/PGY-3. Further, Dr Robert M. Gabel, the Caucasian Resident in OMRP appointed into position of Chief Resident by Donovan was on

5

Academic/Accelerated Track when he was appointed Chief Resident. Additionally, see (doc.104, 1st Amadasu Dec. p.16, # 55-57). Ex.174-175. Nonetheless, Donovan failed to produce evidence of policy and procedure barring AT resident as Chief Resident.

16. It is absolutely false and lacks evidence the Magistrate's Report that: "Shortly after Plaintiff began the OMRP, Dr James Donovan, the Director of the Residency Program in Occupational and Environmental Medicine, began to receive complaints of improper sexual conduct by Plaintiff (R&R, p.4-5)". The absolute truth is that nobody ever complained to Donovan or any other person of any improper sexual conduct by Plaintiff. Plaintiff had set forth facts disputing and rebutting Donovan's fabricated untrue story (Doc.104, 1st Amadasu Dec. p.11-16, #36-53, Ex.10-15). Donovan never discussed the allegations of sexual harassment with plaintiff, rather, Donovan told plaintiff that defendant Jefferson-Gaynor with whom Donovan had fabricated sexual harassment was dismissed for lying and papering plaintiff's file. When Plaintiff broke-off with Jefferson-Gaynor the mutually consented relationship that she had initiated, she retaliated by fabricating sexual harassment and papering plaintiff's file with fictitious emails. (doc.104 Ex.10-15). Jefferson-Gaynor continually sexually harassed plaintiff with improper sexual emails (doc.104 Ex.12-15). Donovan failed to produce evidence that plaintiff was the author and sender of the emails (doc.104 Ex.10) with which Jefferson-Gaynor papered plaintiff's file. Defendant Jefferson-Gaynor was one and the same "two female UC employees" and "another UC employee" who in October, and December 1999, purportedly complained of sexual harassment and sexually harassing emails, which she had fabricated with Donovan. Around February 2000, Donovan directed plaintiff to phone a female patient whom Donovan, thereafter, phoned and asked her to fabricate story against Plaintiff. (doc.104 Ex.15)

17. The sexual harassment policies and procedures of TUH and UC and the requirements of ACGME mandate full and complete and archival of the signed written complaint (s) of any complainant, notice of the complaint be given to the person against whom the complaint is made, opportunity for signed written response of the person against whom complaint was made, investigation report on the complaint, a hearing before impartial fact-finders, outcome of the hearing, the action taken and the disposition the complaint(s) consistent with the due process mandated by TUH, UC and ACGME. (doc.104, Amadasu Dec. p.12, # 38-40, Ex.6, 20-24,). Donovan with his co-conspirators, acting as the fabricator,

6

complainant, police, grand jury, prosecutor, judge, and executioner overstepped his authority, duty and responsibility, and violated the policies. Donovan admitted that he and UC have no evidentiary documentation of the purported sexual harassment complaint and that any such allegation was HOAX. (doc.104 1st Amadasu Dec.#36-53, Ex.20-24, 26-27; doc.105 p.20-27; doc.108 p.29-33). UC and Donovan have failed their burden of production of evidentiary documentation of their fraudulent allegations of sexual harassment.

18. For example, UC's Sexual Harassment Policy and Procedures (doc.104, Ex.20-21) provide in pertinent part:

> The University of Cincinnati will take immediate steps to investigate and, as appropriate, to resolve complaint of sexual harassment. All complaints will be seriously regarded and handled promptly utilizing the University Discrimination Complaint Process. Records of all complaints will be maintained in the Office of Affirmative Action. *Id.* at Ex.20 & 22.

> Charges shall be forwarded in writing to the house officer, and a hearing held before committee appointed by the Associate Chief of Staff for Graduate Medical Education. Such hearing shall be held within twenty-one (21 days) of the date of the written charges. *Id.* at Ex.21.

TUH's Sexual Harassment Policy & Procedures provide in pertinent part:

> Reports of sexual harassment from a physician, nurse, or other hospital employees, or patient who observes or who has been victim of sexual harassment shall be made in writing and signed by the person making the complaint. The complaint shall include a factual description of the incident, including quotations of any offending language used, etc. *Id.* at Ex.23

19. It is absolutely false and lacks evidence the Magistrate's Report that: " Plaintiff, however, did not complete the entire rotation and was released early because of "inappropriate behavior." (Miller Aff. at 2; Perales Aff. at 2.)" [R&R, p.5]. UTHSCSA defendants absolutely failed to set forth a factual description of the incident, including the victim, the date, the location, time, witness, as well as evidentiary documentation of their fabricated "inappropriate behavior." The absolute truth is that nobody ever complained of any "inappropriate behavior" by Plaintiff. Plaintiff never engaged in any inappropriate behavior and nobody ever gave him notice thereof. Plaintiff had set forth facts disputing and rebuttal to UTHSCSA defendants' fabricated untrue "inappropriate behavior" (Doc.104, 1st Amadasu Dec., p.8-11, Ex.117). Texas defendants admitted that they have no shred of any evidence of inappropriate behavior by plaintiff. Miller has no personal knowledge of what transpired at Laredo when she was at San Antonio about 200 miles from Laredo. Miller and Perales fraudulently concocted non-existent inappropriate behavior as pretext for discrimination. The absolute truth is that Texas defendants excluded Plaintiff from the

training program because of his complaint of discrimination and disparate treatment in the training program (doc.104 Ex.112-113, 117).

20. It is absolutely false and exaggerated the Magistrate's Report that: "After Plaintiff returned from Texas, and despite being dismissed from <u>two</u> clinical rotations and <u>numerous allegations</u> of allegations of sexual harassment, UC permitted Plaintiff to continue in the OMRP." (R&R, p.5). The absolute truth is that Plaintiff was never dismissed from two clinical rotations and there were no numerous allegations of sexual harassment because there are no record evidentiary documentations and proofs of such unfounded two dismissal and unfounded numerous allegations. However, the only discriminatory, retaliatory and baseless exclusion of plaintiff from UTHSCSA's rotation is the subject of this litigation. UC had/has no basis and authority or standing to discontinue Plaintiff's OMRP because UC was/is not the sponsor of and has no permission of ACGME and SMBO to conduct the OMRP, which is operated by TUH that has the ultimate authority to do so after affording plaintiff the mandatory due process. See (doc.104, 1st Amadasu Dec. at 8; Ex.97; doc.108 3rd Amadasu Dec. p.2-3 #8), and hereto annexed Ex.174-176). Donovan admitted that plaintiff never sexually harassed any body, no record evidence of mandatory written complaint, no evidence of any mandatory written notice to and response from plaintiff, no investigation report, no proof of any harassment and no corrective action by competent impartial fact finders of TUH or UC; no findings and evidence of plaintiff's sexually harassing anybody. (Doc.105, Donovan Response to Admission Request #13)

21. In self-contradiction, Ohio defendants have consistently rated plaintiff "good to superior" throughout the one-year-1999-2000 OMRP. (Doc.104, 1st Amadasu Dec. at 13-14, Ex.50, 55-68, 108). Example, (doc.104, Exhibit 50) is an absolutely, clearly and wholly vindication of plaintiff and rebuttal of alleged unfounded "numerous allegations." For instance, Donovan certified that while participating in OMRP, plaintiff adhered to the Rules and Regulations of the Medical Staff of TUH and followed through with delegated staff duties; plaintiff was never involved in any disciplinary proceedings; and never had any personal or professional circumstances that would indicate that the privileges of the resident should be limited, suspended, or denied. See (doc.104 Ex.50).

22. It is absolutely false and lacks evidence the Magistrate's Report that: "Nonetheless, Plaintiff's stipend was not reduced, he was not suspended, and he was allowed to continue in the program." (R&R, p.6). The absolute truth is that plaintiff's stipend was reduced from $42,000.00 to $29,000.00, he was deprived of mandatory appointment contract, substantial benefits, tools of training, grades, written evaluations, graduation, transcripts, validation of attendance, letter of reference, etc, during pre-employment, intra-employment and post employment. (doc.104, Amadasu Dec. at 10-12, Ex.3-7, 97 p.14). For instance, similarly situated R-3/PGY-3 residents, regardless of their specialties, at TUH's ACGME-accredited residency programs received $42,000.00 stipend plus all benefits but Donovan segregated plaintiff to UC's payroll and paid him $29,000.00 stipend, that is, $13,000.00 lesser than what plaintiff was entitled to as similarly situated TUH's PGY-3 residents and denied him benefit package afforded to other residents of non-protected class (doc.104 at 10-12, Ex.7).

23. It is absolutely false and lacks evidence the Magistrate's Report that: "Thereafter, plaintiff waited until April 11, 2001, the day he filed this lawsuit, to submit a signed residency termination clearance form, a requirement that every resident must sign before the department can order a certificate for completion of the program." Plaintiff has set forth facts with supporting evidentiary exhibits rebuttal to the falsehood and demonstrating the plaintiff's relentless and diligent efforts to make UC's faculty to perform their neglected obligation, duty and responsibility of rendering grades and written evaluations of plaintiff's courses, practicum and clinical rotations beginning from about September 1999 through April 2001. See (doc.104, 1st Amadasu Dec. at 15-22, 76-77, Ex.30-47), which demonstrated that plaintiff never waited until April 11, 2001 to submit a signed residency termination clearance form. Plaintiff is never the manufacturer, supplier, producer and filler of the residency termination form. The obligation, duty and responsibility of the program director and faculty of OMRP of preparing the form are prescribed by ACGME. (doc.104, 1st Amadasu Dec.#20-23, Ex.97, p.18-20; Ex.98-100; doc.108, 3rd Amadasu Dec. p.5 #14). Faculty rendering grades and overall evaluation of plaintiff's entire work are conditions precedent to signing residency termination clearance form. It is the obligation, duty and responsibility of Donovan and faculty (not of plaintiff) to schedule with plaintiff overall evaluation and signing of the residency terminating form. *Id.*

24. It is absolutely false and lacks evidence the Magistrate's Report that: "Additionally, UC held Plaintiff's transcript after he completed the program because of unpaid fees. Plaintiff received a graduate scholarship that required him to become an Ohio Resident. (Donovan Dec. #11.) However, Plaintiff failed to become an Ohio resident, and, as result, UC charged Plaintiff a non-resident fee." Plaintiff has disputed this material false fact and set forth true facts with supporting evidentiary exhibits rebuttal to the falsehood and demonstrating that the plaintiff was, *inter alia*, never fee-paying Occupational Medicine Resident (OMR), never graduate student of UC; never a fee-paying graduate student of UC; never applied for nor received a graduate scholarship; never required to become an Ohio resident in order to be OMR; never owed any unpaid fees to UC. The UC's 2/5/01 and 10/10/02 letters (Doc.104, 1st Amadasu Dec. #65-69, Ex.86-87, 89-90; doc.108, 3rd Amadasu Dec.p.5 #15-16) acknowledged that plaintiff owes no unpaid fees to UC thus, absolutely vindicating plaintiff. (Doc.104, 1st Amadasu Dec. #65-70, Ex.1-4, 86-87, 89-90, and 97 p.14). Donovan has produced no evidence of plaintiff's needs and application for, and written award of the scholarship. Graduate scholarships are never awarded without need, application for and written documentation thereof. Plaintiff's residency was completely and fully funded by federal funds. UC admitted that it had no contract with plaintiff "to be a fee-paying OMR" (doc.97 Donovan Dec. #2)

Nevertheless, plaintiff has been and still Ohio resident from July 1999 to the present because he has Ohio's automobile registration, license plate, and voter registration; he has been voting in Ohio, paid Ohio State and Local Taxes. Thus, Donovan's statement that plaintiff never became Ohio resident is absolutely false and fraudulent.

25. It is absolutely false and lacks evidence the Magistrate's Report that: "Plaintiff lacked significant teaching experience and was not hired for the position. The individual hired for the position was teaching a health promotions course at UC's College of Education, had a degree in health education and promotion, and was a health promotions coordinator for an area business." Plaintiff has set forth facts rebuttal to the falsehood and demonstrating that plaintiff has education, degrees and experience equal to and higher than the person hired (Doc.104, 1st Amadasu Dec. #59-60). It is well settled in this Circuit that evidence of comparators for an incident position must be disclosed to all parties and the court but UC has failed to produce evidence of qualification of the person hired.

26. It is absolutely frivolous the Magistrate's Report that: "The undersigned finds that Plaintiff's unsupported conclusory allegations are not sufficient to defeat the Defendants' properly supported summary judgment motions" because, *inter alia*, plaintiff has set forth specific facts with irrefutable and uncontradicted evidentiary support to not only defeat the defendants' summary judgment motions but, also warrant granting summary judgment in favor of the plaintiff. Contrary to Magistrate's baseless findings, Defendants, not the plaintiff, made absolute conclusory allegations in their declarations/affidavits without any shred of evidentiary support in the record. See (Doc.104, 1st Amadasu Dec.; Ex.1-130; Doc. 105 with Defendants' answers to Interrogatory and Admission Requests; Doc.106 – 1st & 2nd Amadasu's depositions; Doc.108 with 2nd Amadasu Supp. Dec.; Doc.121; Doc.123; Doc.127- 3rd Amadasu Dec. with Ex.131-172). Magistrate did not cite any shred of credible evidence adduced by defendants in support of their bald conclusory allegations and fictions. A properly supported summary judgment must have supporting evidentiary documentations that can be gleaned in the record. Here, defendants produce no evidence in support of their motions for summary judgment. Their bad-faith perjured affidavits are no evidence.
However, Ohio defendants produced fraudulently fabricated bill (doc. 97 Ex. D) for purported and unspecified Instruction on 01/16/2001 in Winter Quarter 2001 when plaintiff was no more their resident. Thus, Ohio defendants produced direct evidence (doc.97 Donovan Dec.p.2, Ex. D) that proves the falsity of the debt and was fabricated as pretext to mask discrimination. UC acknowledged that Plaintiff completed his residency in June 2000

27. It is absolutely frivolous Magistrate's recommendation that Defendants' motions for summary judgment be granted because defendants absolutely failed their burden of production to support their bald conclusory allegations and their summary judgment motions and it is against the weight of facts and evidence in the record precluding summary judgment for the defendants.

28. **Some of the genuine issues of material facts arising from parties' summary judgment cross-motions and the Magistrate's reported parties' versions of material facts in pages 4 to 8 of the R&R are herein set forth as follows:**

(a) A genuine issue of material fact exists as to whether University of Cincinnati ("UC") had/has State Medical Board of Ohio ("SMBO") and ACGME-accredited Occupational Medicine Residency Program ("OMRP")

11

(b) A genuine issue of material exists as to the nature of UC's relationship with the plaintiff as to whether plaintiff was public employee, environmental health resident, occupational health resident, accelerated track student, or graduate student of UC, and whether UC had any authority, power and control over plaintiff thereby, because if UC declared that "Amadasu was not employed and did not have a contract with UC" (doc.97 Donovan Dec. p.2) then arise factual question of why UC placed plaintiff on UC's Payroll and enrolled him in Public Employees Retirement System of Ohio State (doc.127 Ex.133-148).

(c) A genuine issue of material exists as to the nature of UC's relationship with TUH, which ACGME accredited to have authority, control and responsibility over OMRP,

(d) A genuine issue of material fact exists as to whether TUH contracted and authorized UC to pay plaintiff $29,000.00 instead of $42,000.00 stipend and to deny plaintiff the benefits package offered to similarly situated TUH's R3/PGY-3 residents; to bill plaintiff for the residency training offered by TUH, and alter the terms and conditions of appointment of TUH's residents with respect to plaintiff

(e) A genuine issue of material facts exists as to whether OMRP was ACGME-accredited for TUH or UC

(f) A genuine issue of material fact exists as to whether plaintiff applied for and was placed on the Practicum Phase ("PP"), a.k.a. Resident Level-3 ("R3"), a.k.a. Post Graduate Year Three ("PGY-3") of the ACGME-accredited OMRP of the University Hospital, Inc. ("TUH")

(g) A genuine issue of material fact exists as to whether TUH's ACGME-accredited OMRP has "Four Academic Tracks and Fourth Accelerated Track,"

(h) A genuine issue of material facts exists as to whether ACGME and ABPM accredited OMRP to have Fourth Accelerated Track that can be completed in two years

(i) A genuine issue of material fact exists as to whether plaintiff actually applied for, consented to be placed on and or was informed by UC that he was placed on "The Fourth Academic Track, known as the "Accelerated Track" that can be completed in two years.

(j) A genuine issue of material fact exists as to whether plaintiff applied to and contracted with UC to be its fee-paying postgraduate student, fee-paying public employee, fee-paying environmental health resident and fee-paying occupational health resident

(k) A genuine issue of material fact exists as to whether plaintiff was a fee-paying OMR of TUH

(l) A genuine issue of material fact exists as to whether UC per se, offered Plaintiff one-year Practicum Phase position as OMR in OMRP or two-year academic accelerated track position

12

in OMRP with privity of the plaintiff

(m) A genuine issue of material fact exists as to whether UC placing plaintiff on the "Fourth Accelerated Track" without notice to and consent of plaintiff constitutes violation of plaintiff's constitutional and statutory rights of liberty and property interests and due process

(n) A genuine issue of material fact exists as to whether plaintiff was entitled to mandatory appointment contract ("GME Contract"), full stipend, all benefits, terms, conditions, and tools of residency training for PGY-3 residents of TUH mandated by ACGME and TUH

(o) A genuine issue of material fact exists as to whether Ohio State Residency is a requirement for determining and appointing fee-paying or non-fee-paying applicants into TUH's OMRP.

(p) A genuine issue of material fact exists as to whether Ohio State Residency is a requirement for determining and appointing fee-paying or non-fee-paying applicants into TUH's OMRP

(q) A genuine issue of material fact exists as to whether plaintiff is or failed to become Ohio resident.

(r) A genuine issue of material fact exists as to whether similarly situated PGY-3 of TUH were afforded GME contract, full stipend, all benefits, terms and conditions, and tools of the residency training for PGY-3 mandated by ACGME and TUH

(s) A genuine issue of material fact exists as to whether UC deprived plaintiff of his entitled appointment contract, full stipend, all benefits, tools of the residency and other terms and conditions of appointment for PGY-3 mandated by ACGME and TUH

(t) A genuine issue of material fact exists as to whether TUH or UC has the ultimate authority, control and responsibility for the ACGME-accredited OMRP

(u) A genuine issue of material fact exists as to whether Plaintiff or the faculty, namely, Donovan, Lockey, Freeman and Middaugh, has the responsibility of rendering grades and evaluations for plaintiff's courses and clinical rotations and practicum and for making overall final evaluations for the purpose of terminating plaintiff's residency.

(v) A genuine issue of material fact exists as to whether Donovan, Lockey, Freeman and Middaugh, delayed and/or denied rendering grades and evaluations for plaintiff's courses and clinical rotations and practicum and making overall final evaluations for the purpose of terminating plaintiff's residency as required by ACGME and TUH's policy

(w) A genuine issue of material fact exists as to whether plaintiff owed UC unpaid-fees of about $4,313.00 so as to warrant continually withholding plaintiff's transcript, verification of attendance and references since 2000 and continuing to the present.

(x) A genuine issue of material fact exists as to whether UC and faculty delayed and/or withheld

grades, evaluations, transcripts, graduations, references of similarly situated PGY-3 residents of non-protected class

(y) A genuine issue of material fact exists as to whether similarly situated OMRs of non-protected class were required to pay for their residency training and whether UC sent bills to and harassed them with debt collection agencies

(z) A genuine issue of material fact exists as to whether plaintiff had the needs and application for graduate student scholarship of UC and whether UC actually awarded graduate scholarship to plaintiff by written notice to him; and whether plaintiff accepted it in writing.

(aa) A genuine issue of material fact exists as to whether Ohio and Texas defendants can produce any documented evidences of written, signed, investigated, heard, determined and concluded sexual harassment complaint by any victim against plaintiff throughout his residency at TUH and throughout his rotation in STEER program

(bb) A genuine issues of material facts exists as to whether Ohio and Texas defendants concertedly conspired to concoct impropriety against plaintiff as pretext for discrimination

(cc) A genuine issue of material fact exists as to whether Ohio and Texas defendants can produce evidence that they afforded plaintiff grievance procedures and due process in their conclusory accusatory sexual harassment, numerous complaints, and deprivation of Amadasu's liberty and property rights and interests mandated by federal law, ACGME, ABPM, TUH & UT

(dd) A genuine issues of material facts exists as to whether Ohio and Texas defendants afforded plaintiff written notice of charges or complaints against him, an explanation of their evidence, and an opportunity to present his written side of the story, and a name-clearing hearing in spite of plaintiff's formal written requests for investigation and hearing.

(ee) A genuine issue of material fact exists as to whether Texas defendants can produce documented description, nature, substance, dates, locations, victims, circumstances and evidentiary proof of their alleged "inappropriate behavior" of plaintiff

(ff) A genuine issue of material fact exists as to whether Ohio defendants can produce any evidence that plaintiff was the author and sender of the incident emails predicating alleged sexual harassment, and can produce written, signed complaint by victim(s); investigated, heard, determined and concluded findings of culpability of sexual harassment based on the emails as mandated by TUH and UC sexual harassment policies and procedures (doc.104 Ex.20-25)

(gg) A genuine issue of material fact exists as to whether UC can produce TUH's policy and

procedure for appointing Chief Residents, and specifically, and whether it followed the written policy and procedures and criteria for selection and appointment of Chief Resident of the OMRP.

(hh) A genuine issue of material fact exists as to whether UC can produce its policy and procedure for selection and hiring teaching faculty and evidence of the person appointed as health promotion faculty was more qualified than plaintiff

(ii) A genuine issue of material fact exists as to whether Texas defendants denied benefits, transportation, tools of training, privileges and immunities to; provided substandard, hazardous housing for and excluded, similarly situated participants-residents of non-protected class in their training program

29. Magistrate acknowledged and accepted into evidence plaintiff's Exhibits 130 annexed to (doc.104, 1st Amadasu Dec.) but Magistrate failed to consider and cite them as direct and or circumstantial evidence in support of Plaintiff's cross-motion for summary judgment (doc.137, 138). Consequently, Magistrate's R&R is against the weight of the body of evidence in the record.

Executed: 5/10/06

Darlington Amadasu
Plaintiff Pro Se
DECLARANT

**CERTIFICATE OF SERVICE**
I hereby certify that true copies of the foregoing were served on Justin D. Flamm by delivery to his receptionist and on Christopher Coppola by USPS mail on 05/12/06